Exhibit "A"

*Doc.*

UNITED STATES DISTRICT COURT

2004 SEP 24   PM 3: 04

FOR THE DISTRICT OF DELAWARE

FLOWSERVE CORPORATION,                    :
                                          :
        Plaintiff,                        :
                                          :
    v.                                    : C.A. No. _____
                                          :
BURNS INTERNATIONAL SERVICES              :
CORPORATION and BORG-WARNER               :
CORPORATION,                              :
                                          :
        Defendants.                       :

## COMPLAINT

Plaintiff, FLOWSERVE CORPORATION ("Flowserve"), by its Attorneys,

SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD, for their Complaint against

Defendants, BURNS INTERNATIONAL SERVICES CORPORATION, and BORG-

WARNER CORPORATION (collectively "Burns") alleges as follows:

### PRELIMINARY STATEMENT

Flowserve seeks this Honorable Court's assistance in determining its rights to

indemnification for thousands of asbestos-related suits now pending, and future claims,

from across the country against Burns ("Burns" used collectively as described herein to

include Burns' predecessor and successor entities) and Flowserve for diseases allegedly

caused by products manufactured by Burns prior to Flowserve's acquisition of the

product line at issue. The asbestos-related suits primarily involve Byron Jackson pumps -

a product line that was acquired by Flowserve ("Flowserve" used collectively as

described herein to include Flowserve's predecessor entities) in 1987. These suits have been filed decades after the pumps at issue were manufactured and sold by Burns - not Flowserve.

Each and every one of the Byron Jackson pumps at issue in the asbestos litigation was designed, manufactured, and placed into the stream of commerce by Burns. Profits from each and every one of these pumps was earned by Burns. In 1987, when Flowserve acquired the Byron Jackson line from Burns, asbestos-related liabilities were not disclosed to Flowserve. Nor were these liabilities explicitly factored into the purchase price for that transaction. In order to protect itself from such unknown and/or undisclosed liabilities, however, Flowserve negotiated for and obtained extensive indemnifications from Burns in the 1987 agreement ("1987 Agreement") for all environmental liabilities: including indemnification for suits related to latent diseases allegedly caused by exposure to Burns' pre-1987 product lines, including Byron Jackson pumps. Furthermore, even if one viewed the current asbestos liabilities as undisclosed, unknown, and non-allocated liabilities at the time of the sale, the common law liability for those products lies with Burns who designed, manufactured, and sold the product at issue.

Additionally, Burns promised in a separate letter agreement ("Letter Agreement") subsequent to the 1987 Agreement, that to the extent that insurance coverage then existed for any claims against the conveyed assets, Burns would additionally indemnify Flowserve for all such claims to the full extent of the then existing coverage. Insurance coverage continues to exist for the underlying asbestos claims against the conveyed

assets, and related losses have not approached the amount of insurance coverage represented to Flowserve at the time the Letter Agreement was executed, but Burns has nonetheless chosen to breach its obligations under this separate Letter Agreement by refusing to indemnify Flowserve to the extent of the represented coverage as of May 1, 1987.

Despite their contractual and common law obligations, Burns is now refusing to indemnify Flowserve for the mounting asbestos liabilities directly related to Burns' products, and their refusal to do so has placed Flowserve in an untenable and unfair position in the underlying asbestos-related actions nationwide. To make matters worse, Burns has now adopted the practice of tendering its own asbestos-related Byron Jackson cases to Flowserve and is refusing to pay defense and indemnity costs in the underlying actions related to the pre-1987 Byron Jackson pump products irrespective of whether Flowserve, Burns, and/or their predecessors or successors are named defendants.

One of these entities, and only one of these entities, must immediately defend and take responsibility for the Byron Jackson pump line for products manufactured and sold prior to 1987 by Burns - this action alleges that Burns is that entity. Under both contractual and common law causes of action, Flowserve respectfully seeks a Judgment from this Honorable Court that Flowserve is entitled to indemnification from Defendants for all asbestos claims related to products manufactured and sold by Burns prior to January 1, 1987.

## PARTIES

1.　　Plaintiff, FLOWSERVE is a corporation organized under the laws of the State of New York with its principal office located at 5215 N. O'Connor Blvd., Suite 2300 in Irving, Texas.

