## ARGUMENT

**The Standard for 12 (b)(6) Motions**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the Complaint [here the Answer and Counterclaims], not to resolve the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3rd Cir.1993). When considering a motion to dismiss, a court must accept as true all allegations in the Complaint [Answer and Counterclaims] and must draw all reasonable factual inferences in the light most favorable to the non-moving party. Resource Ventures, Inc. v. Resource Management International, Inc., 42 F.Supp.2d 423, 437-8 (D.Del. 1999). Dismissal is not warranted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Id. at 438. Flowserve acknowledges that the "beyond doubt" standard applies (p. 1, Flowserve Memorandum of Law).

**I. FLOWSERVE'S MOTION TO DISMISS SHOULD BE DENIED.**

Flowserve's motion rests entirely on a single legal argument, namely, that Burns itself has not paid money directly to Flowserve, and therefore Burns has no right to recover damages from Flowserve for restitution or unjust enrichment for the millions of dollars in insurance benefits that Flowserve wrongfully obtained.

Burns has various assets, tangible and intangible. The insurance policies of Borg-Warner Corp., acquired by Burns in connection with the liquidation of Borg-Warner (CC at 11), are an intangible asset. Liability insurance is not inexhaustible – it is subject to occurrence and aggregate limits, and those limits can disappear quickly when you are named in tens of thousands of suits. As alleged in Flowserve's complaint, the insurers contend that the limits of primary coverage are already exhausted. (CC at 6).

Flowserve correctly points out that it is Borg-Warner's insurers who have paid the defense and indemnity for Flowserve's asbestos claims. However, the carriers have made such payments not as volunteers, but "on behalf of" the insured, pursuant to the terms of applicable policies. Those policies, like any other asset, can be wrongfully conferred as a benefit on a party not entitled thereto, as alleged in Burns' Counterclaims. Flowserve has wrongfully depleted millions of dollars of insurance coverage, at the primary level, and now at excess layers, that belongs to Burns and would be available for the defense and indemnity of Burns, were it not for Flowserve's conduct. The very existence of those additional insurance limits would add value to Burns, providing additional protection against future adverse loss development, and security that the asbestos claims will not materially effect its financial statements.

Delaware law recognizes that restitution and unjust enrichment are broad remedies, and are not limited to circumstances where one party has wrongfully obtained money directly from another. Schock v. Nash, 732 A.2d 217, 232-3 (Del. Supr. 1999); Fleer Corp. v. Topps Chewing Gum, Inc, 539 A.2d 1060, 1063 (Del. Supr. 1988).

The function of restitution is to restore a person to the position he formerly occupied. Chrysler Corp. v. Airtemp Corp., 426 A.2d 845, 855 (Del. Super. 1980); quoting Restatement of Restitution §1, comment a. Restitution requires a person who has been unjustly enriched at the expense of another to compensate the other party for the substance of the enrichment. Chrysler at 855. The person claiming restitution must have been deprived of something or some right which he was entitled to retain and the person from whom restitution is required must have received something or some benefit to which he was not rightfully entitled. Id. In order to warrant restitution, the retention of the benefit must be unjust. Id.

To obtain restitution, a plaintiff is required to show that the defendant was unjustly enriched, that the defendant secured a benefit, and that it would be unconscionable to allow the defendant to retain that benefit. Schock v. Nash, 732 A.2d 217, 232 (Del. Supr. 1999). Restitution is permitted even when the defendant retaining the benefit is not a wrongdoer. Id. Restitution serves to deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance, *and even though the plaintiff may have suffered no demonstrable losses*. Id. at 232-3, citing with approval Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060, 1063 (Del. Supr. 1988) (emphasis added).

Comment b. to the Restatement of Restitution §1 addresses the issue of what constitutes a "benefit". A party confers a benefit on another,

> [N]ot only where he adds to the property of another, but also where he saves the other from expense or loss. The word "benefit" therefore, denotes any form of advantage.

Id.; Willingham v. Kral Music, Inc., 505 A.2d 34, 36 (Del. Super. 1985) (recognizing that under Restatement of Restitution §1 "benefit" includes any form of advantage, including non-monetary benefits).

Under Delaware law, historical insurance coverage is property and the purported exhaustion of the coverage can give rise to a cause of action. Tenneco Automotive Inc. v. El Paso Corp., C.A. No. 11810-NC, Noble V.C. (Mem. Op., Nov. 29, 2001), 2001 WL 1641744 (Exhibit B) (following corporate restructuring, corporate plaintiffs could bring claims for declaratory relief and damages against formerly related corporation and its parent for alleged deprivation of rights under historical insurance policies which predated restructuring); Union Texas Petroleum Holdings, Inc. v. Travelers Indemnity Co., C.A. No. 15448, Chandler, Ch.

(Mem. Op., Feb. 19, 1998), 1998 WL 83068 (Exhibit C) (following corporate restructuring, plaintiff corporations stated cause of action against former parent corporation for declaratory relief and damages arising from alleged release of historical insurance coverage).

