Airtemp that it had rendered when Airtemp was its own Division, and that Fedders (not Airtemp) would pay Chrysler for the services. Id. After Chrysler rendered the services, Fedders failed to pay. Chrysler sued Fedders in New York and filed a separate suit against Airtemp in Delaware. Chrysler moved for partial summary judgment in Delaware. Airtemp moved to dismiss the Delaware action, and the Superior Court treated Airtemp's motion as a summary judgment motion.

Contrary to the assertions in Flowserve's motion, the Court's denial of summary judgment to Chrysler on its restitution claim did not turn on the fact that Airtemp was not a party to the contract between Chrysler and Fedders.

In its decision, the Court first took up the issue of whether a valid contractual obligation existed on the part of Airtemp to pay Chrysler's claim. Id. at 849. After a lengthy analysis, the Court determined that the issue could not be resolved on summary judgment. Id. at 853. The Court then went on to discuss Chrysler's claims based upon implied contract, and concluded that Chrysler could not recover under an implied contract theory, "in the absence of inability to recover under the underlying contract." Id. at 854.

Finally, the Court reviewed Chrysler's restitution claim. Chrysler's restitution theory was based upon Restatement of Restitution §40, which addresses the circumstances under which a party rendering services may recover from the party receiving them. Id. at 854-5. Here, Burns is not making a claim for services rendered to Flowserve, and Burns is not at this time moving for summary judgment on its restitution claims, as Chrysler did.

That fact aside, the Court concluded that restitution was not a proper remedy for Chrysler, at least on summary judgment, based on its reading of the specific provisions of the assignment agreement between Chrysler and Fedders. The Court found that although Airtemp

received the services, the express provisions of the agreement only required Fedders to pay for them. Id. at 855. Therefore, Chrysler did not provide anything under the contract that it was not obligated to provide and Airtemp did not receive anything it was not entitled to receive. Consequently, it could not be said that Airtemp was unjustly enriched.

It was the lack of unjust enrichment, not the lack of a contractual relationship between Airtemp and Chrysler, that controlled the issue. Indeed, the Court had already found that there was an enforceable contractual relationship between Airtemp and Chrysler in that Airtemp was a third party beneficiary to the contract. Id. at 852. However, the contract terms did not obligate Airtemp to pay for Chrysler's services. Fedders was the only party expressly obligated to pay Chrysler.

In its Counterclaim, Burns alleges that Flowserve has wrongfully received millions of dollars of insurance coverage that Flowserve was not entitled to receive. And Burns has lost the benefit of primary insurance coverage that would be available to pay the defense and indemnity for Burns' Underlying Asbestos Claims were it not for Flowserve's wrongful conduct. Burns also alleges that Flowserve had no right to access Burn's insurance coverage. This case is far removed from the dispute over contractual services at issue in the Chrysler case.

Flowserve argues that Burns has not personally given any benefits to Flowserve and thus has no standing to seek equitable restitution. Flowserve adds that it is the insurers for Borg-Warner/Burns that have bestowed the benefits of their insurance coverage on Flowserve, and cites the Court to Highlands Ins. Group, Inc. v. Halliburton Co., 852 A.2d 1 (Del.Ch. 2003).

Flowserve's argument completely ignores the allegations in Burns' Counterclaim which, for purposes of the pending motion to dismiss, must be accepted as true. Burns alleges that the wrongful conduct of Flowserve caused Burns' to mistakenly bestow the benefits of Burns'

insurance coverage on Flowserve. Although the insurers actually made the payments, the benefits of the insurance are the property of Burns. And as a consequence of the payments made on behalf of Flowserve, Burns finds itself a) without primary insurance coverage, and b) faced with assertions by excess insurers that they will not pay 100% of Burns' defense and indemnity, which Burns' primary insurers had been paying and would continue to pay if the coverage were not exhausted.

Just as Flowserve's argument is flawed, so to is its reliance on the <u>Highlands</u> case. Highlands was a captive insurer wholly owned by Halliburton that was spun off as a completely independent company. Following the spin-off, Highlands continued to pay a) asbestos claims made by KBR (a Halliburton subsidiary that originally formed Highlands) under certain "Fixed Cost Policies", and b) certain "Post-Spinoff Terminated Policy Payments". <u>Highlands</u> at 3. Highlands contended that Halliburton was obligated to reimburse it for the asbestos claims under a 1987 Retrospective Policy of insurance. In an earlier decision, the Chancery Court concluded that the spinoff terminated the "Fixed Cost Policies" and the Delaware Supreme Court affirmed that ruling. <u>Highlands</u> at 3- 6. Therefore, the issue pending before the Court of Chancery was whether there was some other basis for Halliburton to claim that Highlands was not entitled to reimbursement for the payments it made on asbestos claims.

The Court found that the Distribution Agreement and the Insurance Products Services Agreement that the parties entered into in connection with the spinoff did not obligate Highlands to pay the asbestos claims, and therefore Halliburton had to indemnify Highlands for any liabilities incurred on those claims. The case did not involve a dispute by two corporations over who had the rights to historical insurance coverage. And contrary to Flowserve's assertion, the Court's decision on restitution did not deal with Halliburton's asbestos claims at all, but rather

the second category of claims in dispute, namely, the "Post-Spinoff Terminated Policy Payments". Id. at 7–8.

Highlands has no direct bearing on this case, because there was no allegation that Halliburton's conduct in accepting insurance coverage wrongfully deprived coverage to any other insured. Indeed, the Court found that the policies at issue had been cancelled by the spinoff. What is noteworthy is Highlands' discussion of restitution, which makes clear that Delaware law no longer draws a distinction between mistakes of law and mistakes of fact in applying restitution. Id at 8-9. Thus, it would not matter if Burns permitted Flowserve to access its insurance coverage due to a mistake of law or fact, Burns is nevertheless entitled to restitution.

Home Insurance Co. v. Honaker, 480 A.2d 652 (Del.Supr. 1984), also cited by Flowserve, sheds no light on this dispute. Honaker involved a suit by an insurer to recover payments made to a policyholder under an auto policy based on a unilateral mistake by the insurer. There was no contention by an insured under the policy, in the same position as Burns, that the payments to Honaker exhausted its coverage.

## CONCLUSION

Flowserve seeks a dismissal of Burns' claims for restitution and unjust enrichment, even though Burns has a) pled more than sufficient facts in support of its claims, and b) alleged all of the elements under Delaware law needed to establish the claims. Flowserve's motion is based on a single argument, namely, that Burns has not paid any money out-of-pocket, and therefore has neither suffered a loss nor conferred a benefit. Flowserve's argument is wrong for several reasons. Burns has suffered the loss of insurance coverage, a valuable asset. Likewise, Burns has conferred a substantial benefit on Flowserve, by mistakenly allowing Flowserve to access its insurance coverage. Burns respectfully submits that the Court should reject Flowserve's argument and deny the motion to dismiss.

MURPHY SPADARO & LANDON

s/s Francis J. Murphy
Francis J. Murphy, I.D. # 223
1011 Centre Road, Suite 210
Wilmington, DE 19805
Office (302)472-8100
Fax    (302)472-8135
Email  fmurphy@msllaw.com

May 5, 2005

120168

19