others arising out of the manufacture and sale of asbestos containing products. All other allegations made in paragraph 32 not expressly admitted herein are denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Admitted that Burns was named as a defendant in the Powell litigation pending in Alameda County, California, and that the Powell plaintiff alleged products liability claims based upon alleged asbestos exposure resulting from his work with Byron Jackson industrial pumps. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 39 and therefore deny the same and demand strict proof thereof.

40. Admitted that Burns' counsel sent the letter attached to the Complaint as Exhibit E. The letter speaks for itself. All other allegations made in paragraph 40 not expressly admitted herein are denied.

41. Admitted that Burns' counsel received the letter dated September 13, 2004 attached to the Complaint as Exhibit F. The letter speaks for itself. All other allegations made in paragraph 41 not expressly admitted herein are denied.

42. Denied.

## COUNT I

43. Burns repeats its responses to paragraphs 1 through 42 above.

44. Denied.

45. Denied, except without admitting liability, admit that the amount in controversy exceeds the jurisdictional limits of this Court.

## COUNT II

46. Burns repeats its responses to paragraphs 1 through 45 above.

47. Denied.

48. Admitted that Burns contends it has no obligation to defend and indemnify Flowserve with respect to the Underlying Asbestos Claims. All other allegations made in paragraph 48 not expressly admitted herein are denied.

49. Denied.

50. Admitted only that a justiciable controversy exists. All other allegations made in paragraph 50 not expressly admitted herein are denied.

## COUNT III

51. Burns repeats its responses to paragraphs 1 through 50 above.

52. Denied.

53. Admitted that Burns is entitled to the rights and benefits of the indemnity provisions of the 1987 Stock Purchase Agreement and is responsible for Borg-Warner's contractual indemnity obligations, if any, under the 1987 Stock Purchase Agreement. All other allegations made in paragraph 53 not expressly admitted herein are denied.

54. Admitted on information and belief.

8

55. Admitted that Burns has tendered the Underlying Asbestos Claims which erroneously name Burns, to Flowserve for defense and indemnity. All other allegations made in paragraph 55 not expressly admitted herein are denied.

56. Denied.

57. Admitted that a justiciable controversy exists. All other allegations made in paragraph 57 not expressly admitted herein are denied.

## COUNT IV

58. Burns repeats its responses to paragraphs 1 through 57 above.

59. Denied.

60. Denied.

## SECOND DEFENSE

61. Borg-Warner has ceased to exist as an entity and is not a necessary or proper party defendant in this action.

## THIRD DEFENSE

62. Flowserve has breached its indemnity obligations under the 1987 Stock Purchase Agreement and thereby lost any benefit or any rights it may otherwise have had under such Agreement.

## FOURTH DEFENSE

63. Flowserve should be estopped from denying that it is responsible for Losses arising out of the Underlying Asbestos Claims after having sought and obtained to the detriment of Burns the continuing benefit of the insurance carried by Borg-Warner.

## FIFTH DEFENSE

64.     Flowserve has waived any alleged right or claim to indemnity under any other provisions of the 1987 Stock Purchase Agreement with respect to the Underlying Insurance Claims after having sought and obtained the continuing benefit of the insurance carried by Borg-Warner with respect to such Claims.

## BURNS' COUNTERCLAIMS

Defendant/Counter-plaintiff Burns International Services Corporation states as its Counterclaims against Plaintiff/Counter-defendant Flowserve Corporation as follows:

1.     Defendant/Counter-plaintiff Burns International Services Corporation ("Burns") is a corporation organized under the laws of the State of Delaware with its principal office located in the State of New Jersey.

2.     Plaintiff/Counter-defendant Flowserve Corporation ("Flowserve") is a corporation organized under the laws of the State of New York with its principal office located in Irving, Texas.

3.     Federal jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 in that Burns and Flowserve are incorporated and domiciled in different States and the matter in controversy exceeds the sum of $75,000.00, excluding interest and costs.

