2001 WL 1641744, Tenneco Automotive Inc. v. El Paso Corp.,, (Del.Ch. 2001)          Page 6

any allegation in the Complaint to the effect that Plaintiffs have any pending claims for coverage under the policies that may have been released by the Settlement Agreement. According to Defendants, the policies are for excess coverage and, thus, Plaintiffs may never seek to invoke this coverage. Defendants, accordingly, argue that, because there is no current dispute as to coverage, judicial consideration of the rights and actions of El Paso and Plaintiffs under the Insurance Agreement and the rights and duties of El Paso, the London Insurers and Plaintiffs under the policies and under or as a result of the Settlement Agreement should all await a concrete, fact specific coverage dispute regarding a well-defined coverage claim from Plaintiffs.

Any inquiry into whether Plaintiffs claims are ripe must begin with *Union Texas Petroleum Holdings, Inc. v. The Travelers Indemnity Company.* (FN15) Union Texas (including its affiliates) had been a subsidiary of Allied-Signal, Inc. ("Allied-Signal") which had been insured by The Travelers Indemnity Company ("Travelers"). Allied-Signal and Union Texas had entered into an agreement regarding their rights under certain of the Travelers' policies at the time Allied-Signal divested part of its interest in Union Texas. Several years later, Allied-Signal and Travelers entered into a Settlement Agreement that resolved a lengthy coverage dispute over environmental claims and that exhausted the Travelers' policies to which Union Texas claimed rights. While the background allegations in *Union Texas* are very similar to the assertions made here by Plaintiffs, the Defendants point out several differences. First, the Plaintiffs in *Union Texas* alleged that they had already incurred costs; second, that they had asked Travelers to pay those costs; and third, that Travelers had refused to pay the costs based on its Settlement Agreement with Allied-Signal.

**7 Here, there are no allegations that costs have been incurred on any claim by any of the Plaintiffs that may have arisen under the policies issued by the London Insurers and that have been rejected by the London Insurers. I concur with Defendants that the plaintiffs in *Union Texas* made a more compelling showing of the ripeness of their claims than have the Plaintiffs. That observation, however, does not compel the conclusion that *Union Texas* requires dismissal of Plaintiffs claims because of the absence of a justiciable controversy. Plaintiffs seek, *inter alia,* a determination of their risk position: in essence, an answer to the question of whether they have any coverage under the polices subject to the Insurance Agreement and issued by the London Insurers. They allege that the Settlement Agreement between El Paso and the London Insurers deprived them of the rights existing under both the policies and the Insurance Agreement. As the Chancellor observed in *Union Texas:*

Plaintiffs have a very real and obvious interest in knowing whether the Settlement Agreement has altered or terminated altogether their pre-1985 coverage under the Travelers policies. In their current position, plaintiffs remain exposed to the risk of additional defense costs and damages, both with respect to this action and other potential actions. Thus I find that plaintiffs' claims are ripe for adjudication and decline to dismiss them on this ground. (FN16)

Defendants also support their contention by citing *Allstate Ins. Co. v. Spinelli* (FN17) and *Harper v. State Farm Mutual Automobile Ins. Co.,* (FN18) which generally stand for the proposition that an allegation of a breach of an insurance policy, such as a refusal by the carrier to pay for a covered loss, is a necessary predicate for a suit on an insurance policy. Something more than the failure of an insurance company to pay a claim, however, is at work in this case. By the allegations of the Complaint, the insurance companies and a third party (El Paso) with rights under the same policies have agreed that no coverage will be available to Plaintiffs in the future under the policies. Moreover, rights under the Insurance Agreement, such as entitlement to replacement coverage, are also alleged. Thus, the Plaintiffs have brought an action which seeks more than an academic analysis of whether some hypothetical claim might be entitled to coverage in the future. Instead, they are seeking a determination as to whether they have any rights under the London Insurers' policies, what, in this context, rights they may have under the Insurance Agreement, and the effect, if any, of the Settlement Agreement on their rights to coverage by the London Insurers.

In sum, I am satisfied that the Plaintiffs' need for a timely resolution of the claims which they seek to assert in this action outweighs considerations of judicial economy and restraint. (FN19) Thus, when a practical and common sense view is taken of the

© 2005 Thomson/West. No claim to original U.S. Govt. works.

