2001 WL 1641744, Tenneco Automotive Inc. v. El Paso Corp.,, (Del.Ch. 2001) **Page 9**

learns of:

a claim or potential claim against any of such Impairing Party's respective Covered Persons which claim is reasonably likely to exhaust (but has not yet exhausted) all or any portion of the aggregate limits of liability ... such Impairing Party shall promptly provide notice of such Potential Impairment to the other parties hereto.

**11.** Plaintiffs assert that El Paso filed suit against the London Insurers and other insurance companies in November of 1997 and El Paso and the London Insurers entered into the Settlement Agreement in December of 2000. Plaintiffs were first given notice of the potential impairment in the February 12, 2001 letter. Plaintiffs' contend that the February letter constituted insufficient notice under Section 3.2(d) because by the time it was received, the impairment was no longer potential and, therefore, was necessarily not provided promptly. These allegations more than suffice for meeting Plaintiffs' burden of going forward. Accordingly, Defendants' motion to dismiss on this ground is denied.

D. *Plaintiffs' Rights to Replacement Coverage and/or Compensation under the Insurance Agreement.*

I similarly find that Plaintiffs' allegations that El Paso breached the Agreement's reimbursement and replacement provisions are adequate at this stage to withstand Defendants' motion to dismiss. Defendants urge this Court to find that their offer of a cash payment exceeds the Agreement's cap of 350% of the original premiums paid with respect to the limits of liability being exhausted. Plaintiffs' argue that Defendants' offer is "substantially less" than the 350% requirement mandated by the terms of the Agreement. Moreover, Plaintiffs' allege in their complaint that the payment proffered by El Paso in its February 12, 2001 letter was not calculated based on the original premiums and was therefore a "straightforward breach" of its obligations under the Agreement. Plaintiffs have alleged, in a manner sufficient to withstand a motion to dismiss, that El Paso's duties under the Insurance Agreement to replace or reinstate coverage or to compensate Plaintiffs otherwise has been triggered by El Paso's actions, and that El Paso's offer as set forth in its February 12, 2001 letter does not satisfy the requirements of the Insurance Agreement. Perhaps El Paso's offer was, in fact, generous or, as may be the case, replacement is not possible, but

these issues cannot be resolved on a motion to dismiss. Accordingly, El Paso's motion to dismiss Plaintiffs' claims under the replacement or reinstatement provision of the Insurance Agreement must be denied.

VI. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted as to Plaintiffs' claim that El Paso could not exhaust, and release the London Insurers from liability under, specific policies for which claims were paid. Otherwise, the motion to dismiss is denied.

IT IS SO ORDERED.

(FN1.) Defendants El Paso Corporation, EPNG and Old Tenneco are collectively referred to as "El Paso."

(FN2.) The Insurance Agreement ("Ins.Agr."), dated December 11, 1996, is attached to the Verified Complaint ("Complaint") as Ex. A.

(FN3.) The facts are taken from the well-pled allegations of the Complaint.

(FN4.) In November 1999, New Tenneco, now known as Tenneco Automotive Inc., spun off its packaging business through the corporate entity known as Pactiv.

(FN5.) For convenience, I use the labels "Exhaustible Limits" and "Non-Exhaustible Limits," as first proposed by Plaintiffs, with the understanding that they have a "rabbit in the hat" quality about them.

(FN6.) Section 3.2 carries the heading "Coverage Under Occurrence-Based Policies," which, of course, is only for convenience and "do[es] not constitute a part of [the Insurance] Agreement." Ins. Agr. § 8.9. "Termination Time" is defined as the time when the subject policy is cancelled with respect to a particular Covered Person and is based essentially upon the status of the corporate reorganization. *Id.* § 1.1. The net effect of the definition of "Covered Persons" is that the term includes Old Tenneco, New Tenneco and Shipbuilding, and their respective historical affiliates.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

2001 WL 1641744, Tenneco Automotive Inc. v. El Paso Corp.,, (Del.Ch. 2001)    Page 10

(FN7.) This agreement (the "Settlement Agreement") is described generally in the Complaint, but it was neither attached to, nor incorporated into, the Complaint, apparently because the Plaintiffs had not then received a copy.

(FN8.) Plaintiffs' Br. in Opposition at 12.

(FN9.) *McMullin v. Beran*, Del.Supr., 765 A.2d 913, 916 (2000) (quoting *In re Tri-Star Pictures, Inc. Litig.*, Del.Supr., 634 A .2d 319, 326 (1993)).

(FN10.) See *Anonymous v. State*, Del. Ch., C.A. No. 17453, mem. op. at 18, Strine, V.C. (May 10, 2000); *Scattered Corp. v. Chicago Stock Exch., Inc.*, Del. Ch., 671 A.2d 874, 877 (1994); see also *Shevock v. Orchard Homeowners' Ass'n, Inc.*, Del.Supr., 621 A.2d 346, 349 n. 1 (1993).

