12. Subsequent to the Closing, numerous asbestos-related product liability lawsuits arising out of the manufacture and sale of Byron Jackson industrial pumps were filed in various jurisdictions throughout the United States (the "Underlying Asbestos Claims ").

13. To date, the Underlying Asbestos Claims have been tendered to insurance carriers providing products liability coverage under insurance policies carried by Borg-Warner. Until recently, these insurers on information and belief have been providing a complete defense and full indemnity for the Underlying Asbestos Claims.

14. Within the past year, however, insurers under certain primary insurance policies carried by Borg-Warner announced that their limits of liability had been exhausted and that they will no longer pay for the defense or indemnity of the Underlying Insurance Claims under theses primary policies. Certain umbrella insurance carriers providing excess coverage under policies carried by Borg-Warner have indicated that they will pay a portion of the continuing defense and indemnity expenses but these insurers have not agreed to pay and have not paid 100% of those expenses.

15. Recently, in connection with one of the Underlying Asbestos Claims in which Burns was named as a defendant, Burns was advised that the insurance carriers that had been providing the defense and indemnity for the claim would not pay 100% of the defense and indemnity costs associated with the claim or any other Underlying Asbestos Claims. Immediately upon learning that 100% of the defense and indemnity would not be paid by the insurance carriers, Burns made a demand upon Flowserve for defense and indemnity under the terms of the 1987 Stock Purchase Agreement. A copy of Burns' demand letter is attached to Flowserve's Complaint herein as Exhibit E and is incorporated by reference. Flowserve denied it

had any obligation under the Agreement to provide such defense or indemnity and refused Burn's demand. A copy of Flowserve's denial of responsibility is attached to Flowserve's Complaint herein as Exhibit F and incorporated herein by reference.

**COUNT I**
**ACTION FOR DECLARATORY JUDGMENT**
<u>**REGARDING FLOWSERVE'S INDEMNITY OBLIGATIONS TO BURNS**</u>

16. Burns incorporates and re-alleges paragraphs 1 through 15 above as paragraphs 1 through 16 of this Count I.

17. An actual controversy exists between the parties concerning Flowserve's indemnity obligations to Burns under the 1987 Stock Purchase Agreement.

Wherefore, Defendant/Counter-plaintiff Burns International Services Corporation prays that a declaratory judgment be entered in its favor and against Plaintiff/Counter-defendant Flowserve Corporation and that the Court:

(a) Declare that Flowserve is obligated to defend and indemnify Burns pursuant to Section 9.04(b) of the 1987 Stock Purchase Agreement for all products liability claims asserted after December 31, 1986, the "Effective Date" under the 1987 Stock Purchase Agreement, arising from products manufactured or sold by businesses acquired pursuant to such Agreement, including but not limited to the Underlying Asbestos Claims and all other asbestos-related products liability claims arising out of the manufacture or sale of any Byron Jackson industrial pumps;

(b) Declare that Flowserve has breached its indemnity obligations to Burns under the terms of the 1987 Stock Purchase Agreement and thereby lost any benefit or any rights it may otherwise have had under the Agreement;

(c) Dismiss, with prejudice, all claims alleged by Flowserve in its Complaint herein and enter judgment in favor of Burns and against Flowserve on all such claims;

(d) Award Burns its costs of suit, including reasonable attorney's fees; and

(e) Grant such other or further relief as the Court deems just.

### COUNT II
### ACTION FOR BREACH OF CONTRACT ARISING OUT OF FLOWSERVE'S BREACH OF ITS INDEMNITY OBLIGATIONS TO BURNS

18. Burns incorporates and re-alleges paragraphs 1 through 15 above as paragraph 18 of this Count II

19. Burns has fully performed all of its obligations under the terms of the 1987 Stock Purchase Agreement.

20. Flowserve has breached the Agreement by failing and refusing to perform its indemnity obligations under the Agreement after Burns made a timely demand that it do so.

21. As a direct and proximate result of Flowserve's breach of the 1987 Stock Purchase Agreement, Burns has been damaged and will continue to be damaged.

Wherefore, Defendant/Counter-plaintiff Burns International Services Corporation prays that judgment be entered in its favor and against Plaintiff/Counter-defendant Flowserve Corporation and that it be awarded:

(a) Compensatory damages in an amount shown by the proofs to have been caused by Flowserve's failure to provide a defense and indemnity in each of the Underlying Asbestos Claims where Burns has been named as a defendant,

(b) Its costs of suit, including reasonable attorneys' fees, and

(c) Such further and other relief as the Court deems just.

15

## COUNT III
## ACTION FOR DECLARATORY JUDGMENT
## REGARDING MAY 1, 1987 LETTER

22. Burns incorporates and re-alleges paragraphs 1 through 15 above as paragraph 22 of this Count III.

23. On or about May 1, 1987, BWIP-AC sent to Borg-Warner a letter concerning the Agreement and specifically BWIP's and its subsidiaries responsibility for "Losses" which are defined in the Agreement as "claims, actions, causes of action, liabilities, losses, damages, and reasonable out-of-pocket expenses and costs." The May 1, 1987 letter provides in part:

> The purpose of this letter is to document our mutual agreement that, notwithstanding anything to the contrary contained in the Agreement, neither BWIP nor any of its Subsidiaries shall not be responsible for any Losses *to the extent that such Losses are covered by insurance carried by Borg-Warner*."

(emphasis added) The May 1, 1987 letter was acknowledged and agreed to by a representative of Borg-Warner. A copy of the May 1, 1987 letter is attached to Flowserve's Complaint herein as Exhibit B and is incorporated herein by reference.

24. Since the Closing under the 1987 Stock Purchase Agreement, Flowserve has repeatedly and consistently asserted that the defense and indemnity of the Underlying Asbestos Claims was to be provided by available insurance carried by Borg-Warner pursuant to the terms of the May 1, 1987 letter. For example, see the August 18, 2003 letter from Flowserve to counsel for Burns attached hereto as Exhibit A.

25. Burns, under a reservation of rights, has allowed Flowserve to access and obtain the benefits of the insurance carried by Borg-Warner for the defense and indemnity of the