# EXHIBIT B

00071306.DOC

2001 WL 1641744, Tenneco Automotive Inc. v. El Paso Corp.,, (Del.Ch. 2001)      Page 1

**\*1641744**    Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.

**TENNECO AUTOMOTIVE INC.**, a Delaware corporation, **Newport News Shipbuilding Inc.**, a Delaware corporation, and **Pactiv Corporation**, a Delaware corporation, Plaintiffs,
v.
**EL PASO CORPORATION**, a Delaware corporation **El Paso Natural Gas Company**, a Delaware corporation, **El Paso Tennessee Pipeline Co.**, a Delaware corporation, and **Certain Underwriters at Lloyd's, London and London Market Insurance Companies**, foreign corporations, Defendants.

No. Civ.A. 18810-NC.
Submitted Sept. 9, 2001.

Decided Nov. 29, 2001.

Allen M. Terrell, Jr., and Dominick T. Gattuso, of Richards, Layton & Finger, P.A., Wilmington, Delaware, and Steven R. Gilford, and Michael J. Gill, of Mayer, Brown & Platt, Chicago, Illinois, for Plaintiffs Tenneco Automotive Inc. and Pactiv Corporation.

William M. Lafferty, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, and Edward A. Friedman, Robert S. Loigman, and Michael A. Berg, of Friedman, Kaplan, Seiler and Adelman LLP, New York, New York, for Plaintiff Newport News Shipbuilding Inc.

Robert K. Payson, Gregory A. Inskip, and Stephen C. Norman, of Potter, Anderson & Corroon, Wilmington, Delaware; Zevnik Horton LLP, Washington, D.C., for Defendants El Paso Corporation, El Paso Natural Gas Company and El Paso Tennessee Pipeline Co., of counsel.

Francis J. Murphy, Jr., of Murphy, Spadaro & Landon, Wilmington, Delaware, for Defendants Certain Underwriters at Lloyd's, London and London Market Insurance Companies.

MEMORANDUM OPINION

NOBLE, Vice Chancellor.

## I. INTRODUCTION

**\*\*1** The restructuring of a diversified industrial company into independent business entities can present thorny issues regarding historical insurance coverage. The former Tenneco Inc. spun off its shipbuilding business in the form of Plaintiff Newport News Shipbuilding, Inc. ("Shipbuilding") and its automotive and packaging operations in the form of New Tenneco, Inc., now Plaintiff Tenneco Automotive Inc. ("Automotive"), which thereafter spun off the packaging business in the form of Plaintiff Pactiv Corporation ("Pactiv"). The surviving and remaining business of the former Tenneco Inc., essentially its natural gas production and transmission business, was acquired by Defendant El Paso Corporation when a subsidiary of its subsidiary, Defendant El Paso Natural Gas Company ("EPNG"), merged with the former Tenneco Inc. leaving El Paso Tennessee Gas Pipeline Co. ("Old Tenneco") as the surviving entity. (FN1)

The allocation of rights among Automotive, Shipbuilding and Old Tenneco as to the historical insurance coverage acquired by the former Tenneco Inc. and its operating subsidiaries was accomplished through the Insurance Agreement. (FN2) Among Old Tenneco's insurers were Defendants Certain Underwriters at Lloyd's, London and London Market Insurance Companies (collectively, the "London Insurers"). Old Tenneco sought to resolve certain insurance coverage disputes with the London Insurers by releasing not only its rights under certain policies issued by the London Insurers to Old Tenneco or its various entities, but also by purporting to release the rights of the Plaintiffs to coverage under the same policies.

