# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

FLOWSERVE CORPORATION,

               Plaintiff,

        v.

BURNS INTERNATIONAL SERVICES
CORPORATION and BORG-WARNER
CORPORATION,

               Defendants.

_____

C.A. No.:  04-1294 JJF

**DEFENDANT/COUNTERCLAIMANT BURNS INTERNATIONAL SERVICES
CORPORATION'S ANSWERING BRIEF IN OPPOSITION TO MOTION TO
DISMISS OF PLAINTIFF/COUNTER-DEFENDANT FLOWSERVE
CORPORATION**

MURPHY SPADARO & LANDON
Francis J. Murphy, I.D. # 223
1011 Centre Road, Suite 210
Wilmington, DE  19805
Office (302)472-8100
Fax      (302)472-8135
Email  fmurphy@msllaw.com

## TABLE OF CONTENTS

**Page**

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ..................................1

STATEMENT OF FACTS ............................................................................................ 2

    Flowserve Corporation..........................................................................................2

    Burns International Services Corporation...........................................................3

    The Underlying Asbestos Claims .......................................................................3

    The Indemnity Provisions at Issue .....................................................................4

    Flowserve's Wrongful Use Of Insurance That Is The Property Of Burns .........6

    The Allegations of Counts IV and V of Burns' Counterclaim ............................ 7

ARGUMENT ............................................................................................................. 9

    The Standard for 12 (b)(6) Motions....................................................................9

    Flowserve's Motion To Dismiss Should Be Denied............................................9

    Flowserve's Motion Is Not Supported By The Case Law.................................. 13

CONCLUSION......................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

Chrysler Corp. v. Airtemp Corp., 426 A.2d 845 (Del.Super. 1980)........................................10, 13

Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060 (Del.Supr.1988)....................10, 12, 13

Highlands Ins. Group, Inc. v. Halliburton Co., 852 A.2d 1 (Del.Ch. 2003).................................16

Home Insurance Co. v. Honaker, 480 A.2d 652 (Del.Supr. 1984)................................................17

Kost v. Kozakiewicz, 1 F.3d 176 (3rd Cir. 1993).............................................................................9

Resource Ventures, Inc. v. Resource Management International, Inc., 42 F. Supp.2d 423
(D.Del. 1999) .................................................................................................................................9

Schock V. Nash, 732 A.2d 217 (Del.Supr. 1999).............................................................10, 11, 13

Tenneco Automotive Inc. v. El Paso Corp., C.A. No. 11810-NC, Noble V.C. (Mem. Op.,
Nov. 29, 2001), 2001 WL ...........................................................................................................11

Union Texas Petroleum Holdings, Inc. v. Travelers Indemnity Co., C.A. No.15448,
Chandler, Ch. (Mem. Op., Feb. 19, 1998), 1998 WL 83068 ......................................................11

Willingham v. Kral Music, Inc., 505 A.2d 34 (Del.Super. 1985)..................................................11

## **Other Authorities**

Restatement of Restitution §1 .......................................................................................................10

Restatement of Restitution §40.....................................................................................................14

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

This action arises out of a dispute between plaintiff Flowserve Corporation ("Flowserve") and defendant Burns International Services Corporation ("Burns") over which of them is ultimately liable for tens of thousands of pending underlying asbestos product liability claims and future claims brought by individual plaintiffs for personal injuries allegedly caused by exposure to asbestos from Byron Jackson pumps and other industrial products.  Flowserve filed this action on September 24, 2004. Flowserve's Complaint contains four counts and, among other things, seeks a declaratory judgment as to the meaning and application of certain indemnity provisions which control the liability issue. Burns answered the Complaint and asserted a Counterclaim containing six counts, including two counts seeking a declaratory judgment in its favor on the same indemnity provisions cited by Flowserve.  A resolution of this action will ultimately turn on the Court's interpretation of the provisions in the written indemnity agreements.

Burns' Counterclaim also seeks relief in the form of damages based on restitution (Count IV) and unjust enrichment (Count V).  Those Counts relate to insurance benefits that Flowserve has obtained under policies that are the property of Burns and that Burns provided to Flowserve with the understanding that Flowserve was acknowledging liability, as between Burns and Flowserve, for the underlying Byron Jackson asbestos claims.  In Burns view, if Flowserve is now claiming that it is not responsible for the underlying claims, it is hardly entitled to Burns' insurance proceeds.  Flowserve has moved, under Fed. R. Civ. Pro. 12(b)(6) to dismiss Counts IV and V of Burns' Counterclaim.  This is Burns' answering brief in opposition to Flowserve's motion.

