# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FLOWSERVE CORPORATION )
)
)     C.A. No.: 04-1294-JJF
Plaintiff, )
)
v. )
)
BURNS INTERNATIONAL SERVICES )
CORPORATION and BORG-WARNER )
CORPORATION, )
)
Defendants. )
)

## ANSWER AND COUNTERCLAIMS OF DEFENDANT
## BURNS INTERNATIONAL SERVICES CORPORATION

Defendants Burns International Services Corporation ("Burns") states as its answer to the

Complaint filed by plaintiff Flowserve Corporation ("Flowserve") as follows:

### FIRST DEFENSE

### Response to Preliminary Statement

Burns submits the following response to the "Preliminary Statement" alleged by

Flowserve. Burns denies that it has any obligation to defend or indemnify Flowserve for

asbestos-related product liability lawsuits now pending or hereafter filed arising out of the

manufacture and sale of Byron Jackson industrial pumps. Burns denies that it ever manufactured

or sold Byron Jackson pumps. Burns admits that Borg-Warner Corporation ("Borg-Warner")

manufactured and sold Byron Jackson industrial pumps through its Byron Jackson Division

and/or subsidiaries from approximately 1955 until 1987. Burns further admits that all of the

businesses of Borg-Warner's Byron Jackson Division were transferred to Borg-Warner's wholly

00116653

owned subsidiary, Borg-Warner Industrial Products, Inc. ("BWIP"), or to wholly owned

subsidiaries of BWIP, and thereafter all of the stock of BWIP was sold to BWIP Acquisition

Corporation ("BWIP-AC") pursuant to a Stock Purchase Agreement. Burns further admits that,

in connection with the BWIP stock sale, BWIP-AC expressly indemnified Borg-Warner for,

among other things, all products liability claims arising out of its prior manufacture and sale of

Byron Jackson industrial pumps and that, as the result of transactions undertaken in connection

with the liquidation of Borg-Warner, Burns is entitled to the benefits of those indemnity

provisions. Burns further admits that Flowserve has alleged that, through a series of corporate

mergers, Flowserve succeeded to the rights and liabilities of BWIP-AC under the 1987 BWIP

Stock Purchase Agreement. Burns lacks knowledge or information sufficient to form a belief as

to the truth of those allegations. Any allegations made in Flowserve's "Preliminary Statement"

not specifically admitted or denied herein are denied.

### Response to Numbered Paragraphs of the Complaint

1.    Admitted on information and belief.

2.    Admitted, except deny that Burns' principal office is located in Chicago, Illinois.

3.    Denied. The Borg-Warner Corporation identified in the Complaint no longer

exists.

4.    Admitted.

5.    Admitted, except deny any breach or anticipatory breach by Defendants.

6.    Admitted that venue is proper in Delaware.   Denied that any choice of law

provision establishes venue in Delaware.

7.     Admitted that in 1987, BWIP-AC purchased all the stock of Borg-Warner's

wholly-owned subsidiary BWIP ("1987 Stock Sale") and that, as a result of the 1987 Stock Sale,

BWIP-AC acquired the businesses that manufactured and sold substantially all of Borg-Warner's

industrial products, including the businesses that manufactured and sold Byron Jackson industrial

pumps.  Denied that there has been has been any breach or anticipatory breach by Burns or Borg-

Warner of any of their obligations arising out of the 1987 Stock Sale, including indemnification

obligations pertaining to any asbestos-related personal injury claims based upon products

manufactured and sold prior to the 1987 Stock Sale ("Underlying Asbestos Claims").  All other

allegations made in paragraph 7 not expressly admitted or denied herein are denied.

8.     Burns lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 8.

9.     Admitted that, in or around 1983, Borg-Warner incorporated BWIP and that

BWIP was wholly owned and operated by Borg-Warner until 1987.  Admitted that Byron

Jackson pumps were manufactured and sold by Borg-Warner and/or its subsidiaries and/or

division(s) since at least 1955.  All other allegations made in paragraph 9 not expressly admitted

herein are denied.

10.     Admitted that, on or about  March 12, 1987, Borg-Warner and BWIP-AC entered

into a Stock Purchase Agreement (the "1987 Stock Purchase Agreement") pursuant to which

Borg-Warner sold all of the stock of  BWIP to BWIP-AC.  Defendants lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations made in

paragraph 10 and therefore deny the same and demand strict proof thereof.

