## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FLOWSERVE CORPORATION ) | |
| ) | |
| ) | C.A. No.: 04-1294 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BURNS INTERNATIONAL SERVICES ) | |
| CORPORATION and BORG-WARNER ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### AFFIDAVIT OF EDWARD B. MUELLER IN SUPPORT OF
### BURNS INTERNATIONAL SERVICES CORPORATION'S
### MOTION FOR TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION

Edward B. Mueller, on oath deposes and states:

1.    I am an attorney and member of the law firm Nisen & Elliott, LLC. I am licensed to practice law in the State of Illinois. I have person knowledge of the facts stated in this affidavit and, if called as a witness, could testify competently thereto.

2.    My law firm and I have represented defendant Burns International Services Corporation ("Burns") for over three years. I am familiar with the issues raised in this litigation and with the coverage litigation pending in the Circuit Court of Cook County, Illinois entitled Continental Casualty Company et al. v. Borg Warner, Inc. et al., No. 04 CH 01708 (the "Illinois Coverage Litigation").

3.    This affidavit is submitted in support of Burns' Motion for Temporary Restraining Order and Preliminary Injunction (the "TRO Motion").

4.      For a number years, both before and after my involvement on behalf of Burns, plaintiff Flowserve Corporation ("Flowserve") has been forwarding to Burns for defense and indemnity numerous asbestos product liability cases arising out of the manufacture and sale of Byron Jackson pumps. The claims forwarded to Burns after my involvement were accompanied by a cover letter from Flowserve requesting that the claims be forwarded "to Borg-Warner's carrier(s) for appointment of counsel and handling." A representative sample of the cover letter we would receive is attached hereto as Exhibit 1.

5.      After my involvement in the Byron Jackson asbestos matters on behalf Burns, and upon reviewing the March 12, 1987 Stock Purchase Agreement between Borg-Warner Corporation and BWIP Acquisition Corporation ("BW-AC"), I began questioning the basis for Burns' obligation to indemnify Flowserve for the asbestos claims. Because of my concern regarding Burns' alleged indemnity obligation, I began sending to Flowserve reservations of right letters on behalf of Burns each time Flowserve forwarded asbestos cases to Burns seeking defense and indemnity. A representative sample of the reservation of rights letters I would send to Flowserve is attached hereto as Exhibit 2.

5.      On August 18, 2003, in response to the various reservation of rights letters I had been sending to Flowserve, I received a letter, attached hereto as Exhibit 3, from Robert L. Roberts, Jr., Associate General Counsel for Flowserve. Included with Mr. Robert's letter was a copy of a May 1, 1987 letter between Flowserve and Borg-Warner (the "Letter Agreement") which Mr. Roberts explained was the basis for Flowserve's claim for indemnity from Burns in the asbestos litigation. I had not seen the May 1, 1987 Letter Agreement prior to my receipt of Mr. Roberts' August 18, 2003.

2

6.    On June 22, 2004, in response to a letter I had sent on June 17, 2004 advising Flowserve that Burns was entitled to indemnity from Flowserve under section 9.04(b)(C) of the 1987 Stock Purchase Agreement, I received a letter, attached hereto as Exhibit 4, from Christopher M. Bechhold, an attorney representing Flowserve in the Illinois coverage litigation, in which he reiterated that Flowserve was entitled to indemnity from Burns under the terms of the May 1, 1987 Letter Agreement.

7.    On September 9, 2004, Flowserve and Burns were advised by two of the umbrella carriers for BWC that it was denying coverage for a Byron Jackson asbestos claim pending in Alameda County, California, filed by Katherine Powell.  On September 10, 2004, my partner, Michael H. Moirano, wrote to Mr. Bechhold and advised him that because BWC's insurers had denied coverage in the Powell case, Burns was tendering the matter to Flowserve pursuant to the terms of the 1987 Stock Purchase Agreement for defense and indemnity. A copy of Mr. Moirano's September 10, 2004 letter to Mr. Bechhold is attached hereto as Exhibit 5.

8.    On the same day Mr. Moirano sent his letter to Mr. Bechhold tendering the Powell case to Flowserve for defense and indemnity, I received a letter, attached hereto as Exhibit 6,  from Lawrence E. Henke, in-house Senior Attorney-Litigation for Flowserve. In Mr. Henke's letter he stated for the first time ever to my knowledge that Flowserve's claim for indemnity was "more appropriately governed by the specific indemnity provisions in §9.04(a)(ii)(E) [of the 1987 Stock Purchase Agreement] which provide indemnity to Buyer (the predecessor in interest to Flowserve Corporation) for environmental and/or disease related product liability claims." This litigation in which Flowserve makes similar claims was filed 14 days later on September 14, 2004.

