## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FLOWSERVE CORPORATION ) | |
| ) | |
| ) | C.A. No.: 04-1294 JJF |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BURNS INTERNATIONAL SERVICES ) | |
| CORPORATION and BORG-WARNER ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANT/COUNTERCLAIMANT BURNS INTERNATIONAL SERVICES CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendant/Counterclaimant Burns International Services Corporation ("Burns") moves pursuant to Fed. R. Civ. P. 65 for a temporary retraining order and preliminary injunction to enjoin defendant Flowserve Corporation ("Flowserve") from implementing a threat to (a) terminate and replace a network of national and local defense counsel situated throughout the United States who have been defending thousands of pending asbestos product liability claims filed against Flowserve and which are the subject of this dispute; (2) cause newly appointed counsel to file thousands of third-party actions against Burns in the underlying asbestos litigation seeking indemnification from Burns for its asbestos liabilities on the same basis that Flowserve is seeking indemnification in this lawsuit; and (3) negotiate a "global" settlement of all of its asbestos liability and using the available insurance coverage to fund such settlement. In support hereof, Burns states as follows:

1.      On September 24, 2004, Burns was sued in this declaratory judgment action by Flowserve which is seeking a determination of its right to indemnification from Burns for thousands of pending asbestos product liability claims. Flowserve seeks indemnification under the terms of a Stock Purchase Agreement (the "1987 Agreement") entered into by its alleged predecessor in interest BWIP Acquisition Corporation ("BWIP-AC").[1]

2.      Burns has denied any obligation to provide indemnification under the indemnification provisions contained in the 1987 Agreement. However, Burns has been complying with the terms of and providing Flowserve with defense and indemnity for the asbestos claims under the terms of the related Letter Agreement. The Letter Agreement requires Burns to indemnify BWIP-AC for all "Losses" (defined to include all claims) but only "to the extent such Losses are covered by such insurance." The Letter Agreement also relieves BWIP-AC of its indemnity obligations under the 1987 Agreement to indemnify Burns for, among other things, all products liability claims but again only "to the extent that such Losses are covered by insurance carried by Borg-Warner."

3.      For years, Flowserve has been forwarding asbestos cases to Burns pursuant to the terms of the Letter Agreement. *See e.g.* Letter from Robert L. Roberts, Jr. Associate General Counsel, Flowserve Corporation, to Edward B. Mueller, counsel for Burns, dated August 18, 2003, attached hereto as Exhibit C. *See also* Affidavit of Edward B. Mueller ("Mueller Affd.") submitted herewith. Burns in turn has been tendering the cases to the appropriate insurance

---

[1]    In 1987, BWIP-AC purchased all of the stock of Borg-Warner Corporation's ("BWC") wholly owned subsidiary Borg Warner Industrial Products, Inc. ("BWIP") and BWC's Byron Jackson product line. As part of that transaction, BWIP-AC and BWC entered into the 128-page Stock Purchase Agreement (the "1987 Agreement") which included the indemnification provision at issue in this litigation. A complete copy of the indemnification provision is attached hereto as Exhibit A. The parties subsequently entered into a Letter Agreement which further addressed the parties indemnification obligations under the 1987 Agreement. A copy of the Letter Agreement is attached hereto as Exhibit B.

carriers who, until recently, had been providing 100% of the defense and indemnity for the Byron Jackson Pump claims. The defense of the claims has been provided through a nationwide network of local defense counsel operating under the supervision of a National Coordinating Counsel. This network of experienced asbestos defense counsel has been approved by Burns and the insurers, and has been successfully handling the Flowserve asbestos claims for many years.

4.    The issues in this case arose when the parties were notified in or around June 2004 that BWC's primary coverage had been exhausted and that BWC's umbrella carriers would only pay a portion of the ongoing defense and indemnity expense. Burns subsequently made a demand on Flowserve pursuant to section 9.04(b) of the 1987 Agreement to pay for the defense and indemnity of claims to the extent not covered by BWC's insurance. Flowserve responded by filing this lawsuit in which it claims that it has no obligation to defend, indemnify or pay any share of any of the asbestos claims.[2]

5.    Burns filed a counterclaim in which it asserted that the only obligation to indemnify Flowserve for the underlying asbestos claims arises out of the Letter Agreement and that, to the extent BWC's insurance was not available to cover the claims, under section 9.04(b) of the 1987 Agreement Flowserve was obligated to pay the full costs to defend and resolve the claims.[3]

