## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

| | |
|---|---|
| FLOWSERVE CORPORATION ) | |
| ) | |
| ) | C.A. No.:  04-1294 JJF |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BURNS INTERNATIONAL SERVICES ) | |
| CORPORATION and BORG-WARNER ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

_____ )

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT/COUNTERCLAIMANT BURNS INTERNATIONAL SERVICES CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendant/Counterclaimant Burns International Services Corporation ("Burns") has moved, pursuant to Fed. R. Civ. P. 65,  for a temporary retraining order and preliminary injunction to enjoin defendant  Flowserve Corporation ("Flowserve") from implementing a threat to (a) terminate and replace national and local defense counsel situated throughout the United States who were appointed to defend the more than 3500 pending Byron Jackson asbestos product liability claims which are the subject of the indemnity claims in this dispute; (2) cause newly appointed counsel to file thousands of third-party actions against Burns in the underlying asbestos claims seeking indemnification from Burns for its asbestos liabilities on the same basis that Flowserve is seeking indemnity in this proceeding; and (3) negotiate a "global" or other settlements of the underlying  asbestos litigation and using Burn's insurance coverage to fund such settlements.  This memorandum is submitted in further support of Burns' motion requesting injunctive relief.

129275                                    1

**INTRODUCTORY STATEMENT**

Presently pending before this Court are plaintiff/counter-defendant Flowserve's Complaint against defendant Burns International Service Corporation as well as Burns' counterclaim.  In this action, the parties seek a declaratory judgment regarding the rights and duties of each pursuant to certain insurance indemnification clauses contained in a Stock Purchase Agreement entered into by the parties and/or their predecessors in 1987 (the "1987 Agreement") and a subsequent letter agreement entered into by the parties (the "Letter Agreement").  In order to demonstrate the need for the injunctive relief requested, a brief statement of the factual background of this case is necessary.

From approximately 1955 until 1987, defendant Borg-Warner Corporation ("BWC") manufactured and sold Byron Jackson brand industrial pumps through its Byron Jackson Division and/or its subsidiary Borg-Warner Industrial Products, Inc. ("BWIP").  In 1987 all of the businesses of Borg-Warner's Byron Jackson Division were transferred to BWIP, or to wholly owned subsidiaries of BWIP.  Thereafter, pursuant to the 1987 Agreement, all of the stock of BWIP was sold by BWC to BWIP Acquisition Corporation ("BWIP-AC") - which is the alleged predecessor-in-interest of plaintiff Flowserve.  Subsequently, on May 1, 1987, BWC and BWIP-AC entered into the Letter Agreement which purports to modify, in part, the parties' indemnification obligations under the terms of the 1987 Agreement.

Since the closing of the 1987 Agreement, BWIP, Flowserve, Borg-Warner and Burns have been named as defendants in numerous state court asbestos-related product liability lawsuits ("Underlying Asbestos Cases") arising out of the manufacture and sale of Byron Jackson industrial pumps.  In the present suit, both parties seek this Court's determination of

their respective rights and duties regarding indemnification for the Underlying Asbestos Cases, pursuant to the 1987 and Letter Agreements.

Burns has at all relevant times denied any obligation to provide Flowserve indemnification for the asbestos claims under the 1987 Agreement. However, for years, Flowserve has been tendering asbestos cases to Burns pursuant to the terms of the Letter Agreement. Burns in turn has been forwarding these cases to the appropriate insurance carriers who, until recently, had been providing 100% of the defense and indemnity for such claims. The defense has been provided through a nationwide network of local defense counsel operating under the supervision of a National Coordinating Counsel. This network of experienced asbestos defense counsel was established by the insurers providing coverage, has been approved by Burns, and has been successfully handling the Flowserve asbestos claims for many years.

On September 24, 2004, Flowserve filed suit in this Court seeking declaratory relief. Burns, recognizing this Court's jurisdiction over the parties to this dispute and additionally agreeing that this Court served as the proper forum for the issues raised by Flowserve's complaint, filed its answer thereto. Additionally, Burns filed a counter-claim against Flowserve, specifically alleging this Court's jurisdiction over the claims asserted. In the present suit, both parties seek this Court's determination of their respective rights and duties regarding indemnification in the Underlying Asbestos Cases, pursuant to the 1987 sale of stock from Borg-Warner to BWIP and the subsequent Letter Agreement between these parties.

The present need for immediate injunctive relief results from a letter Burns recently received from counsel for Flowserve in which Flowserve threatens to: (1) appoint new counsel of its own choosing in all pending asbestos cases; (2) direct such counsel to file third-party complaints for indemnity against Burns in each of the pending Underlying Asbestos Cases; and

(3) negotiate a "global resolution" of all Underlying Asbestos Cases which, if implemented, would have the effect of prematurely exhausting or substantially reducing the available insurance coverage. Flowserve threatens to implement this plan on March 1, 2006.[1] Injunctive relief is necessary in order to preserve the status quo, and to shield Burns from the irreparable harm it will suffer if Flowserve is not precluded from engaging in this threatened conduct. Each of the required elements for the granting of a preliminary injunction is satisfied in this case.

### STANDARD OF REVIEW

In determining whether to issue a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, courts must consider (1) whether the movant has shown a reasonable probability of success on the merits, (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party, and (4) whether granting the preliminary relief will be in the public interest. *Marsh v. Delaware State University,* 2006 WL 141680, *2 (January 19, 2006, D. Del.)(Farnan, J.); citing *Allegheny Energy, Inc. v. DOE, Inc.,* 171 F.3d 153 (3d Cir.1999); *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) The Third Circuit has recognized that "while these factors structure the inquiry, however, no one aspect will necessarily determine its outcome, rather, proper judgment entails a 'delicate balancing' of all elements." *Constructors Ass'n of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978) In examining the "likelihood of success" requirement, the Third Circuit has held that the possibility that the court may decide the right to permanent relief adversely to plaintiff does not preclude it from granting the temporary relief. *Bergen Drug Co. v. Parke, Davis & Co.*, 307

---

[1] A copy of Flowserve's February 17, 2006 letter including these threats is attached to Burns' Motion as Exhibit D. A copy of a similar letter Flowserve sent to certain of BWC's umbrella insurers is attached thereto as Exhibit E.

