UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FLOWSERVE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 04-1294-JJF |
| | ) | |
| BURNS INTERNATIONAL SERVICES CORPORATION and BORG-WARNER CORPORATION, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF/COUNTER-DEFENDANT FLOWSERVE CORPORATION'S MOTION TO DISMISS BURNS INTERNATIONAL SERVICE CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff/Counter-Defendant Flowserve Corporation ("Flowserve") hereby moves for entry of an order dismissing the motion for Temporary Restraining Order and Preliminary Injunction brought by Defendant/Counterclaimant Burns International Services Corporation ("Burns"). Flowserve respectfully submits, and will demonstrate in this Motion and its Memorandum, that Burns has failed to establish each of the elements required for preliminary injunctive relief, and therefore its request for both a TRO and preliminary injunction must be rejected.

Burns claims that its request for injunctive relief is necessitated by various "threats" communicated by or on behalf of Flowserve. Though Flowserve does not agree with this ominous phraseology, nor with the numerous mischaracterizations and flawed arguments that follow in its wake, it is true that Flowserve recently notified Burns of its intention to take certain reasonable and necessary actions to ensure that its interests would be properly and fully protected with respect to its current and future defense of thousands

of asbestos-liability claims pending in numerous jurisdictions throughout the country. As Mr. Rogus' February 17, 2006 letter to Mr. Mueller (Burns Motion, Exh D) stated, these actions included the following:

1) That Flowserve would direct existing defense counsel (appointed by the insurer) to forward to Flowserve National Coordinating Counsel for asbestos claims their complete files for all lawsuits in which counsel entered an appearance on Flowserve's behalf;

2) That in all current and future lawsuits brought against (Flowserve's predecessor) BW/IP for alleged injuries arising out of asbestos-containing products manufactured or sold by Borg Warner prior to 1987, BW/IP will assert all defenses necessary to fully protect its interests, including third-party complaints against Burns;

3) That Flowserve and its counsel would initiate meetings with plaintiffs' counsel in the pending asbestos suits on or shortly after March 15, 2006, to explore common ground and seek global resolution of the asbestos lawsuits brought against Flowserve.

Burns' Motion and Memorandum attempt to portray these actions as the irreparably harmful components of an all-out Flowserve "Armageddon strategy" from which Burns can only be saved through the drastic remedy of injunctive relief. Despite the highly-charged rhetoric, Burns' position falls woefully short of satisfying the requirements for such relief. Its motion must, accordingly, be denied.

### A. THERE IS NO NEED FOR IMMEDIATE INJUNCTIVE RELIEF

Contrary to Burns' argument (Burns' Motion, p.4 *et. seq.*), immediate injunctive relief is not necessary.

For one thing, to the extent any of Flowserve's actions may pose consequences to Burns, those consequences are all sufficiently remediable through the relief of money damages. Burns, for example, challenges Flowserve's decision to change defense counsel.

Though Burns tries to argue irreparable harm if Flowserve is not judicially barred from going forward with new defense counsel in the underlying cases (Burns' Memorandum, pp. 9-10), its own Motion undermines that request by showing that the real issue with respect to the reassignment of defense counsel is simply money – who's going to pay? Burns' Motion indicates that it "does not intend to inhibit or impair in any respect Flowserve's ability to retain its own counsel to defend and/or settle any of the pending or future asbestos litigation *at its own expense*." (Burns' Motion, p.5) (Emphasis added.) Burns does object, however, to Flowserve retaining its own counsel under a claim of "right to indemnity from Burns under the 1987 and letter Agreement." (*Id.*) Either way, this boils down to a question of who must pay under the terms of the Agreement. That is one of the ultimate questions in this case. It is an issue that is capable of resolution through an award of money damages, if necessary. In light of those considerations, Burns' present Motion is not so much a request for a TRO or preliminary injunction as it is a request for an expedited *declaratory* ruling, which would be improper and unfair to Flowserve at this stage of the case. Among other reasons, Flowserve's Complaint raises an issue of contractual ambiguity, and the parties are yet engaged in ongoing discovery regarding that and other issues. Thus, the present record is not sufficiently developed to enable the Court to fully address all the issues upon which declaratory relief is sought.

The same is true regarding Burns' request for an injunction barring Flowserve from engaging in efforts to settle its pending asbestos cases, whether on a global basis or otherwise. That is also a money issue, one that would be sufficiently remediable through an award of damages.

Burns' attempt to bolster its "need" argument by suggesting that Flowserve's

"global resolution" approach may "exhaust or significantly diminish the available BWC insurance coverage" (Burns' Motion, p.4) is utterly speculative, since Burns has presented this Court with absolutely no information regarding the extent of available coverage remaining. Consequently, Burns' attempt to cast this in the light of "irreparable harm" must necessarily fail. Absent any showing whatsoever regarding the extent of coverage remaining, there simply is no credible argument that the coverage may be "exhausted or significantly diminished," to Burns' irreparable harm, by anything Flowserve may do.

