

**GRIPPO & ELDEN**

GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700
FAX: (312) 558-1195
(312) 263-7356

To Call Writer Direct
(312) 704-7754
lfober@grippoelden.com

February 8, 2006

<u>VIA E-MAIL</u>

Christopher M. Bechhold, Esq.
THOMPSON HINE
312 Walnut Street
14th Floor
Cincinnati, OH 45202-4089

Lawrence W. Henke, Esq.
Flowserve US Inc.
5215 N. O'Connor Blvd.
Suite 2300
Irving, Texas 75039

Re: <u>Borg-Warner</u>

Dear Chris and Larry:

This letter responds to Chris Bechhold's letter to me dated January 23, 2006, and supersedes my letter to you dated March 11, 2005.

Let me say at the outset that CNA is disappointed in Flowserve's rejection of the cost-sharing proposal contained in my e-mail of January 4, 2006. With the Illinois Supreme Court's denial of Flowserve's petition for leave to appeal, Judge Flynn's *pro rata* allocation ruling is the law of the case, and it makes very good sense in our judgment to agree on an interim cost-sharing agreement between Flowserve and the umbrella carriers.

Because Flowserve has given notice that it is unwilling to participate in any such agreement, CNA is compelled to take unilateral action.

On behalf of Continental Insurance Company ("CIC") and Columbia Casualty Company ("Columbia") (collectively, "CNA"), umbrella carriers for Borg-Warner Corporation ("Borg-Warner"), please note the following with respect to all current and future asbestos lawsuits brought against Flowserve US Inc. ("Flowserve") for alleged injury from asbestos-containing products manufactured or sold by Borg-Warner.

1. Under the CIC and Columbia umbrella policies (which are all described in and attached to CNA's pending Illinois declaratory judgment action, <u>Continental Casualty Company, et al. v. BorgWarner Inc., et al.</u>, No. 04 CH 0178 (IL)), CIC and Columbia have no duty to defend these asbestos lawsuits. Instead, CIC and Columbia have the right, but not the duty, to defend the lawsuits, and if they elect not to defend, they have the right to participate in the investigation, settlement and defense of the lawsuits. The policies also provide that, if the

85270v1



DEFENDANT'S
EXHIBIT
A



**GRIPPO  
&ELDEN**

Christopher M. Bechhold, Esq.
Lawrence Henke, Esq.
February 8, 2006
Page 2

insurers elect not to defend, they shall reimburse the insured for reasonable and necessary defense costs incurred with the written consent of the insurer. Such reimbursement counts against the aggregate limits of the policies.

2. As you are aware from my previous communications (*see* my 12/14/05 e-mail), there are policy limits remaining in only two of the CNA umbrella policies, CIC Policy No. LX 6332888 (9/1/71-9/1/73) and Columbia Policy No. UMB 6891300 (1/1/83-1/1/84). These policies have provisions regarding defense rights and obligations similar to those described in the preceding paragraph.

3. Effective March 15, 2006, CIC and Columbia notify you that, until further notice, with respect to all pending and future asbestos lawsuits described above (with the exception of cases described in paragraph 8, below), they shall not assume any defense duty, but instead elect to participate in the investigation, settlement and defense of the lawsuits, pursuant to the provisions in their respective umbrella policies.

4. For defense of these lawsuits, we strongly encourage you to continue to use existing counsel (both national and local), since they are experienced and knowledgeable in the defense of these claims. To the extent Flowserve elects to retain new counsel, CNA should be consulted in advance and counsel informed that they must follow CNA's Litigation Management Guidelines, a copy of which is attached. CNA does not consent to expenditures of defense costs absent advance approval or if those expenditures are not in compliance with the Litigation Management Guidelines. For cases served on Flowserve after March 15, 2006, in addition to retaining defense counsel, Flowserve also has the obligation to give notice of all new lawsuits or claims to CNA immediately upon receipt. Please direct all such notices to William Adamski, CNA Plaza, Floor 19 South, Chicago, Illinois 60685.

