## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FLOWSERVE CORPORATION | ) | |
| | ) | |
| | ) | C.A. No.: 04-1294 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BURNS INTERNATIONAL SERVICES | ) | |
| CORPORATION and BORG-WARNER | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SUPPLEMENTAL AFFIDAVIT OF EDWARD B. MUELLER IN SUPPORT OF BURNS INTERNATIONAL SERVICES CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Edward B. Mueller, on oath deposes and states:

1.      I am an attorney and member of the law firm Nisen & Elliott, LLC.  I am licensed to practice law in the State of Illinois. I have person knowledge of the facts stated in this affidavit and, if called as a witness, could testify competently thereto.

2.      My law firm and I have represented defendant Burns International Services Corporation ("Burns") for less than four years. We were retained to assist in the processing and management of asbestos claims filed against the old Borg-Warner Corporation ("BWC") and its former divisions and subsidiaries commencing in August, 2002.  When we began that assignment, many procedures were already in place regarding, among other things, the appropriate way to appear on behalf of the various BWC-related defendants named in the asbestos cases.

1

3.    Prior to that time, and continuing to the present, Flowserve Corporation, plaintiff in this case, had been instructing national and local counsel assigned to handle asbestos cases involving Byron Jackson pumps to file appearances in the cases on behalf of  "BW/IP International Inc. formerly known as Borg-Warner Industrial Products, Inc. successor in interest to Byron Jackson Pumps predecessor to Flowserve Inc." See e.g. letter dated December 9, 2003 from local counsel covering Mississippi, Louisiana and Alabama, to the undersigned attached as Exhibit A.

4.    On September 25, 2003, my partner Anthony Packard participated by telephone in a face to face meeting between Marc Gaffrey, national coordinating counsel for the non-automotive BWC asbestos cases, and Larry Henke, the newly hired Associate General Counsel for Flowserve.  During that meeting various subjects were discussed including the appropriate manner in which local defense counsel were to appear in cases involving Flowserve and/or Byron Jackson pumps.  Attached hereto as Exhibit B is a true and correct copy of a letter sent by Mr. Gaffrey following the September 25, 2003 meeting summarizing same.  In the letter Mr. Gaffrey states:

> "I told Larry [Henke] that when BW/IP or Byron Jackson are named in a Complaint that I have instructed local counsel to answer on behalf of 'BW/IP International, Inc. formerly known as Borg Warner Industrial Products, successor in interest to Byron Jackson Pumps.' This is a description I worked out with May Jane Young, former General Counsel of BW/IP, several years ago. If Flowserve is also named in the caption of the complaint as successor, then for whom we answer is the same with the exception of, '…predecessor in interest to Flowserve International" at the end.
>
> "Larry advised that this description is accurate and satisfactory and instructed us to continue with this designation.  We also agreed that in those jurisdictions where plaintiff's counsel continues to plead BW/IP in connection with Flowserve, that we have Borg Warner's local counsel reach out to their adversary to encourage counsel

2

to make the change. I will also advise local counsel to continue with this designation and approach." (p. 2, Ex. B, bottom two paragraphs)

5.      "Flowserve International, Inc." is the present name of Borg-Warner Industrial Products, Inc. which formerly was a wholly owned subsidiary of BWC that owned and conducted the Borg-Warner industrial products businesses sold to plaintiff Flowserve's predecessor in March, 1987, including the Byron Jackson pumps line of business. Borg-Warner Industrial Products, Inc. was acquired from BWC by an affiliate of Flowserve Corporation pursuant to the terms of the Stock Purchase Agreement dated March 12, 1987, which is the subject of this dispute. Borg-Warner Industrial Products, Inc. changed its name to "BW/IP International Inc." on February 15, 1988, and to "Flowserve International, Inc." on December 15, 1998. Based upon my review of corporate records from the Delaware Secretary of State, and the documents attached hereto, and based on my discussions with national coordinating and local counsel handling the BWC Byron Jackson pump asbestos cases, I can state that when local defense counsel have been appearing in Byron Jackson pump asbestos cases on behalf of "BW/IP International, Inc. formerly known as Borg Warner Industrial Products, successor in interest to Byron Jackson Pumps and predecessor in interest to Flowserve International" as directed by Mr. Henke, Flowserve's current Associate General Counsel, by Mary Jane Young, former BW/IP General Counsel, and by Mr. Gaffrey, BWC national coordinating counsel, they have been correctly identifying and appearing for the real party in interest and the proper defendant in the Byron Jackson pump asbestos cases.

6.      From the beginning of his involvement on behalf of Flowserve in the Byron Jackson pump asbestos cases in 2003, Mr. Henke has repeatedly expressed his desire to have

3

Flowserve and its affiliates represented in the Byron Jackson asbestos litigation by the same separate network of national and local defense counsel that represents Flowserve in claims arising out of asbestos containing products manufactured and sold by Flowserve's other lines of business unrelated to BWC. For example, the subject was discussed during the September 25, 2003 meeting between Mr. Henke, Marc Gaffrey and Anthony Packard (telephonically) that is summarized in Mr. Gaffrey's September 23, 2003 memorandum attached hereto as Exhibit B. As Mr. Gaffrey' memorandum discloses, at the September 23, 2003 meeting "the initial topic discussed was Larry's desire to move towards a more consolidated defense" involving the other pump companies Flowserve had acquired. That effort was discouraged by Mr. Gaffrey and by BWC's insurance carriers for a number of reasons, including the potential conflicts of interests that might arise between the various companies owned by Flowserve that manufactured similar or related asbestos containing products. See Gaffrey Memorandum, Exhibit B at page 2 (first full paragraph).

      7.     Undeterred by his failure to persuade Mr. Gaffrey and the BWC insurers to allow the defense of the Byron Jackson claims to be handled by Flowserve's own network of national and defense counsel, in March 2005, Mr. Henke tried to create a conflict of interest between the BWC appointed counsel and Flowserve by directing national counsel Marc Gaffrey to file either third party actions or cross-claims against Burns in the underlying asbestos cases. In other words, Mr. Henke was asking Mr. Gaffrey to do something that he knew he could not do, namely sue another client whom he was actively representing (along with his representation of the other former Borg-Warner affiliates named in asbestos cases). When Mr. Gaffrey refused to follow Mr. Henke's direction, he was threatened with disciplinary actions for alleged ethical violations.

