IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FLOWSERVE CORPORATION,          :
                                :
     Plaintiff,                 :
                                :
v.                              :  Civil Action No. 04-1294-JJF
                                :
BURNS INTERNATIONAL SERVICES    :
CORPORATION and BORG-WARNER     :
CORPORATION,                    :
                                :
     Defendants.                :

William Redfearn, Esquire and Danielle K. Yearick, Esquire of TYBOUT, REDFEARN & PELL, Wilmington, Delaware.
Of Counsel: Gregory E. Rogus, Esquire of SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD., Chicago, Illinois.
Attorney for Plaintiff.

Francis J. Murphy, Esquire of MURPHY SPADARO & LANDON, Wilmington, Delaware.
Of Counsel: Michael H. Moirano, Esquire of NISEN & ELLIOTT, LLC, Chicago, Illinois.

**MEMORANDUM OPINION**

March 22, 2006
Wilmington, Delaware

**Farnan, District Judge.**

    Pending before the Court is a Motion For Temporary Restraining Order And Preliminary Injunction (D.I. 56) filed by Defendant/Counterclaimant Burns International Services Corporation ("Burns").[1]  For the reasons discussed, the Court will grant Burns' Motion.

## BACKGROUND

    Plaintiff, Flowserve Corporation ("Flowserve") filed this action against Burns seeking a declaratory judgment of its right to indemnification under the terms of a Stock Purchase Agreement entered into by Flowserve's predecessor-in-interest BWIP Acquisition Corporation ("BWIP-AC").  In 1987, BWIP-AC purchased all of the stock of Borg-Warner Industrial Products, Inc. ("BWIP"), a wholly owned subsidiary of Borg Warner Corporation ("BWC"), and BWC's Byron Jackson product line.  As part of that transaction, BWIP-AC entered into the Stock Purchase Agreement and a subsequent Letter Agreement which provided for extensive

---

    [1]    Flowserve Corporation ("Flowserve") has also filed a Motion For Leave To File Motion In Opposition To Burns International Service Corporation's Motion For Temporary Restraining Order And Preliminary Injunction (D.I. 61) and a Motion To Dismiss Burns International Service Corporation's Motion For Temporary Restraining Order And Preliminary Injunction (D.I. 66).  Flowserve's briefing is not in accordance with the requirements of the Local Rules insofar as Flowserve need only have filed an Answer Brief to Burns' Motion and need not have engaged in cross-briefing which unnecessarily complicates the docket.  D. Del. L.R. 7.1.2.  Nevertheless, the Court has considered the contentions raised in the briefing and ruled on Flowserve's motions accordingly.

indemnification rights and obligations between the parties.² For purposes of the instant Motion filed by Burns, the relevant indemnification provision provides, in pertinent part:

> (d) . . . <u>The Indemnifying Party shall, at its expense, undertake the defense of such claim with attorneys of its own choosing reasonably satisfactory to the Indemnified Party; provided that an Indemnified Party may participate in such defense, but only at such Indemnified Party's expense.</u> In the event the Indemnifying Party, within a reasonable time after receiving notice of the Claim from the Indemnified Party, fails to defend the Claim, the Indemnified Party may, at the expense of the Indemnifying Party and after giving notice to the Indemnifying Party of such action, undertake the defense of the Claim and compromise or settle the Claim, all for the account of and at the risk of the Indemnifying Party. No Indemnifying Party, in the defense of any Claim, shall, except with the consent of each Indemnified Party (which consent will not be unreasonably withheld), consent to entry of any judgment or enter into any settlement that does not include as an unconditional term thereof the giving by the person or persons asserting such Claim to such Indemnified Party of a release from all liability with respect to such Claim. In each case, the Indemnified Party will cooperate with the Indemnifying Party, so long as the Indemnifying Party is conducting the defense of the Claim, in the preparation for and prosecution of the defense of such Claim, including making available evidence within the control of the Indemnified Party and persons needed as witnesses who are employed by Indemnified Party, in each case as reasonably needed for such defense and at cost, which costs, to the extent reasonably incurred, shall be paid by the Indemnifying Party.

D.I. 56, Exh. A at 114 (emphasis added).

---

² Burns is not the corporate successor to BWC, but succeeded to the rights of BWC under the agreements, including its interest in the BWC insurance, as a result of BWC's liquidation and the distribution of its assets in December 1987. Essentially, Burns purchased the insurance asset of BWC during its liquidation.