2.　　Upon information and belief, Defendant BURNS INTERNATIONAL SERVICES CORPORATION is a corporation organized under the laws of the State of Delaware with its principal office located at 200 South Michigan Avenue in Chicago, Illinois.

3.　　Upon information and belief, Defendant BORG-WARNER CORPORATION is a corporation organized under the laws of the State of Delaware with its principal office located in Chicago, Illinois.

## JURISDICTION, VENUE, AND CHOICE OF LAW

4.　　Section 10.11 of the 1987 Agreement out of which Flowserve's instant claims derive provides that the Agreement and collateral agreements shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

5.　　Flowserve has commenced this action seeking declaratory relief, damages, together with costs and attorney's fees, based upon Defendants' breach of contract and anticipatory breach of contract. Federal jurisdiction is based in this matter upon diversity of citizenship pursuant to 28 U.S.C. §1332, as Plaintiff and Defendants are incorporated and domiciled in different states and the matter in controversy exceeds $75,000.00 (Seventy-five-thousand dollars).

-4-

6.    Venue is proper under 28 U.S.C. § 1391(a), as at least one defendant, BURNS INTERNATIONAL SERVICES CORPORATION, is incorporated in Delaware and the choice of law provision establishes consent to venue in Delaware.

## CORPORATE HISTORY

7.    In 1987, BWIP Acquisition Corporation purchased all the stock of Borg-Warner Corporation's wholly-owned subsidiary Borg-Warner Industrial Products, Inc. ("1987 Sale"). As a result of the 1987 Sale, BWIP Acquisition Corporation acquired substantially all of Borg-Warner Corporation's industrial product assets, including, *inter alia*, products manufactured and sold under the trade name Byron Jackson. This dispute arises from breach and anticipatory breach of the seller's contractual indemnification obligations to the buyer, established pursuant to the 1987 Sale, for a series of asbestos-related personal injury claims alleging asbestos exposure from products manufactured prior to 1987 brought in various jurisdictions throughout the United States ("Underlying Asbestos Claims").

8.    Through a series of corporate successions, the named parties to the instant action have acquired their respective indemnification rights and obligations through the original seller ("Borg-Warner Corporation") and buyer ("BWIP Acquisition Corporation") to the 1987 Sale. Flowserve has succeeded to the rights and obligations of BWIP Acquisition Corporation, while Burns International Services Corporation (and/or Borg-Warner Corporation now owned by Burns International Services Corporation) has succeeded to the rights and obligations of Borg-Warner Corporation.

9.     Upon information and belief, in or around 1983, Borg-Warner Corporation spun off and incorporated its industrial products division under the name Borg-Warner Industrial Products, Inc. (hereafter "BWIC").  The industrial products assets spun off and assumed by BWIC included, *inter alia*, the Byron Jackson pump division, the same group of products at issue in the Underlying Asbestos Claims.  Upon information and belief Byron Jackson pumps were manufactured and sold by Borg-Warner Corporation, the predecessor to Burns, since at least 1954.  BWIC was wholly owned and operated by Borg-Warner Corporation until 1987.

10.     On March 12, 1987, Borg-Warner Corporation sold all the stock in BWIC pursuant to a written stock purchase agreement ("1987 Agreement") to the BWIP Acquisition Corporation, a company formed and incorporated by a venture capital firm, Clayton & Dubilier Private Equity Fund II Limited Partnership, solely to acquire the stock of BWIC.

11.     Subsequent to the 1987 Agreement, on or about May 1, 1987, Borg-Warner Corporation and BWIP Acquisition Corporation entered into a separate Letter Agreement that augmented the intent of the 1987 Agreement.  In the Letter Agreement, Borg-Warner Corporation additionally indemnified BWIP Acquisition Corporation for all claims against the assets conveyed in the 1987 Agreement to the extent of the insurance available at that time - May 1, 1987.

12.     Upon information and belief, in or around 1987, BWIP Acquisition Corporation changed its name to BW/IP, Inc. ("BW/IP") under which it continued to

operate until July 22, 1997, when BW/IP merged with Durco International, Inc. to form a new entity named Flowserve Corporation.

13.    Pursuant to the July 22, 1997 merger, Flowserve stepped into the shoes of BW/IP (f/k/a BWIP Acquisition Corporation) and acquired all of BW/IP's contractual rights, including all indemnification rights owed by Borg-Warner Corporation to BW/IP under the 1987 Agreement and the Letter Agreement.