For a court to order restitution, it must first find that the defendant was enriched unjustly at the expense of the plaintiff. Schock v. Nash, 732 A.2d 217, 232 (Del. Supr. 1999). Unjust enrichment is defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. Id.; Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060, 1062 (Del. Supr. 1988).

In Fleer Corp., Fleer won a ruling voiding Topps Chewing Gum's exclusive license to sell baseball cards, and Fleer then commenced to sell baseball cards. That ruling was reversed on appeal, reinstating Topps' exclusive license. Fleer was denied summary judgment on Topps' claim for unjust enrichment based on sales during the time after Topps' exclusive license was voided and the time that it was reinstated on appeal. The Supreme Court of Delaware outlined certain important elements of unjust enrichment applicable to this case. First, "rights arising out of contracts [such as the insurance contracts in this case] have long been recognized as property rights." 539A.2d at 1062, citing Lynch v. U.S., 292 U.S. 571 (1934). Second, "the remedy of restitution may be invoked regardless of whether or not the party retaining the benefit is found to be a wrongdoer." 539A.2d at 1063. Even though Fleer was selling baseball cards pursuant to a court order, later reversal of that order gave rise to a claim of unjust enrichment and remedy of restitution. In the same manner, Burns' providing insurance benefits that were its property to Flowserve, voluntarily at a time when it reasonably believed Flowserve would honor its

obligation to indemnify Burns for any uninsured portion of the underlying asbestos claims, are properly subject to restitution now that Flowserve has disavowed its obligations.

In its Counterclaims, Burns contends that Flowserve has wrongfully exhausted millions of dollars of insurance coverage that rightfully belongs to Burns. Flowserve received the benefit of Burns' insurance coverage, because Burns' insurers have paid large sums to defend and indemnify Flowserve on Underlying Asbestos Claims for which Flowserve has been sued. Burns' primary insurers now contend that Burns' insurance has been exhausted at the primary level. Payments made by Burns' insurers on Flowserve's behalf have contributed to the exhaustion of coverage. If Flowserve had not wrongfully allowed the Underlying Asbestos Claims filed against Flowserve to be tendered by Burns to its insurers, and taken advantage of the defense and indemnity provided thereunder, Burns would still have primary coverage available for the defense and indemnity of the Underlying Asbestos Claims filed against Burns. Flowserve has wrongfully benefited from Burns' insurance coverage, and Burns has suffered a loss of insurance benefits. Flowserve should have paid the defense and indemnity for its Underlying Asbestos Claims out of its own pocket (or tendered the Claims to Flowserve's own insurers).

Flowserve has been enriched unjustly at the expense of Burns. Flowserve seeks to retain the benefit of Burns' insurance coverage to the detriment of Burns, which could use the insurance coverage to defend its own Underlying Asbestos Claims or other claims that may arise. Flowserve's wrongful exhaustion of Burns' primary insurance coverage -- coverage to which Flowserve had no legal right if indeed it abrogates the very agreements they may have conferred that right-- violates fundamental principles of equity and good conscience. Union Texas Petroleum Holdings, supra, and Tenneco, supra. Indeed, the facts presented here are more

egregious than in the Union Texas and Tenneco cases. In those cases, the exhaustion of the insurance coverage was based upon written releases provided to the insurers. Here, the exhaustion was caused by actual payments made on Flowserve's behalf, and from which it therefore received a financial benefit.

The function of restitution is to restore Burns to the position it formerly occupied by assessing damages against Flowserve to compensate Burns for its lost insurance coverage. Chrysler Corp. v. Airtemp Corp., 426 A.2d 845, 855 (Del. Super. 1980). Burns has been deprived of valuable insurance coverage and Flowserve has received the benefit of Burns' insurance coverage, to which it was not rightfully entitled. Id.

Restitution is proper, even if Flowserve was not a wrongdoer (although Burns' alleges that it is -- and this case is at the pleadings stage). Schock v. Nash, 732 A.2d 217, 232 (Del. Supr. 1999); Fleer Corp. v. Topps Chewing Gum, Inc., 539A.2d at 1063. And Burns is entitled to restitution even if it had not suffered any demonstrable losses (which it has, namely, a loss of insurance coverage which constitutes property rights subject to restitution under Delaware law). Id. at 232-3; Fleer v. Topps Chewing Gum, Inc., 539 A.2d 1060, 1063 (Del. Supr. 1988).

## II. FLOWSERVE'S MOTION IS NOT SUPPORTED BY THE CASE LAW

The cases Flowserve cites in its motion are generally taken out of context and, upon examination, do not support its argument. Chrysler Corp. v. Airtemp Corp., 426 A.2d 845 (Del. Super. 1980) involved a corporate restructuring in which Fedders purchased the assets of Chrysler's Airtemp Division. As part of the transaction, Fedders created an Airtemp subsidiary and transferred the Airtemp Division's assets to the newly formed subsidiary by means of an assignment contract executed by Chrysler. Id. at 847. In order to provide continuity during the transfer period, the contract provided that Chrysler would continue to render the same services to