4.     Venue in this District is proper under 28 U.S.C. § 1391(a) in that at least one of the original defendants, Burns, is incorporated in Delaware.

5.     In 1987, pursuant to a Stock Purchase Agreement dated as of March 12, 1987 (the "1987 Stock Purchase Agreement"), BWIP Acquisition Corporation ("BWIP-AC"), purchased all of the stock (the "1987 Stock Sale") of Borg-Warner Corporation's ("Borg-Warner") wholly-

owned subsidiary Borg-Warner Industrial Products, Inc. ("BWIP"). A true copy of the 1987 Stock Purchase Agreement, without the exhibits, amendments or modifications, is attached to Flowserve's Complaint herein as Exhibit A and incorporated herein by reference.

6.  At the time the 1987 Stock Purchase Agreement was entered into, Borg-Warner, either directly or through BWIP, or wholly owned subsidiaries of BWIP, manufactured and sold Byron Jackson industrial pumps. As part of the 1987 Stock Sale, all of the Byron Jackson industrial pump business was transferred to BWIP, or subsidiaries of BWIP, and then the stock of BWIP was sold to BWIP-AC. Subsequent to the 1987 BWIP stock sale, BWIP, either directly or through its subsidiaries, continued to manufacture and sell Byron Jackson industrial pumps.

7.  Flowserve has alleged in this proceeding that, as the result of the certain merger transactions, Flowserve succeeded to the rights and obligations of BWIP-AC under the 1987 Stock Purchase Agreement. Burns lacks knowledge or information sufficient to form a belief as to the truth of those allegations but, for purposes of this Counterclaim, assumes the allegations to be true.

8.  Following the 1987 Stock Sale of BWIP to BWIP-AC, Borg-Warner was liquidated. As the result of transactions undertaken in connection with the liquidation of Borg-Warner, Burns now possesses the rights of Borg-Warner under the terms of the 1987 Stock Purchase Agreement, including the rights of Borg-Warner under the indemnity provisions.

9.  Section 9.04 of the 1987 Stock Purchase Agreement contains the indemnity provisions. Section 9.04(a) of the Agreement sets forth Borg-Warner's indemnity obligations to BWIP-AC and its subsidiaries. Section 9.04(b) sets forth BWIP-AC's indemnity obligations to Borg-Warner and its subsidiaries.

10. Section 9.04(b) of the Agreement provides:

"(b) The Buyer [BWIP-AC] shall defend, indemnify and hold harmless Borg-Warner and its subsidiaries from, and there shall be excluded from Borg-Warner's obligation to defend, indemnify and hold harmless under the preceding paragraph (a) of this Section 9.04, the following Losses (the "Specified Liabilities"):

\* \* \* \* \*

"(C) any product liability claim asserted after the Effective Date, whether based on theories of negligence, warranty or strict liability, arising from a product manufactured or sold by any of the businesses of the Divisions [including the Byron Jackson Division], whenever manufactured or sold, unless set forth in Schedule 4.15 or required to be disclosed in Schedule 4.15 and not so disclosed, provided, however, that BWIP or one of its Subsidiaries manufactures or holds out for sale such product or parts therefor as of the Effective Date;"

11. The indemnity obligation set forth in Section 9.04(b)(C) of the 1987 Stock Purchase Agreement, that requires BWIP-AC to indemnify Borg-Warner for products liability claims asserted after the Effective Date of the Agreement, is consistent with the indemnity obligation set forth in Section 9.04(a)(ii)(C) of the Agreement that requires Borg-Warner, subject to the provisions of Section 9.04(b) and (c), to indemnify BWIP-AC for products liability claims asserted prior to the Closing Date under the Agreement. These indemnity provisions reflect the parties' intent to transfer to BWIP-AC following the Closing full responsibility for all products liability claims asserted after the Effective Date of the 1987 Stock Sale arising from products manufactured by the businesses being sold.

12