2001 WL 1641744, Tenneco Automotive Inc. v. El Paso Corp.,, (Del.Ch. 2001)                                      Page 7

allegations in the Complaint, the Plaintiffs have tendered claims which are ready for judicial consideration and, thus, are ripe. Accordingly, I deny Defendants' motion to dismiss the Complaint on ripeness grounds.

B. *El Paso's Right to Settle Claims Arising under the London Insurers' Policies.*

**\*\*8** El Paso is the named insured on the London Insurers' policies. (FN20) The Insurance Agreement authorizes El Paso to make claims under the policies. El Paso argues that its right to seek coverage under the policies necessarily includes the right to settle, exhaust and release the policies regardless of Plaintiffs' rights, as "Covered Persons" under the Insurance Agreement, to seek coverage under the policies. In essence, El Paso has contended that whoever wins the race to coverage from, and settlement with, the London Insurers must prevail. (FN21) Thus, according to El Paso, the Complaint must be dismissed under Court of Chancery Rule 12(b)(6), at least in part, because El Paso did nothing more than what was contemplated and allowed by the Insurance Agreement.

The broad question, accordingly, is whether El Paso, under the policies and the Insurance Agreement, had the right to release the London Insurers of their duties under the policies--duties owed not only to El Paso, but also to Plaintiffs. Two subordinate questions also arise. First, can El Paso release or "exhaust" the Exhaustible Limits policies (or as to specific occurrences under the Non-Exhaustible Limits policies for which a claim has been tendered) by agreeing to accept less than full policy limits? Second, can El Paso release or "exhaust" the Non-Exhaustible Limit policies as to occurrences, known or unknown, but for which no claim has been asserted or covered?

The answers to these questions must first be sought in the terms of the Insurance Agreement. The construction of a contract, in this case, the Insurance Agreement, initially presents a question of law. (FN22) Absent ambiguity in the terms of an agreement, the Court may proceed to interpret and construe the agreement without consideration of extrinsic evidence. (FN23) Thus, I now turn to the Insurance Agreement.

Under the Insurance Agreement, any "Covered Person," a term that included Old Tenneco and Plaintiffs, (FN24) "may claim for such insurance as and to the extent that such insurance is available up to the full extent of the applicable limits of liability under such [policies]." (FN25) Accordingly, El Paso had the right, as did Plaintiffs, to assert claims against the London Insurers "up to the full extent" of the available coverage. If it obtained the "full extent" of the coverage, then the London Insurers' obligation under the policy would be "exhausted," the London Insurers could reasonably extract a release from El Paso, and the Plaintiffs, as envisioned by the Insurance Agreement, would, because El Paso won the race, be left with no further rights under the subject policy.

The crux of the Complaint, however, is that El Paso purported to release the London Insurers without having obtained the "full extent" of the available coverage and, thus, in order to obtain the payment from the London Insurers that it did receive, El Paso necessarily bargained away Plaintiffs' rights under the policies to the remaining or additional coverage. For the Exhaustible Limits policies, that difference between the amount paid and the policy limits would have been sacrificed. For the Non-Exhaustible Limit policies, either the difference between the amount paid and the limits for the particular occurrence or the occurrence-based limits for occurrences not yet subject to claim would have been sacrificed.

**\*\*9** Plaintiffs view El Paso's efforts to compromise El Paso's claims against the London Insurers by offering up rights that might otherwise have accrued to Plaintiffs as conduct by El Paso that impaired their rights under the Insurance Agreement. Plaintiffs find support for their position in Section 8.3 of the Insurance Agreement, which provides that no party to the Insurance Agreement shall "take any action or permit any inaction that could reasonably be expected to jeopardize or otherwise interfere with the rights of any other party [under the Insurance Agreement] or the ability of any other party ... to collect any proceeds which might be available under any of the Policies addressed [in the Insurance Agreement]." Plaintiffs also, in substance, contend that even without considering the terms of Section 8.3, the Insurance Agreement precludes or does not authorize the efforts of El Paso to release the London Insurers. I will consider the parties' arguments as they apply, first, to the policies Plaintiffs have characterized as Exhaustible Limits policies and, second, to the

© 2005 Thomson/West. No claim to original U.S. Govt. works.