(FN11.) 10 *Del. C.* Ch. 65. "Any person interested under a ... written contract ... may have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status or other legal relations thereunder." 10 *Del. C.* § 6502. The Declaratory Judgment Act, of course, does not expand this Court's subject matter jurisdiction. *Heathergreen Commons Condo. Ass'n v. Paul*, Del. Ch., 503 A.2d 636, 642 (1985). It should also be noted that the Defendants do not dispute that this action, if properly brought at all, is appropriately brought in a court of equity.

(FN12.) *Stroud v. Milliken Enters., Inc.*, Del.Supr., 552 A.2d 476, 479-80 (1989) (quoting *Rollins Int'l, Inc. v. Int'l Hydronics Corp.*, Del.Supr., 303 A.2d 660, 662-63 (1973)).

(FN13.) *Schick Inc. v. Amalgamated Clothing and Textile Workers Union*, Del. Ch., 533 A.2d 1235, 1239 (1987).

(FN14.) *Shevock v. Orchard Homeowners Ass'n, Inc.*, 621 A.2d at 349.

**11** (FN15.) Del. Ch., C.A. No. 15448, mem. op., Chandler, C. (Feb. 19, 1998).

(FN16.) *Id.* at 12-13.

(FN17.) Del.Supr., 443 A.2d 1286 (1982).

(FN18.) Del.Supr., 703 A.2d 136 (1997).

(FN19.) See *Hoechst-Celanese Corp. v. Nat'l Union Ins. Co.*, Del.Super., 623 A.2d 1133, 1137 (1992); *Union Texas*, mem. op. at 10.

(FN20.) Defendant El Paso Tennessee Pipeline Co., or Old Tenneco, is the surviving corporate entity from the 1996 corporate reorganization.

(FN21.) Tr. of Oral Arg. at 37-38.

(FN22.) *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, Del.Supr., 616 A.2d 1192, 1195 (1992).

(FN23.) *Eon Labs. Mfg., Inc. v. Reliance Ins. Co.*, Del.Supr., 756 A.2d 889, 894 n. 25 (2000).

(FN24.) Defendants argue that Pactiv's claims should be dismissed because it did not exist when the Insurance Agreement was executed and, thus, has no standing to assert claims under the Insurance Agreement. For purposes of this motion to dismiss, I deny that application. The rights to coverage under the Insurance Agreement were for the benefit of Old Tenneco, New Tenneco and Shipbuilding, "as well as their respective "Covered Persons." Ins. Agr. § 8.12. See *supra*, note 6. When the Insurance Agreement was executed, Pactiv was a subsidiary of New Tenneco, and, thus, as a "Covered Person" has standing to enforce whatever coverage rights it may have. See also Ins. Agr. § 1.1. The terms of the Insurance Agreement may be considered on a motion under Court of Chancery Rule 12(b)(6) because the agreement was attached to and incorporated into the Complaint. See *Malpiede v. Townson*, Del.Supr., 780 A.2d 1075, 1083 (2001).

(FN25.) Ins. Agr. § 3.2(d).

(FN26.) See, e.g., *Nationwide Mut. Ins. Co. v. Nacchia*, Del.Supr., 628 A.2d 48, 53 n. 5 (1993).

(FN27.) 67 F.R.D. 689 (D.Del.1975), *aff'd*, 578 F.2d 1375 (3d Cir.1978).

(FN28.) *Id.* at 690.

(FN29.) This does not resolve the question, if this proceeding poses such question, of El Paso's right to release Exhaustible Limits polices which were not compromised as the result of specific claims.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

2001 WL 1641744, Tenneco Automotive Inc. v. El Paso Corp.,, (Del.Ch. 2001)                                Page 11

Whether there are such policies is not clear from the Complaint, but I note the possibility because of the broad definition of covered policies alleged in the Complaint. If there are such policies, I would view them as governed by the principles of my analysis of El Paso's rights with respect to the Non-Exclusive limits policies.

(FN30.) Ins. Agr. § 3.2(d) (emphasis added).

(FN31.) *Id.* (emphasis added).

(FN32.) Defendants also contend that the Plaintiffs' fiduciary duty claims (Complaint, ¶ ¶ 75-79) should be dismissed because El Paso owed no fiduciary duty to Plaintiffs. I consider Plaintiffs' breach of fiduciary duty claims as tendered in anticipation of an argument, such as the one asserted in *Union Texas,* that El Paso had authority to act on behalf of Plaintiffs. *See Union Texas,* mem. op. at 7. If El Paso does not assert, as it has indicated that it will not, that its actions were authorized under an agency (or comparable) relationship, then it would seem that there is no basis for Plaintiffs' anticipatory allegations. However, that resolution must await the presentation of El Paso's formal position.

© 2005 Thomson/West. No claim to original U.S. Govt. works.