Plaintiffs now pursue this action to obtain a determination, *inter alia*, (1) that Old Tenneco lacked the authority to release any of their rights under the policies, (2) that Old Tenneco failed to satisfy certain notice requirements imposed by the Insurance Agreement, (3) that Old Tenneco otherwise breached the Insurance Agreement when it failed to reinstate or replace the insurance coverage and when it failed, if such coverage was not available, to purchase such insurance coverage as

© 2005 Thomson/West. No claim to original U.S. Govt. works.

could be obtained with the expenditure of 350% of the original premiums for the lost coverage, and (4) that they continue to enjoy coverage rights under the policies issued by the London Insurers. The Defendants have moved to dismiss. In this memorandum opinion, I conclude, contrary to the arguments of the Defendants, that the Complaint presents issues that are "ripe" for judicial consideration and that, with the exception of one claim, I cannot dismiss the Complaint for failure to state a claim upon which relief can be granted.

## II. BACKGROUND (FN3)

Tenneco Inc., until 1996, engaged in several businesses: natural gas exploration and distribution; shipbuilding; automotive products; and packaging. It then entered into a merger agreement which provided for the acquisition of its natural gas business by a subsidiary of Defendant El Paso Corporation. In order to consummate the merger, Tenneco Inc. first had to divest itself of its other lines of business. Thus, in December 1996, it spun off to its shareholders Shipbuilding and New Tenneco, which, at the time, included both the automotive and packaging enterprises. Tenneco Inc. then merged with a subsidiary of Defendant EPNG and the surviving corporate entity ("Old Tenneco") is now known as Defendant Tennessee Old Paso Pipeline Company. (FN4)

**2 Old Tenneco, New Tenneco and Shipbuilding addressed the complex questions of entitlement to coverage under Old Tenneco's historical insurance policies through the Insurance Agreement which they entered on December 11, 1996.

Among the policies covered by the Insurance Agreement were policies issued between 1965 and 1993 to Old Tenneco or its constituent entities by the London Insurers. These policies provided excess (i.e., not primary) coverage on an occurrence (i.e., not claims made) basis.

For present purposes, the London Insurers' policies fall into two categories: (i) those with per occurrence and aggregate limits ("Exhaustible Limits"), typically for products liability coverage; and (ii) those with only per occurrence limits and no aggregate limits or limits as to the number of claims that could be asserted during the specific policy term ("Non-Exhaustible Limits"), typically for general liability coverage. (FN5)

Although the Insurance Agreement recognizes that Old Tenneco is the named insured on the London Insurers' historical policies, Old Tenneco, New Tenneco and Shipbuilding, by Section 3.2(c) of the Insurance Agreement, are accorded:

... the right to coverage and to make or pursue a claim for coverage under such Occurrence-Based Policy with respect to all claims, suits, actions, proceedings, injuries, losses, liabilities, occurrences, damages and expenses incurred or claimed to have been incurred prior to such Termination Time by such Covered Person in or in connection with the operation of, or otherwise related to, [their respective lines of business]. (FN6)

The drafters of the Insurance Agreement recognized that the parties to the Insurance Agreement might compete for coverage under the same policy. Thus, the parties agreed to Section 3.2(d), which provides in pertinent part:

*Policy Limits*. [Old Tenneco, New Tenneco, or Shipbuilding as any of them may be] entitled hereunder to make or pursue a claim for insurance coverage under an Occurrence-Based Policy may claim for such insurance as and to the extent that such insurance is available up to the full extent of the applicable limits of liability under such Occurrence-Based Policy. Notwithstanding the foregoing, each of [Old Tenneco, New Tenneco, and Shipbuilding] shall, to the extent any of its respective Covered Persons shall have exhausted all or any portion of the limits of liability, if any, under any Occurrence-Based Policy, use its best efforts to either (i) obtain and comply in full with the conditions required to effect the reinstatement of the full limits of liability under such Occurrence-Based Policy for all claims which would be covered thereby absent such exhaustion (including any pending or known claims) and be responsible for and pay all costs and expenses, including the amount of any resultant increase in the premium charged in respect of such Occurrence-Based Policy or any renewal thereof, in connection therewith, or (ii) obtain and maintain in full force and effect a Policy in replacement of the limits of liability exhausted under such Occurrence-Based Policy for all claims which would be covered thereby absent such exhaustion (including any pending or known claims), and be responsible for

© 2005 Thomson/West. No claim to original U.S. Govt. works.