## STATEMENT OF FACTS[1]

Flowserve is a corporation organized under the laws of the State of New York and its principal office is located in Texas. CC at 10. Burns is a Delaware corporation and its principal office is located in New Jersey. CC at 10. Federal jurisdiction in this matter is based upon diversity of citizenship under 28 U.S.C. § 1332. CC at 10.

### Flowserve Corporation

Flowserve alleges that it is the corporate successor of BWIP Acquisition Corporation ("BWIP-AC") and Borg-Warner Industrial Products, Inc. ("BWIP") so that it is entitled to the benefit of, and liable under, the indemnity provisions mentioned below. Complaint ¶18; CC at 10-12. Prior to 1987, BWIP was a wholly owned subsidiary of Borg-Warner Corporation ("Borg-Warner"). CC at 10-12. During the period from approximately 1955 to 1987, Borg-Warner, either directly or through BWIP, manufactured and sold Byron Jackson industrial pumps. CC at 1. In a March 12, 1987 Stock Purchase Agreement, BWIP-AC purchased all of the stock of BWIP from Borg-Warner (the "1987 Stock Sale"). CC at 3, 10. As part of the 1987 Stock Sale transaction, BWIP acquired all of the Byron Jackson industrial pump business. CC at 3. Because BWIP-AC purchased all of the stock of BWIP in the same transaction, it thereby acquired the Byron Jackson industrial pump product line. CC at 3, 11.

---

[1]  The Statement of Facts is drawn entirely from Burns' Answer and Counterclaims (Exhibit A hereto), and therefore must be taken as true for purposes of Flowserve's motion to dismiss. See Argument at 9. Citations to pages of the Answer and Counterclaims will be denoted "CC at ___."

After the 1987 transaction closed, BWIP continued to manufacture and sell the Byron Jackson pump line, and operated as a subsidiary of BWIP-AC.  CC at 11. Through a series of corporate transactions, Flowserve alleges that it succeeded to the rights and liabilities of BWIP-AC.  CC at 2.

### Burns International Services Corporation

Burns International Services Corporation is a Delaware corporation.  CC at 10. Burns is entitled to the rights and benefits of the 1987 Stock Purchase Agreement and is responsible for the original Borg-Warner's contractual indemnity obligations, if any, under the Agreement. CC at 4, 8, 11.  Burns is engaged in the security business and has never manufactured or sold Byron Jackson pumps.  CC at 1.

### The Underlying Asbestos Claims

After BWIP-AC (for purposes of this motion, "Flowserve") acquired the Byron Jackson pump line, numerous asbestos-related product liability lawsuits were filed in various jurisdictions throughout the United States (the "Underlying Asbestos Claims") related to alleged asbestos exposure from Byron Jackson pumps.  CC at 13.  Some of the suits have been served on Flowserve, and others name Borg-Warner or Burns.  CC at 5-7. To date, the Underlying Asbestos Claims have been sent to Burns and tendered by Burns to insurance carriers providing products liability coverage under insurance policies carried by Borg-Warner.  CC at 13.  Until recently, the insurers have been providing a complete defense and full indemnity for the Underlying Asbestos Claims for both Burns and Flowserve.  CC at 13.

120166

Within the past year, however, insurers under the primary insurance policies carried by Borg-Warner announced that their limits of liability had been exhausted and that they will no longer pay for the defense or indemnity of the Underlying Asbestos Claims under these primary policies.  CC at 13.  Certain umbrella insurance carriers providing excess coverage under policies carried by Borg-Warner have indicated that they will pay a portion of the continuing defense and indemnity expenses, but these insurers have not agreed to pay 100% of these expenses.  CC at 13.

Recently, in connection with one of the Underlying Asbestos Claims in which Burns was named as a defendant, Burns was advised that the insurance carriers that had been providing the defense and indemnity for the claim would not pay 100% of the defense and indemnity costs associated with that claim or any other Underlying Asbestos Claims.  CC at 13.  Immediately upon learning that 100% of the defense and indemnity would not be paid by the insurance carriers, Burns made a demand upon Flowserve for defense and indemnity under the terms of the 1987 Stock Purchase Agreement.  CC at 13.  Flowserve denied it had any obligation under the Agreement to provide such defense or indemnity and refused Burns' demand.  CC at 13-14.