3

11.    Admitted, on information and belief that, on or about May 1, 1987, BWIP-AC sent to Borg-Warner the letter attached as Exhibit B to the Complaint herein. The May 1, 1987 letter speaks for itself. All other allegations made in paragraph 11 not expressly admitted herein are denied.

12.    Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 12.

13.    Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 13.

14.    Denied.

15.    Admitted that, in 1987, a private group of investors organized a leveraged buyout of the outstanding stock of Borg-Warner. All other allegations made in paragraph 15 not expressly admitted herein are denied.

16.    Denied.

17.    Admitted that, on or about July 6, 1999, Borg-Warner Security Corporation changed its name to "Burns International Services Corporation". Further admitted that Burns is entitled to the rights and benefits of the indemnity provisions of the 1987 Stock Purchase Agreement and is responsible for Borg-Warner's contractual indemnity obligations, if any, under the 1987 Stock Purchase Agreement. All other allegations made in paragraph 17 not expressly admitted herein are denied.

18.    Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 18.

4

19.    Admitted, that the parties to the 1987 Stock Sale executed the 1987 Stock Purchase Agreement dated as of March 12, 1987, that the Agreement was 125 pages in length and included various schedules and one or more subsequent amendments not attached as part of Exhibit A to the Complaint. Further admitted that the 1987 Stock Purchase Agreement was intended to govern the transaction. All other allegations made in paragraph 19 not expressly admitted herein are denied.

20.    Admitted that the 1987 Stock Purchase Agreement contains indemnification provisions in section 9.04. The Agreement speaks for itself. All other allegations made in paragraph 20 not expressly admitted herein are denied.

21.    Denied. The 1987 Stock Purchase Agreement speaks for itself.

22.    Denied. The 1987 Stock Purchase Agreement speaks for itself.

23.    Denied. The 1987 Stock Purchase Agreement speaks for itself.

24.    Denied.

25.    Denied.

26.    Denied that the May 1, 1987 letter is quoted accurately.

27.    Admitted that, at the time the May 1, 1987 letter was sent, certain collectible primary, umbrella and excess insurance policies were in place that provided, *inter alia*, defense and indemnification coverage for products that had been manufactured and sold by Borg-Warner prior to March 12, 1987. All other allegations made in paragraph 27 not expressly admitted herein are denied.

28.    Admitted that Flowserve has been served with complaints in the Underlying Asbestos Claims and that, pursuant to the terms of the May 1, 1987 letter, Flowserve sought and

5

obtained, subject to Burns' reservations of rights, coverage for such claims under insurance carried by Borg-Warner. All other allegations made in paragraph 28 not expressly admitted herein are denied.

      29.    Denied.

      30.    Admitted that certain primary insurance carriers providing coverage for product liability claims arising out of the manufacture and sale of Byron Jackson industrial pumps provided Flowserve with defense and indemnification for the Underlying Asbestos Claims and that at least one of these primary insurers now contend that said defense and indemnification coverage was subject to a reservation of rights. All other allegations made in paragraph 30 not expressly admitted herein are denied.

      31.    Admitted that, prior to the filing of this action by Flowserve, a lawsuit captioned Continental Casualty Company, et al. v. Borg-Warner, Inc., et al., Case No. 04CH01708, was filed in the Circuit Court of Cook County, Illinois, Chancery Division (hereinafter referred to as the "Coverage Lawsuit") by certain primary and excess general insurance carriers against Flowserve and others seeking a declaratory judgment as to, among other things, the scope of coverage under certain insurance policies issued to Borg-Warner with respect to claims for bodily injury arising out of the manufacture and sale of asbestos-containing products. All other allegations made in paragraph 31 not expressly admitted herein are denied.

      32.    Admitted that the insurers in the Coverage Lawsuit contend that the limits of the primary insurers liability have been exhausted and that various umbrella/excess insurers also dispute the scope of coverage for asbestos product liability claims filed against Flowserve and

others arising out of the manufacture and sale of asbestos containing products. All other allegations made in paragraph 32 not expressly admitted herein are denied.