3

9.    On Tuesday, June 29, 2004, I attended a meeting of counsel representing various BWC related entities and certain of the insurance carriers involved in the pending Illinois Coverage Litigation. Mr. Bechhold participated in the meeting via telephone. During the discussion, the subject of a cost sharing agreement between the BWC entities and the insurance carriers was discussed. During those discussions, Mr. Bechhold indicated that his client Flowserve was unwilling to enter into any cost sharing arrangement with the carriers and that, if the carriers did not pay 100% of the defense and indemnity cost of the underlying asbestos litigation pending against Flowserve, it was Flowserve's plan to contact plaintiffs' counsel in the underlying asbestos directly, offer to confess judgment for an amount necessary to settle the cases for a premium and then assign to the settling plaintiff's Flowserve's rights to the BWC insurance coverage in satisfaction of the settlement.

10.    In other conversations with Mr. Bechhold among defense counsel in the Illinois Coverage Litigation, Mr. Bechhold repeated the same threat to enter into large settlements with plaintiffs in uncovered underlying asbestos cases, confess judgement, and then assign the BWC insurance coverage to the plaintiffs in exchange for a covenant not to collect.

11.    On December 17, 2004, I attended a meeting at the New York offices of Flowserve's counsel in this litigation, Segal, McCambridge Singer & Mahoney, Ltd. The purpose of the meeting was to discuss among other things the pending Illinois Coverage Litigation and a cost sharing proposal that was being offered by BWC's umbrella insurers as an interim means of paying for the cost of the asbestos claims on a shared basis pending the outcome insurance coverage issues in the Illinois litigation. During the discussion, Ted McCullough, a Segal McCambridge attorney representing Flowserve, stated to me and the other representatives of Burns who were present that if a satisfactory resolution could not be reached,

4

Flowserve would initiate what he called an "Armageddon" strategy and direct local counsel in all pending Byron Jackson asbestos litigation to action the file third-party actions against Burns seeking indemnity for the claims made in the litigation.

12.    Currently, to the best of my knowledge, there are approximately 3500 Byron Jackson asbestos product liability claims pending in 23 different jurisdictions located throughout the United States. New cases are being filed virtually every week.

13.    In accordance with D. Del. L.R. 7.1.1, on February 22, 2006 I sent a letter, attached hereto as Exhibit 7, in which I offered to discuss the issues currently raised in Burns' TRO motion. On February 24, 2006, I participated in a conference call with call with counsel for Burns and for Flowserve, including Mr. Bechhold and Mr. Henke, during which we discussed the issues in raised in my letter. The parties were unable to reach a resolution of those issues.

FURTHER AFFIANT SAYETH NOT.

Edward B. Mueller

Subscribed and sworn to before me
this 27th day of February, 2006

Notary Public

```
••••••••••••••••••••••••
•    "OFFICIAL SEAL"        •
•  LORRAINE A.M. MAPLES      •
•  Notary Public, State of Illinois  •
•  My Commission Expires 3/4/09  •
••••••••••••••••••••••••
```

5

# EXHIBIT 1



**EXPRESS MAIL**

December 19, 2005

*shipped  5 Jan 06*
*Rec  6 Jan*

Anthony Packard, Esq.
Nisen & Elliott
200 West Adams Street, Suite 2500
Chicago, Illinois  60606

Re:    Asbestos Litigation – Borg Warner Corporation
        Flowserve File No. A8300

Dear Mr. Packard:

        Enclosed are the summons and complaints shown on the enclosed list. The
complaints were received by Flowserve or its agent on or about December 19, 2005.
Please forward this information to Borg-Warner's carrier(s) for appointment of counsel and
handling.

        Thank you.

                                        Sincerely,

                                        Lawrence E. Henke
                                        Senior Attorney - Litigation

cc:    James H. Fox, Esq., Pinkerton's, Inc. - w/o enclosures

Document No. A8301

## Borg Warner 016

| Plaintiff Name | Case Number | State |
|---|---|---|
| McNamara John, McNamara Tricia | BC342803 | CA |
| Ortner Charles | 05C-06-067 | DE |
| Drew Dennis E, Drew Sharlene | 05-534787 NP | MI |
| Roe Joseph, Roe Betty | 05-57914 NP | MI |
| Trepkowski Pauline | 05-57913 NP | MI |
| Rosebush Terry L | 05-57912 NP | MI |
| Stelter Jack, Stelter Sephronia | 05-57911 NP | MI |
| Busch Dennis, Busch Gail | 05-57910 NP | MI |
| Maturen John, Maturen John A | 05-58114 NP | MI |
| Sprague Robert A, Sprague Sara | 05-57909 NP | MI |
| Batterson Eric, Batterson Max | 05-12150 NP | MI |
| Toureau Mildred, Toreau Joseph | 05-43014 NP | MI |
| Tompkins Robert, Tompkins Merica | 05-19152 NP | MI |
| Press Frank | 4213-05 | NJ |
| Hanks Robert, Hanks Rena | 05-27730 | PA |
| Hanks Robert, Hanks Rena | 05-27730 | PA |
| Hanks Robert, Hanks Rena | 05-27730 | PA |
| Hatchett Daisy | 31840 | TX |