---

[2]    Although this suit was filed in September, 2004, after the parties were notified that the primary coverage was allegedly exhausted and the umbrella carriers would not pay 100% of the defense and indemnity costs, since that time BWC's umbrella carriers have nevertheless continued to pay 100% of the defense and indemnity costs. However, as a result of recent trial court rulings in BWC insurance coverage litigation pending in Illinois, the umbrella carriers notified Flowserve on February 8, 2006, that beginning on March 15, 2006, they will no longer pay 100% of the defense and indemnity costs.

[3]    As discussed below, under the express terms of the indemnification provisions in the 1987 Agreement, BWIP-AC (now Flowserve) agreed to defend and indemnify BWC for all products liability claims arising from BWIP/Byron Jackson products manufactured and sold prior to the Agreement's Effective Date (December 31, 1986). The only limitation on

## NEED FOR IMMEDIATE INJUNCTIVE RELIEF

6.      The present need for immediate injunctive relief results from a letter Burns

recently received from counsel for Flowserve. In the letter, Flowserve threatens to: (1) terminate

existing defense counsel and appoint new counsel of its own choosing in all pending Flowserve

asbestos cases; (2) direct such counsel to file third-party complaints for indemnity against Burns

in all pending cases; and (3) negotiate a "global resolution" of the pending cases which, if

implemented, would have the effect of prematurely exhausting or at least substantially reducing

the available insurance coverage. Flowserve threatens to implement this plan on March 1, 2006.[4]

7.      Burns seeks injunctive relief to maintain the status quo. Specifically, Burns

requests the Court to enter a temporary restraining order and preliminary injunction restraining

and enjoining Flowserve from:

(a) terminating or otherwise attempting to disrupt the national network of appointed

defense counsel who have been defending the asbestos claims and appointing its own

counsel in their stead;

(b) filing duplicative third-party indemnity actions against Burns in the thousands of

cases filed in various venues located throughout the United States; and

(c) attempting to exhaust or significantly diminish the available BWC insurance coverage

by negotiating a "global resolution" of all pending Flowserve asbestos claims.[5]

---

Flowserve's indemnification obligation was set forth in the subsequent Letter Agreement where
the parties agreed that Flowserve would be relieved of its indemnity obligation to the extent the
claims were covered by insurance carried by BWC.

[4]    A copy of Flowserve's February 17, 2006 letter which includes these threats is
attached hereto as Exhibit D. A copy of a similar letter Flowserve sent to certain of BWC's
umbrella insurers is attached as Exhibit E.

[5]    The BWC insurance coverage is also currently being accessed by other BWC related
entities which have also been inundated with tens of thousands of asbestos related products

8.    In seeking injunctive relief, Burn's does not intend to inhibit or impair in any respect Flowserve's ability to retain its own counsel to defend and/or settle any of the pending or future asbestos litigation at its own expense. However, to the extent Flowserve is claiming a right to indemnity from Burns under the 1987 and letter Agreement, it has no right to retain its own counsel and undertake the settlement or defense of the asbestos cases and then look to the BWC insurance coverage or Burns for reimbursement of such expenses. To be clear, Burn's remains willing to live up to the obligations under the Letter Agreement and provide a defense and indemnity to Flowserve to the extent of the insurance coverage carried by BWC. Should Flowserve elect to continue to take advantage of that indemnity obligation, it can only do so with counsel selected by Burns and without participating in the defense of the claims except at its own expense.

## INJUNCTIVE RELIEF IS WARRANTED UNDER THE FACTS OF THIS CASE

9.    As discussed and evidenced in the accompanying brief and affidavit, the requested relief should be granted for the following reasons:

(a)    Flowserve has no right to select or appoint its own counsel. Section 9.04(d) of the 1987 Agreement expressly provides "The Indemnifying Party shall, at its expense, undertake the defense of such Claims *with the attorneys of its own choosing* reasonably satisfactory to the Indemnified Party." To the extent Flowserve is claiming indemnification under either the 1987 Agreement or the Letter Agreement, only Burns as the Indemnifying Party has the right to select and appoint counsel.