F.2d 725, 727 (3d Cir.. 1962)  Rather the Third Circuit has determined that  "on an application for preliminary injunction, the plaintiff need only prove a prima facie case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc*. 276 F.3d 160, 173 (3d. Cir. 2001) Moreover in *American Smelting & Refining Co. v. Pennzoil United, Inc*. 295 F.Supp. 149, 152 (D. Del.1969), the court recognized that the "likelihood of success" standard is satisfied where the issues presented in the underlying dispute are "serious" or "substantial," holding:

> To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.

See also *U.S. v. Pennzoil Co*.,252 F.Supp. 962, 972 (3d Cir. 1965)(holding "it is only necessary in a preliminary injunction proceeding for the plaintiff to raise substantial questions which go to the merits of the case."); see also *Semmes Motors, Inc. v. Ford Motor Co*. 429 F.2d 1197, 1205-06 (2nd Cir. 1970)(holding "in light of the imbalance of hardship . . .it is necessary only that [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them."); see also *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc*. 119 F.3d 393, 400 (6th Cir.1997)(same); see also *Walmer v. U.S. Dept. of Defense* 52 F.3d 851, 854 (10th Cir.1995)(same) *Standard Havens Products, Inc. v. Gencor Industries, Inc*. 897 F.2d 511, 513 (Fed. Cir.1990)(same).

## ARGUMENT

The facts of this case warrant the Court's exercise if its authority to grant the injunctive relief requested: (1) Burns will suffer irreparable harm if the requested relief is not granted; (2) it is reasonably likely that Burns will ultimately succeed on the merits of this case; (3) Flowserve

will suffer no countervailing harm by the granting of the requested relief; and (4) the public interest favors enjoining Flowserve from engaging in any of its threatened courses of conduct.

If the requested injunctive relief is not granted and Flowserve is thereby permitted to undertake any of the three threatened courses of conduct, Burns will invariably suffer irreparable harm.  As an initial matter, if Flowserve discharges national defense counsel and substitutes its own counsel in the thousands of Underlying Asbestos Cases, this will disrupt and interfere with the orderly and coordinated administration and defense of these claims.  Additionally, because Burns and other BWC related entities (who have no intention of terminating the existing network of defense counsel) are sometimes named in the same litigation as Flowserve for the same product claims, there will be two sets of attorneys involved in the same case defending the same claims.  This will not only result in a duplication of effort but also potential inconsistencies and confusion which will invariably make the proper defense of the claims more difficult and problematic.  Secondly, if Flowserve is permitted to initiate the threatened third-party claims against Burns in the thousands of Underlying Asbestos Cases, Burns will be forced to litigate the very issues before this court in a multitude of state court actions, and the ultimate determination of these issues by a state court would be binding in the present action.  As other courts have determined, the divestiture of this Court's full and complete ability to adjudicate the claims originally raised before it by the parties with full authority and flexibility not only warrants the court's exercise of its statutory authority to enjoin threatened state court actions under All Writs Act, this same threat also constitutes an "irreparable harm" for purposes of a preliminary injunction analysis.  Lastly, permitting Flowserve to unilaterally attempt to negotiate "global" or individual settlements which purport to bind BWC's insurers or Burns, will only add to the confusion and disruption of the orderly administration of these cases and may impact

settlements, or the ability to reasonably settle, other BWC related asbestos claims, thus causing an irreparable harm which the injunctive relief requested seeks to avoid .[2]

Burns is also reasonably likely to succeed on the merits of the claims raised. The terms of the 1987 and Letter Agreements are clear and unambiguous. Flowserve's predecessor BWIP-AC agreed provide the defense and indemnity for all products liability claims arising out of products manufactured and sold by BWIP and it Byron Jackson division prior to the December 31, 1986, the Effective Date of the 1987 Agreement. The Letter Agreement modified this obligation but only to the extent the claims were covered by insurance carried by BWC.

All of the claims involved in the Underlying Asbestos Cases are properly characterized as products liability claims. Flowserve's attempt in paragraphs 19-37 of its complaint to recast the claims as "environmental claims" which trigger indemnification liability under the "environmental-related indemnifications" found in Section 9.04(a)(ii)(E) of the 1987 Agreement is specious, contrary to their prior actions and statements, and is not supported by the language of the Agreement. For these reasons, it is, at the very least, reasonably likely that Burns will ultimately succeed on the merits of this case.

Flowserve cannot reasonably claim that any harm will befall it if the requested injunctive relief is granted. Flowserve would not be harmed by requiring that it continue to be represented by existing defense counsel in the Underlying Asbestos Cases, which have been provided through a nationwide network of local defense counsel operating under the supervision of a

---

[2]  The BWC insurance coverage is also currently being accessed by other BWC related entities which have been inundated by tens of thousands of asbestos related products liability claims. The other BWC related-entities which are relying on the BWC coverage include Borg Warner, Inc., a public company which manufactures automotive products, and York International Corporation, also a public company and the manufacturer of heating and air conditioning products. By far the greatest number of asbestos claims has been filed against Borg Warner, Inc. for alleged liability arising out of the manufacture and sale of automotive friction products such as components of clutches and brakes.

National Coordinating Counsel, experienced in asbestos defense matters that has been successfully handling the Flowserve asbestos claims for many years.[3]  Second, precluding Flowserve from naming Burns as third-party defendants in the Underlying Asbestos Cases would only require that Flowserve litigate its claims against Burns in a single action in the precise forum which Flowserve itself elected to initiate this litigation - - Delaware - - rather than in a multitude of suits in other jurisdictions and therefore would not result in any irreparable harm. Third, Flowserve will not suffer any harm if precluded from unilaterally negotiating any "global" settlement" or individual settlements which purport to bind BWC's insurers or Burns.