Burns claims its requested relief is premised on the need to maintain the *status quo*. (Burns' Motion, p.4.) However, the *status quo* is irreparably harming Flowserve, particularly with respect to the issue of its legal representation. Flowserve has now learned of numerous instances of unauthorized, improper, and ethically questionable tactics being employed by members of the "nationwide network of National Coordinating Counsel and local defense counsel . . . established by the insurers providing coverage with Burns' consent . . ." (Burns' Memorandum, p.9), all of whom are "experienced asbestos defense counsel." (*Id.*) These tactics include instances of clear, almost brazen, conflicts of interest, most notably the unauthorized voluntary submission of Flowserve to the jurisdiction of courts in cases wherein Burns, *but not Flowserve*, was being sued. "Experienced asbestos defense counsel" was filing appearances and/or answering on Flowserve's behalf without any prior approval or authorization from Flowserve. Such actions were either designed or, at the very least, had the unquestionable effect of favoring and protecting Burns to Flowserve's detriment. "Experienced asbestos defense counsel" should know that they should not be taking actions directly contrary to the interests of one of their clients unless that client has so directed and/or authorized. As the

affidavit of Lawrence Henke establishes, this was not limited to one or two isolated instances, but rather turned out to be a widespread practice. In the face of these untenable circumstances, Flowserve was left with no choice but to notify Burns of the need for change with respect to its legal representation. Burns' present motion asks this Court, in the guise of seeking to preserve the *status quo*, to force Flowserve to capitulate to a legal representation scheme that would irreparably harm *its* interests. If anyone is in *need* of relief under these circumstances, it is Flowserve, not Burns.

**B. BURNS HAS FAILED TO MEET ITS BURDEN OF DEMONSTRATING THAT INJUNCTIVE RELIEF IN ITS FAVOR IS WARRANTED UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE**

Burns posits as a reason justifying injunctive relief that "Flowserve has no right to select or appoint its own counsel," citing Section 9.04(d) of the 1987 Stock Purchase Agreement. Further, it contends that "to the extent Flowserve is claiming indemnification under either the 1987 Agreement or the letter Agreement, only Burns as the Indemnifying Party has the right to select and appoint counsel." (Burns' Motion, p.5.)

Burns' position lacks merit for two reasons. First, while it emphasizes the language of 904(d) indicating that it shall undertake the defense of claims *with attorneys of its own choosing*, it conveniently ignores any consideration of the language that immediately follows, namely that those attorneys must be *"reasonably satisfactory to the Indemnified Party."* Thus, it is not simply a wish, a desire, or a hope on Flowserve's part that the defense counsel appointed to represent it would be "reasonably satisfactory." It is Flowserve's contractual right. Second, as Flowserve shows in this Motion and in its Memorandum, circumstances have arisen that have nullified any notion that the

nationwide network of experienced asbestos counsel established by the insurers providing coverage with Burns' consent remain "reasonably satisfactory" to Flowserve. Said counsel are filing unauthorized court documents on Flowserve's behalf in cases where Flowserve has not even been sued or served with process, and are thereby acting to Flowserve's detriment. If said counsel are to continue representing Burns in the underlying litigation, there is an unmistakable conflict posed by their continued representation of Flowserve as well. If anyone is entitled to relief under these circumstances, it is Flowserve, not Burns.

Flowserve's decision to appoint new defense counsel arises under circumstances analogous to the duty of an insurer to provide a defense for its insured. The insurer often, if not usually, possesses the initial right to designate defense counsel under the terms of its policy. However, in situations where conflicts exist or arise between insurer and insured, the typical judicial remedy is for the insured to designate its counsel, and the insurer to pay for that defense. Here, a conflict has arisen, and Flowserve has chosen to take action not only consistent with its rights under the contract, but also reasonable and necessary under the circumstances. True, Flowserve has placed Burns on notice that it intends to seek all costs and expenses associated with its change of counsel from Burns. Burns obviously disagrees. But this is not an issue justifying immediate injunctive relief. It remains an issue of financial responsibility that can and eventually will be adequately addressed via money damages. Injunctive relief is simply neither necessary nor appropriate.

Burns' contention that Flowserve's decision would "disrupt and interfere with the orderly and coordinated administration and defense of the claims" (Burns' Motion, p.6-7)

is specious. Indeed, it is extremely ironic that Burns now points the finger of blame at Flowserve for "upsetting the apple cart" after "[a]ppointed national and local counsel... have been defending these cases without incident for years." (Burns' Motion, p.7.) It may well be true that a coordinated defense effort was proceeding "without incident" up until approximately three years ago. That, according to Edward Mueller's affidavit, is when he and his firm stepped into the picture on Burns' behalf (see Mueller Affidavit, P.2), and, even though his Motion and Memorandum contend that the defense effort was proceeding without incident up until that point, "*began* questioning the basis for Burns' obligation to indemnify Flowserve for the asbestos claims...[and] *began* sending to Flowserve reservations of right letters on behalf of Burns each time Flowserve forwarded asbestos cases to Burns seeking defense and indemnity." (Mueller Affidavit, P.5.) (Emphasis added.) Thus *began* the conflict that now exists between Burns and Flowserve. Whatever "harm" Burns may now, or in the future, encounter as a result of separate legal representation for Burns and Flowserve respectively is, based on Mr. Mueller's sworn statement, Burns' own doing. It cannot now be heard to complain that Flowserve's decision in the face of ever-growing instances of conflict is the cause of any irreparable harm.