5. In accordance with our policy terms and conditions, CNA hereby informs you that it wishes to continue to participate in the defense and settlement of these cases, including participation in all conference calls with defense counsel to discuss strategy and to consider and approve settlement proposals. Finally, just so there is no misunderstanding, in controlling the defense of the asbestos lawsuits after March 15, 2006, Flowserve has a duty of good faith and fair dealing with respect to CNA and other umbrella insurers. This means that Flowserve not only must involve CNA in settlement discussions with defense counsel, but must also agree to reasonable settlement proposals with underlying plaintiffs and not employ tactics (such as confessions of judgment) designed to prejudice CNA and other umbrella insurers.

6. Absent Flowserve's consent to a cost-sharing agreement, CIC and Continental will pay their *pro rata* shares of reasonable settlements and judgments for which they have given their approval in conference calls with Flowserve and defense counsel. Such *pro rata* shares will be computed based on the initial exposure dates of the plaintiff(s) and, for group settlements, on the allocation of the settlement to each plaintiff, all as agreed by the parties. For all such

85270v1



**GRIPPO &ELDEN**

Christopher M. Bechhold, Esq.
Lawrence Henke, Esq.
February 8, 2006
Page 3

settlements, Flowserve shall in the first instance calculate the *pro rata* shares of all parties and timely inform them of the amounts required to fund each settlement. CIC and Columbia will then make an independent determination of the correct amount of their *pro rata* shares. CIC and Columbia reserve the right to decline participation in a settlement if they were not timely given an opportunity to participate in settlement discussions; or if discovery has shown that their policies have no indemnity obligations for the particular claim(s). In any event, because there are only three years remaining of unexhausted CNA coverage, CNA's *pro rata* shares can be based on a maximum of three years of coverage divided by the total number of years of exposure, sickness or disease, as provided under governing Illinois law. (Because of Judge Flynn's ruling, it will be necessary, as an interim measure, to exclude the Home's year from the denominator of any calculations because Home is insolvent.)

7. For defense of the asbestos lawsuits, absent Flowserve's consent to a cost-sharing agreement, CIC and Columbia will pay their *pro rata* shares of reasonable and necessary defense costs, subject to the conditions in paragraphs 4 and 5, above. The *pro rata* shares will be based on the umbrella policy block alleged by BorgWarner Inc. in the Illinois declaratory judgment action, which begins 1/1/51. Accordingly, CNA's *pro rata* share of defense costs will be 8.82%, which is computed on the basis of three years of unexhausted CNA policies *divided by* 34 years (1/1/51-1/1/86, *less* one year of Home's coverage). Finally, CNA will not reimburse counsel for fees or expenses incurred in the prosecution or defense of any indemnification or contribution claims asserted by Flowserve against Burns International Services Corp. ("Burns") or *vice versa*. Such claims, as Chris Bechhold informed Judge Flynn at a hearing a few months ago, are properly asserted in Flowserve's separate litigation against Burns that is pending in Delaware.

8. <u>Exceptions</u>: With respect only to cases against Flowserve <u>which have settled prior to March 15, 2006 (but which have not yet been funded)</u>, CIC and Columbia will work with other Borg-Warner insurers to fully fund these settlements, subject to a complete reservation of rights, including the right of recoupment against other insurers or against Flowserve, as the case may be.

9. CIC and Columbia will commit themselves to working with national counsel, local defense counsel, Borg-Warner's other umbrella insurers, and with Flowserve, to insure a smooth transition after March 15, 2006. In particular, if Flowserve wishes to reconsider its rejection of an interim cost-sharing agreement, we believe that could be very helpful for all parties.

10. The foregoing is subject to complete and reciprocal reservations of rights under the insurance policies, the common law, and otherwise, including the right to reallocate any payments made in accordance with the final decision in the Illinois declaratory judgment action. All previous reservations of rights letters are hereby incorporated by reference.

85270v1



GRIPPO
&ELDEN

Christopher M. Bechhold, Esq.
Lawrence Henke, Esq.
February 8, 2006
Page 4

    Please contact me if you have any questions or comments. I am also copying counsel for BorgWarner Inc., Burns and York, as well as the current national defense counsel and counsel for Borg-Warner's other umbrella carriers, Royal, Imperial, Unigard (Seaton) and London.

Very truly yours,

Irving C. Faber

ICF/ljf
Attachment

cc:  Edward B. Mueller
     Steven B. Varick
     Lee Epstein
     Fred L. Alvarez
     Lisa S. Brogan
     Patrick Shine
     Steven Hoke
     John P. Buckley
     Marc Gaffrey
        (w/attach., via e-mail)

85270v1