4

8.    Just recently, Mr. Henke has tried for a third time to create the appearance of a conflict of interest that would justify the disqualification of BWC counsel and support the transfer of the defense of the Byron Jackson pump claims to Flowserve's national defense network by claiming that local BWC counsel had committed "ethical violations" and "malpractice" by filing appearances on behalf of BW/IP International or Flowserve as successor to Byron Jackson in Byron Jackson pump cases incorrectly naming BWC or Burns as the successor to Byron Jackson.    However, these appearances were filed in the very way that Flowserve's counsel, including Mr. Henke, had directed that they be filed so that the real party in interest and proper defendant appeared in the case.

9.    I have recently reviewed Flowserve's Motion to Dismiss Burns' Motion for Temporary Restraining Order and Preliminary Injunction, Flowserve's Memorandum In Support of Motion to Dismiss and the Affidavit of Lawrence Henke wherein it is claimed that "[i]n light of [the] unauthorized and prejudicial conduct on the part of CNA's chosen counsel, Flowserve has determined that it is not only reasonable, but imperative, so as to fully protect its interests, that its defense in the underlying asbestos cases be reassigned to [Flowserve's network of national and local defense counsel.]"    Henke Affidavit, para. 10.    This attempt to justify Flowserve's long-expressed desire to transfer the defense of the Byron Jackson pumps cases to its own network of defense counsel because of alleged "unauthorized and prejudicial conduct on the part of CNA's chosen counsel" is contrary to Flowserve's own actions and its own prior attempts to justify such a transfer. As recently as February 17, 2006, I was advised in a letter from Gregory Rogus, one of Flowserve's network of defense counsel, that Flowserve would take action to transfer all future and current Byron Jackson asbestos lawsuits to Flowserve's national

coordinating counsel "if by 5:00 p.m. CST on February 22, 2006, Burns has not notified Flowserve in writing that Burns has fully accepted defense and indemnity obligations pursuant to §9.04 of the 1987 Stock Purchase Agreement." A copy of Mr. Rogus' February 17, 2006 letter is attached hereto as Exhibit C. [1] Presumably had Burns timely acceded to Flowserve's demands, the asbestos cases would not have been transferred to its network of defense counsel despite Flowserve's recent claims of "unauthorized and prejudicial conduct on the part of CNA's chosen counsel."

10.     Mr. Henke also references, in paragraph 9 (B) of his affidavit the *Wanda Sue Brewer* case and claims that I instructed local counsel in that case "to file an answer on behalf of 'Flowserve, solely as successor in interest to BW/IP, Inc. (Borg Warner Industrial Products), and Byron Jackson Company." In fact, in June 2004, I received a call from local counsel Ryan Wilhelm who had been assigned to handle the *Brewster* case who brought to my attention that no one had appeared on behalf of Flowserve Corporation in that case, even though Flowserve was named in the complaint. (Attached as Exhibit D is a copy of part of the caption of the *Brewster* complaint naming "Flowserve Corp. individually and as successor in interest to ... BW/IP, Inc., Byron Jackson Co., Borg Warner Corporation, Borg-Warner Industrial Corporation, Borg Warner Energy Equipment Group, Bor-Warner Industrial Products ..." as well as naming Flowserve as alleged successor to many other corporations/businesses). Mr. Wilhelm asked me if I knew whether Flowserve had been served in the case and I indicated that I did not. He suggested and I agreed that it would be prudent to file an appearance on behalf of Flowserve

---

[1] Note that the action Flowserve demanded Burns take, on five days' notice including a weekend, would have resolved the key issue before this court –interpretation of the 1987 Stock Purchase Agreement.

solely as successor in interest to BWIP in order to avoid a potential default and at the same time preserve any objections to service. To my knowledge this is precisely what was done. See letter from Mr. Wilhelm dated March 14, 2006 attached as Exhibit E documenting these facts, and confirming that Mr. Wilhelm filed an answer on behalf of Flowserve "simply to protect Flowserve's interests." See also letter from Mr. Wilhelm dated July 2, 2004 and attached as Exhibit F confirming the same.

11.    As discussed above, the proper procedure for appearing in the Byron Jackson cases was something that was discussed and agreed to by Mr. Henke and his predecessor Mary Jane Young. With respect to issues of service, Mr. Henke typically deferred to counsel handling the claims to make the decision whether to appear or challenge service. For example, attached hereto as Exhibit G is an e-mail string reflecting e-mails recently sent on January 16, 2006 between Anthony Packard of my firm and Mr. Henke at Flowserve discussing whether there had been proper service on the defendants named in an asbestos complaint as "Flowserve Corporation as successor in interest to Byron Jackson Pumps" and "BW/IP International Services Corporation, fka Borg Warner Industrial Products, as successor in interest to Byron Jackson Pumps." In response to Mr. Packard's inquiry about service on these defendants, Mr. Henke stated:

> "The service indicates service on Flowserve Corporation. As you note below, there is a bit of imprecision, which is not new in this litigation, showing Flowserve Corporation is a named defendant with reference to multiple heritage lines. However, directly below the naming of Flowserve Corporation (individually) is an indication that the plaintiff is seeking to recover damages from Flowserve Corporation, as successor in interest to Byron Jackson. With the aforementioned imprecision, it was unclear if the plaintiffs' had actually served Flowserve Corporation alone, Flowserve Corporation, as successor in interest to Bryon Jackson, or both. . . If you decide to take the position that the service is ineffective as to BW/IP, n/k/a Flowserve Corporation, as successor in interest to

7

Byron Jackson, then I'm assuming you will file the appropriate objections and preserve that position in this matter."

In other words, just a few short weeks ago Mr. Henke was content to have Mr. Packard and/or local counsel make the call on service issues. Now by his affidavit Mr. Henke would have this Court believe that the decision to file appearances in cases where service was not confirmed constituted "unauthorized and prejudicial conduct on the part of CNA's counsel" which made it "imperative" for Flowserve to "reassign" the defense of the underlying asbestos cases to "other counsel."