Although Burns has denied any obligation to provide indemnification under the Stock Purchase Agreement, Burns has been complying with the terms of the Letter Agreement with respect to defending and indemnifying Flowserve for numerous asbestos claims arising from the pumps that were part of the Byron Jackson product line (the "asbestos cases"). In pertinent part, the Letter Agreement provides that:

> . . . [N]otwithstanding anything to the contrary contained in the [Stock Purchase] Agreement, neither BWIP nor any of its subsidiaries shall be responsible for any Losses <u>to the extent that such Losses are covered by insurance carried by Borg-Warner</u>.
>
> Accordingly, as provided by Section 9.04(a) of the [Stock Purchase Agreement], Borg-Warner will indemnify the Buyer, BWIP and each of their subsidiaries against all Losses <u>to the extent such Losses are covered by such insurance</u>."

D.I. 56, Exh. B (emphasis added). In accordance with these obligations, Flowserve has been forwarding asbestos cases to Burns, who in turn, has tendered the cases to the appropriate insurance carriers. Until recently, the insurance carriers have been providing 100% of the defense and indemnity for the asbestos cases. However, the parties were notified in June 2004, that BWC's primary insurance coverage had been exhausted and that BWC's umbrella carriers were only going to pay a portion of the continuing defense and indemnity expenses.[3] As a result, Burns

---

[3] Despite the June 2004 notification, the umbrella carriers continued to pay 100% of the defense and indemnity costs until March 15, 2006.

3

made a demand on Flowserve pursuant to Section 9.04(b) of the Stock Purchase Agreement to pay for the defense and indemnity of claims not covered by BWC's insurance. In response, Flowserve filed the instant action alleging that it has no obligation to defend, indemnify or pay any share of the asbestos claims. Burns has also filed a counterclaim asserting that its only obligation to indemnify Flowserve for the asbestos claims arose out of the Letter Agreement, and that once BWC's insurance was exhausted, Flowserve would be obligated to pay the costs of defending and resolving the claims.

## DISCUSSION

### I. The Parties' Contentions

The instant Motion for injunctive relief arises from the February 17, 2006 letter from Flowserve to Burns in which Flowserve indicates that it intends to (1) terminate the counsel that has been approved by Burns to defend the asbestos cases and appoint its own counsel, Segal McCambridge Singer & Mahoney, Ltd. ("Segal McCambridge"); (2) direct Segal McCambridge to file third-party complaints for indemnity against Burns in pending cases; and (3) negotiate global settlements of the pending asbestos cases. Burns requests the Court to issue a temporary restraining order preventing Flowserve from taking these actions. Burns does not deny that Flowserve has the right to retain its own counsel and defend and/or settle the asbestos cases; however,

Burns contends that under the express terms of Section 9.04(d) of the Stock Purchase Agreement, Flowserve may only take such actions at its own expense. According to Burns, Flowserve should not be permitted to retain new counsel and control the litigation of the underlying asbestos cases if Flowserve is seeking payment and/or reimbursement from BWC's insurance coverage or from Burns directly. Burns maintains that it is willing to continue indemnifying and defending Flowserve in the underlying asbestos cases to the extent of the BWC insurance coverage, so long as Burns selects counsel and maintains control of the underlying litigation.

Burns contends that injunctive relief is warranted to prevent Flowserve from taking the actions it delineated in its February 17 letter, because Burns and others who are relying on the BWC insurance coverage will suffer irreparable harm. Burns contends that Flowserve will disrupt the orderly administration and defense of the pending asbestos cases by filing duplicative third party claims against Burns and compromising Burns' ability to effectively settle and dispose of the pending lawsuits. Burns also raises the concern that Flowserve will be attempting to globally settle the asbestos cases at a premium by assigning to the asbestos plaintiffs its rights, if any, to the available insurance proceeds. Burns points out that there are insurance coverage issues pending in Illinois state court and Flowserve's

5

proposed settlement strategy may impact issues pending in this case concerning the parties' indemnification obligations. Burns also contends that if the asbestos cases are settled at a premium, this will, in turn, encourage prospective plaintiffs to file more claims.

In response, Flowserve contends that it must retain new counsel because of inherent conflicts created by the current counsel, who was chosen by the insurance carrier, CNA, and supervised by Burns. Flowserve contends that the current counsel has engaged in a litany of alleged improprieties which compromise Flowserve's interests vis-à-vis the pending asbestos litigation. Flowserve contends that it has a right to access the available insurance directly under the terms of the Stock Purchase Agreement, and therefore, it should not be impaired from assigning to the asbestos plaintiffs the right to proceed directly against the insurance carriers. Flowserve contends that it has already retained Segal McCambridge, and that the transition has posed no disruption to the resolution of the asbestos cases. Flowserve further contends that Burns will not suffer irreparable harm, because any claims Flowserve files against Burns will not duplicate the issues before this Court, and Burns' concern over the depletion in available insurance coverage and the increase in asbestos claims is speculative.