14.    Upon information and belief, in or around 1987, Borg-Warner Corporation incorporated a separate wholly owned subsidiary named Borg-Warner Security Corporation.

15.    Upon information and belief, in or around 1987 and subsequent to the 1987 Agreement, a private group of investors organized a leveraged buyout of the outstanding stock in the Borg-Warner Corporation.

16.    Upon information and belief, following the 1987 leveraged buyout, Borg-Warner Corporation operated as a private company until it again went public in or around 1993 under the name Borg-Warner Security Corporation.

17.    On or about May 4, 1999, Borg-Warner Security Corporation changed its name to Burns International Services Corporation. Upon information and belief, Burns International Services Corporation succeeded to and now possesses all of the contractual obligations owed by Borg-Warner Corporation to BWIP Acquisition Corporation (the predecessor to Flowserve) under the 1987 Agreement and/or is responsible for any residual rights and obligations of Borg-Warner Corporation.

-7-

18.    As a result of the aforementioned series of corporate acquisitions, successions and name changes, Flowserve has stepped into the shoes of BWIP Acquisition Corporation (and later BW/IP) and now possesses all of the rights and obligations of the original buyer in the 1987 Sale.  Upon information and belief, as a result of the aforementioned corporate successions and name and form changes involving Borg-Warner Corporation, Burns International Services Corporation has stepped into the shoes of Borg-Warner Corporation and now possesses all the rights and obligations of the original seller in the 1987 Sale; and/or is responsible for any residual rights and obligations of Borg-Warner Corporation.  As Burns International Services Corporation has recently reserved its rights as to its status with Borg-Warner Corporation by letter to Flowserve, Borg-Warner Corporation, now owned by Burns International Services Corporation, has been joined to this lawsuit to ensure all necessary parties are before this Court.

## FLOWSERVE OBTAINED EXTENSIVE ENVIRONMENTAL INDEMNIFICATIONS IN THE 1987 AGREEMENT

19.    On May 1, 1987, the parties to the 1987 Sale executed a 125 (one hundred twenty-five) page stock purchase agreement, the 1987 Agreement, intended to govern the transaction.

20.    The 1987 Agreement included a lengthy and detailed indemnification provision which stated that the buyer (hereafter, "Flowserve") would assume and indemnify the seller (hereafter, "Burns") for certain liabilities, while Burns would retain and indemnify Flowserve for certain other liabilities related to, *inter alia*, BWIC and the

Byron Jackson pump division.  See 1987 Agreement, Ex. A at §9.04) (for ease of reference, all contractual references hereinafter are to the current holders of the rights and obligations of the original contracting parties to the 1987 Agreement).

21.    Section 9.04(a)(ii)(E) of the 1987 Agreement established a broad category of unknown product, environmental and disease-related claims, including asbestos-related claims, based on BWIC and Borg-Warner Corporation products manufactured prior to the Effective Date of the 1987 Agreement for which Burns agreed to retain complete liability and further agreed to indemnify Flowserve.  (See Ex. A at §§9.04(a)(ii)(E)(1)(2)(3)).

22.    Section 9.04(a)(ii)(E) states, in relevant part, that Burns would indemnify and hold Flowserve harmless for, *inter alia*:

> (E)    any occurrence, conduct or condition existing on or prior to the Effective date [of the 1987 Agreement] with respect to the businesses of [BWIC] that:
>
> > (1)    violated, is alleged to violate or gives rise to a claim under any law, rule, or ordinance in effect as of the Effective Date, or any judgment, order or decree in any case relating to conduct prior to the Effective Date with respect to handling or disposal of toxic or hazardous materials, air or water pollution or otherwise relating to protection of or damage to the environment;
> >
> > (2)    is the basis for any common law tort, nuisance or similar claim by a party (other than the Buyer or an affiliate of Buyer) in connection with which Borg-Warner, BWIP or any of the Subsidiaries or any business of the Divisions is alleged to have released harmful, toxic or hazardous substances into the environment; or
> >
> > (3)    is the basis for a claim that the claimant contracted a disease as a result of exposure prior to the Effective date to any product of or raw material used by Borg-Warner, BWIP or any of the Subsidiaries or any business of the Divisions, except to the

extent that such a claim is made after the Effective Date and arises out of third party use of a product after sale.