2001 WL 1641744, Tenneco Automotive Inc. v. El Paso Corp.,, (Del.Ch. 2001)      **Page 8**

policies referred to as Non-Exhaustible Limit policies.

Plaintiffs argue that El Paso could not release or exhaust an Exhaustible Limits policy unless it collected all funds that could have been paid up to the limits of the subject policy. I disagree. Plaintiffs' position would preclude any compromise of disputes between the insured and the insurer over coverage. The right to assert and pursue a claim necessarily includes the right to undertake reasonable efforts to settle the claim. I do not read Section 8.3 of the Insurance Agreement as requiring a contrary view. By compromising a claim under an Exhaustible Limits policy, El Paso has denied itself and the Plaintiffs the opportunity to collect on the balance of the limits of the particular policy. That is not, however, an act that "jeopardize[d] or otherwise interfere[d] with the rights of [Plaintiffs]" because those rights were subject to the express and specific terms of Section 3.2 of the Insurance Agreement which allowed El Paso to pursue its claims to coverage. In some sense, any collection by El Paso against a policy limit could be deemed to have "interfered" with the rights of Plaintiffs. Such an interpretation cannot be justified under the terms of language of the Insurance Agreement.

I also note that Plaintiffs' contention that El Paso could not compromise its claims under an Exhaustible Limits policy is inconsistent with our general policies favoring and encouraging settlement. (FN26) In *Stargatt v. Fidelity & Casualty Co. of New York,* (FN27) the Court rejected an argument that "exhaustion" can only occur when "policy limits have been actually paid" because "[t]o require an absolute collection of the primary insurance to its full limits would in many, if not most, cases involve delay, promote litigation, and prevent an adjustment of disputes which is both convenient and commendable." (FN28)

**\*\*10** Accordingly, I conclude that, under the policies and the Insurance Agreement, El Paso had the authority to exhaust and, thus, to release the London Insurers from liability on specific policies under which claims were paid without having received payment of the policy limits set forth in the specific policy. (FN29) Defendants are, thus, entitled to dismissal of this portion of Plaintiffs' claim.

In contrast, El Paso's rights to release or settle the Non-Exhaustible Limits policies cannot be determined through a construction of the Insurance Agreement on a motion to dismiss. The Insurance Agreement authorizes El Paso (and, for that matter, Plaintiffs) to make claims "to the full extent of the *applicable limits*." (FN30) With respect to the Non-Exhaustible Limits policies, which may have limits as to specific occurrences but have no limits as to the number of separate occurrences, the Insurance Agreement does not unambiguously resolve how to address those aspects of coverage to which the concept of "applicable limits" may have no immediate application. Perhaps the Insurance Agreement can be read as silent on the issue with the determining factor being simply who is the named insured. That view, however, may be inconsistent with Plaintiffs' status as "Covered Persons" under the Insurance Agreement and the Insurance Agreement's intended broad coverage. The analysis is further confused by the Insurance Agreement's treatment of replacement obligations which are imposed "with respect to the portions of *limits of liability* [under the policy exhausted by a Covered Person]." (FN31) Perhaps this suggests that, if there were no applicable limits, the rights under a policy could be adversely affected in the absence of a limit controlling the specific claim. Or, it might suggest that there is no duty to obtain replacement coverage except for coverage governed by specific limits. Again, that might be perceived as inconsistent with the broad intent of the Insurance Agreement. Other, and perhaps better, constructions of Section 3.2(d) may be possible. For present purposes, however, the critical language is ambiguous and the facts as alleged by the Plaintiffs in their Complaint do not allow me to construe the Insurance Agreement against them. Accordingly, Defendants are not entitled to dismissal on these grounds. (FN32)

C. *Plaintiffs' Right to Prompt Notice of Potential Impairment.*

Defendants next contest the sufficiency under Court of Chancery Rule 12(b)(6) of Plaintiffs' allegations that El Paso breached its duties under the notice provision of the Insurance Agreement. Defendants rely on their February 12, 2001 letter for the assertion that their actions comported with the relevant requirements of Section 3.2(d).

Section 3.2(d) of the Insurance Agreement provides that in the event an "Impairing Party," here El Paso,

© 2005 Thomson/West. No claim to original U.S. Govt. works.