### The Indemnity Provisions at Issue

On March 12, 1987, Borg-Warner and BWIP-AC entered into the Stock Purchase Agreement pursuant to which Borg-Warner sold all of the stock of BWIP (and hence the Byron Jackson pump product line) to BWIP-AC.  CC at 10-11.  Section 9.04 of the 1987 Stock Purchase Agreement contains the indemnity provisions.  CC at 11.  Section 9.04(a) of the Agreement sets forth Borg-Warner's indemnity obligations to BWIP-AC and its subsidiaries, CC at 11, which obligations are now the responsibility of Burns. CC at 8.

120166

Section 9.04(b) sets forth BWIP-AC's indemnity obligations (assumed by Flowserve) to

Borg-Warner and its subsidiaries and Burns.  CC at 11.

Section 9.04(b) of the Agreement provides, in part:

(b) The Buyer [BWIP-AC, now Flowserve] shall defend, indemnify and hold harmless Borg-Warner and its subsidiaries from, and there shall be excluded from Borg-Warner's obligation to defend, indemnify and hold harmless under the preceding paragraph (a) of this section 9.04, the following Losses (the "Specified Liabilities"):

* * * * *

(C)     any product liability claim asserted after the Effective Date, whether based on theories of  negligence, warranty or strict liability, arising from a product manufactured or sold by any of the businesses of the Divisions [including the Byron Jackson Division], whenever manufactured or sold, unless set forth in Schedule 4.15 or required to be disclosed in Schedule 4.15 and not so disclosed, provided, however, that BWIP [Flowserve] or one of its Subsidiaries manufactures or holds out for sale such product or parts therefor as of the Effective Date;

CC at 12.

The indemnity obligation set forth in Section 9.04(b)(C) of the 1987 Stock

Purchase Agreement, that requires BWIP-AC [Flowserve] to indemnify Borg-Warner and

Burns for products liability claims asserted after the Effective Date of the Agreement, is

consistent with the indemnity obligation set forth in Section 9.04(a)(ii)(C) of the

Agreement that requires Borg-Warner or Burns, subject to the provisions of Section

9.04(b) and (c), to indemnify BWIP-AC [Flowserve] for products liability claims asserted

prior to the Closing Date under the Agreement.  CC at 12.  These indemnity provisions

reflect the parties' intent to transfer to BWIP-AC [Flowserve] full responsibility for all

products liability claims asserted after the Effective Date of the 1987 Stock Sale arising

from products manufactured by the businesses being sold.  CC at 12.

120166

On or about May 1, 1987, BWIP-AC sent to Borg-Warner a letter concerning the 1987 Stock Purchase Agreement and specifically BWIP's and its subsidiaries responsibility for "Losses" which are defined in the Agreement as "claims, actions, causes of action, liabilities, losses, damages, and reasonable out-of-pocket expenses and costs."  CC at 16.  The May 1, 1987 letter provides in part:

> The purpose of this letter is to document our mutual agreement that, notwithstanding anything to the contrary contained in the Agreement, neither BWIP nor any of its Subsidiaries shall be responsible for any Losses to the extent that such Losses are covered by insurance carried by Borg-Warner.

CC at 16.  The May 1, 1987 letter was acknowledged and agreed to by a representative of Borg-Warner.  CC at 16.

### Flowserve's Wrongful Use Of Insurance That Is The Property Of Burns

Since the Closing under the 1987 Stock Purchase Agreement, Flowserve has repeatedly and consistently asserted that the defense and indemnity of the Underlying Asbestos Claims was to be provided by available insurance carried by Borg-Warner pursuant to the terms of the May 1, 1987 letter.  CC at 16.  Burns, under a reservation of rights, has allowed Flowserve to access and obtain the benefits of this insurance for the defense and indemnity of BWIP/Flowserve's Underlying Asbestos Claims.  CC at 16-17. Burns has done so with the express understanding that Flowserve was asserting its rights under the May 1, 1987 letter, because Flowserve recognized and agreed that it was the legal successor to BWIP and was responsible for Losses arising out of the Underlying Asbestos Claims to the extent such Losses were not covered by insurance carried by Borg-Warner.  CC at 17.