    33.    Denied.

    34.    Denied.

    35.    Denied.

    36.    Denied.

    37.    Denied.

    38.    Denied.

    39.    Admitted that Burns was named as a defendant in the Powell litigation pending in Alameda County, California, and that the Powell plaintiff alleged products liability claims based upon alleged asbestos exposure resulting from his work with Byron Jackson industrial pumps. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 39 and therefore deny the same and demand strict proof thereof.

    40.    Admitted that Burns' counsel sent the letter attached to the Complaint as Exhibit E. The letter speaks for itself. All other allegations made in paragraph 40 not expressly admitted herein are denied.

    41.    Admitted that Burns' counsel received the letter dated September 13, 2004 attached to the Complaint as Exhibit F. The letter speaks for itself. All other allegations made in paragraph 41 not expressly admitted herein are denied.

    42.    Denied.

## COUNT I

43.     Burns repeats its responses to paragraphs 1 through 42 above.

44.     Denied.

45.     Denied, except without admitting liability, admit that the amount in controversy exceeds the jurisdictional limits of this Court.

## COUNT II

46.     Burns repeats its responses to paragraphs 1 through 45 above.

47.     Denied.

48.     Admitted that Burns contends it has no obligation to defend and indemnify Flowserve with respect to the Underlying Asbestos Claims. All other allegations made in paragraph 48 not expressly admitted herein are denied.

49.     Denied.

50.     Admitted only that a justiciable controversy exists. All other allegations made in paragraph 50 not expressly admitted herein are denied.

## COUNT III

51.     Burns repeats its responses to paragraphs 1 through 50 above.

52.     Denied.

53.     Admitted that Burns is entitled to the rights and benefits of the indemnity provisions of the 1987 Stock Purchase Agreement and is responsible for Borg-Warner's contractual indemnity obligations, if any, under the 1987 Stock Purchase Agreement. All other allegations made in paragraph 53 not expressly admitted herein are denied.

54.     Admitted on information and belief.

8

55.    Admitted that Burns has tendered the Underlying Asbestos Claims which erroneously name Burns, to Flowserve for defense and indemnity. All other allegations made in paragraph 55 not expressly admitted herein are denied.

56.    Denied.

57.    Admitted that a justiciable controversy exists. All other allegations made in paragraph 57 not expressly admitted herein are denied.

## COUNT IV

58.    Burns repeats its responses to paragraphs 1 through 57 above.

59.    Denied.

60.    Denied.

## SECOND DEFENSE

61.    Borg-Warner has ceased to exist as an entity and is not a necessary or proper party defendant in this action.

## THIRD DEFENSE

62.    Flowserve has breached its indemnity obligations under the 1987 Stock Purchase Agreement and thereby lost any benefit or any rights it may otherwise have had under such Agreement.

## FOURTH DEFENSE

63.    Flowserve should be estopped from denying that it is responsible for Losses arising out of the Underlying Asbestos Claims after having sought and obtained to the detriment of Burns the continuing benefit of the insurance carried by Borg-Warner.

9

## FIFTH DEFENSE

64.    Flowserve has waived any alleged right or claim to indemnity under any other provisions of the 1987 Stock Purchase Agreement with respect to the Underlying Insurance Claims after having sought and obtained the continuing benefit of the insurance carried by Borg-Warner with respect to such Claims.

## BURNS' COUNTERCLAIMS

Defendant/Counter-plaintiff Burns International Services Corporation states as its Counterclaims against Plaintiff/Counter-defendant Flowserve Corporation as follows:

1.    Defendant/Counter-plaintiff Burns International Services Corporation ("Burns") is a corporation organized under the laws of the State of Delaware with its principal office located in the State of New Jersey.

2.    Plaintiff/Counter-defendant Flowserve Corporation ("Flowserve") is a corporation organized under the laws of the State of New York with its principal office located in Irving, Texas.

3.    Federal jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 in that Burns and Flowserve are incorporated and domiciled in different States and the matter in controversy exceeds the sum of $75,000.00, excluding interest and costs.

4.    Venue in this District is proper under 28 U.S.C. § 1391(a) in that at least one of the original defendants, Burns, is incorporated in Delaware.

5.    In 1987, pursuant to a Stock Purchase Agreement dated as of March 12, 1987 (the "1987 Stock Purchase Agreement"), BWIP Acquisition Corporation ("BWIP-AC"), purchased all of the stock (the "1987 Stock Sale") of Borg-Warner Corporation's ("Borg-Warner") wholly-

10

owned subsidiary Borg-Warner Industrial Products, Inc. ("BWIP"). A true copy of the 1987 Stock Purchase Agreement, without the exhibits, amendments or modifications, is attached to Flowserve's Complaint herein as Exhibit A and incorporated herein by reference.