BI000291

EXHIBIT 2

LAW OFFICES

## NISEN & ELLIOTT, LLC

SUITE 2500

200 WEST ADAMS STREET

CHICAGO, ILLINOIS 60606

(312) 346-7800

FAX (312) 346-9316

WWW.NISEN.COM

**FILE COPY**

PAUL F. GERBOSI
EDWARD B. MUELLER
ANTHONY PACKARD
MARK F. ZAENGER
MICHAEL J. DALEY
JOHN FOSTER LEBCH
JOHN K. KNEAFSEY
MICHAEL H. MOIRANO
ROBERT O. MIDDLETON
WILLIAM G. DALUGA, JR.*
KENNETH J. ROJC
THOMAS V. McCAULEY
HELEN M. JENSEN
WILLIAM A. WALKER
DANIEL P. DAWSON
MICHAEL J. PAVLICEK

CHRISTOPHER J. CARLOS
GREGORY EIDUKAS
DONALD F. FROEHLKE
MARY ROSE C. MANCZAK
D. ERIC MARTIN
BRADLEY B. McCANN
KATHLEEN E. STENDAHL
ROBERT D. SWEENEY
PATRICK VINING

*ALSO LICENSED TO PRACTICE IN FLORIDA

OF COUNSEL
DONALD C. SHINE

August 8, 2003

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
Mr. Robert L. Roberts, Jr.
Associate General Counsel
Flowserve Corporation
222 W. Las Colinas Blvd., Suite 1500
Irving, TX 75039

Re: Asbestos Litigation

Dear Mr. Roberts:

We are in receipt of additional summons and complaints naming Flowserve Corp. or BW/IP, BW/IP International Inc. or other such entities which you have forwarded to us under cover letter dated July 25, 2003 (see lists of complaints attached). As you know, our client Burns International has reserved all of its rights under its insurance policies and under applicable agreements, including Agreement dated March 12, 1987, as amended (and including without limitation the right to limit or withdraw coverage at any time), and Burns' position is that there is no obligation to defend or indemnify BW/IP, Flowserve or any other party for these claims or to provide coverage under its policies. Our reservation includes any and all cases which are being handled by Burns' or Borg-Warner's insurance carriers or which you have sent for transmittal or handling or which have been served on Burns or Borg-Warner directly but involved products made or previously made by any Flowserve affiliate. No actions of Burns should be construed as admitting any liability or coverage for any of the claims in any of the cases you have forward to us or to Burns. We are forwarding these recent cases to my clients' carriers based on the foregoing reservations and on such understandings.

We trust that whenever the allegations of a complaint may trigger coverage under any other insurance coverage or agreements which Flowserve or its affiliates may have, or under which it may claim rights, that you will arrange appropriate notification and tender by

BI000447

NISEN & ELLIOTT, LLC.

Mr. Robert L. Roberts, Jr.
August 8, 2003
Page 2


Flowserve to such carriers, indemnitors, or other parties. Please also regard this letter as tender to Flowserve of any and all cases in which our client is named as a defendant, to the extent Burns International or its affiliates may be entitled to indemnity from BWIP or Flowserve, or any predecessor or affiliate, whether under the March 12, 1987 Agreement or otherwise. If you need copies of those complaints, please advise.

    If you would like any further information about the status of the cases or our position with respect thereto, please advise. Thank you for your attention to this matter.