---

liability claims. These entities include Borg Warner, Inc., a public company which manufactures automotive products, and York International Corporation, also a public company and the manufacturer of heating and air conditioning products. By far the greatest number of claims have been filed against Borg Warner, Inc. The claims allege liability arising out of the manufacture and sale of asbestos containing automotive friction products such as components used in clutches and brakes.

(b)     This Court has inherent equitable authority to enjoin the threat by Flowserve to file thousands of identical third-party indemnity actions in order to prevent a multiplicity of suits. The Court also has the express authority under the All Writs Act, 28 USC §1651, to issue injunctions in aid of its jurisdiction. As discussed more fully in Burns' accompanying brief, this includes the authority to enjoin similar threatened actions involving the issues before this Court concerning the parties rights and obligations with respect to BWC's insurance coverage and under the 1987 Stock Purchase and Letter Agreements.

(c)     Flowserve has no right to direct the defense of or compromise the underlying asbestos claims except if it chooses to do so at its own expense. Again, section 9.04(d) of the 1987 Agreement expressly provides "an Indemnified Party may participate in [the defense of claims], *but only at such Indemnified Party's expense*." In other words, if Flowserve elects to proceed with its strategy to negotiate a "global settlement" of all the pending asbestos claims, it certainly may do so, but it can only do so at its own expense and without impairing or diminishing BWC's insurance coverage.[6]

10.     Each of the required elements for the granting of a temporary restraining order and preliminary injunction is satisfied in this case:

(a)     If the requested injunctive relief is not granted, Burns and others who are relying on the BWC insurance coverage will suffer irreparable harm. Flowserve will proceed to discharge and substitute its own defense counsel in the thousands of pending asbestos

---

[6] In order to coerce 100% coverage in certain individual cases, Flowserve threatened to separately negotiate mass settlements with plaintiff's counsel and then in satisfaction of the settlement assign to the plaintiff all of Flowserve's rights under BWC's insurance coverage. See Mueller Affd. at ¶ 11. By this motion, Burns seeks to enjoin Flowserve from implementing a similar strategy on a "global" basis.

cases and thereby disrupt and interfere with the orderly and coordinated administration and defense of the claims. Appointed national and local counsel who have been defending these cases without incident for years have already received termination letters from Flowserve and are confused and concerned about their continued role in the litigation which has had a chilling effect. Because Burns and other BWC related entities are sometimes named in the same litigation as Flowserve concerning alleged injuries arising out of the same Byron Jackson product line, if Flowserve follows through with its threat there will be at least two sets of attorneys involved in the same case defending the same claims. This will not only result in a duplication of effort, but may cause inconsistencies and confusion which will invariably interfere with the proper and efficient defense of the claims. In short, if Flowserve has a dispute with Burns or the BWC insurers concerning indemnity or insurance coverage, those disputes can and should be resolved in this or the pending Illinois coverage litigation. Raising the issues in the underlying asbestos litigation will serve no parties' interests and will cause irreparable harm.

(b)     Similarly, permitting Flowserve to unilaterally attempt to negotiate "global" or individual settlements which purport to bind BWC's insurers or Burns, will only add to the confusion and disruption of the orderly administration of the underlying cases and most likely impact other BWC related entities' ability to reasonably settle other BWC related asbestos claims.

(c)     Burns will also suffer irreparable harm if forced to litigate the very issues before this court in a multitude of state court actions. As other courts have determined, the divestiture of this Court's full and complete authority to adjudicate the claims originally

raised before it by the parties constitutes a threat of irreparable harm warranting injunctive relief.

(d)    Burns is likely to succeed on the merits of the claims raised. The terms of the 1987 and Letter Agreements are clear and unambiguous. Flowserve's predecessor BWIP-AC agreed to provide complete defense and indemnity for all products liability claims arising out of products manufactured and sold by BWIP and it Byron Jackson division prior to the Effective Date of the 1987 Agreement. The Letter Agreement modified this obligation but only to the extent the claims were covered by insurance carried by BWC. To the extent BWC's insurance does not cover the claims in full, Flowserve remains responsible for uninsured defense costs and any uninsured settlements, expenses and losses. All of the pending asbestos claims are properly characterized as products liability claims. Flowserve's attempt in paragraphs 19-37 of its complaint to recast the claims as "environmental claims" which trigger the "environmental-related indemnifications" found in Section 9.04(a)(ii)(E) of the 1987 Agreement is specious, contrary to its prior actions and statements, and is not supported by the language of the Agreement.