Lastly, Burns submits that consideration of the public interest weighs heavily in favor of the granting injunctive relief under the facts of this case.  In the interest of preserving judicial economies, public interests undoubtedly favors: (1) prohibiting Flowserve from appointing new counsel, which will lead not only to duplicative efforts by this appointed counsel and the exiting national appointed defense network, which will lead to potential inconsistencies and will generally impair the orderly and efficient adjudication of the Underlying Asbestos Cases; and (2) prohibiting Flowserve from vexatiously initiating multiple lawsuits on identical issues before numerous courts thereby wasting judicial resources, in a calculated and tactical effort to subject Burns to unnecessary and burdensome litigation.  With regard to Flowserve's threatened negotiation of a "global" or individual settlement, given that negotiation and/or execution of any settlement which purports to bind BWC's insurance carriers or Burns may prematurely exhaust or diminish coverage or frustrate settlements, or the ability to reasonably settle, other BWC

---

[3]  Burns does not seek to inhibit or impair in any respect Flowserve's ability to retain its own counsel to defend and/or settle any of the pending or future asbestos litigation so long as the cost to defend and settle the litigation is borne 100% by Flowserve and Flowserve does not seek to recover, or represent to any third-parties that they may recover, from either Burns or BWC's insurers.

related asbestos claims, the public interest favors requiring the indemnification issues raised in the present action to be fully and completely adjudicated prior to the enactment of any settlement which purports to bind any of the parties to this dispute.

For these reasons, set forth in greater detail below, Burns requests this Court to grant injunctive relief in order to maintain the status quo, and to protect Burns and other BWC entities from the irreparable harm that would invariably result from Flowserve's threatened conduct.

## I.     BURNS WILL SUFFER IRREPARABLE HARM IF THE REQUESTED INJUNCTIVE RELIEF IS NOT GRANTED.

### A.     Replacing the National Appointed Network of Defense Counsel with Flowserve's Appointed Counsel Would Undermine the Orderly Adjudication of the Underlying Asbestos Cases and Otherwise Cause Burns  Irreparable Harm.

As stated, there are presently pending more than 3500 Underlying Asbestos Cases naming Flowserve and/or Burns or other BWC related entities.  For years, Flowserve has been forwarding these asbestos claims to Burns pursuant to the terms of the Letter Agreement.  Burns in turn has been tendering the cases to the appropriate insurance carriers for defense and indemnity.  The defense in these underlying claims has been provided through a nationwide network of National Coordinating Counsel and local defense counsel.  This network of experienced asbestos defense counsel was established by the insurers providing coverage with Burns' consent and has been successfully handling the Flowserve asbestos claims for many years.  Flowserve's threat to discharge the national network of defense counsel would undoubtedly subject Burns to irreparable harm, requiring this Court to exercise its injunctive powers to prohibit this conduct.

At the outset it is important to note that under the express and unequivocal terms of the 1987 Agreement, Flowserve has no right to select or appoint its own counsel.  Section 9.04(d) of

129275                                    9

the 1987 Agreement expressly provides "The Indemnifying Party shall, at its expense, undertake the defense of such Claims *with the attorneys of its own choosing* reasonably satisfactory to the Indemnified Party."  To the extent Flowserve is claiming indemnification under either the 1987 Agreement or the Letter Agreement, only Burns, as the Indemnifying Party, has the right to select and appoint counsel.

But more important for purposes of a preliminary injunction analysis, the requested injunction prohibiting Flowserve from appointing its own counsel in the underlying Asbestos cases is necessary to protect Burns from irreparable harm.  Flowserve's appointment of new counsel will undermine the order and efficiency of the underlying proceedings.  Currently appointed national and local counsel who have been defending these cases without incident for years have already received notice from Flowserve that they are being terminated effective March 1, 2006 and, as a consequence, are unsure of their continued role in the underlying litigation.   As a result these communications from Flowserve, defense counsel has been distracted from the focus and attention needed to properly administer the defense of the Underlying Asbestos Cases.

Moreover, because Burns and other BWC related entities who have no intention of terminating the existing network of defense counsel and are sometimes named in the same litigation as Flowserve for the same product claims, there will be two sets of attorneys involved in the same case defending the same claims.  This will not only result in a duplication of effort but also potential inconsistencies and confusion which will invariably make the proper defense of the claims more difficult and problematic.  In sum, the national appointed network of defense counsel has been administering and defending the underlying asbestos claims in a consistent, organized, and competent manner, and to disrupt this system of efficient and orderly defense,

resulting in a duplication of efforts and potential inconsistencies, would result in irreparable harm to Burns and other BWC entities named in the same cases.

**B.**    **Burns Will Suffer Irreparable Harm if Flowserve is not Enjoined from Initiating Multiple, Vexatious Lawsuits Against Burns in the Underlying Asbestos Cases.**

Burns will also suffer irreparable harm if Flowserve is not enjoined from naming Burns in the thousands of Underlying Asbestos Cases.  As an initial matter, this Court has equitable and statutory authority to grant this requested relief on three independent bases: (1) the Court's general equitable authority to prevent a multiplicity of suits; (2) the *Princess Lida* doctrine, which requires that the court which first retains *in rem* or *quasi in rem* jurisdiction over an identifiable res must retain jurisdiction to the exclusion of any other foreign court in which a suit affecting the same res is subsequently filed, is applicable under the facts of this case and warrants the requested injunctive relief; and (3) under the All Writs Act, codified at 28 U.S.C. 1651(a) as such relief is necessary in aid of this Court's jurisdiction over this controversy.  Specifically, because this Court will effectively be divested of its ability to fully and completely adjudicate the claims presently pending before it if Flowserve proceeds with its threatened initiation of claims against Burns on the same issues presently pending before this Court in multiple state court actions, the circumstances of this case warrant this Court's exercise of this equitable and statutory authority.  Moreover, courts have recognized that divestiture of this Court's full and unfettered authority and flexibility to adjudicate the claims presently pending before it additionally constitutes an "irreparable harm" for purposes of a traditional preliminary injunction analysis.