The fallacy of Burns' irreparable harm argument is magnified when examined against the stated position of the very insurance carriers funding and providing the defense until now. In a February 8, 2006 letter directed to one of Flowserve's attorneys, CNA, through its counsel, readily allows Flowserve the opportunity to select its own defense counsel, with CNA to reimburse it for reasonable and necessary defense costs. (See, February 8, 2006 letter from Irving Faber to Christopher Bechhold, attached hereto

as Exhibit A.) If the very carriers whose policies Burns fears will be exhausted or significantly diminished see no irreparable harm presented by Flowserve's decision to reassign its defense to new counsel, then Burns' fears of irreparable harm in the form of "disruption and interference with the orderly and coordinated administration and defense of the [underlying asbestos] claims" are illusory.

Burns next contends that injunctive relief is warranted to bar Flowserve from filing "thousands of identical third-party indemnity actions in order to prevent a multiplicity of suits." (Burns' Motion, p.6.) The problem here is that Burns has read too much into Flowserve's notification letter of February 17. Flowserve has not threatened to file indemnity actions in the underlying cases *identical to the instant case.* Flowserve's letter did not state an intention to seek judicial determinations on the meaning and construction of the 1987 Stock Purchase and Letter Agreements from those state courts in which the underlying asbestos claims have been brought. Instead, Flowserve's position was, and is, that it will assert all defenses necessary to fully protect its interests, including third-party complaints against Burns. Consequently, the requested injunctive relief is neither appropriate nor warranted.

Burns' Motion also fails to demonstrate how Burns would be irreparably harmed should Flowserve proceed to pursue global settlement talks with plaintiffs in the underlying asbestos claims. Burns again professes fear that Flowserve's action will impair or diminish BWC's insurance coverage, but does not provide any information to this Court regarding the extent of coverage remaining. This is an absolute must if Burns is to show that it would be irreparably harmed by Flowserve settlements paid out of available insurance coverage.

Contrary to its argument, Burns' Motion does not demonstrate its likelihood of success on the merits of the claims raised. Obviously, Flowserve and Burns are at odds over which portion of the indemnification language contained in the 1987 Stock Purchase agreement controls, and that is an issue upon which both sides seek declaratory relief. Flowserve's Complaint has raised an issue regarding ambiguity in the Agreement's language. The parties are presently pursuing discovery for the purpose of developing a full record for the court to consider. But even if this Court eventually agrees with Burns' interpretation of the Agreement itself, Burns' position includes a concession that the Letter Agreement modifies any indemnification obligation Flowserve may have to the extent the claims were covered by insurance carried by BWC. (Burns' Motion, p.8.) Burns argues that "to the extent BWC's insurance does not cover the claims in full, Flowserve remains responsible for uninsured defense costs and any uninsured settlements, expenses, and losses." (*Id.*)  But Burns' present Motion does not provide this Court with any bases for concluding that there will be "uninsured defense costs" or "uninsured settlements, expenses, and losses." Those are matters presently being litigated in the Cook County, Illinois insurance coverage action, and no final judgment has been entered therein. Thus, Burns' likelihood-of-success argument, like its irreparable harm argument, is speculative at best.

Burns' contention that "Flowserve cannot reasonably contend that any harm will befall it if the requested injunctive relief is granted…" (Burns' Motion, p.8) is, as shown above, without merit. Flowserve will indeed be harmed. It will be forced to surrender its defense to a network of attorneys taking unauthorized, unapproved actions directly contrary to its interests, and suffer the consequences.

Lastly, with regard to public policy considerations, Flowserve's right to have defense counsel that will fully, adequately, and properly represent it far outweighs Burns' view of the " orderly administration of thousands of pending cases," especially when that view condones, or at least tolerates, actions taken by network counsel in favor of Burns but directly contrary to Flowserve's interests. Flowserve does not deny that orderly administration and judicial economy are important goals. But essential fairness and substantial justice take precedence, and under the regime advocated by Burns, Flowserve is being denied both. Finally, the public interest favors settlement of civil litigation, and therefore Flowserve's intention to pursue settlement of the underlying asbestos litigation does not offend, but rather fully comports with that interest.

## C. CONCLUSION

In further support of this Motion, Flowserve has filed its Memorandum of Law, the Affidavit of Lawrence Henke, and the exhibits identified therein. For all the reasons stated and demonstrated in these submissions, Flowserve respectfully requests the Court to dismiss Burns' Motion for Temporary Restraining Order and Preliminary Injunction in its entirety.

Segal McCambridge Singer & Mahoney, Ltd.

By: _____
Attorneys for Flowserve
Gregory E. Rogus, Esq.
Segal McCambridge Singer & Mahoney, Ltd.
330 N. Wabash Drive, Suite 200
Chicago, IL 60611
312-645-7800

Danielle Yearick, Esq.#3668
Tybout, Redfearn & Pell
750 S. Madison Street, Suite 400
Wilmington, DE 19801
302-658-6901