12.     Since the filing of my original affidavit in this matter a number of circumstances have arisen which further manifest the irreparable harm that Burns will suffer if injunctive relief is not granted.  On February 22, 2006, Mr. Henke sent a letter to all appointed national and local counsel handling the Byron Jackson asbestos cases advising them that they were being terminated, effective March 1, 2006, as counsel for "Flowserve Corporation, successor in interest to BW/IP, Inc. a.k.a. BW/IP International, Inc."  Subsequently upon Mr. Henke's request, files for cases in which Flowserve Corporation, BW/IP, Inc. or BW/IP International, Inc. were specifically named and served were forwarded by the terminated local counsel to Flowserve's National Coordinating Counsel.  All other cases in which Burns or BWC was named, or cases in which Flowserve or its affiliates were named but not served, were left with local counsel and Flowserve has denied any responsibility for these matters.  The problem is that as a result of the 1987 sale by BWC of the stock of Borg-Warner Industrial Products, Inc., Flowserve has sole possession and control of all documents pertaining to the manufacture and sale of Byron Jackson pumps.  Flowserve also has exclusive control over the corporate witnesses now employed by

Flowserve and its affiliates who can place Byron Jackson pumps at job sites, and testify about their uses and characteristics including whether they contained asbestos. Despite Flowserve's exclusive control over the critical evidence that may be required to defend the Byron Jackson cases, Mr. Henke has in some cases refused to cooperate in the defense of cases in which Flowserve and its affiliates are not named or were named but not served, including cases in which Burns is erroneously identified as the successor to Borg-Warner Industrial Products, Inc. or Byron Jackson Company. In a California case know as *Halsema*, Mr. Henke recently refused to sign answers to interrogatories unless the answers were amended to falsely state that "BW/IP's predecessor, Borg-Warner Corporation, now known as Burns International Services Inc. . . . sold pumps and related equipment under the Byron Jackson product name."[2] See e-mail dated February 27, 2006, from Marc Gaffrey to counsel for CNA attached as Exhibit H ("Larry Henke has made proposed changes to the discovery responses which inject Burns into this case and may have a negative impact on Dean's [defense counsel's] Motion for Summary Judgment. Larry's proposed changes are unique to any set on which we have worked with him in the past and he insists on the designation or else he will not have the responses certified.") Mr. Henke's conduct outlined above is obviously not the product of his alleged concern for "unauthorized and prejudicial conduct on the part of CNA's counsel" but is designed simply to prejudice and burden Burns and the other BWC entities, by filing false and misleading discovery responses, and in my

---

[2] As noted above, paragraph 5, Flowserve International, Inc. is the current name of Borg-Warner Industrial Products, Inc. and a proper party defendant in the underlying cases. Burns International Services Corporation on the other hand is in the business of providing guard and security services and never made any asbestos products; it was incorporated in Delaware on February 6, 1987 as AV Holdings Corporation, just over a month before the Agreement for the sale of the stock of Borg-Warner Industrial Products, Inc was signed effective March 12, 1987.

opinion is being implemented as part of the "Armageddon" strategy Flowserve's National

Coordinating Counsel described to me when we first met in December, 2004.


FURTHER AFFIANT SAYETH NOT.


*Edward B. Mueller*

Edward B. Mueller


Subscribed and sworn to before me
this 15th day of March, 2006

Notary Public

"OFFICIAL SEAL"
LORRAINE A.M. MAPLES
Notary Public, State of Illinois
My Commission Expires 3/4/09

**EXHIBIT A**

**AULTMAN, TYNER & RUFFIN, LTD.**
A PROFESSIONAL LAW CORPORATION
ATTORNEYS AND COUNSELORS AT LAW

DORRANCE AULTMAN
THOMAS W. TYNER
LOUIE F. RUFFIN
BEN E. SHEELY
CURTIS SMITH
DORRANCE AULTMAN, JR.
WILLIAM N. GRAHAM
GLENN L.M. SWETMAN (MS & LA)
TROY N. BELL (LA)
DAPHNE M. LANCASTER (MS & GA)
KELLY CASH LEE
CHRISTOPHER O. MASSENBURG (MS & LA)
W. HEATH HILLMAN
JEANETTE S. RIGGINS (LA)
MARIA CLARA PARDO (LA)
KATRINA M. HALL
CHRISTOPHER E. BAUER
R. DOUGLAS BAYLES
CHADWICK L. SHOOK (MS/TN/GA/AL)
NIKI L. PACE (MS, OR)
DAWN E. FULCE
ROCKY W. EATON
ADAM K. DRANEY
LUCIAN LAMAR BULLEN

315 HEMPHILL STREET
POST OFFICE DRAWER 750
HATTIESBURG, MISSISSIPPI 39403-0750

TELEPHONE
(601) 583-2671
FAX # (601) 583-2677
E-MAIL aultyn@megagate.com

OTHER OFFICES

1201 25TH AVENUE, SUITE 300
POST OFFICE BOX 607
GULFPORT, MISSISSIPPI 39502
(228) 863-6913
FAX # (228) 868-8505
THE TEXACO CENTER
400 POYDRAS STREET, SUITE 1900
NEW ORLEANS, LOUISIANA 70130
(504) 528-9616
FAX # (504) 528-9640

December 9, 2003

Edward B. Mueller, Esquire
NISEN & ELLIOTT, LLC
200 West Adams Street, Suite 2500
Chicago, Illinois 60606

RE:   *Marcia Wade, et al. vs. ACE Hardware, et al.*
      *Circuit Court of Jefferson County, Alabama*

Dear Ed:

This letter is to acknowledge and thank you for forwarding to us
defense of the captioned matter pursuant to service of Home
Flowserve as successor to Byron Jackson.

Pursuant to instructions from Marc Gaffrey, we are to answer this
Complaint as follows:

   *BW/IP International Inc., fka BorgWarner Industrial*
   *Product, successor in interest to Byron Jackson Pump,*
   *predecessor to Flowserve, Inc.*

Even though this is an Alabama case, we will include it on our
Mississippi bill for other representations of BW/IP. If this
needs to be handled differently or separately, I would appreciate
being advised.

Sincerely yours,

*for* THOMAS W. TYNER

TWT/alm
cc:   Marc Gaffrey, Esquire
      Bill Adamski
      Nancy Tarman Black
      Jene Seiler
      James H. Fox

# EXHIBIT B

Page 2

Dear Ray, Bill, Mike, Jene, Rinda and Nancy:

As you are aware, this past Thursday, September 25, 2003, I met personally with Lawrence Henke, Esq., the new Associate General Counsel for Flowserve. Tony Packard participated by telephone for the majority of the meeting.

Larry was hired by Flowserve in August and has been assigned to the corporate oversight of all Flowserve asbestos related litigation. I originally suggested the meeting in order to establish our respective areas of responsibility as well as to coordinate effective handling and defense strategies. Since Flowserve acquired BW/IP in 1997, this will be the first time that we will have interested corporate involvement at the current corporate level.