6

**II. Legal Standard For Injunctive Relief**

In determining whether to issue a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, courts must consider (1) whether the movant has shown a reasonable probability of success on the merits, (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party, and (4) whether granting the preliminary relief will be in the public interest. Allegheny Energy, Inc. v. DOE, Inc., 171 F.3d 153 (3d Cir.1999). The burden of establishing that injunctive relief is warranted rests on the party seeking the relief. Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994). The purpose of a preliminary injunction is to preserve the status quo until the merits of the case have been decided. Id.

**III. Whether Burns Is Entitled To An Injunction**

The focus of the parties' dispute concerning the propriety of injunctive relief in this case rests on the question of irreparable harm. Indeed, a showing of irreparable harm has been considered the most important prerequisite for the issuance of an injunction. See e.g., Schrier v. University of Colorado, 427 F.3d 1253, 1268 (10th Cir. 2005); Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005). The relevant inquiry is whether, at the time the injunctive relief is to be issued,

the party seeking the injunction is in danger of suffering irreparable harm. Speculative injury does not equate with irreparable harm, and the possibility that adequate compensatory and other relief will be available at a later date weighs against a finding of irreparable harm. Adams v. Freedom Forge Corp., 204 F.3d 475, 488 (3d Cir. 2000).

In this case, the Court finds that Burns has demonstrated irreparable harm and that the granting of injunctive relief will not work a significant detriment to Flowserve. At the root of the parties' dispute are more than 3,500 pending asbestos cases. Flowserve has threatened to initiate third party proceedings against Burns in those actions. In the Court's view, such proceedings will not only result in duplicative litigation and the squandering of judicial resources, but will also compromise the integrity of this Court's jurisdiction to render a full, complete and final adjudication of the issues pending here. See 28 U.S.C. § 1651 (granting federal courts the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); see also In re School Asbestos Litigation, 1991 WL 61156, *1 (E.D. Pa. April 16, 1991) (recognizing that injunction may be appropriate under 28 U.S.C. § 1651, the All Writs Act, to preserve federal court's jurisdiction or authority over ongoing matter, even before final federal judgment has been entered).

Bruce v. Martin, 680 F. Supp. 616, 621-22 (S.D.N.Y. 1988) (invoking All Writs Act to issue injunction and recognizing that irreparable harm exists where court's jurisdiction is threatened and that injunction may be granted to avoid multiple actions involving same issues of law and fact).

    In addition, the Court is persuaded that Burns will suffer irreparable harm if Flowserve is permitted to pursue the type of global or individual settlement strategy it referred to both at the hearing and in its February 17 letter to Burns. Specifically, Flowserve has suggested a strategy of globally resolving the more than 3,500 pending asbestos cases through its own counsel, Segal McCambridge, using a mechanism of assigning to the asbestos plaintiffs Flowserve's rights to insurance proceeds. However, it is Flowserve's rights with respect to these proceeds that are the very subject of this action. Indeed, the Court cannot envision a scenario in which a plaintiffs' attorney would accept such a risk-laden settlement, unless that settlement offered plaintiffs the chance to obtain a significantly higher recovery than they might otherwise have been entitled. In these circumstances, the Court finds that Burns has presented a real and genuine concern that Flowserve's proposed strategy would result in the overvaluation of claims and an increase in the number of potential claimants. Further, and regardless of the valuation used by Flowserve for settling these claims, the very

fact that the insurance proceeds tentatively being used for these settlements are subject, at least in part, to the outcome of this litigation leads the Court to conclude that irreparable harm will result to Burns if Flowserve is not enjoined from pursuing such settlements. Burns and other BWC related entities have been exposed to thousands of asbestos claims, and all of these entities are accessing the same insurance proceeds. The depletion of these assets by Flowserve prior to an adjudication by the Court of the parties' rights and obligations vis-à-vis these proceeds would, in the Court's view, be manifestly unfair and result in irreparable harm not only to Burns but to the other entities accessing these proceeds, including the ultimate recipients of the proceeds, the asbestos plaintiffs. See Acierno, 40 F.3d at 653 (recognizing that court may take into account possibility of harm to other interested persons from the grant or denial of injunctive relief).