23.     In §4.23 of the 1987 Agreement, Burns made separate warranties to Flowserve, apart from the indemnities in §9.04(a)(ii)(E), that BWIC had not caused any "hazardous or toxic materials" to be "released into the environment" prior to the Agreement's Effective Date. Ex. A at §4.23.

24.     Each of three subdivisions of §9.04(a)(ii)(E) of the 1987 Agreement established the parties' intent that Burns would retain liability for environmental and/or disease-related liabilities, including such liabilities that were either: 1) related to the improper "handling or disposal of toxic substances" such as asbestos (See 1987 Agreement §9.04(a)(ii)(E)(1)); 2) related to the "release of toxic or hazardous substances" such as asbestos (See 1987 Agreement §9.04(a)(ii)(E)(2)); or, 3) related to a claim that the "claimant contracted a disease from exposure to a product or material" such as asbestos. See 1987 Agreement §9.04(a)(ii)(E)(3). Ex. A.

25.     The word "sale" at the end of subsection (E)(3) above refers to exposures that occurred prior to the "sale" of the pump lines to Flowserve as set forth in the 1987 Agreement. To the extent that "sale" in (E)(3) is determined to be ambiguous or a contrary interpretation is offered by Burns, the parole evidence at the time of the 1987 Agreement, exchanged between the sophisticated parties involved, conclusively demonstrates that "sale" in (E)(3) was intended by the parties to be defined as after "sale" of the conveyed assets to the buyer. All of the known Underlying Asbestos Claims allege

-10-

exposures to materials used by Burns prior to the Effective Date and that were

encountered by the asbestos claimants prior to the 1987 Sale.

### BURNS FURTHER INDEMNIFIED FLOWSERVE IN THE LETTER AGREEMENT TO THE EXTENT OF BURNS' THEN EXISTING INSURANCE COVERAGE

26.    In relevant part, the Letter Agreement states that:

> The purpose of this letter is to document our mutual
> agreement that, notwithstanding anything to the contrary
> contained in the Agreement, neither BWIP nor any of its
> subsidiaries shall be responsible for any losses to the extent
> that such losses are covered by insurance covered by Borg-
> Warner.

> Accordingly, as provided by Section 9.04 (a) of the Agreement, Borg-
> Warner will indemnify the buyer, BWIP and each of their respective
> subsidiaries against all losses to the extent that such losses are covered by
> such insurance.

27.    At the time that Burns entered into the Letter Agreement, Burns had valid

and collectible primary, umbrella and excess insurance policies that provided, *inter alia*,

defense and indemnification coverage for all products that had been manufactured by

Burns (f/k/a Borg-Warner) prior to March 12, 1987.  Letter Agreement attached hereto as

Ex. B.  By these representations and warranties, Burns agreed they were contractually

obligated to provide Flowserve with indemnity protection to the limits of that coverage as

it existed at the time of the Letter Agreement.

### BURNS HAS BREACHED THE LETTER AGREEMENT

28.    As Flowserve began to be served with complaints in the Underlying

Asbestos Claims, in accordance with the terms and conditions of the 1987 Agreement and

Letter Agreement, Flowserve began to tender these lawsuits to Burns.

-11-

29.    Burns accepted the indemnification obligation without objection, reservation or qualification and, upon information and belief, Burns then submitted these lawsuits to their primary insurance carriers.

30.    Initially, those primary insurance carriers provided Flowserve with defense and indemnification; however, several of Burns' primary insurers now contend that said defense and indemnification coverage was subject to a reservation of rights.

31.    Recently, in the case captioned Continental Casualty Company, et al. v. Borg-Warner, Inc., et al., Case No. 04CH01708, Circuit Court of Cooke County, Illinois, Chancery Division ["Coverage Lawsuit"] Burns' primary insurance carriers have sued, *inter alia*, Flowserve.  In the Coverage Lawsuit, Burns' primary insurers seek a declaratory judgment as to the scope of coverage which their policies provide to several past and present Burns entities, including Flowserve, with respect to the Underlying Asbestos Claims.

32.    In addition, since Burns' primary insurers contend that their limits of liability have been exhausted, upon information and belief, Burns is now tendering the Underlying Asbestos Claims to Burns' umbrella/excess insurers; however, various Burns umbrella/excess insurers also dispute the scope of coverage that their policies provide for the Burns entities, including Flowserve, for the Underlying Asbestos Claims.