More recently, however, following purported exhaustion of the primary coverage, when one or more of the insurance carriers providing umbrella coverage under the Borg-Warner policies refused to pay the full amount of defense costs and settlement payments in the Underlying Asbestos Claims, Flowserve disavowed its liability for Losses arising out of such Claims.  CC at 17.  Instead, Flowserve now contends that it is not responsible for such Losses and that it is entitled to indemnity for such Losses under the indemnity provisions of the 1987 Stock Purchase Agreement.  CC at 17.

Had Burns known that Flowserve intended to disavow its responsibility for Losses arising out of the Underlying Asbestos Claims, it would not have allowed Flowserve to obtain the benefit of the available insurance to cover such Claims because the terms of the May 1, 1987 letter apply only to Losses for which Flowserve is responsible in the absence of insurance carried by Borg-Warner.  CC at 17.  Because Flowserve now contends that the Underlying Asbestos Claims are not "Losses" for which it is liable, it is not entitled to access insurance carried by Borg-Warner.  CC at 17-18.

Burns has been tendering the defense of the asbestos claims against Flowserve to the insurers for Borg-Warner, CC at 16-19, based on its understanding that Flowserve was responsible, as between Burns and Flowserve, for such claims, and based on that understanding, could access the insurance coverages. CC 17.  The insurers have spent millions of dollars in defense and indemnity for suits filed against BWIP or Flowserve. CC at 18.  Because the policies are assets of Burns, which is named in thousands of asbestos claims, and continues to be named in new asbestos claims, Flowserve has wrongfully taken insurance coverage that rightfully belongs to Burns.  CC at 16-22. Burns is entitled to repayment of the sums expended for Flowserve's benefit, so that they

can be used for Burns' own defense and indemnity.  CC at 16-22.  For that reason, Burns

has properly asserted claims for restitution and unjust enrichment against Flowserve.

### The Allegations of Counts IV and V of Burns' Counterclaims

Burns alleges the following in Count IV (Restitution):

> 30.  Burns conferred a substantial benefit on Flowserve by providing it with a defense and indemnity in the Underlying Asbestos Claims through insurance carried by Borg-Warner.

> 31.  Burns conferred this benefit upon Flowserve because of its mistaken belief that Flowserve, by requesting Burns to provide such defense and indemnity pursuant to the May 1, 1987 letter, was acknowledging its responsibility for the Underlying Asbestos claims to the extent the Claims were not covered by insurance carried by Borg-Warner.

> 32.  Had Flowserve disavowed its ultimate responsibility for the Underlying Asbestos Claims in the absence of insurance carried by Borg-Warner, Burns never would have tendered the Underlying Asbestos Claims to the available insurance carriers, except in those cases where Burns was named as a defendant, and would have preserved such insurance coverage for itself and any others entitled to the benefits of the insurance coverage.

> 33.  Burn's (sic) mistake caused the conferring of the foregoing benefit upon Flowserve.

Burns alleges the following in Count V (Unjust Enrichment):

> 35.  Flowserve has realized in excess of $10,000,000 in insurance benefits by wrongfully seeking insurance coverage under the terms of the May 1, 1987 letter for claims which it now contends it is not responsible.

> 36.  Flowserve's retention of these benefits, to the detriment of Burns, is contrary to fundamental principles of equity and good conscience.

120166

37.   By reason of its actions, Flowserve has been unjustly enriched and should be required to disgorge the full value of its ill-gotten gains.

**ARGUMENT**

**The Standard for 12 (b)(6) Motions**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the Complaint [here the Answer and Counterclaims], not to resolve the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3rd Cir.1993). When considering a motion to dismiss, a court must accept as true all allegations in the Complaint [Answer and Counterclaims] and must draw all reasonable factual inferences in the light most favorable to the non-moving party. Resource Ventures, Inc. v. Resource Management International, Inc., 42 F.Supp.2d 423, 437-8 (D.Del. 1999). Dismissal is not warranted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Id. at 438. Flowserve acknowledges that the "beyond doubt" standard applies (p. 1, Flowserve Memorandum of Law).