6.    At the time the 1987 Stock Purchase Agreement was entered into, Borg-Warner, either directly or through BWIP, or wholly owned subsidiaries of BWIP, manufactured and sold Byron Jackson industrial pumps. As part of the 1987 Stock Sale, all of the Byron Jackson industrial pump business was transferred to BWIP, or subsidiaries of BWIP, and then the stock of BWIP was sold to BWIP-AC. Subsequent to the 1987 BWIP stock sale, BWIP, either directly or through its subsidiaries, continued to manufacture and sell Byron Jackson industrial pumps.

7.    Flowserve has alleged in this proceeding that, as the result of the certain merger transactions, Flowserve succeeded to the rights and obligations of BWIP-AC under the 1987 Stock Purchase Agreement. Burns lacks knowledge or information sufficient to form a belief as to the truth of those allegations but, for purposes of this Counterclaim, assumes the allegations to be true.

8.    Following the 1987 Stock Sale of BWIP to BWIP-AC, Borg-Warner was liquidated. As the result of transactions undertaken in connection with the liquidation of Borg-Warner, Burns now possesses the rights of Borg-Warner under the terms of the 1987 Stock Purchase Agreement, including the rights of Borg-Warner under the indemnity provisions.

9.    Section 9.04 of the 1987 Stock Purchase Agreement contains the indemnity provisions. Section 9.04(a) of the Agreement sets forth Borg-Warner's indemnity obligations to BWIP-AC and its subsidiaries. Section 9.04(b) sets forth BWIP-AC's indemnity obligations to Borg-Warner and its subsidiaries.

11

10.    Section 9.04(b) of the Agreement provides:

"(b) The Buyer [BWIP-AC] shall defend, indemnify and hold harmless Borg-Warner and its subsidiaries from, and there shall be excluded from Borg-Warner's obligation to defend, indemnify and hold harmless under the preceding paragraph (a) of this Section 9.04, the following Losses (the "Specified Liabilities"):

                              * * * * *

            "(C)    any product liability claim asserted after the Effective Date, whether based on theories of negligence, warranty or strict liability, arising from a product manufactured or sold by any of the businesses of the Divisions [including the Byron Jackson Division], whenever manufactured or sold, unless set forth in Schedule 4.15 or required to be disclosed in Schedule 4.15 and not so disclosed, provided, however, that BWIP or one of its Subsidiaries manufactures or holds out for sale such product or parts therefor as of the Effective Date;"

11.    The indemnity obligation set forth in Section 9.04(b)(C) of the 1987 Stock Purchase Agreement, that requires BWIP-AC to indemnify Borg-Warner for products liability claims asserted after the Effective Date of the Agreement, is consistent with the indemnity obligation set forth in Section 9.04(a)(ii)(C) of the Agreement that requires Borg-Warner, subject to the provisions of Section 9.04(b) and (c), to indemnify BWIP-AC for products liability claims asserted prior to the Closing Date under the Agreement. These indemnity provisions reflect the parties' intent to transfer to BWIP-AC following the Closing full responsibility for all products liability claims asserted after the Effective Date of the 1987 Stock Sale arising from products manufactured by the businesses being sold.

12

12.    Subsequent to the Closing, numerous asbestos-related product liability lawsuits arising out of the manufacture and sale of Byron Jackson industrial pumps were filed in various jurisdictions throughout the United States (the "Underlying Asbestos Claims ").

13.    To date, the Underlying Asbestos Claims have been tendered to insurance carriers providing products liability coverage under insurance policies carried by Borg-Warner. Until recently, these insurers on information and belief have been providing a complete defense and full indemnity for the Underlying Asbestos Claims.

14.    Within the past year, however, insurers under certain primary insurance policies carried by Borg-Warner announced that their limits of liability had been exhausted and that they will no longer pay for the defense or indemnity of the Underlying Insurance Claims under theses primary policies. Certain umbrella insurance carriers providing excess coverage under policies carried by Borg-Warner have indicated that they will pay a portion of the continuing defense and indemnity expenses but these insurers have not agreed to pay and have not paid 100% of those expenses.