                                    Very truly yours,

                                    Edward B. Mueller

                                    Edward B. Mueller

EBM:jm
cc:    James Fox
       Anthony Packard

BI000448

# List of Complaints

| Number | State | Case Name |
|--------|-------|-----------|
| 01 | MI | Estate of David Dick v. A.O. Smith Corporation, et al |
| 02 | MI | Arthur hart, et ux v. A.O. Smith Corporation, et al |
| 03 | MI | Estate of Patricia Keck v. A.O. Smith Corporation, et al |
| 04 | MI | Estate of Norman Lipski v. A.O. Smith Corporation, et al |
| 05 | MI | Estate of Kelly Wabindato v. AC&S, Inc., et al |
| 06 | MI | Estate of Harold Vaughn v. AC&S, Inc., et al |
| 07 | MI | Estate of Arthur Rosser v. 20th Century Glove Corp. of TX, et al |
| 08 | MI | Harold A. Bierschbach v. 20th Century Glove Corp. of TX, et al |
| 09 | MI | Estate of V. Moncada v. 20th Century Glove Corp. of TX, et al |
| 10 | MI | Eddie A. El-Amin, et ux v. 20th Century Glove Corp. of TX, et al |
| 11 | MI | Lester R. Fournier, et ux v. 20th Century Glove Corp. of TX, et al |
| 12 | MI | John H. Dunnaway, et ux v. 20th Century Glove Corp. of TX, et al |
| 13 | MI | James Weems, Jr., et ux v. 20th Century Glove Corp. of TX, et al |
| 14 | MI | Walter Offenbecker, et ux v. 20th Century Glove Corp. of TX, et al |
| 15 | MI | Hilton Yarn, et ux v. 20th Century Glove Corp. of TX, et al |
| 16 | MI | James H. Martin, et ux v. 20th Century Glove Corp. of TX, et al |
| 17 | MI | Edward T. Taylor v. 20th Century Glove Corp. of TX, et al |
| 18 | MI | Ralph H. Moll, Jr., et ux v. 20th Century Glove Corp. of TX, et al |
| 19 | MI | Derek J. Smith v. 20th Century Glove Corp. of TX, et al |
| 20 | MI | Timothy J. Dupuis, et ux v. 20th Century Glove Corp. of TX, et al |
| 21 | MI | Esther Gallegos v. 20th Century Glove Corp. of TX, et al |
| 22 | MI | Charles E. Macklin, et ux v. 20th Century Glove Corp. of TX, et al |
| 23 | MI | Estate of Richard H. Pease v. 20th Century Glove Corp. of TX, et al |
| 24 | MI | John E. George, et ux v. 20th Century Glove Corp. of TX, et al |
| 25 | MI | Jaxx L. Bartes v. 20th Century Glove Corp. of TX, et al |
| 26 | MI | Alexander R. Farrell, et ux v. 20th Century Glove Corp. of TX, et al |
| 27 | MI | Henry Carter v. 20th Century Glove Corp. of TX, et al |
| 28 | MI | Eugene Guster, et ux v. 20th Century Glove Corp. of TX, et al |
| 29 | MI | Joe N. Browder, et ux v. 20th Century Glove Corp. of TX, et al |
| 30 | MI | Gary O. Boyles v. 20th century Glove Corp. of TX, et al |
| 31 | MI | William E. Bull, Sr., et ux v. 20th Century Glove Corp. of TX, et al |
| 32 | MI | Theordore Desrosier, et ux v. 20th Century Glove Corp. of TX, et al |
| 33 | MI | Robert E. Taylor, et ux v. 20th Century Glove Corp. of TX, et al |
| 34 | MI | Douglas J. Johnson, et ux v. 20th Century Glove Corp. of TX, et al |
| 35 | MI | Elden M. Korbein, et ux v. 20th Century Glove Corp. of TX, et al |
| 36 | MI | Walter L. Browder, et ux v. 20th Century Glove Corp. of TX, et al |
| 37 | MI | Willie A. Irvin, et ux v. 20th Century Glove Corp. of TX, et al |
| 38 | MI | James A. Starks, et ux v. 20th Century Glove Corp. of TX, et al |
| 39 | MI | Thomas Casey, Jr., et ux v. 20th Century Glove Corp. of TX, et al |
| 40 | MI | Robert M. Surdock v. 20th Century Glove Corp. of TX, et al |
| 41 | MI | Alfredia Holiday, et ux v. 20th Century Glove Corp. of TX, et al |

Document R072503F4

BI000449

# List of Complaints

| Number | File No. | Case Name |
|--------|----------|-----------|
| 01 | R8307 | Robert Fugate v. ASBESTOS DEFENDANTS (BHC) |
| 02 | R8307 | Estate of Dallas Brady v. ASBESTOS DEFENDANTS (BHC) |

Document R072503F6

BI000450

# List of Complaints

| Number | State | Case Name |
|--------|-------|-----------|
| 01 | MI | Estate of Frederick Adams v. A.O. Smith Corporation, et al |

Document R072503F9

BI000451

# List of Complaints

| Number | State | Case Name |
|--------|-------|-----------|
| 01 | NY | Ronald K. Agee v. Amchem Products, Inc., et al |

Document R072503F7

# List of Complaints

| Number | File No. | Case Name |
|--------|----------|-----------|
| 01 | R8307 | James McGrath v. A.O. Smith Corporation, et al |

BI000453

# List of Complaints

| Number | State | Case Name |
|--------|-------|-----------|
| 01 | CA | Cammillo DeLuca, et ux v. Advocate Mines Limited, et al |
| 02 | CA | Estate of John Jensen v. Allis-Chalmers Corp. PL Trust, et al |

Document R072503F5

BI000454

EXHIBIT 3



August 18, 2003

Edward B. Mueller, Esq.
Nisen & Elliott, LLC
200 W. Adams Street, Suite 2500
Chicago, Illinois 60606

      Re: Asbestos Litigation – BW/IP International, Inc.
         Flowserve File No. R8307

Dear Ed:

    Pursuant to our recent conversations, this correspondence will respond to the various Reservation of Rights letters you have forwarded on behalf of Burns International (f/k/a Borg-Warner Corporation).