(e)    Flowserve cannot reasonably contend that any harm will befall it if the requested injunctive relief is granted. All the injunction will require is that Flowserve adhere to the express terms of the 1987 Agreement which Flowserve itself is attempting to enforce in this Court, and to litigate its claims against the defendants in the forum in which it elected to initiate this litigation.

(f)    Consideration of the public interest weighs heavily in favor of the granting injunctive relief under the facts of this case. The actions threatened by Flowserve will

impact the orderly administration of thousands of pending cases in numerous courts throughout the United States. Permitting Flowserve to discharge and replace the current network of nationwide defense counsel and to file thousands of duplicative third-party indemnity actions will undoubtedly result in delay and place an unnecessary additional burden on numerous state courts. The public interest is served by the preservation of judicial economies, and therefore the public interest favors prohibiting Flowserve from proceeding as threatened.

11.    In accordance with D. Del. L.R. 7.1.1 Burns' made an effort to reach an agreement with Flowserve on the matters that are the subject of this motion. *See* Letter to Flowserve's counsel dated February 22, 2006 attached hereto as Exhibit F. The parties also participated in a conference call on Friday, February 24, 2006 to discuss the issues. No resolution could be reached.

For all the above and foregoing reasons, defendant Burns International Services Corporation respectfully requests the Court to enter a temporary retraining order and a preliminary injunction restraining and enjoining plaintiff Flowserve Corporation and all of its subsidiaries and affiliates from (a) terminating and replacing national and local defense counsel situated throughout the United States who are currently defending the thousands of asbestos product liability claims filed against Flowserve and which are the subject of this dispute unless Flowserve undertakes to pay such replacement counsel exclusively with its own funds and not seek reimbursement from BWC insurers or Burns; (2) filing third-party actions against Burns in the underlying asbestos lawsuits seeking indemnification from Burns for its asbestos liabilities on the same basis as asserted in this proceeding; and (3) negotiating a "global" or other

settlements of its asbestos liability and using or attempting to use the BWC insurance coverage to fund such settlements.

MURPHY SPADARO & LANDON

/s/ Francis J. Murphy
Francis J. Murphy, I.D. No. 223
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel: (302) 472-8100
Fax: (302) 472-8135
E-Mail: Fmurphy@msllaw.com

Michael H. Moirano
NISEN & ELLIOTT, LLC
200 West Adams Street, Suite 2500
Chicago, Illinois 60606
Tel: (312) 696-2508
Fax: (312) 346-9316
E-mail: mmoirano@nisen.com

Attorneys for Defendant Burns
International Services Corporation

Dated: February 27, 2006

10

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

FLOWSERVE CORPORATION,     )
         )
         )    C.A. No.: 04-1294 JJF
   Plaintiff,    )
         )
   v.    )
         )
BURNS INTERNATIONAL SERVICES    )
CORPORATION and BORG-WARNER    )
CORPORATION,    )
         )
   Defendants.    )
         )

## CERTIFICATE OF SERVICE

I, Francis J. Murphy, Esquire, do hereby certify that on this 27th day of February, 2006, I have caused the following documents to be served in the manner indicated on the parties listed below: **DEFENDANT/COUNTERCLAIMANT BURNS INTERNATIONAL SERVICES CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMANARY INJUNCTION.**

**By Electronic Filing**
Danielle K. Yearick, Esquire
Tybout, Redfearn & Pell
300 Delaware Avenue, 11th Floor
P.O. Box 2092
Wilmington, DE 19899-2092

**By First Class Mail**
William Mahoney, Esquire
Ted McCullough, Esquire
Erich Gleber, Esquire
Segal McCambridge Singer & Mahoney, Ltd.
805 Third Avenue, 19th Floor
New York, NY 10022

**By First Class Mail**
Christopher M. Bechhold, Esquire
Thompson Hine, LLP
312 Walnut Street, 14th Floor
Cincinnati, OH 45209

129281

MURPHY SPADARO & LANDON

/s/ Francis J. Murphy
Francis J. Murphy, I.D. # 223
1011 Centre Road, Suite 210
Wilmington, DE 19805
Office (302)472-8100
Fax    (302)472-8135
Email  fmurphy@msllaw.com

129281