**(i)**    **This Court has the equitable authority to enjoin Flowserve from filing thousands of duplicative third-party actions in order to prevent a multiplicity of suits.**

A court of equity may grant an injunction to avoid multiple actions at law if the actions involve the same issues of law and fact so that the decisions in one action will be determinative of all. *Bruce v. Martin*, 680 F.Supp. 616, 622 (S.D.N.Y.1988); citing *Lee v. Bickell,* 292 U.S. 415, 54 S.Ct. 727, 78 L.Ed. 1337 (1934).  *See also Seattle Totems v. NHL*, 652 F.2d 852, 856 (9th Cir. 1981)(adjudicating same issues in Canadian and American litigations "is likely to result in unnecessary delay and substantial inconvenience and expense to the parties and the witnesses. Moreover, separate adjudications could result in inconsistent rulings or even a race to judgment."); *Cargill Inc. v. Hartford Accident & Indemnity Co.,* 531 F.Supp.710, 715 (D. Minn. 1982)("An injunction is in order when adjudication of the same issue in two separate actions will result in unnecessary delay, substantial inconvenience and expense to the parties and the witnesses, and where separate adjudications could result in inconsistent rulings or a race to judgment.")   Flowserve's pursuit of thousands of claims against Burns in the state court Underlying Asbestos Cases will result in precisely the type of delay, inconvenience and expense, as well as possible inconsistent rulings or a race to judgment which these courts found would support injunctive relief against such multiple proceedings.

> **(ii)     This Court has retained exclusive *in rem* or *quasi in rem* jurisdiction over the insurance proceeds at issue in this litigation.**

At issue in the present case are the respective rights and obligations of the parties to indemnification in the Underlying Asbestos cases.  As part of this overall inquiry, this Court has been asked to adjudicate whether and to what extent Flowserve may access the available insurance coverage under the policies carried by BWC.  Burns submits that the available insurance coverage constitutes a "res" over which this Court has exercised *in rem* or *quasi in rem* jurisdiction.  Thus, under the *Princess Lida* doctrine, this Court has exercised exclusive jurisdiction over this res and no court in which any subsequent action regarding this res is filed

(as threatened by Flowserve) can exercise control over the available insurance proceeds, thus warranting the injunctive relief requested.

In *Princess Lida*, the United States Supreme Court held that the court which first exercises jurisdiction over property must maintain exclusive jurisdiction over that property and any court in which a subsequent action is filed, which would require the second court to assert control over the same property must yield jurisdiction to the first court in which the action was filed. *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939)  The Third Circuit has recognized that *Princess Lida* applies when: (1) the litigation in both the first and second fora are *in rem* or *quasi in rem* in nature, and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court. *Dailey v. National Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993) Moreover, the court in *Princess Lida* specifically held:

> [T]he principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.

305 U.S. at 466.

Courts in other jurisdictions have recognized that insurance proceeds could be deemed a res over which *in rem* or *quasi in rem* jurisdiction could be asserted. See e.g. *In re Reliance Group Holdings, Inc. Securities Litigation*, 2004 WL 943545 (S.D.N.Y. 2004); *Allstate Life Ins. Co. v. Philips*, 2000 WL 829357, *1 (S.D.Ala.2000)(exercising jurisdiction over the "*res*" identified as "insurance policy proceeds.")  Burns submits that the insurance proceeds upon which this dispute is centered similarly constitute a "*res*" over which this Court, as the court in

which the dispute over these insurance proceeds was first filed, has retained *in rem* or *quasi in rem* jurisdiction.   Pursuant to the principle espoused in *Princess Lida*, as recognized under Third Circuit jurisprudence, this exercise of jurisdiction over the *res* at issue in this case precludes any other court from adjudicating claims which would require that court to assert control over the insurance proceeds at issue in this case.  As other courts have recognized, the applicability of the *Princess Lida* doctrine warrants an injunction of state court proceedings.  See *Administrative Committee of Wal-Mart Stores, Inc. V. Varco*, 2002 WL 47159, *3 (N.D. Ill. 2002)   Because this Court has exercised *in rem* or *quasi in rem* jurisdiction over the insurance proceeds at issue in this litigation, the threatened initiation of claims against Burns in the Underlying Asbestos Cases which would require the state courts to assert control over the insurance proceeds at issue in this litigation should be enjoined in accordance with the *Princess Lida* doctrine.

### (iii)    The requested injunction is statutorily authorized under the All Writs Act.

In addition to its authority under the *Princess Lida* doctrine, this Court additionally has express statutory authority to issue the requested injunction prohibiting Flowserve from filing any claims against Burns in the Underlying Asbestos Cases under the All Writs Act.  Federal courts have been granted the authority under the All Writs Act to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651 (1982); see also *In re School Asbestos Litigation,* 1991 WL 61156, *1 (E.D.Pa.1991)  as one court states:

> The basic and underlying principle of law has long prevailed that a court by necessity has the power and authority to issue all writs and orders to preserve and maintain jurisdiction of the principal cause of action as well as the parties thereto. This doctrine has been deeply imbedded into a federal jurisprudence, and through the years has nurtured and fed life-blood to the federal judicial organism.