As anticipated, the initial topic discussed was Larry's desire to move towards a more consolidated defense involving the various predecessor pump manufacturing companies acquired by Flowserve over the past several years. The companies acquired include Duriron, Durametallic, United Cetrifical Pumps, Invinsys, various Ingersoll Rand product lines, as well as BW/IP (successor to Byron Jackson Pumps). Larry was not specific as to how he was going to propose a defense consolidation, except to indicate that some form of reduction of defense counsel was necessary. The most compelling reason for this approach is that he feels that plaintiffs are achieving a windfall by suing and negotiating separately with each predecessor entity, rather than with the Flowserve group as a whole. He advised that he has broached this topic with the national counsel of the various acquired entities and has been met with mixed responses. In particular, Ingersoll Rand was vehemently opposed to any defense consolidation.

Both Tony and I expressed our views that joint cooperation on the defense is a very positive approach and one that we would recommend and encourage however, there are a number of factors with regard to the BW/IP defense that would have to be raised and resolved before a consolidated defense could be considered. Of the factors, the most important is that the BW/IP litigation represents only a small portion of the pending asbestos litigation defended on behalf of the Borg Warner coverage line. The current Borg Warner successor corporations include Burns International, York International and Flowserve. They all have valid interests regarding the preservation of the underlying Borg Warner insurance coverage. By consolidating the defense Borg Warner's carriers, Burns and York, will lose significant control of the litigation defense. I described in detail the various entities that comprise the Borg Warner historical corporate map as well as where we believe we have or might have potential asbestos liability. Moreover, while a consolidated defense could act to reduce the Flowserve profile, it may increase the BW/IP profile and give it greater exposure in more cases.

Another factor against complete consolidation includes an anticipated nightmare with respect the developing a cost share governing defense and indemnity involving all of the numerous carriers for the various predecessor entities. With respect to BW/IP this is even more of a concern since the cost share varies depending upon the years of exposure.

I also raised the fact that in many of the cases involving Borg Warner we do not learn until late in the litigation which former Borg Warner entity is the target of the plaintiff. In many jurisdictions discovery may not take place until years into the case, shortly before trial. Our local counsel may only then learn as to whether the claimed exposure is automotive, pumps, chilling units or other alleged types of asbestos exposure. Borg Warner has made great efforts through great expense to train its local counsel to defend all

Page 3

aspects of the potential Borg Warner exposure. This is rendered even more important when the scope of plaintiff's claims are learned late and an effective defense must be quickly invoked.

Finally, there are many areas of potential conflict of interests to consider. One primary area would be the fact that BW/IP ran a mechanical seals division in Souther California that manufactured some product lines with an asbestos component part. The mechanical seal division not only sold the seals to BW/IP as an original component part but, also sold to many of BW/IP's competitors, including companies acquired by Flowserve such as Duriron and Durametallic. Since it must be anticipated that indemnification claims may be asserted by Duriron and Durametallic against BW/IP, joint representation would be an absolute conflict of interest.

It was apparent that Larry had not fully considered some of the ramifications of his goal of defense consolidation but was willing to consider them. It is also apparent that he has not begun to act on his consolidation quest but is only gathering as much information as he can. In my opinion, we are a long ways off from actually enacting a consolidated defense, but I feel that it is important that all of the participants ponder their position and voice their respective positions.

The remainder of our meeting involved issues related to corporate involvement in the defense of BW/IP in the asbestos matters. The topics included coordination on discovery responses, corporate involvement on deposition notices, contact with corporate employees and development of local defense strategy. I assured Larry that I would interact with him on these areas and act as a conduit between our local attorneys and his office. In this manner, he would primarily be communicating with my office rather than a myriad of outside counsel. I will re-enforce these procedures with Borg Warner's local counsel.

The last topic of discussion was the manner in which Borg Warner's local counsel answer for BW/IP or Byron Jackson Pumps when it is named in a complaint. Larry's concern echoes the recent problem experienced in the Dallas, Texas case of <u>Douma</u> wherein our local counsel answered in a manner which could of bound all of Flowserve and then failed to take corrective steps to resolve the erroneous responsive pleading.

I told Larry that when BW/IP or Byron Jackson are named in a Complaint that I have instructed local counsel to answer on behalf of "BW/IP International, Inc. formerly known as Borg Warner Industrial Products, successor in interest to Byron Jackson Pumps." This is a description which I worked out with May Jane Young, former General Counsel of BW/IP, several years ago. If Flowserve is also named in the caption of the complaint as successor, then for whom we answer is the same with the exception of, "...predecessor in interest to Flowserve International" at the end.

Larry advised that this description is accurate and satisfactory and instructed us to continue with this designation. We also agreed that in those jurisdictions where plaintiff's counsel continues to plead BW/IP in connection with Flowserve, that we have Borg Warner's local counsel reach out to their adversary to encourage counsel to make the change. I will also advise local counsel to continue with this designation and approach.

Page 4


I welcome th opportunity to discuss this meeting with any of you in greater detail. Please feel free to contact me.

Very truly yours,

*Marc S. Gaffrey/s/*

MARC S. GAFFREY

MSG:rds
cc:    Ms. Peggy Muensterman @ BorgWarrier Inc. - via fax - 312 322 8621
       Ms. Suzanne Marquardt @ BorgWarner Powertrain Technical Center - via fax - 248 754 0154
       Mr. Timothy Barnard @ Bernard, Mezzanotte & Pinnie - via fax - 610 565 3309
       Mr. Anthony Packard, Esq. @ Nisen & Elliott - via fax - 312 346 9316
       Mr. Frank J. Ullmann @ York International, Inc. - via fax - 717 771 6430

# EXHIBIT C



Segal McCambridge
Segal McCambridge Singer & Mahoney

**Gregory E. Rogus**
Direct (312) 645-7804
grogus@smsm.com


February 17, 2006


Edward Mueller
Nisen & Elliott LLC
200 W. Adams Street #2500
Chicago, IL  60606

      Re:   *Flowserve vs. Burns*
             Court No. 04-1294 JJF
             Our File No. 7955.301

Dear Ed:

       I have been instructed by my client to provide you with the following letter.  As you are aware from Irv Faber's letter of February 8, 2006, CNA has informed Flowserve of certain "unilateral action" that it intends to take against the Insureds in connection with the defense of the underlying asbestos lawsuits.

       The purpose of this letter is to notify you that if by 5:00 p.m. CST on February 22, 2006, Burns has not notified Flowserve in writing that Burns has fully accepted defense and indemnity obligations pursuant to §9.04 of the 1987 Stock Purchase Agreement, Flowserve intends to take certain actions in an effort to ensure that its interests in the underlying asbestos lawsuits are fully protected.  Flowserve intends to seek all costs and expenses associated with this action from Burns.