In contrast to the harm that would be suffered by Burns and others if injunctive relief is not granted, the Court finds that Flowserve will suffer no harm if an injunction issues. Burns does not deny that Flowserve has the right to retain its own counsel and settle pending lawsuits, it merely expects Flowserve to pay the bills associated with that right. If it turns out that Burn is wrong, and Flowserve is entitled to costs, expenses or funding from Burns, then Burns can simply remit payment to

Flowserve for its expenditures.

The Court further concludes that the decision to issue a preliminary injunction in this case weighs in favor of the public interest. By preserving the status quo, the Court will prevent duplicative litigation against Burns thereby conserving judicial resources and protecting the integrity of the Court's jurisdiction over this action. In addition, the preservation of the status quo will prevent confusion and disruption in the administration and resolution of the underlying asbestos cases. Indeed, Flowserve has been operating, and in some instances continues to operate, through the network of defense counsel supervised by Burns for the handling of these cases.[4] Moreover, the Court is persuaded that injunctive relief is necessary to conserve the insurance proceeds available to resolve the asbestos cases. Flowserve represented to the Court that the available insurance proceeds extend well into the hundreds of millions of dollars. While that coverage may seem limitless in the abstract, it is, in fact, a finite resource which, given the thousands of potential claimants and the severity of the potential injuries at issue, should be conserved.

In light of the harm to Burns if injunctive relief is not granted, the public interest, and the lack of any real detriment

---

[4] At the hearing it was represented to the Court that Flowserve continues to tender actions to Burns as it had prior to the parties' instant dispute.

11

to Flowserve, the Court further finds that serious and substantial questions exist as to the underlying merits of this litigation such that injunctive relief is appropriate.[5] See Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 120 (4th Cir. 1993) (holding that movant need only show serious questions going to the merits making them fair ground for litigation when irreparable harm weighs decidedly in favor of the movant); Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1199 (10th Cir. 1992) (holding that showing for likelihood

---

[5] To the extent that the Court is required to make specific findings as to the likelihood of success on the merits of the overall contract dispute, the Court finds that Burns has demonstrated a reasonable likelihood of success on the merits at this juncture. Burns maintains that the asbestos cases fall within the contract language pertaining to product liability claims, because the asbestos claims have arisen after the Effective Date of the Stock Purchase Agreement as a result of the sale of certain products, namely the Byron Jackson pumps. Burns construction is reasonable given the express language of the Stock Purchase Agreement and is consistent with the intent of the parties as demonstrated by the manner in which the parties subsequently conducted the asbestos litigation. Flowserve contends that the asbestos cases fall within the contract provision pertaining to environmental claims; however, that provision exempts claims arising after the Effective Date of the Stock Purchase Agreement and resulting from third-party use of a product after sale. D.I. 56, Exh. A at § 9.04(a)(ii)(E). Without commenting on the merits of any ambiguity arguments that Flowserve intends to raise and without expressing any definitive views as to who will prevail, the Court concludes at this juncture, that Burns has established a prima facie case that its contract construction is correct based on the plain language of the Stock Purchase Agreement and the subsequent Letter Agreement. See Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, *173 (3d Cir. 2001) ("[O]n an application for preliminary injunction, the plaintiff need only prove a prima facie case, not a certainty that he or she will win.")

of success on the merits is more lenient when party satisfies other elements for injunctive relief). Moreover, as to the specific contractual issue underlying the request for injunctive relief, the Court concludes that Burns has established a reasonable likelihood of success on the merits. In the Court's view, the language contained in Section 9.04(d) of the Stock Purchase Agreement is clear and unambiguous that if Flowserve seeks to participate in the defense of the claims to be indemnified by Burns, it must do so at its own expense, and Burns has the right, as the Indemnifying Party to select counsel and control the defense of the claims.

In sum, the Court concludes that injunctive relief is warranted in this case. The contract language supports Burns' position with respect to the relief sought by the injunction, and Burns has demonstrated that it will be irreparably harmed if an injunction is not granted. Moreover, an injunction in this case is consistent with the true purpose of injunctive relief, i.e. maintaining the <u>status quo</u> so that the Court can fully determine the rights and obligations of the party without an affront to its jurisdiction and without imposing substantial harm on either party during the litigation process. In light of these broad principles and the specific concerns in this case of preventing interference to the orderly administration of thousands of asbestos cases and preserving the assets meant to fund the

resolution of those cases, the Court further finds that the pubic interest is served.

## CONCLUSION

For the reasons discussed, the Court will grant Burns' Motion For Temporary Restraining Order And Preliminary Injunction.

An appropriate Order will be entered.