33.    As a result, in accordance with the terms of the 1987 Agreement and Letter Agreement, Flowserve has demanded that Burns indemnify Flowserve for all defense costs, settlements and judgments arising out of the Underlying Asbestos Claims. However, Burns has breached the Letter Agreement by refusing to indemnify Flowserve

to the extent of, rather than the collectibility of, insurance assets.  Further, Burns has

breached the 1987 Agreement's indemnity obligations that provide protection to

Flowserve.

34.    As a result of the failure of Burns to indemnify Flowserve, Flowserve has

been and will be required in the future to expend its own monies in the defense and

settlement of the Underlying Asbestos Claims.

## THE UNDERLYING ASBESTOS CLAIMS TRIGGER BURNS' MULTIPLE INDEMNIFICATION OBLIGATIONS TO FLOWSERVE

35.    Asbestos-related personal injury and wrongful death claims based on

exposure to Burns' pre-1987 products are obligations for which Burns agreed to assume

liability and to indemnify Flowserve pursuant to §9.04(a)(ii)(E) of the 1987 Agreement.

The allegations set forth in the various causes of action in the asbestos-related personal

injury lawsuits closely resembles, and in some cases precisely tracks, the indemnity

language contained in §9.04(a)(ii)(E) of the 1987 Agreement.  See Chart of relationship

between asbestos-related causes of action and the §9.04(a)(ii)(E) indemnities, Ex. C.

Upon information and belief, the complaint language tracked in Exhibit C is drawn from

plaintiffs' firms in jurisdictions where they are asserting causes of action against

Flowserve, Burns, and BW/IP for the Byron Jackson pump line.

36.    Furthermore, the course of conduct of the parties who negotiated the 1987

Agreement demonstrates a clear intent that Burns would retain full responsibility for

product-related environmental or disease-related liabilities in connection with pre-1987

manufacturing activity or exposures to BWIP and Borg-Warner Corporation products.

-13-

Flowserve communicated to Burns, prior to the 1987 Agreement being executed, that Burns' indemnification for unknown and/or undisclosed liabilities was a crucial precondition for Flowserve's agreement to acquire the conveyed assets. In fact, because these indemnifications were vital to Flowserve, the environmental-related indemnifications were moved into a separate section of the 1987 Agreement and were specifically exempted from the five-year sunset indemnity provision.

37.    Upon information and belief, Burns remains fully liable for products Borg-Warner Corporation manufactured prior to 1983, and which were manufactured from 1983 to 1987 by BWIC, under the indemnities in the 1987 Agreement.

## BURNS' BREACHES OF THE 1987 AGREEMENT

38.    Despite the contractual obligations owed by Burns to Flowserve established under the 1987 Agreement, including §9.04(a)(ii)(E), and contrary to the parties' course of dealing prior to and after the Agreement's execution, Burns has refused to honor its indemnification obligations to Flowserve for the Underlying Asbestos Claims. Instead, Burns has sought to improperly foist those same obligations onto Flowserve.

39.    For example, on September 9, 2004, Flowserve received correspondence from counsel for Continental Insurance Company and Columbia Casualty Company (collectively, "CNA") that an asbestos wrongful death action for claimant Katherine Powell was nearing trial in California's Alameda County Court, and that CNA was denying insurance coverage to Burns and Borg Warner Corporation in the action. Exhibit D. CNA's counsel's letter was the first communication Flowserve had ever received

from any carrier about the Powell asbestos matter pending in Alameda County Court. The allegations in Powell, as to Burns, were solely based on asbestos exposure alleged as a result of work with and/or around Byron Jackson pumps. Burns - not Flowserve - was a named defendant.

40.    On September 10, 2004, Flowserve received correspondence from Burns' counsel which requested that Flowserve assume "full responsibility for all losses in Powell (including defense and indemnity expenses)" pursuant to the 1987 Agreement. Ex. E. Burns had not previously tendered the Powell case to Flowserve, and this untimely tender letter was the first communication of any kind received by Flowserve from Burns in connection with the Powell matter, despite the fact that the Powell complaint had been served on Burns - not Flowserve - months before the September 2004 trial setting.