**I. FLOWSERVE'S MOTION TO DISMISS SHOULD BE DENIED.**

Flowserve's motion rests entirely on a single legal argument, namely, that Burns itself has not paid money directly to Flowserve, and therefore Burns has no right to recover damages from Flowserve for restitution or unjust enrichment for the millions of dollars in insurance benefits that Flowserve wrongfully obtained.

Burns has various assets, tangible and intangible. The insurance policies of Borg-Warner Corp., acquired by Burns in connection with the liquidation of Borg-Warner (CC at 11), are an intangible asset. Liability insurance is not inexhaustible – it is subject to occurrence and aggregate limits, and those limits can disappear quickly when you are named in tens of thousands of suits. As alleged in Flowserve's complaint, the insurers contend that the limits of primary coverage are already exhausted (CC at 6).

120166

Flowserve correctly points out that it is Borg-Warner's insurers who have paid the defense and indemnity for Flowserve's asbestos claims.  However, the carriers have made such payments not as volunteers, but "on behalf of" the insured, pursuant to the terms of applicable policies.  Those policies, like any other asset, can be wrongfully conferred as a benefit on a party not entitled thereto, as alleged in Burns' Counterclaims.  Flowserve has wrongfully depleted millions of dollars of insurance coverage, at the primary level, and now at excess layers, that belongs to Burns and would be available for the defense and indemnity of Burns, were it not for Flowserve's conduct.  The very existence of those additional insurance limits would add value to Burns, providing additional protection against future adverse loss development, and security that the asbestos claims will not materially effect its financial statements.

Delaware law recognizes that restitution and unjust enrichment are broad remedies, and are not limited to circumstances where one party has wrongfully obtained money directly from another.  Schock v. Nash, 732 A.2d 217, 232-3 (Del. Supr. 1999); Fleer Corp. v. Topps Chewing Gum, Inc, 539 A.2d 1060, 1063 (Del. Supr. 1988).

The function of restitution is to restore a person to the position he formerly occupied.  Chrysler Corp. v. Airtemp Corp., 426 A.2d 845, 855 (Del. Super. 1980); quoting Restatement of Restitution §1, comment a.  Restitution requires a person who has been unjustly enriched at the expense of another to compensate the other party for the substance of the enrichment.  Chrysler at 855.  The person claiming restitution must have been deprived of something or some right which he was entitled to retain and the person from whom restitution is required must have received something or some benefit to

which he was not rightfully entitled. Id.  In order to warrant restitution, the retention of the benefit must be unjust. Id.

To obtain restitution, a plaintiff is required to show that the defendant was unjustly enriched, that the defendant secured a benefit, and that it would be unconscionable to allow the defendant to retain that benefit.  Schock v. Nash, 732 A.2d 217, 232 (Del. Supr. 1999).  Restitution is permitted even when the defendant retaining the benefit is not a wrongdoer.  Id.  Restitution serves to deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance, *and even though the plaintiff may have suffered no demonstrable losses*.  Id. at 232-3, citing with approval Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060, 1063 (Del. Supr. 1988) (emphasis added).

Comment b. to the Restatement of Restitution §1 addresses the issue of what constitutes a "benefit".  A party confers a benefit on another,

> [N]ot only where he adds to the property of another, but also where he saves the other from expense or loss.  The word "benefit" therefore, denotes any form of advantage.

Id.; Willingham v. Kral Music, Inc., 505 A.2d 34, 36 (Del. Super. 1985) (recognizing that under Restatement of Restitution §1 "benefit" includes any form of advantage, including non-monetary benefits).

Under Delaware law, historical insurance coverage is property and the purported exhaustion of the coverage can give rise to a cause of action.  Tenneco Automotive Inc. v. El Paso Corp., C.A. No. 11810-NC, Noble V.C. (Mem. Op., Nov. 29, 2001), 2001 WL 1641744 (Exhibit B) (following corporate restructuring, corporate plaintiffs could bring claims for declaratory relief and damages against formerly related corporation and its

parent for alleged deprivation of rights under historical insurance policies which predated restructuring); Union Texas Petroleum Holdings, Inc. v. Travelers Indemnity Co., C.A. No. 15448, Chandler, Ch. (Mem. Op., Feb. 19, 1998), 1998 WL 83068 (Exhibit C) (following corporate restructuring, plaintiff corporations stated cause of action against former parent corporation for declaratory relief and damages arising from alleged release of historical insurance coverage).