15.    Recently, in connection with one of the Underlying Asbestos Claims in which Burns was named as a defendant, Burns was advised that the insurance carriers that had been providing the defense and indemnity for the claim would not  pay 100% of the defense and indemnity costs associated with the claim or any other Underlying Asbestos Claims. Immediately upon learning that 100% of the defense and indemnity would not be paid by the insurance carriers, Burns made a demand upon Flowserve for defense and indemnity under the terms of the 1987 Stock Purchase Agreement. A copy of Burns' demand letter is attached to Flowserve's Complaint herein as Exhibit E and is incorporated by reference.  Flowserve denied it

13

had any obligation under the Agreement to provide such defense or indemnity and refused Burn's

demand. A copy of Flowserve's denial of responsibility is attached to Flowserve's Complaint

herein as Exhibit F and incorporated herein by reference.

**COUNT I**
**ACTION FOR DECLARATORY JUDGMENT**
**REGARDING FLOWSERVE'S INDEMNITY OBLIGATIONS TO BURNS**

16.    Burns incorporates and re-alleges paragraphs 1 through 15 above as paragraphs 1

through 16 of this Count I.

17.    An actual controversy exists between the parties concerning Flowserve's

indemnity obligations to Burns under the 1987 Stock Purchase Agreement.

Wherefore, Defendant/Counter-plaintiff Burns International Services Corporation prays

that a declaratory judgment be entered in its favor and against Plaintiff/Counter-defendant

Flowserve Corporation and that the Court:

(a)    Declare that Flowserve is obligated to defend and indemnify Burns pursuant to

Section 9.04(b) of the 1987 Stock Purchase Agreement for all products liability claims asserted

after December 31, 1986, the "Effective Date" under the 1987 Stock Purchase Agreement,

arising from products manufactured or sold by businesses acquired pursuant to such Agreement,

including but not limited to the Underlying Asbestos Claims and all other asbestos-related

products liability claims arising out of the manufacture or sale of any Byron Jackson industrial

pumps;

(b)    Declare that Flowserve has breached its indemnity obligations to Burns under the

terms of the 1987 Stock Purchase Agreement and thereby lost any benefit or any rights it may

otherwise have had under the Agreement;

14

(c)    Dismiss, with prejudice, all claims alleged by Flowserve in its Complaint herein and enter judgment in favor of Burns and against Flowserve on all such claims;

(d)    Award Burns its costs of suit, including reasonable attorney's fees; and

(e)    Grant such other or further relief as the Court deems just.

**COUNT II**
**ACTION FOR BREACH OF CONTRACT ARISING OUT OF**
**FLOWSERVE'S BREACH OF ITS INDEMNITY OBLIGATIONS TO BURNS**

18.    Burns incorporates and re-alleges paragraphs 1 through 15 above as paragraph 18 of this Count II

19.    Burns has fully performed all of its obligations under the terms of the 1987 Stock Purchase Agreement.

20.    Flowserve has breached the Agreement by failing and refusing to perform its indemnity obligations under the Agreement after Burns made a timely demand that it do so.

21.    As a direct and proximate result of Flowserve's breach of the 1987 Stock Purchase Agreement, Burns has been damaged and will continue to be damaged.

Wherefore, Defendant/Counter-plaintiff Burns International Services Corporation prays that judgment be entered in its favor and against Plaintiff/Counter-defendant Flowserve Corporation and that it be awarded:

(a)    Compensatory damages in an amount shown by the proofs to have been caused by Flowserve's failure to provide a defense and indemnity in each of the Underlying Asbestos Claims where Burns has been named as a defendant,

(b)    Its costs of suit, including reasonable attorneys' fees, and

(c)    Such further and other relief as the Court deems just.

15

## COUNT III
## ACTION FOR DECLARATORY JUDGMENT
## REGARDING MAY 1, 1987 LETTER

22.    Burns incorporates and re-alleges paragraphs 1 through 15 above as paragraph 22

of this Count III.