    Although Flowserve certainly agrees that the language of the 1987 Stock Purchase Agreement between BWIP Acquisition Corporation and Borg-Warner Corporation could have been a bit more concise, we strongly disagree with any interpretation limiting Flowserve's access to the historic Borg-Warner insurance coverage for asbestos liability.

    Flowserve's position has previously been discussed with you, and we would offer the enclosed May 1, 1987 communication as support for our position. This "letter" was executed by both parties prior to the closing of the LBO, became part of the transaction documents, and specifically clarified this issue. It states as follows:

    "The purpose of this letter is to document our mutual agreement that, notwithstanding anything to the contrary contained in the Agreement, neither BWIP nor any of its Subsidiaries shall be responsible for any Loses to the extent that such Loses are covered by insurance carried by Borg-Warner."

    It is my understanding that you have not previously been provided with a copy of this document. After you have had a chance to review it, please advise of your position.

                Sincerely,

                Robert L. Roberts, Jr. (Ohio Atty. 0006080)
                Associate General Counsel

cc:  Lawrence E. Henke, Esq., Flowserve Corporation

Document No. R081803F2                          BI000441

---

Flowserve Corporation        222 West Las Colinas Blvd., Suite 1500        Telephone 972-443-6537
                          Irving, Texas 75039 USA               Facsimile 972 443-6837
                                                  rroberts@flowserve.com

BWIP ACQUISITION CORPORATION
c/o The Clayton & Dubilier
Private Equity Fund II Limited Partnership
270 Greenwich Avenue
Greenwich, Connecticut

May 1, 1987

Borg-Warner Corporation
200 South Michigan Avenue
Chicago, Illinois  60604

### Stock Purchase Agreement

Dear Sirs:

Reference is made to the Stock Purchase Agreement
(the "Agreement"), dated March 12, 1987, by and between
BWIP Acquisition Corporation and Borg-Warner Corporation.
Capitalized terms used herein without definition shall have
the meanings assigned to them in the Agreement.

The purpose of this letter is to document our
mutual agreement that, notwithstanding anything to the
contrary contained in the Agreement, neither BWIP nor any
of its Subsidiaries shall be responsible for any Losses
to the extent that such Losses are covered by insurance
carried by Borg-Warner.

Accordingly, as provided by Section 9.04(a) of
the Agreement, Borg-Warner will indemnify the Buyer, BWIP
and each of their respective subsidiaries against all Losses
to the extent such Losses are covered by such insurance.

In order to evidence your agreement to the
foregoing, please sign and return the enclosed copy of this
letter.

Very truly yours,

BWIP ACQUISITION
CORPORATION

By _____
        President

Accepted and Agreed:

BORG-WARNER CORPORATION

By _Donald C. Trauscht_
     Vice-President

BI000442

EXHIBIT 4

-22-2004 14:13 FROM:THOMPSON HINE LLP    513-241-4771    TO:*00818*06645000001*9 P.002

# THOMPSON HINE
BRUSSELS   CINCINNATI   CLEVELAND   COLUMBUS   DAYTON   NEW YORK   WASHINGTON, D.C.

chris.buchhold@thompsonhine.com
(513) 352-6790

June 22, 2004

Via Facsimile/Regular Mail

Edward B. Mueller, Esq.
Nisen & Elliott, LLC
Suite 2500
200 West Adams Street
Chicago, Illinois 60606

Re:   Estate of William DeHerder, Sr., et al. v. Afton Pumps, Inc., et al
      Estate of Stanley L. Straub, et al. v. Afton Pumps, Inc., et al.

Dear Ed:

In response to your correspondence dated June 17, 2004, please be advised that it is Flowserve's position that it has no obligation to defend and indemnify Burns International Services Corp. in the above-captioned cases under Section 9.04(b)(C) of the Stock Purchase Agreement. Specifically, under the Letter Agreement dated May 1, 1987, it states that:

> ...notwithstanding anything to the contrary contained in the [Stock Purchase] Agreement, neither BWIP nor any of its Subsidiaries shall be responsible for any losses to the extent that such losses are covered by insurance carried by Borg-Warner.