*U.S v. Western Pa. Sand & Gravel Ass'n*,  114 F.Supp. 158, 159 (W.D. Pa. 1953)

Pursuant to the All Writs Act, a federal court may enjoin state court proceedings not yet determined by the federal court in order to preserve the federal court's "flexibility and authority" to determine the issues presently pending before it. *Bruce v. Martin,* 680 F.Supp. 616, 621 (S.D.N.Y.,1988)   As one court explains:

> The All-Writs Act permits a district court to enjoin actions in state court where necessary to prevent relitigation of an existing federal judgment. . .  Exceptions to the existing judgment requirement may be proper where the preservation of the federal court's jurisdiction or authority over an ongoing matter justifies the injunction of an ongoing state proceeding even before a federal judgment has been entered. *The Supreme Court has instructed that the "necessary in aid of" jurisdiction exception to the Anti-Injunction Act is properly invoked in order to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide a case.*

*In re School Asbestos Litigation* 1991 WL 61156, 1 (E.D.Pa.1991): citing as dicta *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 295 (1970)  Whether viewed as authorized under the All Writs Acts or, as in *In re School Asbestos Litigation* by the "necessary in aid of jurisdiction" exception to the Anti-Injunction Statute codified at 28 USC § 2283 (to the extent the provisions of the latter are relevant to the present inquiry), this Court is authorized to grant the requested injunctive relief as it is necessary in aid of this Court's jurisdiction over the issues raised in this case.[4]

---

[4] Burns submits that this Court's consideration of the propriety of granting the requested injunction prohibiting Flowserve from initiating claims against Burns in the Underlying Asbestos Cases should be limited to consideration of its authority under the All Writs Act without regard to the provisions of the Anti-Injunction Act.  As an initial matter, the threatened claims have not yet been initiated against Burns and therefore cannot be deemed "pending" and as such,  the provisions of the Anti-Injunction Statute are inapplicable in the present case. *Dombrowski v. Pfister,* 380 U.S. 479, 484 n.2 (1965)*; In re Diet Drugs*, 282 F.3d 220, 233 (3d Cir. 2002)  Secondly, to the extent that the requested relief could be deemed as enjoining pending state court proceedings, thus implicating the provisions of the Anti-Injunction Act, because Burns is not presently a party in any of the Underlying Asbestos Cases, the "stranger to the underlying action" exception to this statute is applicable. *Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo*, 988 F.2d 252, 264 (1st Cir. 1993); citing *County of Imperial v. Munoz,* 449 U.S. 54, 59-60, 101 S.Ct. 289, 292-93, 66 L.Ed.2d 258 (1980).   Nevertheless, even if it were determined that the provisions of the Anti-Injunction Act could be deemed applicable to the

Flowserve's pursuit of claims against Burns in the state court Underlying Asbestos Cases would effectively abrogate this Court's full authority and flexibility in adjudicating the issues presently pending before it.  Specifically, prior rulings by state courts that decline to stay such actions may be introduced here to preclude this court from considering a given claim or factual issue. *Id*.; see also *Bruce v. Martin*, 680 F. Supp. 616 (S.D.N.Y.1988)  In order to protect this Court's jurisdiction over the issues raised in this case, the injunctive relief requested is both statutorily authorized, and required.

Courts have additionally recognized that an injunction prohibiting a litigant from proceeding in state court actions is required where, as in the present case, a determination in the state court action will wholly deprive a federal court of its jurisdiction over a declaratory judgment action.   For instance, in *Oneida Indian Nation of New York v. Madison County*, 376 F.Supp.2d 280 (N.D.N.Y. 2005), the court specifically recognized that where a federal court's jurisdiction over a declaratory action would be effectively abrogated by a state court's determination of issues pending before the federal court, an injunction prohibiting further proceedings in state court is warranted under both the All Writs Act, and the Anti-Injunction Act. In *Oneida*, the plaintiffs brought a declaratory judgment action challenging the defendant county's initiation of state court foreclosure proceedings and sought a preliminary injunction to

---

present inquiry it is of little consequence as the exception under that Act for injunctions "necessary in aid" of the Court's jurisdiction is satisfied for precisely the same reasons that the injunction is warranted under the All Writs Act.  As the Third Circuit stated in *In re Diet Drugs*, 282 F.3d 220 at 239:

> Insofar as it also permits writs "appropriate in aid" of jurisdiction, the court's authority to issue writs is, if anything, broader than the exception contained in the Anti-Injunction Act. But since the . . .  language . . .is construed similarly in both the All Writs Act and the Anti-Injunction Act, a finding that an injunction is 'necessary in aid' of jurisdiction for purposes of one these statutes implies its necessity for purposes of the other.

enjoin these proceedings.  The district court determined that the injunction was necessary "in aid of the court's jurisdiction" in that a determination in the underlying proceedings would render the issue raised before the federal court - the validity of the initiation of such proceedings - effectively moot, thereby depriving the court of its jurisdiction to determine the issue and render declaratory judgment thereupon.  As the *Oneida* court states:

> The County admits that if the state court were to order foreclosure on July 14, 2005, the issue of whether foreclosure were permissible (to be decided in this case) would be moot. Thus, permitting the state court foreclosure action to proceed would deprive this court of its jurisdiction to decide the complex and significant issues presented in this case . . . In order to preserve the ability to a reach a decision in this case, over which jurisdiction exists, it is necessary to enjoin the County from pursuing foreclosure in state court with regard to any Nation-owned property.

*Id.* at 283.  As in *Oneida*, the threatened state court actions against Burns would deprive this Court of its jurisdiction to determine the issues raised before it on the parties' claims for declaratory judgment.  As such, this Court should issue the requested injunction prohibiting Flowserve from filing any claim against Burns in the Underlying Asbestos Cases relating to the issues presently pending before this Court, as such an injunction is "necessary in aid of" this Court's jurisdiction over the present controversy.