       First, based on CNA's actions, Flowserve will be advising CNA's chosen defense counsel that on or before March 1, 2006, they must forward to Flowserve's National Coordinating Counsel for asbestos claims their complete files for all lawsuits in which said counsel has entered an appearance, whether properly or improperly, on behalf of Flowserve or any Flowserve heritage entity in said lawsuit (collectively "BW/IP").

       Second, with respect to all current and future lawsuits brought against BW/IP for alleged injuries arising out of asbestos-containing products manufactured or sold by Borg Warner prior to 1987, BW/IP will assert all defenses necessary to fully protect its interests, including third-party complaints against Burns International Services Corp.

Edward Mueller
Nisen & Elliott LLC
February 17, 2006
Page 2

Third, Flowserve intends to review each of the files being forwarded by CNA-retained defense counsel.  To the extent that Flowserve determines that any CNA-retained defense counsel has violated any provision of the applicable Code of Professional Responsibility by placing the interests of Burns or any other Borg Warner-related entity above those of Flowserve, or by otherwise acting in a manner adverse to Flowserve's interests (e.g. improperly substituting BW/IP into lawsuits naming Burns), Flowserve will file appropriate complaints with the applicable disciplinary bodies. Furthermore, if it is determined that any such defense counsel was instructed by or on behalf of Burns or its counsel to take such action, we will amend our Delaware complaint to seek appropriate additional relief.  If any such instruction came from any of Burns' insurers, Flowserve will likewise seek all remedies available at law from the responsible entity.

Lastly, Flowserve and its counsel intends to meet with plaintiffs' counsel in the pending asbestos suits commencing on or shortly after March 15, 2006, to explore common ground with respect to obtaining a global resolution of the asbestos lawsuits brought against Flowserve.  These settlement meetings will be comprehensive in nature and will include a discussion of all reasonable options available to the parties to seek the resolution which best protects Flowserve's interests.

Should you have any questions, please feel free to contact either Larry Henke or me.

Sincerely,

Gregory E. Rogus

GER:sd

cc:    Larry Henke
511408_1

# EXHIBIT D

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

WANDA SUE BREWER, Individually, as the )
surviving spouse and as the Representative )
of the **ESTATE OF McARTHUR BREWER,** )
deceased; )
**DORIS STULTS,** Individually, as the )
surviving spouse and as the Representative )
of the **ESTATE OF CHARLES STULTS,** )
deceased; )
**SHIRLEY RENEMAN,** Individually, as the )
surviving spouse and as the Representative )
of the **ESTATE OF PAUL RENEMAN,** )
deceased; )
**VICKEY TRAYLOR,** Individually, as the )
surviving spouse and as the Representative )
of the **ESTATE OF WILLIAM TRAYLOR,** )
deceased; )
**BILLY McGEE,** individually, as the surviving )
Child and as the Representative of the )
**ESTATE OF PAUL McGEE,** deceased; )
**THOMASINA CHOAT,** Individually, as the )
surviving spouse and as the Representative )
of the **ESTATE OF RALPH JOHNSON,** )
deceased; )
**WILLIAM ROUSE and VIRGINIA ROUSE;** )
**CHARLTON STEPHENS;** )
**RUFUS W. HANDLEY and BETTY HANDLEY;** )
**DAN YOUNGBLOOD and** )
**SHEILA YOUNGBLOOD;** )
)
)
)
**Plaintiffs,** )
)
)
vs. )
)
)

CIVIL ACTION
NO: _2003 cv 75250_



**JURY TRIAL DEMAND**

**GEORGIA PACIFIC CORPORATION,** individually and as a successor to Bestwall
Gypsum Company; **MAYER ELECTRIC SUPPLY COMPANY, INC.; MID-SOUTH
MECHANICAL, INC.; NATIONAL SERVICES INDUSTRIES, INC.,** formerly North
Brothers Company; **RAYLOCK,** d/b/a Division of General Parts; **ABNEY MILLS;
A.C.F. Valves ACF Industries, Inc.; ALBANY INTERNATIONAL; AMCHEM;
AMERICAN CYANAMID COMPANY; AMERICAN OPTICAL CORPORATION;
AMERICAN STANDARD, INC.; ANCHOR PACKING COMPANY, A DELEWARE
CORPORATION; A.O. SMITH ELECTRICAL PRODUCTS COMPANY; AQUA-
CHEM, INC.; ARROW HART; ASHLAND CHEMICAL,** As successor to Catalin

Corp. of America; **ASARCO; ASTEN-HILL; ASTEN JOHNSON, INC.,** Individually and as successor-in-interest to Asten, Inc.; **A.W. CHESTERTON COMPANY BABCOCK BOSIG POWER, INC.,** as successor in interest to D.B. RILEY, INC (Formerly Riley Stoker Corporation); **BALDOR ELECTRIC COMPANY; BEAZER EAST, INC.** f/k/a Koppers Company; **THE B.F. GOODRICH CO.; BELL & GOSSETT, ITT INDUSTRIES, INC.; BELLMONT PACKING COMPANY; BONDEX INTERNATIONAL, INC.; BORDEN CHEMICAL, INC.;** Individually and as successor to Borden Sales Company and Borden Inc.; **BORG WARNER CORPORATION; BOWATER PAPER COMPANY; BP AMOCO CHEMICAL COMPANY,** Individually and as successor in interest to Amoco Chemical Company, Amoco Chemicals Company, Plaskon Electronic Minerals, Avisun Corp., Atlantic Richfield Company/ARCO Metals, as successor in Interest to Anaconda American Brass Company, American Brass Company, and Anaconda Company; **BRASA, INC.; BRANDON DRYING FABRICS, INC.** f/k/a Brandon Sales Co. Inc.; **BUDD COMPANY; BURNS INTERNATIONAL SERVICE CORPORATION,** a/k/a  Borg Warner, Inc., a/k/a Borg Warner Automotive; **CAPCO PIPE COMPANY, INC.; CAREY MANUFACTURING COMPANY; CERTAINTEED CORPORATION; CHAMPION INTERNATIONAL CORP.,** Individually and as successor in interest to St. Regis Paper Company and U.S. Plywood; **CIRCOR INTERNATIONAL, INC.,** Individually and as successor in interest to Circle Seal Controls, Inc., Hoke, Inc., GO Regulator, Aerodyne Controls Corporation, Atkomatic Products, Leslie Controls, Inc., CPC-Cryolab Products, Spence Engineering Company, Inc., Nicholson Steam Trap, Rockwood Swenderman Products, SSI Equipment, Inc., Contromatics Specialty Products, KF Industries, Inc., Watts Industries, and Telford Valves & Specialties, Inc.;  **CLARK-RELIANCE CORPORATION; CLEAVER-BROOKS,** a Division of Aqua Chem, Inc.; **CONGOLEUM CORPORATION,** f/k/a Congoleum Nairn, Inc.; **COOPER CROUSE-HINDS; COPES VULCAN, INC.;  COOPER INDUSTRIES,** Individually and as successor in interest to Cooper Bussmann, Cooper Crouse-Hinds, Cooper Power Systems, Cooper Tools, Cooper-Bessemer, Cooper-Cameron, Cooper Company, The Bessemer Gas Engine Company, McGraw-Edison Company, Coiltronics, Inc., Cooper Electrical Products Division, W-K-M Valves Company, Pennsylvania Process, Pennsylvania Pump and Compressor, Cameron Iron Works, Demco Valve Company, Joy Manufacturing Company, Joy Industrial Compressor Group, Cooper Flow Control Division, Tundra Valve & Wellhead Corporation, Daniel Ball Valve, Orbit Valve International, General turbine Systems, Nickles Industrial Manufacturing, Elliot Turbocharger Group, Inc., Arrow-Hart, Cooper Turbo Compressor, Eagle Electric Mfg. Co., Inc., Masoneilan, Fisher-Rosemount, Belden Manufacturing Company, Belden Wire & Cable Company, Thomas A. Edison, Incorporated, McGraw Electric Company, Kyle Corporation, Line Material Company, Pennsylvania Transformer Company, McGraw-Edison Power Systems, Rural Transformer and Equipment Company, Kearney, National Electric Coil, American Brakeshoe, Kellogg American, Manning-Bowman, Pneumo-Abex Corp. and Brevel Motors; **CRANE CO.,** Individually and as