41.    On September 13, 2004, Flowserve, through its counsel, informed Burns that it would not accept tender nor assume responsibility for the Powell matter since, *inter alia*, Flowserve did not have any obligation to indemnify or defend Burns for Underlying Asbestos Claims under the 1987 Agreement and the Letter Agreement. Ex. F.

42.    Burns' tender of the Powell matter and other Underlying Asbestos Cases to Flowserve, as well as Burns' refusal to accept its continuing indemnification obligations to Flowserve for the present and future defense of such cases, constitutes both a breach and an anticipatory breach of the 1987 Agreement.

## COUNT I
## CLAIM FOR RELIEF
### (Breach of Contract)

43.    Flowserve repeats each and every allegation in Paragraphs 1 through 42 as if fully set forth herein.

44.    By failing to indemnify Flowserve in the Underlying Asbestos Claims for defense costs, settlements and judgments incurred by Flowserve, Defendants have breached the terms and conditions of the Letter Agreement.  The Underlying Asbestos Claims are all losses within the policy limits of valid and collectible insurance at the time that the Letter Agreement was executed by the parties, and, therefore, Defendants are required to fully indemnify Flowserve for all such losses to the extent of those coverage amounts.

45.    As a direct and proximate result of Defendants' breach of contract, Flowserve has been and continues to be damaged in an amount in excess of the jurisdictional limits of this Court.

## COUNT II
## CLAIM FOR RELIEF
### (Declaratory Judgment)

46.    Flowserve repeats each and every allegation in Paragraphs 1 through 45 as if fully set forth herein.

47.    As evidenced by the Letter Agreement, Flowserve submits that Defendants are required to defend and indemnify it for all losses arising out of the Underlying

Asbestos Claims because said claims were covered by valid and collectible insurance at the time that the Letter Agreement was entered into by the parties.

48.    In contrast, Burns contends that it has no obligation to defend and indemnify Flowserve with respect to the Underlying Asbestos Claims. Specifically, it is Burns' contention that under the Letter Agreement, Flowserve is only entitled to indemnification to the extent that Burns' insurers agree to provide such coverage, and Burns has no independent obligation to indemnify Flowserve for the Underlying Asbestos Claims. Burns speciously maintains this position without even considering whether Burns has taken all necessary and prudent steps to manage its coverage in order to, *inter alia*, prevent premature exhaustion, bring excess and other primary coverage into position, and, in the alternative, to limit overpayment of claims or to timely assume any and all gaps due to carrier insolvency or any other lapse in coverage.

49.    Contrary to Burns' assertions, the 1987 coverage does not substitute for Burns' indemnity obligations. The coverage limits as of May 1, 1987 merely defined the scope of Burns' indemnity obligation and were not meant to be the sole remedy. Flowserve did not contract for Burns' carriers' future performance - it contracted for Burns' performance. The Letter Agreement was with Burns - with the coverage limits serving only to define the parameters of the obligation. Burns has breached the Letter Agreement and has additionally failed to exercise its duty of good faith and fair dealing under the Letter Agreement.

50.    In light of the parties' disparate positions regarding the rights to reimbursement and indemnity and duties for reimbursement and indemnity between

-17-

Flowserve and Defendants under the Letter Agreement, a judiciable controversy exists, and this Court should issue a declaration of the rights and duties of the parties under the Letter Agreement with respect to Flowserve's right to indemnity from Defendants for all defense costs, settlements and judgments arising out of the underlying asbestos cases.

**COUNT III**
**CLAIM FOR RELIEF**
**(Breach and Anticipatory Breach of the 1987 Agreement)**

51.    Flowserve repeats each and every allegation in Paragraphs 1 through 50 as if fully set forth herein.

52.    Pursuant to §9.04(a)(ii)(E) of the 1987 Agreement, the seller Borg-Warner Corporation contractually agreed to indemnify and hold the buyer harmless for a broad category of product-related environmental and disease-related claims including but not limited to asbestos-related claims based on exposure to Burns and BWIC products occurring prior to the 1987 Agreement's Effective Date of December 31, 1986 - irrespective of available insurance proceeds to Burns.

53.    Burns (and/or Borg-Warner Corporation) assumed and succeeded to the contractual obligations the seller owed the buyer under the 1987 Agreement, including all indemnification obligations.

54.    Flowserve acquired and succeeded to all the contractual rights the seller owed the buyer under the 1987 Agreement, including all indemnification rights.