For a court to order restitution, it must first find that the defendant was enriched unjustly at the expense of the plaintiff. Schock v. Nash, 732 A.2d 217, 232 (Del. Supr. 1999). Unjust enrichment is defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. Id.; Fleer Corp. v. Topps Chewing Gum, Inc., 539 A.2d 1060, 1062 (Del. Supr. 1988).

In Fleer Corp., Fleer Corp. won a ruling voiding Topps Chewing Gum's exclusive license to sell baseball cards, and Fleer then commenced to sell baseball cards. That ruling was reversed on appeal, reinstating Topps' exclusive license. Fleer was denied summary judgment on Topps' claim for unjust enrichment based on sales during the time after Topps' exclusive license was voided and the time that it was reinstated on appeal. The Supreme Court of Delaware outlined certain important elements of unjust enrichment applicable to this case. First, "rights arising out of contracts [such as the insurance contracts in this case] have long been recognized as property rights." 539A.2d at 1062, citing Lynch v. U.S., 292 U.S. 571 (1934). Second, "the remedy of restitution may be invoked regardless of whether or not the party retaining the benefit is found to be a wrongdoer." 539A.2d at 1063. Even though Fleer was selling baseball cards pursuant

to a court order, later reversal of that order gave rise to a claim of unjust enrichment and remedy of restitution. In the same manner, Burns' providing insurance benefits that were its property to Flowserve, voluntarily at a time when it reasonably believed Flowserve would honor its obligation to indemnify Burns for any uninsured portion of the underlying asbestos claims, are properly subject to restitution now that Flowserve has disavowed its obligations.

In its Counterclaims, Burns contends that Flowserve has wrongfully exhausted millions of dollars of insurance coverage that rightfully belongs to Burns. Flowserve received the benefit of Burns' insurance coverage, because Burns' insurers have paid large sums to defend and indemnify Flowserve on Underlying Asbestos Claims for which Flowserve has been sued. Burns' primary insurers now contend that Burns' insurance has been exhausted at the primary level. Payments made by Burns' insurers on Flowserve's behalf have contributed to the exhaustion of coverage. If Flowserve had not wrongfully allowed the Underlying Asbestos Claims filed against Flowserve to be tendered by Burns to its insurers, and taken advantage of the defense and indemnity provided thereunder, Burns would still have primary coverage available for the defense and indemnity of the Underlying Asbestos Claims filed against Burns. Flowserve has wrongfully benefited from Burns' insurance coverage, and Burns has suffered a loss of insurance benefits. Flowserve should have paid the defense and indemnity for its Underlying Asbestos Claims out of its own pocket (or tendered the Claims to Flowserve's own insurers).

Flowserve has been enriched unjustly at the expense of Burns. Flowserve seeks to retain the benefit of Burns' insurance coverage to the detriment of Burns, which could

use the insurance coverage to defend its own Underlying Asbestos Claims or other claims

that may arise.  Flowserve's wrongful exhaustion of Burns' primary insurance coverage -

- coverage to which Flowserve had no legal right if indeed it abrogates the very

agreements they may have conferred that right-- violates fundamental principles of equity

and good conscience.  Union Texas Petroleum Holdings, supra, and Tenneco, supra.

Indeed, the facts presented here are more egregious than in the Union Texas and Tenneco

cases.  In those cases, the exhaustion of the insurance coverage was based upon written

releases provided to the insurers.  Here, the exhaustion was caused by actual payments

made on Flowserve's behalf, and from which it therefore received a financial benefit.

The function of restitution is to restore Burns to the position it formerly occupied

by assessing damages against Flowserve to compensate Burns for its lost insurance

coverage.  Chrysler Corp. v. Airtemp Corp., 426 A.2d 845, 855 (Del. Super. 1980).

Burns has been deprived of valuable insurance coverage and Flowserve has received the

benefit of Burns' insurance coverage, to which it was not rightfully entitled.  Id.