23.    On or about May 1, 1987, BWIP-AC sent to Borg-Warner a letter concerning the

Agreement and specifically BWIP's and its subsidiaries responsibility for "Losses" which are

defined in the Agreement as "claims, actions, causes of action, liabilities, losses, damages, and

reasonable out-of-pocket expenses and costs." The May 1, 1987 letter provides in part:

> The purpose of this letter is to document our mutual agreement that,
>
> notwithstanding anything to the contrary contained in the Agreement, neither
>
> BWIP nor any of its Subsidiaries shall not be responsible for any Losses *to the*
>
> *extent that such Losses are covered by insurance carried by Borg-Warner.*"

(emphasis added) The May 1, 1987 letter was acknowledged and agreed to by a representative of

Borg-Warner. A copy of the May 1, 1987 letter is attached to Flowserve's Complaint herein as

Exhibit B and is incorporated herein by reference.

24.    Since the Closing under the 1987 Stock Purchase Agreement, Flowserve has

repeatedly and consistently asserted that the defense and indemnity of the Underlying Asbestos

Claims  was to be provided by available insurance carried by Borg-Warner pursuant to the terms

of the May 1, 1987 letter. For example, see the August 18, 2003 letter from Flowserve to

counsel for Burns attached hereto as Exhibit A.

25.    Burns, under a reservation of rights, has allowed Flowserve to access and obtain

the benefits of the insurance carried by Borg-Warner for the defense and indemnity of the

16

Underlying Asbestos Claims. Burns has done so with the express understanding that Flowserve was asserting its rights under the May 1, 1987 letter because Flowserve recognized and agreed that it was the legal successor to BWIP and was responsible for Losses arising out of the Underlying Asbestos Claims to the extent such Losses were not covered by insurance carried by Borg-Warner.

26.    More recently, however, following purported exhaustion of the primary coverage, when one or more of the insurance carriers providing umbrella coverage under the Borg-Warner policies refused to pay the full amount of defense costs and settlement payments in the Underlying Asbestos Claims, Flowserve disavowed its liability for Losses arising out of such Claims. Instead, Flowserve now contends that it is not responsible for such Losses and that it is entitled to indemnity for such Losses under heretofore unmentioned indemnity provisions of the 1987 Stock Purchase Agreement.

27.    Had Burns known that Flowserve intended to disavow its responsibility for Losses arising out of the Underlying Asbestos Claims, it would not have allowed Flowserve to obtain the benefit of the available insurance to cover such Claims because the terms of the May 1, 1987 letter apply only to Losses for which Flowserve is responsible in the absence of insurance carried by Borg-Warner.

28.    An actual controversy exists between the parties concerning that parties' rights and obligations under the terms of the May 1, 1987 letter.

Wherefore, Defendant/Counter-plaintiff Burns International Services Corporation prays that a declaratory judgment be entered in its favor and against Plaintiff/Counter-defendant Flowserve Corporation and that the Court:

17

(a)     Declare that Flowserve was not and is not entitled to obtain the benefits of any insurance carried by Borg-Warner for the defense and indemnity of the Underlying Asbestos Claims or any other claims for which Flowserve contends it is not responsible;

(c)     Declare and order that Flowserve shall not further seek, nor be granted, any further access to or any further benefits from any insurance carried by Borg-Warner for the Underlying Asbestos Claims or any claims which Flowserve contends it is not responsible;

(d)     Order Flowserve to pay to Burns the sum of not less than $10,000,000 or such further amount as determined by the proofs to reimburse Burns for the full value of all benefits Flowserve has received to date under any policy of insurance carried by Borg-Warner, including the value of all defense and indemnity payments made on its behalf or on behalf of any of its affiliates or subsidiaries, to the extent such payments were made with respect to the Underlying Asbestos Claims or any other claims for which Flowserve claims it is not responsible;

(e)     Award Burns its costs of suit, including reasonable attorney's fees; and

(f)     Grant such other or further relief as the Court deems just.

## COUNT IV
## ACTION FOR RESTITUTION

29.     Burns incorporates and re-alleges paragraphs 1 through 15 and 23 through 28 above as paragraph 29 of this Count IV.

30.     Burns conferred a substantial benefit on Flowserve by providing it with a defense and indemnity in the Underlying Asbestos Claims through insurance carried by Borg-Warner.

31.     Burns conferred this benefit upon Flowserve because of its mistaken belief that Flowserve, by requesting Burns to provide such defense and indemnity pursuant to the May 1,

18

1987 letter, was acknowledging its responsibility for the Underlying Asbestos claims to the extent the Claims were not covered by insurance carried by Borg-Warner.