Based upon my review of the recently produced Borg-Warner insurance policies, it appears clear that on May 1, 1987, Borg-Warner had in full force and effect insurance which would cover the above-captioned lawsuits.

The foregoing in no way constitutes, or should it be considered, as a waiver or relinquishment by Flowserve of all other defenses available to it under the terms and conditions of the Stock Purchase Agreement as amended, and neither anything in this correspondence nor any act of Flowserve is to be construed as a waiver of any known or unknown defense. Additionally, the foregoing in no way restricts or limits Flowserve from relying upon and asserting other facts and grounds that are, or may become available to it.

Upon review of this correspondence, if you have any questions, or if you would like to discuss this matter in more detail, please do not hesitate to get in touch with me.

Very truly yours,

Christopher M. Bechhold

CMB/lp

BI000345

THOMPSON HINE LLP        312 Walnut Street           www.ThompsonHine.com
ATTORNEYS AT LAW         14th Floor                  Phone 513.352.6700
                         Cincinnati, Ohio 45202-4089  Fax 513.241.4771

RECEIVED TIME    JUN.22.   1:12PM        PRINT TIME    JUN.22.   1:13PM

EXHIBIT 5

LAW OFFICES

# NISEN & ELLIOTT, LLC

SUITE 9600

200 WEST ADAMS STREET

CHICAGO, ILLINOIS 60606

EMAIL mmoirano@nisen.com

MICHAEL H. MOIRANO

DIRECT DIAL
(312) 696-2502

TELEPHONE
(312) 346-7800

FACSIMILE
(312) 346-9316

September 10, 2004

**VIA FACSIMILE / REGULAR MAIL**
Christopher M. Bechhold
Thompson Hine, LLP
312 Walnut Street
14th Floor
Cincinnati, OH 45202-4089

Re: Katherine Powell asbestos case

Dear Chris:

We received your letter today concerning insurance coverage in the Powell case. We have confirmed that CNA has denied coverage for the Powell claim. As a consequence all or a portion of the Powell claim is not being covered by insurance carried by Borg-Warner. We trust that your client will honor its indemnity obligations under the Stock Purchase Agreement and assume full responsibility for all Losses in the Powell case (including defense and indemnity expenses) not covered by insurance. If your client does not intend to pay the uncovered defense or indemnity expenses, please let us know immediately. Also, if your client wishes to pursue a claim against CNA to challenge its decision to deny coverage in the Powell case, or to challenge the decisions of any other insurers to provide coverage for only a portion of the Losses in the Powell case, please let us know.

Very truly yours,

Michael H. Moirano

MHM:je

SEP-10-04 FRI 05:33 PM G3

P. 02

# EXHIBIT 6



September 10, 2004

Edward B. Mueller
Niesen & Elliott, LLC
200 West Adams Street
Chicago, Illinois 60606

Re:    Tender of Burns International Services matters

Dear Mr. Mueller :

I am in receipt of your letter dated August 6, 2004, in connection with the inquiries both Chris Bechhold and I have made regarding the puzzling tender letters we have received from you. Specifically, I requested an explanation as to why you were attempting to tender these matters to Flowserve. Your most recent correspondence, however, sheds no additional light on the matter and I see no basis for the attempted tender.

Based on my analysis of the 1987 Stock Purchase Agreement between Borg-Warner Corporation, now known as Burns International Services Corporation, and BW/IP Acquisition Corp. (the "1987 Agreement"), I believe that the provisions you cite to in §9.04(b)(C) of the 1987 Agreement do not provide indemnity protection to your client against asbestos-related claims. On the contrary, the asbestos-related liabilities at issue in your tenders are more appropriately governed by the specific Indemnity provisions in §9.04(a)(ii)(E), which provide indemnification to the Buyer (the predecessor in interest to the Flowserve Corporation) for environmental and/or disease-related products liability claims.

Accordingly, these tenders are rejected and returned to you for Burns and the appropriate carriers to deal with consistent with past practice and the terms of the March 1987 letter agreement. Thank you for your attention to these matters. If you have any questions, please feel free to contact me at (972) 443-6613.