Additionally, courts have recognized that injunctions under the All Writs Act are warranted where, as in the present case, the injunction is necessary to avoid a *multiplicity* of suits. See e.g. *Sotheby's, Inc. v. Garcia*, 802 F.Supp.1058, 1066 (S.D.N.Y.,1992) (recognizing the "desirability" of an injunction prohibiting "overlapping lawsuits" on the basis that it "prevents the multiplicity of actions and reduces the possibility of inconsistent determinations.") It is significant that in the present case, the injunction sought would prevent the initiation of claims against Burns in *thousands* of state court actions.  As such, this case is distinguishable from cases wherein a party seeks to avoid duplicative litigation in a singular concurrent state

court action.  Indeed, the litigation efforts Burns seeks to avoid and more importantly, the

judicial resources which would be preserved, through the issuance of the requested injunction,

are substantial.

Lastly, Burns notes that the requested injunction would not enjoin or otherwise impact

the proceedings in the Underlying Asbestos Cases.  Rather, the injunction sought would apply

directly and exclusively to preclude Flowserve from naming Burns as a third-party defendant in

these actions.  While Burns recognizes that the provisions of the Anti-Injunction Statute apply

with equal weight and force to injunctions directed at the conduct of parties as to injunctions

directed at the state court itself, the Anti-Injunction Act is inapplicable under the facts of this

case for the reasons stated herein.[5]

In sum, this Court is statutorily authorized pursuant to the All Writs Act to issue the

requested injunction prohibiting Flowserve from initiating any claims against Burns in the

Underlying Asbestos Cases relating to the issues which are presently pending before this Court,

and the exercise of this authority is warranted under the fact of this case.[6]

---

[5]  As stated below, the fact that the provisions of the Anti-Injunction Statute are presently inapplicable to this inquiry serves as one of the basis upon which the requested injunction is immediately necessary to avoid irreparable harm.  Specifically, at the present juncture, the threatened state court actions have not yet been filed. Once filed, this Court's ability to enjoin Flowserve from proceedings against Burns in the underlying Asbestos Cases may be substantially limited by virtue of the applicability of the narrowly construed Anti-Injunction Statute.

[6] Burns notes that courts have recognized that once statutory authority to issue an injunction under the All Writs Act is established, the court need not determine whether the movant has satisfied the traditional requirements for preliminary injunctive relief. See e.g. *In re Painewebber Ltd. Partnerships Litigation* 1996 WL 374162, *4 (S.D.N.Y. 1996); citing  *In re Johns-Manville Corp.,* 27 F.3d 48, 49 (2d Cir.1994)  Nevertheless, in addition to this Court's express statutory authority under the All Writs Act to issue the requested injunction prohibiting Flowserve from initiating claims against Burns in the Underlying Asbestos Cases,  the traditional requirements for preliminary injunctive relief are satisfied under the facts of this case, as stated herein.

     **(iv)**    **The divestiture of this Court's full authority and flexibility to determine the issues raised in this case would cause Burns irreparable harm.**

As demonstrated in the foregoing sections, the threatened initiation of proceedings against Burns in the Underlying Asbestos Cases would undermine this Court's flexibility and authority to fully and completely adjudicate the issues raised in this case.  Moreover, Burns would additionally suffer irreparable harm if this Court is divested of its full and unfettered authority to render a complete and final adjudication of the claims asserted in the complaint and counterclaim through the initiation of the threatened state court proceedings.  In *Bruce v. Martin*, *supra*, plaintiffs, a group of investors who brought suits alleging fraud and securities violations against the limited partnerships with whom they had invested, sought a preliminary injunction prohibiting the defendants from initiating collections suits for amounts allegedly owed by plaintiffs on promissory notes executed in favor of defendants.  The court held that the plaintiffs had satisfied the "irreparable injury" standard for injunctive relief as the threatened state court actions would impair the court's "ability to afford the parties full, final and complete relief." *Id.* 680 F.Supp at 622. To this end, the court held:

> If the defendants are permitted to commence separate suits . . . the plaintiffs will be required to assert the same defenses under federal and state law that they have asserted as claims here. Prior rulings by state courts that decline to stay such actions may be introduced here to preclude this court from considering a given claim or factual issue. Under such circumstances, the commencement of numerous separate actions in state courts will so interfere with the proceedings in this court "as to seriously impair this court's flexibility and authority to decide" this case. Accordingly, <u>the plaintiffs have satisfied the irreparable injury standard by showing the destructive effect that scores of fragmented state actions on the issues raised here would have on this court's ability to afford the parties full, final and complete relief.</u>

(internal citations omitted) (emphasis added)   As recognized in *Bruce*, the fact that the threatened litigation would effectively undermine this Court's full authority and flexibility to

adjudicate the claims presently pending before it demonstrates that Burns will suffer an irreparable injury if the requested injunctive relief is not granted.

Lastly, the requested relief is necessary at this precise juncture to avoid irreparable harm to Burns, as the threatened state court actions have not yet been filed. Because this Court's ability to enjoin pending state court proceedings may be limited under the Anti-Injunction Statute, and other considerations of comity once these threatened actions are actually filed, it is necessary that the requested injunction prohibiting Flowserve from initiating these claims be granted at this juncture, while the threatened litigation is still only a threat.

In sum, this Court's exercise of its equitable and statutory authority to issue the requested injunction prohibiting Flowserve from initiating any claims against Burns in the Underlying Asbestos Cases is required under the facts of this case to protect Burns from irreparable harm.

C.    **Burns Will Suffer Irreparable Harm If Flowserve Is Not Enjoined from Negotiating a "Global" or Individual Settlement Which Threatens to Diminish or Impair the Ability to Settle Other BWC Asbestos Claims.**

Burns will suffer an irreparable harm if Flowserve in not enjoined from negotiating a "global" or even individual settlement which purports to bind BWC's insurers or Burns. Such settlement would not only undermine the orderly, efficient administration of the Underlying Asbestos Cases, but additionally, this threatened course of conduct may adversely impact settlements, or the ability to reasonably settle, other BWC related asbestos claims. The insurance proceeds at issue in this litigation are currently being accessed by other BWC related entities which have also been inundated by tens of thousands of asbestos related products liability claims. To allow Flowserve to diminish or deplete these proceeds,

or to otherwise compromise the ability to settle other BWC asbestos related claims prior to

the adjudication of the parties' rights and obligations regarding these proceeds would result in

an irreparable harm to Burns and other BWC related entities.