2

successor in interest to Deming Pump, Cyclotherm, Hydro-aire, Lear Romec, Risistoflex, Swartwout Co., Stockham Valve Company, Weinman Pump Company, ChemPump, and Burks Pumps; **CRANE STOCKHAM VALVE COMPANY; CROSSFIELD PRODUCTS; CROWN CORK & SEAL COMPANY, INC.; DANA CORPORATION; DART INDUSTRIES; DISCOUNT AUTO PARTS, INC.; DOVER CORPORATION,** individually and successor in interest o A-C Compressor; PRECO Turbine & Compressor Services, Peerless Manufacturing Company, Blackmer Pump, NORRISEAL, OPW and Groen; **DURABLA MANUFACTURING COMPANY; DURAMETALLIC CORP.; EASTMAN CHEMICAL COMPANY; EMERSON ELECTRIC CO.,** Individually and as successor in interest to U.S. Electric Motors, Doerr Electric Motors, U.S. Synchrogear, Edwin L. Wiegand Company, Chromolox, Xomox, Fisher/Rosemount, Brooks Instrument, Daniel Industries, Inc., Daniel Orifice Fitting Co., Alco Valve, Copeland, Automatic Switch Co. Emerson Process Management, Fisher Controls International, the Fisher Governor Company, Continental Equipment Company, and Peerless Mfg. Co.; **ERICSSON, INC.,** As successor in interest to the Anaconda Wire & Cable Company; **EXXON MOBILE CORPORATION,** As successor in interest to Mobile Corporation, Exxon Corporation, Humble Oil and Refining Company, Standard Oil of New Jersey, Enjay Chemical Company, Exxon U.S.A., and Exxon Chemical Company; **FAIRBANKS MORSE PUMP CORPORATION; FERRO ENGINEERING,** A division of Ogleby Norton Company; **THE FLINTKOTE COMPANY; FIRESTONE TIRE & RUBBER CO.; FLOWSERVE CORP.,** Individually and as successor in interest to Duriron Company, Durco International, BW/IP, Inc., Byron Jackson Co., Borg Warner Corporation, Borg-Warner Industrial Corporation, Borg Warner Energy Equipment Group, Bor-Warner Industrial Products, Dresser-Rand, Terry Steam Turbine, Moore Steam Turbine, Clark Bros., Anchor Darling Valves, Atomac Valves, Durco Valves, Kammer Valves, Noble Valves, Baltek Control Products, Vogt, McCanna, Durametallic, Five Star Seal, ACEC Centrifugal Pumps, IDP Pumps, Stork Engineered Pumps, Aldrich Pumps, Jeumont-Schneider Pumps, United Centrifugal Pumps, Byron Jackson Pumps, Pacific Pumps, Western Land Roller Irrigation Pumps, Cameron Pumps, Pleuger Pumps, Wilson-Snyder Pumps, Durco Pumps, Scienco Pumps, Worthington Pumps, Flowserve Pumps, Sier-Bath Pumps, Worthington Simpson Pumps, Edward Valves, Edward Stream Specialty Company, Vogt Valve Company, and Henry Vogt Machine Company; **FMC CORPORATION,** Individually and as successor in interest to Food Machinery and Chemical Corporation, Coffin Turbo Pumps, Chicago Pumps, Peerless Pumps, WECO, Chiksan, Link-Belt, Well Equipment Mfg. Corp., Hamer, and    John Bean Pump Co.; **FOSECO, INC.; FOSTER WHEELER CORPORATION; GARLOCK SEALING TECHNOLOGIES, LLC; GENERAL CABLE CORPORATION,** Individually and on behalf of Carol Cable Corporation; **GENERAL ELECTRIC COMPANY; GENERAL SIGNAL PUMP GROUP; GOODRICH CORPORATION; GOODYEAR TIRE AND RUBBER, CO.; THE GORMAN-RUPP CO.; GOULD INC.** a/k/a Gould Electronics Inc. Individually and as successor in interest to Imperial Corporation, Eastman

**EXHIBIT E**

LAW OFFICES

# CARLOCK, COPELAND, SEMLER & STAIR, LLP

### A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

**RYAN B. WILHELM**

**DIRECT DIAL NUMBER**
404-221-2218

**E-MAIL ADDRESS**
rwilhelm@carlockcopeland.com

**FACSIMILE**
404-222-9482

**2600 MARQUIS TWO TOWER**
**285 PEACHTREE CENTER AVENUE**
**ATLANTA, GEORGIA 30303-1235**

TELEPHONE (404) 522-8220

**MAILING ADDRESS**
P. O. Box 56887
Atlanta, Georgia
30343-0887

www.carlockcopeland.com

**CHARLESTON, SC OFFICE**
134 Meeting Street, Suite 500
Charleston, SC 29401-3001
**(843) 727-0307**

**COLUMBUS, GA OFFICE**
The Rothschild Building
Suite 400, 1214 First Avenue
Columbus, GA 31901
**(706) 653-6109**

**REPLY TO ATLANTA OFFICE**

March 14, 2006

VIA E-MAIL ONLY

Edward B. Mueller, Esq.
Nisen & Elliott
Suite 2500
200 West Adams Street
Chicago, IL 60606