55.    Inexplicably, Burns has tendered to Flowserve the Underlying Asbestos Claims involving Byron Jackson pumps, claims for which Burns is contractually liable to

-18-

indemnify and hold Flowserve harmless under §9.04(a)(ii)(E) of the 1987 Agreement. Burns also has refused to accept tender or re-tender of the Underlying Asbestos Claims from Flowserve and has denied its continuing obligation under the 1987 Agreement to indemnify and hold Flowserve harmless for the defense of such cases.

56.     Burns' actions constitute a breach, as well as an anticipatory breach, of the 1987 Agreement.

57.     In light of the parties' disparate positions regarding the rights to reimbursement and indemnity and duties for reimbursement and indemnity between Flowserve and Burns (and/or Borg-Warner Corporation) under the 1987 Agreement, a judiciable controversy exists, and this Court should issue a declaration of the rights and duties of the parties under the 1987 Agreement with respect to Flowserve's right to indemnity from Burns (and/or Borg-Warner Corporation) for all defense costs, settlements and judgments arising out of the Underlying Asbestos Claims.

## COUNT IV
## CLAIM FOR RELIEF
### (Common Law Indemnification)

58.     Flowserve repeats each and every allegation in Paragraphs 1 through 57 as if fully set forth herein.

59.     In the alternative, Borg Warner Corporation and Burns as successor to Borg-Warner Corporation remain fully liable for products manufactured before 1983 which were not assumed by BWIC at the time of BWIC's incorporation. Further, to the extent that such liabilities were unknown and unallocated, or known or foreseeable and not disclosed to BWIP Acquisition Corporation by Borg-Warner Corporation, then

-19-

Flowserve is entitled to common law indemnification from Burns and/or Borg-Warner

Corporation as the manufacturers of the products at issue in the Underlying Asbestos

Claims.

    60.    Accordingly, Flowserve is entitled to common law indemnification from

Borg-Warner Corporation and Burns for any settlements paid or defense costs incurred by

Flowserve in connection with the Underlying Asbestos Claims based on products

manufactured by Borg-Warner Corporation before 1983 and by BWIC from 1983 to

1987.

## PRAYER FOR RELIEF

WHEREFORE, Flowserve prays for judgment as follows:

    a)    declaring that Defendants accept tender from Flowserve of the underlying asbestos actions and directing that Defendants' tenders to Flowserve of the underlying asbestos cases are improper;

    b)    declaring that pursuant to the Letter Agreement, Flowserve is entitled to indemnification for the underlying asbestos cases from Defendants to the extent of the existence of insurance assets represented at the time of the execution of the Letter Agreement, and that Defendants have breached the Letter Agreement;

    c)    declaring that pursuant to §9.04(a)(ii)(E) of the 1987 Agreement, Defendants must indemnify and hold Flowserve harmless for any future asbestos-related claims based on pre-1987 exposure to products manufactured by Borg-Warner Corporation or Borg Warner Industrial Products, Inc. and that Defendants have breached the 1987 Agreement;

    d)    in the alternative, declaring that Flowserve is entitled to common law indemnification from Defendants for any settlements paid or costs incurred in the defense of underlying asbestos actions based on products manufactured by Borg-Warner Corporation before 1983 and Borg-Warner Industrial Products, Inc. between 1983 and 1987; and

e)    for all costs and expenses (including attorneys' fees) incurred by Flowserve in this litigation and in the defense of the underlying asbestos cases, and all other and further relief the Court deems just and equitable.

William Mahoney, Esquire
Ted McCullough, Esquire
Erich Gleber, Esquire
SEGAL McCAMBRIDGE SINGER
    & MAHONEY, LTD.
805 Third Avenue, 19th Floor
New York, NY   10022
(212) 912-3665
**Attorneys for Plaintiff**

Danielle K. Yearick, Esquire (#3668)
TYBOUT, REDFEARN & PELL
300 Delaware Avenue, 11th Floor
P.O. Box 2092
Wilmington, DE  19899-2092
(302) 658-6901
**Local Counsel for Plaintiff**

Of Counsel:

Christopher M. Bechhold, Esq.
THOMPSON HINE, LLP
312 Walnut Street, 14th Floor
Cincinnati, OH 45209
(513) 354-6790