Restitution is proper, even if Flowserve was not a wrongdoer (although Burns'

alleges that it is -- and this case is at the pleadings stage).  Schock v. Nash, 732 A.2d 217,

232 (Del. Supr. 1999); Fleer Corp. v. Topps Chewing Gum, Inc., 539A.2d at 1063.  And

Burns is entitled to restitution even if it had not suffered any demonstrable losses (which

it has, namely, a loss of insurance coverage which constitutes property rights subject to

restitution under Delaware law).  Id. at 232-3; Fleer v. Topps Chewing Gum, Inc., 539

A.2d 1060, 1063 (Del. Supr. 1988).

## II.  FLOWSERVE'S MOTION IS NOT SUPPORTED BY THE CASE LAW

The cases Flowserve cites in its motion are generally taken out of context and, upon examination, do not support its argument.  <u>Chrysler Corp. v. Airtemp Corp.</u>, 426 A.2d 845 (Del. Super. 1980) involved a corporate restructuring in which Fedders purchased the assets of Chrysler's Airtemp Division.  As part of the transaction, Fedders created an Airtemp subsidiary and transferred the Airtemp Division's assets to the newly formed subsidiary by means of an assignment contract executed by Chrysler.  <u>Id</u>. at 847. In order to provide continuity during the transfer period, the contract provided that Chrysler would continue to render the same services to Airtemp that it had rendered when Airtemp was its own Division, and that Fedders (not Airtemp) would pay Chrysler for the services.  <u>Id</u>.  After Chrysler rendered the services, Fedders failed to pay.  Chrysler sued Fedders in New York and filed a separate suit against Airtemp in Delaware.  Chrysler moved for partial summary judgment in Delaware.  Airtemp moved to dismiss the Delaware action, and the Superior Court treated Airtemp's motion as a summary judgment motion.

Contrary to the assertions in Flowserve's motion, the Court's denial of summary judgment to Chrysler on its restitution claim did not turn on the fact that Airtemp was not a party to the contract between Chrysler and Fedders.

In its decision, the Court first took up the issue of whether a valid contractual obligation existed on the part of Airtemp to pay Chrysler's claim.  <u>Id</u>. at 849.  After a lengthy analysis, the Court determined that the issue could not be resolved on summary judgment.  <u>Id</u>. at 853.  The Court then went on to discuss Chrysler's claims based upon implied contract, and concluded that Chrysler could not recover under an implied

contract theory, "in the absence of inability to recover under the underlying contract." Id.
at 854.

Finally, the Court reviewed Chrysler's restitution claim. Chrysler's restitution
theory was based upon Restatement of Restitution §40, which addresses the
circumstances under which a party rendering services may recover from the party
receiving them. Id. at 854-5. Here, Burns is not making a claim for services rendered to
Flowserve, and Burns is not at this time moving for summary judgment on its restitution
claims, as Chrysler did.

That fact aside, the Court concluded that restitution was not a proper remedy for
Chrysler, at least on summary judgment, based on its reading of the specific provisions of
the assignment agreement between Chrysler and Fedders. The Court found that although
Airtemp received the services, the express provisions of the agreement only required
Fedders to pay for them. Id. at 855. Therefore, Chrysler did not provide anything under
the contract that it was not obligated to provide and Airtemp did not receive anything it
was not entitled to receive. Consequently, it could not be said that Airtemp was unjustly
enriched.

It was the lack of unjust enrichment, not the lack of a contractual relationship
between Airtemp and Chrysler, that controlled the issue. Indeed, the Court had already
found that there was an enforceable contractual relationship between Airtemp and
Chrysler in that Airtemp was a third party beneficiary to the contract. Id. at 852.
However, the contract terms did not obligate Airtemp to pay for Chrysler's services.
Fedders was the only party expressly obligated to pay Chrysler.

120166

In its Counterclaim, Burns alleges that Flowserve has wrongfully received millions of dollars of insurance coverage that Flowserve was not entitled to receive. And Burns has lost the benefit of primary insurance coverage that would be available to pay the defense and indemnity for Burns' Underlying Asbestos Claims were it not for Flowserve's wrongful conduct. Burns also alleges that Flowserve had no right to access Burn's insurance coverage. This case is far removed from the dispute over contractual services at issue in the <u>Chrysler</u> case.

Flowserve argues that Burns has not personally given any benefits to Flowserve and thus has no standing to seek equitable restitution. Flowserve adds that it is the insurers for Borg-Warner/Burns that have bestowed the benefits of their insurance coverage on Flowserve, and cites the Court to <u>Highlands Ins. Group, Inc. v. Halliburton Co.</u>, 852 A.2d 1 (Del.Ch. 2003).