32.    Had Flowserve disavowed its ultimate responsibility for the Underlying Asbestos Claims in the absence of insurance carried by Borg-Warner, Burns never would have tendered the Underlying Asbestos Claims to the available insurance carriers, except in those cases where Burns was named as a defendant, and would have preserved such insurance coverage for itself and any others entitled to the benefits of the insurance coverage.

33.    Burn's mistake caused the conferring of the foregoing benefit upon Flowserve.

Wherefore, Defendant/Counter-plaintiff Burns International Services Corporation prays that a judgment be entered in its favor and against Plaintiff/Counter-defendant Flowserve Corporation and that the Court:

(a)    Order restitution to Burns of the sum of not less than $10,000,000, or the full value of the insurance benefits Flowserve has received to date for the defense and indemnity of the Underlying Asbestos Claims and any other claims for which it contends it is not responsible;

(b)    Award Burns its costs of suit, including reasonable attorney's fees; and

(c)    Grant such other or further relief as the Court deems just.

19

## COUNT V
## ACTION FOR UNJUST ENRICHMENT

34.    Burns incorporates and re-alleges paragraphs 29 through 33 above as paragraph 34 of this Count V.

35.    Flowserve has realized in excess of $10,000,000 in insurance benefits by wrongfully seeking insurance coverage under the terms of the May 1, 1987 letter for claims which it now contends it is not responsible.

36.    Flowserve's retention of these benefits, to the detriment of Burns, is contrary to fundamental principles of equity and good conscience.

37.    By reason of its actions, Flowserve has been unjustly enriched and should be required to disgorge the full value of its ill-gotten gains.

Wherefore, Defendant/Counter-plaintiff Burns International Services Corporation prays that a judgment be entered in its favor and against Plaintiff/Counter-defendant Flowserve Corporation and that the Court:

(a)    Order Flowserve to pay to Burns the sum of not less than $10,000,000, or the full value of the insurance benefits Flowserve has received to date for the defense and indemnity of the Underlying Asbestos Claims and any other claims for which it contends it is not responsible;

(b)    Award Burns its costs of suit, including reasonable attorney's fees; and

(c)    Grant such other or further relief as the Court deems just.

20

## COUNT VI
## ACTION FOR COMMON LAW INDEMNITY

38.    Burns incorporates and re-alleges paragraphs 1 through 15 above as paragraph 38 of this Count VI.

39.    On information and belief, Flowserve is the legal successor by merger to BWIP and all the businesses that manufactured Byron Jackson industrial pumps containing asbestos.

40.    As the legal successor to these businesses, Flowserve is responsible as a matter of law for all claims arising out of the manufacture and sale of the products produced by these businesses including specifically any asbestos containing Byron Jackson industrial pumps.

41.    Burns has been named as a defendant in numerous Underlying Asbestos Claims.

42.    Burns has never manufactured or sold Byron Jackson pumps and had no responsibility for the manufacture or sale of any Byron Jackson pumps.

43.    Burns, as the sole and proximate result of the actions of Flowserve and its predecessors, has incurred and will continue to incur substantial legal fees and expenses in defending itself in, and in arranging and assisting in the defense of, the Underlying Asbestos Claims and related litigation brought by third-parties.

44.    Burns became involved in and incurred these expenses solely because of the tortious conduct of Flowserve and its predecessors.

45.    By reason of the foregoing, Burns is entitled to indemnity from Flowserve under common law principles for all expenses it has incurred in connection with its defense of the Underlying Asbestos Claims.

21

Wherefore, Defendant/Counter-plaintiff Burns International Services Corporation prays that a judgment be entered in its favor and against Plaintiff/Counter-defendant Flowserve Corporation and that the Court:

(a)    Order Flowserve to indemnify and reimburse Burns for all costs and expenses, including reasonable attorneys' fees, it has incurred and will incur in the defense of the Underlying Asbestos Claims;

(b)    Award Burns its costs of suit, including reasonable attorney's fees; and

(c)    Grant such other or further relief as the Court deems just.


MURPHY SPADARO & LANDON

Francis J. Murphy, I.D. No. 223
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel: (302) 472-8100
Fax: (302) 472-8135
E-Mail: Fmurphy@msllaw.com

Attorneys for Defendant Burns International
Services Corporation

22