Very truly yours,

Lawrence E. Henke

BI000326

Enclosure
Flowserve Corporation
World Headquarters

5215 N. O'Connor Blvd.
Suite 2300
Irving, TX 75039 USA

Phone 972 443 6500
Facsimile 972 443 6800
www.flowserve.com

# EXHIBIT 7

LAW OFFICES

# NISEN & ELLIOTT, LLC

SUITE 2500

200 WEST ADAMS STREET

CHICAGO, ILLINOIS 60606

(312) 346-7800

FAX (312) 346-9316

WWW.NISEN.COM

PAUL F. GERBOSI,
EDWARD B. MUELLER
ANTHONY PACKARD
MARK F. ZAENGER
MICHAEL J. DALEY
JOHN FOSTER LESCH
JOHN K. KNEAFSEY
MICHAEL M. MOIRANO
ROBERT O. RIDDLETON
WILLIAM G. DALUGA, JR.*
KENNETH J. ROJC
THOMAS V. McCAULEY
HELEN N. JENSEN
WILLIAM A. WALKER
DANIEL P. DAWSON
WILLIAM J. RALEIGH
MARY ROSE C. MANCZAK
BRADLEY B. McCANN

DONALD F. FROEHLKE
ELENA GALLO
DAVID E. GEMPERLE
CLAIRE E. GORMAN
O. ERIC MARTIN
ALEXIS K. REED
SARA B. ROBERTSON
MATTHEW B. BOLLITTO
PATRICK VINING

*ALSO LICENSED TO PRACTICE IN FLORIDA

OF COUNSEL
DONALD C. SHINE

February 22, 2006

## VIA FACSIMLE

Gregory E. Rogus, Esq.
Segal, McCambridge, Singer & Mahoney
330 North Wabash Street
Suite 200
Chicago, Illinois 60611

Re:    *Flowserve Corporation v. Burns International Services Corporation*

Dear Mr. Rogus:

This letter is to acknowledge receipt of and respond to your letter dated Friday, February 17, 2006.

For many years, BW/IP International, Inc., formerly known as Borg-Warner Industrial Products, Inc., has enjoyed the benefit of access to Borg-Warner's insurance coverage, and the benefit of experienced defense counsel who have defended these cases for the various former Borg-Warner companies. Only now that the primary coverage is allegedly exhausted and the umbrella carriers are demanding participation in cost sharing from the putative insureds is Flowserve (defined herein to include Flowserve Corporation and its subsidiaries and affiliates) threatening to take the drastic actions outlined in your letter. Moreover, by its threatened actions, Flowserve appears to be abrogating the very Stock Purchase Agreement and related Letter Agreement which it is seeking to enforce in the pending Delaware litigation and pursuant to which has enjoyed the benefit of access to millions of dollars of Borg-Warner's insurance.

**NISEN & ELLIOTT, LLC**
Gregory E. Rogus, Esq.
February 22, 2006
Page 2

Specifically, the recent threat by Flowserve to discharge the entire network of defense counsel and to undertake the defense of the claims with counsel of its own choosing, without Burn's express consent, as well as its threat – often and publicly repeated – to make mass settlements with plaintiffs' attorneys of the underlying asbestos claims and to assign Flowserve's rights (if any) to the BWC insurance coverage in satisfaction of those settlements is in direct conflict with section 9.04(d) of the Stock Purchase Agreement and if carried out would constitute a breach of the Stock Purchase and Letter Agreements. Similarly, Flowserve's often repeated threat, as part of its so called "Armageddon" strategy, to file thousands of third-party indemnity actions in the underlying asbestos claims seeking the same relief being sought in the pending Delaware litigation is unreasonable and in our view would constitute a breach of Flowserve's obligation under the Stock Purchase and Letter Agreement to cooperate in defense of the claims and of the duty of good faith.

Burns' recognizes that under section 9.04(d) of the Stock Purchase Agreement Flowserve has the right to participate in the defense of all the underlying asbestos claims but, as section 9.04(d) specifically provides, if it chooses to do so it must do so at its own expense. Thus, if Flowserve intends to follow through with its threats in your February 17, 2006 letter, please be advised that Burn's will consider Flowserve to be in breach of the Stock Purchase and Letter Agreements and will no longer accept cases from Flowserve for defense or indemnity under Borg-Warner's insurance coverage or provide Flowserve with access to or the benefits of Borg-Warner's coverage unless Flowserve acknowledges in writing that will be taking these actions at its own cost and expense and will not seek reimbursement of either its defense or settlement costs in whole or in part from the available Borg-Warner insurance coverage or from Burns.

To be clear, in reply to the second paragraph of your February 17, 2006 letter, nothing Burns has done or intends to do in any way abrogates the Stock Purchase or Letter Agreements. To the contrary, Burns position is that it is entitled to indemnity from Flowserve under the provisions of section. 9.04 of the Stock Purchase Agreement, including without limitation section 9.04 (b), to the extent any pending or future asbestos claims are not covered in whole or part by insurance carried by Borg-Warner.