II.     **BURNS IS REASONABLY LIKELY TO SUCCEED ON THE MERITS OF THE ISSUES RAISED IN THIS CASE.**

Burns is reasonably likely to succeed on the merits of this case, in satisfaction of the

third requirement for preliminary injunctive relief.  The central dispute in this case is the

rights and duties of the parties with respect to indemnification in the Underlying Asbestos

Cases.  Burns has denied any obligation to provide Flowserve indemnification for the

asbestos claims under the 1987 Agreement.  In fact, the 1987 Agreement unequivocally

provides that BW/IP-AC would indemnify BWC for all product liability claims arising out of

the manufacture and sale of Byron Jackson products prior to the Effective Date.  Section

9.04(b)(c) of the 1987 Agreement states in pertinent part:

> The Buyer [BWIP-IC, thereafter Flowserve] shall defend, indemnify, and hold harmless Borg-Warner and its subsidiaries from, and there shall be excluded Borg-Warner's obligation to defend, indemnify and hold harmless . . .:
>
> *     *     *     *     *     *     *     *     *
>
> (C)     any product liability claim asserted after the Effective Date, whether based on theories of negligence, warranty or strict liability, arising from a product manufactured or sold, by any of the businesses of the Divisions, whenever manufactured or sold . . .provided, however, that BWIP or one of its subsidiaries manufactures or holds out for sale such product or parts therefor as of the Effective Date.

Pursuant to this provision, BW/IP-AC was required to indemnify BWC for any product

liability claim arising after the Effective Date relating to products which were manufactured

by BWC prior to the Effective Date.  However, this indemnity obligation imposed on BW/IP-

AC was modified in part under the terms of the Letter Agreement.  The Letter Agreement

relieves BWIP-AC of its indemnity obligations to indemnify BWC but only "to the extent

that such Losses are covered by insurance carried by Borg-Warner." The Letter Agreement also requires BWC to indemnify BWIP-AC as provided in Section 9.04(a) of the 1987 Agreement but only "to the extent such Losses are covered by such insurance." The clear and unambiguous terms of the Letter Agreement provide that once BWC's insurance was no longer available, BW/IP-AC's [Flowserve's] obligation to indemnify BWC resumes.

For years, there has been no dispute between the parties about their respective obligations under the terms of the Letter Agreement. On more than one occasion, Flowserve acknowledged this fact in writing. See Exhibits 3 and 4 to Affidavit of Edward B. Mueller submitted herewith. It was not until Flowserve and Burns were advised that the BWC insurance would no longer cover 100% of the cost of the Underlying Asbestos Cases that Flowserve decided that the Byron Jackson asbestos claims were not product liability claims but were in fact "environmental claims" which allegedly trigger the "environmental-related indemnifications" found in Section 9.04(a)(ii)(E) of the 1987 Agreement. However, this argument is specious, contrary to its prior acknowledgment that the claims were covered under the Letter agreement and supported by the language of the Agreement.[7]

In sum, the terms of the both the 1987 Agreement and the Letter Agreement are clear and unambiguous, and unequivocally establish that Flowserve is not entitled to the declaratory judgment it seeks. Based on these facts, which Burns intends to prove during the

---

[7]  Section 9.04(a)(ii)(E) applies (1) "to handling or disposal of toxic or hazardous materials, air or water pollution or otherwise to relating to the protection of the environment;" (2) to the release of "harmful, toxic or hazardous substances into the environment;" and (3) "a claim that a claimant contracted a disease as a result of exposure prior to the Effective Date to any product or raw material used by [BWC or its divisions or subsidiaries], *except to the extent that such claim is made after the Effective Date and arises out of third-party use of a product after sale."* None of the Underlying Asbestos Cases concern the handling, release or disposal of toxic or hazardous substances or air or water pollution. Moreover all of the claims were made after the Effective Date of the 1987 Agreement and all arise out of the use of Byron Jackson products after the products had been sold.

Case 1:04-cv-01294-JJF    Document 57    Filed 02/27/2006    Page 23 of 28


course of this litigation, it is reasonably likely that Burns will succeed on the merits of the issues raised in this action.

Additionally, as stated, in *American Smelting & Refining Co. v. Pennzoil United, Inc.* 295 F.Supp. 149, 152 (D. Del.1969), the court recognized that the "likelihood of success" standard is satisfied where the issues presented in the underlying dispute are "serious" or "substantial," holding:

> To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.

See also *U.S. v. Pennzoil Co.*, 252 F.Supp. 962, 972 (3d Cir. 1965)(holding "it is only necessary in a preliminary injunction proceeding for the plaintiff to raise substantial questions which go to the merits of the case.")  Burns submits that due to the hardship it will inevitably face if Flowserve proceeds with its threatened course of conduct, and given the significant issues raised in the present motion, Burns has "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation," such that the "likelihood of success" requirement for preliminary injunctive relief is satisfied. See *Virginia Carolina Tools, Inc. v. International Tool Supply, Inc*. 984 F.2d 113, 120 (4th Cir. 1993); *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir.1992)

### III.    FLOWSERVE CANNOT CLAIM THAT IT WOULD SUFFER ANY HARM IF THE REQUESTED INJUNCTIVE RELIEF IS GRANTED.

There is no reasonable basis upon which Flowserve could maintain that it would suffer any identifiable harm if the requested injunctive relief is granted.  As an initial matter, no party would be harmed by the national appointed network of defense counsel's continued

administration of the Underlying Asbestos Cases.   On the contrary, existing counsel has been handling these claims competently and without incident for years and Flowserve has not and cannot articulate any basis upon which it would sustain any harm if it is not permitted to appoint independent counsel.  Even assuming Flowserve could replace the national network of appointed defense counsel with equally competent counsel, it would not suffer any identifiable harm if required to allow existing counsel continue its representation of Flowserve in the Underlying Asbestos Cases.