      Re:    <u>Wanda Sue Brewer et al. v. Georgia Pacific Corporation, et al.</u>, Superior Court of
                Fulton County, Georgia, Civil Action File No. 2003CV75250

Dear Ed:

      I am writing this letter in an attempt to clarify why our firm filed an answer on behalf
of "Flowserve, solely as successor in interest to BW/IP, Inc. (Borg Warner Industrial
Products), and Byron Jackson Co." in the Brewer case referenced above. By way of a brief
summary, in early 2004, our firm was requested by Nisen & Elliot to file an answer on behalf
of "Flowserve, solely as successor in interest to BW/IP, Inc. (Borg Warner Industrial
Products), and Byron Jackson Co." in several cases, such as the Armstead, Alvis, Baird,
Herndon and Voss lawsuits filed by plaintiff's attorney Pat Keahey in Birmingham, Alabama.

      In June of 2004, I realized that Flowserve, Individually and as successor in interest to
numerous entities, was also named as a defendant in the Brewer case. The Brewer case was
also filed by plaintiff's attorney Pat Keahey, and the style of the complaint was nearly identical
to the Armstead, Alvis, Baird, Herndon and Voss lawsuits referenced above. However, at that
time, our firm had not been requested to file an answer in Brewer on behalf of Flowserve, nor
had we received notice of Flowserve being served with the complaint. At that point, I was
concerned that Flowserve may have been served with the Brewer complaint, but that our firm
had not been informed that an answer was necessary.

      On June 21, 2004, being concerned that Flowserve may have been served with the
Brewer complaint, I called Ed Mueller of Nisen & Elliott in Chicago. During this discussion,
I expressed my concern that Flowserve may have been served with the complaint considering

Ed Mueller, Esq.
March 14, 2006
Page 2

that they had previously been served in the other lawsuits referenced above.   During this
discussion, it was determined that our firm should file an answer on behalf of "Flowserve,
solely as successor in interest to BW/IP, Inc. (Borg Warner Industrial Products), and Byron
Jackson Co." simply to protect Flowserve's interests.   In our Answer, I expressly raised
service and service of process as affirmative defenses in the event that Flowserve had not been
served with the complaint.

        I hope this letter addresses your concerns.   If you should have any questions or
comments, please do not hesitate to call.


                            Very Truly Yours,

                            /s/ Ryan B. Wilhelm

                            RYAN B. WILHELM


RBW:bhc

**EXHIBIT F**

LAW OFFICES

# CARLOCK, COPELAND, SEMLER & STAIR, LLP

**A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS**

RYAN B. WILHELM

DIRECT DIAL NUMBER
404-221-2218

E-MAIL ADDRESS
rwilhelm@carlockcopeland.com

FACSIMILE
404-222-9482

2600 MARQUIS TWO TOWER
285 PEACHTREE CENTER AVENUE
ATLANTA, GEORGIA 30303-1235

TELEPHONE (404) 522-8220

MAILING ADDRESS
P. O. Box 56887
Atlanta, Georgia
30343-0887

www.carlockcopeland.com

CHARLESTON, SC OFFICE
134 Meeting Street, Suite 500
Charleston, SC 29401-3001
(843) 727-0307

COLUMBUS, GA OFFICE
The Rothschild Building
Suite 400, 1214 First Avenue
Columbus, GA 31901
(706) 653-6109

REPLY TO ATLANTA OFFICE

July 2, 2004

Ms. Suzanne Marquardt
Senior Paralegal
Borg Warner Automotive
3800 Automation Avenue
Suite 100
Auburn Hills, MI  48326-1782

Timothy B. Barnard, Esq.
Barnard, Mezzanotte and Pinnie
The Williamson House
218 West Front Street
P.O. Box 289
Media, PA  19063-0289

Re:    Wanda Sue Brewer v. Georgia Pacific Corporation, et al.
Civil Action File No. 2003cv75250
Our File No. 254-17435

Dear Suzanne and Tim:

This letter is to inform you that we recently filed an Answer on behalf of defendant Flowserve, solely as successor in interest to Borg Warner Industrial Products, Inc. and Byron Jackson Company in the above-referenced lawsuit.  You may recall that we recently filed a similar Answer on behalf of Flowserve in the *Mildred Armstead, Wendell Alvis, John Baird, Tracy Herndon, and Lois Voss* files.  In this regard, please see my letter of April 26, 2004.  At that time, we were asked by the firm of Nisen & Elliott in Chicago to file an Answer on behalf of Flowserve in the five lawsuits previously referenced.

July 2, 2004
Page 2


However, at that time, we were not asked to file an Answer on behalf of Flowserve in the *Wanda Sue Brewer* file. This lawsuit was filed on September 22, 2003 and I recently noticed that Flowserve was a named defendant and that no Answer had been filed on behalf of Flowserve, solely as a successor in interest to Borg Warner Industrial Products and Byron Jackson Company. I brought this to the attention of Ed Meuller at Nisen & Elliott and he requested that I file an answer on behalf of Flowserve. This letter is simply to inform you that we have filed such an answer and that we will be defending Flowserve, solely as successor in interest to Borg Warner Industrial Products, Inc. and Byron Jackson Company as well as Burns International Services Corporation and York International Corporation in this lawsuit.

If you should have any questions or comments concerning these matters, please do not hesitate to call.

Very truly yours,


RYAN B. WILHELM

RBW:bhc
cc:  Nancy Tarman Black
     Rinda Akins
     William Adamski

# EXHIBIT G

**Anthony Packard**

| | |
|---|---|
| **From:** | Lawrence Henke [LHenke@flowserve.com] |
| **Sent:** | Monday, January 16, 2006 9:05 AM |
| **To:** | Anthony Packard |
| **Cc:** | cbechhold@thompsonhine.com; grogus@smsm.com |
| **Subject:** | R██████ATCallas Co et al New Castle Co DE 05 C 06 0657 ASB |

**Attachments:** _0116084835_001.pdf



_0116084835_001.
pdf (348 KB)

Tony,

Attached is the summons page and style of the Ortner matter referenced below. The service
indicates service on Flowserve Corporation. As you note below, there is a bit of
imprecision, which is not new in this litigation, showing Flowserve Corporation is a named
defendant with reference to multiple heritage lines. However, directly below the naming
of Flowserve Corporation (individually) is an indication that the plaintiff is seeking to
recover damages from Flowserve Corporation, as successor in interest to Byron Jackson.
With the aforementioned imprecision, it was unclear if the plaintiffs' had actually served
Flowserve Corporation alone, Flowserve Corporation, as successor in interest to Byron
Jackson, or both.
Accordingly, Flowserve served notice on Burns of its tender of this matter for defense and
indemnification pursuant to the long-standing practice.