Flowserve's argument completely ignores the allegations in Burns' Counterclaim which, for purposes of the pending motion to dismiss, must be accepted as true. Burns alleges that the wrongful conduct of Flowserve caused Burns' to mistakenly bestow the benefits of Burns' insurance coverage on Flowserve. Although the insurers actually made the payments, the benefits of the insurance are the property of Burns. And as a consequence of the payments made on behalf of Flowserve, Burns finds itself a) without primary insurance coverage, and b) faced with assertions by excess insurers that they will not pay 100% of Burns' defense and indemnity, which Burns' primary insurers had been paying and would continue to pay if the coverage were not exhausted.

Just as Flowserve's argument is flawed, so to is its reliance on the <u>Highlands</u> case. Highlands was a captive insurer wholly owned by Halliburton that was spun off as a

completely independent company.  Following the spin-off, Highlands continued to pay a) asbestos claims made by KBR (a Halliburton subsidiary that originally formed Highlands) under certain "Fixed Cost Policies", and b) certain "Post-Spinoff Terminated Policy Payments".  Highlands at 3.  Highlands contended that Halliburton was obligated to reimburse it for the asbestos claims under a 1987 Retrospective Policy of insurance.  In an earlier decision, the Chancery Court concluded that the spinoff terminated the "Fixed Cost Policies" and the Delaware Supreme Court affirmed that ruling.  Highlands at 3- 6. Therefore, the issue pending before the Court of Chancery was whether there was some other basis for Halliburton to claim that Highlands was not entitled to reimbursement for the payments it made on asbestos claims.

The Court found that the Distribution Agreement and the Insurance Products Services Agreement that the parties entered into in connection with the spinoff did not obligate Highlands to pay the asbestos claims, and therefore Halliburton had to indemnify Highlands for any liabilities incurred on those claims. The case did not involve a dispute by two corporations over who had the rights to historical insurance coverage.  And contrary to Flowserve's assertion, the Court's decision on restitution did not deal with Halliburton's asbestos claims at all, but rather the second category of claims in dispute, namely, the "Post-Spinoff Terminated Policy Payments".  Id. at 7 –8.

Highlands has no direct bearing on this case, because there was no allegation that Halliburton's conduct in accepting insurance coverage wrongfully deprived coverage to any other insured.  Indeed, the Court found that the policies at issue had been cancelled by the spinoff.  What is noteworthy is Highlands' discussion of restitution, which makes clear that Delaware law no longer draws a distinction between mistakes of law and

mistakes of fact in applying restitution.  Id at 8-9.  Thus, it would not matter if Burns

permitted Flowserve to access its insurance coverage due to a mistake of law or fact,

Burns is nevertheless entitled to restitution.

Home Insurance Co. v. Honaker, 480 A.2d 652 (Del.Supr. 1984), also cited by

Flowserve, sheds no light on this dispute.  Honaker involved a suit by an insurer to

recover payments made to a policyholder under an auto policy based on a unilateral

mistake by the insurer.  There was no contention by an insured under the policy, in the

same position as Burns, that the payments to Honaker exhausted its coverage.

120166

**CONCLUSION**

Flowserve seeks a dismissal of Burns' claims for restitution and unjust enrichment, even though Burns has a) pled more than sufficient facts in support of its claims, and b) alleged all of the elements under Delaware law needed to establish the claims. Flowserve's motion is based on a single argument, namely, that Burns has not paid any money out-of-pocket, and therefore has neither suffered a loss nor conferred a benefit. Flowserve's argument is wrong for several reasons. Burns has suffered the loss of insurance coverage, a valuable asset. Likewise, Burns has conferred a substantial benefit on Flowserve, by mistakenly allowing Flowserve to access its insurance coverage. Burns respectfully submits that the Court should reject Flowserve's argument and deny the motion to dismiss.

MURPHY SPADARO & LANDON

_____
Francis J. Murphy, I.D. # 223
1011 Centre Road, Suite 210
Wilmington, DE 19805
Office (302)472-8100
Fax     (302)472-8135
Email   fmurphy@msllaw.com

May 4, 2005

120166