NISEN & ELLIOTT, LLC
Gregory E. Rogus, Esq.
February 22, 2006
Page 3

To the extent that Flowserve seeks indemnity under the provisions of the Stock Purchase and Letter Agreements, it must comply with the terms thereof. It also has a duty to mitigate its damages, and to act reasonably and in good faith.

We understand that CNA has offered to negotiate a cost sharing agreement with the other umbrella carriers and with Flowserve that would contain terms arguably more favorable to Flowserve than a strict reading of Judge Flynn's order in the Illinois declaratory judgment case. Attached is a copy of the current draft cost sharing agreement that was sent by CNA's counsel this week. Note that there is no proration to the insured; all expenses, losses and costs would be the responsibility of the insurers. The putative insured would pay only the shares (if any) of non-participating carriers, subject to a full reservation of rights.

In contrast, CNA, per Irv Faber's email to Chris Bechhold dated February 8, 2006, would reimburse only 8.82% of expenses in the absence of a cost-sharing agreement versus approximately 29% of expenses under its proposed cost sharing agreement. Other carriers might well follow suit – so that participating carriers would pay only one-third the amounts proposed under the cost sharing agreement.

Under these circumstances, it appears to be manifestly unreasonable for Flowserve to refuse even to discuss a cost-sharing agreement that would result in its paying far lower costs to defend cases against it, than it otherwise would have to pay. To the extent that Flowserve claims indemnity under the Stock Purchase and Letter Agreements, Burns demands that Flowserve enter into an appropriate and reasonable cost sharing agreement so as to minimize any costs, losses and expenses for which it might seek indemnity (without prejudice to Burns positions regarding its alleged indemnity obligations as set forth more fully in the Delaware case).

As to the first full paragraph of your letter on page 2, it seems particularly disruptive to the joint efforts of counsel that make up the defense network in the underlying asbestos cases to accuse them of violations of the Code of Professional Responsibility. These counsel have represented BWIP and Flowserve, and the other former Borg-Warner companies, for many years, and done so with Flowserve's full knowledge and consent and without any claims of conflict before the carriers sought cost-sharing from Flowserve. It is equally disconcerting to make unfounded threats against the Borg-Warner insurers and Burn's counsel now that Borg-Warner's insurers have declined to pay 100% of Flowserve's defense and indemnity costs. As you are well aware, neither has engaged in false,

NISEN & ELLIOTT, LLC
Gregory E. Rogus, Esq.
February 22, 2006
Page 4

misleading or unethical conduct and your suggestions that they have are unprofessional and unappreciated.

Please be advised that unless we can reach an immediate and reasonable resolution of the threats made in your February 17, 2006 letter, we intend to seek relief from Judge Farnan in the Delaware litigation. Please let us know if you would like to meet to discuss a possible resolution of the issues. Due to the impending March 1, 2006 deadline imposed by Flowserve, we would suggest a meeting at your earliest convenience. If we do not hear from you by the close of business on Monday, February 27, 2006, we will assume Flowserve has no interest in trying to resolve the issues raised by your February 17, 2006 letter and that Burns should proceed accordingly.

Very truly yours,

Edward B. Mueller

EBM:jm
Enclosure

# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF DELAWARE

FLOWSERVE CORPORATION,        )
                                      )
                                      )     C.A. No.:  04-1294 JJF
     Plaintiff,             )
                                      )
     v.                        )
                                      )
BURNS INTERNATIONAL SERVICES  )
CORPORATION and BORG-WARNER   )
CORPORATION,                 )
                                      )
     Defendants.            )
                                      )

## CERTIFICATE OF SERVICE

     I, Francis J. Murphy, Esquire, do hereby certify that on this 27th day of February, 2006, I have caused the following documents to be served in the manner indicated on the parties listed below:  **AFFIDAVIT OF EDWARD B. MUELLER IN SUPPORT OF INTERNATIONAL SERVICES CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMANARY INJUNCTION.**

**By Electronic Filing**
Danielle K. Yearick, Esquire
Tybout, Redfearn & Pell
300 Delaware Avenue, 11th Floor
P.O. Box 2092
Wilmington, DE 19899-2092

**By First Class Mail**
William Mahoney, Esquire
Ted McCullough, Esquire
Erich Gleber, Esquire
Segal McCambridge Singer & Mahoney, Ltd.
805 Third Avenue, 19th Floor
New York, NY 10022

**By First Class Mail**
Christopher M. Bechhold, Esquire
Thompson Hine, LLP
312 Walnut Street, 14th Floor
Cincinnati, OH  45209

129282

MURPHY SPADARO & LANDON

/s/ Francis J. Murphy
Francis J. Murphy, I.D. # 223
1011 Centre Road, Suite 210
Wilmington, DE  19805
Office (302)472-8100
Fax     (302)472-8135
Email  fmurphy@msllaw.com

129282