Secondly, Flowserve cannot argue that it will incur any harm if prevented from filing claims against Burns in the Underlying Asbestos Cases relating to the issues presently pending before this Court.  Flowserve elected to initiate its claims against Burns in this forum, and sought this Court's consideration and full adjudication of the issues raised in this case.  Burns recognized this Court's proper jurisdiction over the parties and issues raised, and accordingly answered Flowserve's complaint, and filed its counterclaim specifically asserting this Court's proper jurisdiction over this dispute.  Now, a year and a half after it filed it claims before this Court, Flowserve has threatened to take action that will divest this Court of its full authority and flexibility to adjudicate the issues raised in this case and to provide the parties with full, complete, and final relief.   Flowserve cannot reasonably assert that it would incur any harm if the Court required Flowserve to seek adjudication of these issues in its chosen forum - - Delaware.

Lastly, Flowserve would not incur any harm if precluded from negotiating a "global" or individual settlement which purports to bind Burns or BWC.  On the contrary, Flowserve's interests would be well served if the issues raised in the present action are fully adjudicated

prior to the initiation of any settlement which purports to bind BWC's insurance carriers or Burns.

## IV.    THE PUBLIC INTEREST FAVORS GRANTING THE REQUESTED INJUNCTIVE RELIEF.

As a final matter, the public interest weighs heavily in favor of granting the requested injunctive relief.   First, the threatened appointment of new counsel will disrupt and impair the orderly and efficient administration of the Underlying Asbestos Cases, and will invariably resulted in duplicative efforts by the attorneys and inconsistencies in representation. For these reasons, the resultant effect of discharging the national network of defense counsel would be contrary to the public interest in consistent and orderly adjudication of claims and preservation of judicial economy, and the public interest therefore favors the granting of the requested injunctive relief.

Second, Flowserve's threatened initiation of proceedings against Burns in the Underlying Asbestos Cases relating to the identical issues raised in the present case is contrary the public interests in prohibiting vexatious, repetitive litigation and in preserving judicial economies.  Indeed, if the requested injunctive relief is not granted, Flowserve will be permitted to raise the identical issues presently pending before this court in the thousands of Underlying Asbestos Cases.  This will invariably result in an unnecessary waste of judicial resources in that each state court that considers these issues (and potentially this Court, for that matter) will ultimately be bound by the determination of these issues made by the first court to reach a conclusion on the merits of this case.  As such, the public interest weighs heavily in favor of prohibiting this unnecessary and repetitive litigation and the exploitation of judicial resources it will most certainly cause.

Lastly, the public interest weighs in favor of precluding Flowserve from negotiating or executing any settlement which purports to bind Burns or BWC, given the damaging effect this action would have on the ability to settle other BWC claims. As stated, the insurance proceeds at issue in this litigation are currently being accessed by other BWC related entities which have been inundated by thousands of asbestos related products liability claims. To allow Flowserve to diminish or deplete these proceeds, or to otherwise compromise the ability to settle the multitude of suits presently pending against BWC related entities, is contrary to the public interest in allowing the parties to enter into settlements and to otherwise resolve these underlying claims.

### CONCLUSION

For the reasons stated herein, the requested injunctive relief is wholly warranted under the facts of this case and Burns' motion should accordingly be granted in its entirety.

MURPHY SPADARO & LANDON

/s/ Francis J. Murphy
Francis J. Murphy, I.D. No. 223
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel: (302) 472-8100
Fax: (302) 472-8135
E-mail: Fmurphy@msllaw.com

Michael H. Moirano
NISEN & ELLIOTT, LLC
200 West Adams Street, Suite 2500
Chicago, Illinois 60606
Tel: (312) 346-7800
Fax: (312) 346-9316
E-mail: mmoirano@nisen.com

Attorneys for Defendant Burns International
Services Corporation

Dated: February 27, 2006

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

_____

FLOWSERVE CORPORATION,                  )
                                                              )          C.A. No.:  04-1294 JJF
                          Plaintiff,                          )
                                                              )
          v.                                                  )
                                                              )
BURNS INTERNATIONAL SERVICES         )
CORPORATION and BORG-WARNER          )
CORPORATION,                                       )
                                                              )
                          Defendants.                     )
_____)

**CERTIFICATE OF SERVICE**

          I, Francis J. Murphy, Esquire, do hereby certify that on this 27th day of
February, 2006, I have caused the following documents to be served in the
manner indicated on the parties listed below:  **MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT/COUNTERCLAIMANT BURNS
INTERNATIONAL SERVICES CORPORATION'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMANARY
INJUNCTION.**

**By Electronic Filing**
Danielle K. Yearick, Esquire
Tybout, Redfearn & Pell
300 Delaware Avenue, 11th Floor
P.O. Box 2092
Wilmington, DE 19899-2092

**By First Class Mail**
William Mahoney, Esquire
Ted McCullough, Esquire
Erich Gleber, Esquire
Segal McCambridge Singer & Mahoney, Ltd.
805 Third Avenue, 19th Floor
New York, NY 10022

**By First Class Mail**
Christopher M. Bechhold, Esquire
Thompson Hine, LLP
312 Walnut Street, 14th Floor
Cincinnati, OH  45209

129275

27

MURPHY SPADARO & LANDON


/s/ Francis J. Murphy _____
Francis J. Murphy, I.D. # 223
1011 Centre Road, Suite 210
Wilmington, DE  19805
Office (302)472-8100
Fax      (302)472-8135
Email  fmurphy@msllaw.com