Accordingly, Burns is on notice of the matter. If you decide to take the position that
the service is ineffective as to BW/IP, n/k/a Flowserve Corporation, as successor in
interest to Byron Jackson, then I'm assuming you will file the appropriate objections and
preserve that position in this matter. Taking this position, however, does not obviate
the notice, tender and expectations of Flowserve Corporation for a full and complete
indemnification pursuant to the terms of the Agreement.


(See attached file: _0116084835_001.pdf)

-----------------------------------------------------------------------------------
--------------

Larry Henke
Senior Attorney - Litigation
Flowserve Corporation
5215 N. O'Connor Blvd.
Suite 2300
Irving, TX  75039

(972) 443-6613
(972) 443-6913 [FAX]

| | | | |
|---|---|---|---|
| "Anthony Packard"<br><apackard@nisen.c<br>om> | | To | <lhenke@flowserve.com> |
| 01/06/2006 01:12<br>PM | | cc | "Edward B. Mueller"<br><emueller@nisen.com> |
| | | Subject | Ortner v ATCallas Co et al New |

1

Larry — We received the complaint in this case from you this morning (served on FS Dec 14). This again is a case of multiply named related defendants, with apparently only one service (in this case by e mail through LexisNexis) Given recent communications regarding naming of parties and appearances, I want there to be no mistake about what local counsel is being directed to do, or what we are doing as counsel for Burns. The named parties include 'Burns International Services Corporation, fka as successor in interest to Byron Jackson Pumps; BW/IP International fka Borg Warner Industrial Products, as successor in interest to Byron Jackson Pumps;…and Flowserve Corporation, as successor in interest to Byron Jackson Pumps ….'
Flowserve Corporation is also named independently, without any qualification.

    Please note that the LexisNexis letter is directed to "Flowserve Corp" and that it recites "Served Parties [sic] : Flowserve Corp" NOT 'Flowserve Corporation as successor in interest to Byron Jackson Pumps" , which is separately named. This may be a matter of inattention to detail on the part of LexisNexis, but I do not take this service as involving an interest insured under the Borg-Warner Corporation policies.
It may also be that Flowserve received service for each named defendant and that your office simply sent the "Flowserve" service sheet, not the "Flowserve as successor…" service sheet. Please check on this, and also whether there was a separate service for BW/IP, and let me know. Until I hear from you further on this matter, I will hold these pleadings, without forwarding them to the insurance carriers and local counsel.

Anthony Packard
Nisen & Elliott, LLC
200 West Adams Street, Suite 2500
Chicago, Illinois  60606-5232
(312) 346-7800

**EXHIBIT H**

## Edward B. Mueller

| | |
|---|---|
| **From:** | Marc Gaffrey [mgaffrey@hoaglandlongo.com] |
| **Sent:** | Monday, February 27, 2006 8:02 AM |
| **To:** | Irv Faber |
| **Cc:** | Michael Colgan; Vukasinovic, Ivana; Trent Proctor; Robert Murphy; Mark Deptula; Mr. Dean Pollack; Kristy Kulina; BW/IP National Counsel [4855873 - MSG]; Anthony Packard; Edward B. Mueller |
| **Subject:** | [Fwd: FW: Halsema Special Rogs and Request for Production]-BW/IP |
| **Attachments:** | Kristy 4.pdf; Kristy 3.pdf |

Irv,

We have run into difficulty in a San Francisco case against BW/IP being handled by Dean Pollack and seek your advice on how to proceed. Please note the email from Dean below. This is a case where the Complaint names BW/IP as successor to Byron Jackson and Burns is not named in any capacity. Larry Henke has made proposed changes to the discovery responses which inject Burns into this case and may have a negative impact on Dean's Motion for Summary Judgment. Larry's proposed changes are unique to any set on which we have worked with him in the past and he insists on the designation or else he will not have the responses certified.

Dean was under a deadline to file the responses last Friday. He and I decided that a temporary solution would be to file "objection only" responses and await a Motion to Compel. This probably bought us two weeks. In light of the file transfers this may not be an issue, but I wanted to make you aware.

Marc

-------- Original Message --------
**Subject:** FW: Halsema Special Rogs and Request for Production
  **Date:** Fri, 24 Feb 2006 12:44:58 -0800
  **From:** Dean Pollack <dpollack@BurnhamBrown.com>
    **To:** <Marc_S_Gaffrey@hoaglandlongo.com>


Marc:

Attached please find proposed changes to discovery sent by Larry Henke.
I am uncomfortable with the changes he has made to responses to Special
Interrogatories and Request for Production of Documents which we
attached. Specifically, his response to Special Interrogatory #5, and
the discovery responses that refer to this response. That interrogatory
asks that we identify all asbestos-containing products BW/IP
manufactured from their inception to 1990. Our proposed response read
"BW/IP sold pumps and related equipment under the Byron Jackson product
name..." Henke's change now read "BW/IP's predecessor, Borg-Warner
Corporation, NOW KNOWN AS BURNS INTERNATIONAL SERVICES, INC. [emphasis
added] sold pumps and related equipment under the Byron Jackson product
name..." There was no reference to Burns in the complaint, and none in
our answer. His changes may impact our summary judgment motion (which we
will file in the name of, and for BW/IP) next week as well as pending
litigation and file transfer. The responses are due today. As discussed
(and given no alternative since Plaintiff denied my request for an

3/14/2006

extension) I will file-objection only responses to plaintiff's Special
Interrogatories and Request for Production of Documents today.
Plaintiffs will file a motion to compel responses that we expect to be
heard in 10 -14 days.  Please advise on how to proceed.  Thanks. Dean

-----Original Message-----
From: Kristy Lyons [mailto:kklyons@hoaglandlongo.com]
Sent: Friday, February 24, 2006 5:20 AM
To: Dean Pollack; BW/IP National Counsel [4855873 - MSG]
Subject: Halsema Special Rogs and Request for Production

Dean:
I have attached Larry's proposed changes to the Special Interrogatories
and Request for Production.  Please review his changes and call me to
discuss the same as soon as possible.  Particularly, pay attention to
Interrogatory No. 5 and all the RFP that refer back to the same.
-Kristy