UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FLOWSERVE CORPORATION ) | |
| ) | |
| ) | C.A. No.: 04-1294 JJF |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BURNS INTERNATIONAL SERVICES ) | |
| CORPORATION and BORG-WARNER ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**(Flowserve's Proposed ) <u>INJUNCTION ORDER</u>**

Whereas Defendant Burns International Services Corporation ("Burns") filed a motion and supporting affidavits pursuant to Federal Rule of Civil Procedure 65 for a temporary restraining order and preliminary injunction to enjoin and restrain defendant Flowserve Corporation and its subsidiaries and affiliates from:

(a) terminating and replacing Burn's choice of national and local defense counsel who have been defending asbestos claims arising out of the manufacture and sale of Byron Jackson brand pumps (the "Underlying Asbestos Cases") unless Flowserve undertakes to pay such replacement counsel with its own funds;

(b) filing third-party actions against Burns in the Underlying Asbestos Cases seeking indemnification from Burns for asbestos liabilities on the same basis as asserted in this proceeding; and

(c) negotiating a "global" or other settlements of the asbestos liability in the Underlying Asbestos Cases and using or attempting to use or assigning the Borg-Warner Corporation ("BWC") insurance coverage to fund such settlements.

Whereas, Flowserve was provided notice of defendant's motion and subsequently filed a written response and affidavit in opposition to the motion; and

Whereas, on March 16, 2006, the Court had a hearing on Burn's motion for temporary restraining order and preliminary injunction and on March 22, 2006 entered its Memorandum Opinion granting the motion for temporary restraining order and preliminary injunction;

Now therefore, the Court hereby finds:

1. The underlying dispute in this case concerns the parties' respective rights to indemnification under a Stock Purchase Agreement and related Letter Agreement entered into in 1987. **The Stock Purchase Agreement contains the following language:**

> " . . . *The Indemnifying Party shall, at its expense, undertake the defense of such Claim with attorneys of its own choosing reasonably satisfactory to the Indemnified Party; provided that an Indemnified Party may participate in such defense, but only at such Indemnified Party's expense.* In the event the Indemnifying Party, within a reasonable time after receiving notice of the Claim from the IndemnifiedParty, fails to defend the Claim, the Indemnified Party may, at the expense of the Indemnifying Party and after giving notice to the Indemnifying Party of such action, undertake the defense of the Claim and compromise or settle the Claim, all for the account of and at the risk of the Indemnifying Party. No Indemnifying Party, in the defense of any Claim, shall, except with the consent of each Indemnified Party (which consent will not be unreasonably withheld), consent to entry of any judgment or enter into any settlement that does not include as an unconditional term thereof the giving by the person or persons asserting such Claim to such Indemnified Party of a release from all liability with respect to such Claim. In each case, the Indemnified Party will cooperate with the Indemnifying Party, so long as the Indemnifying Party is conducting the defense of the Claim, in the preparation for and prosecution of the defense of such Claim, including making available evidence within the control of the Indemnified Party and persons needed as witnesses who are employed by Indemnified Party, in each case as reasonably needed for such defense and at cost, which costs, to the extent reasonably incurred, shall be paid by the Indemnifying Party.

D.I. 56, Exh. A at 114 (emphasis added).

**The Letter Agreement contains the following language:**

> [N]otwithstanding anything to the contrary contained in the [Stock Purchase] Agreement, neither BWIP nor any of its subsidiaries shall be responsible for any Losses *to the extent that such Losses are covered by insurance carried by Borg-Warner.*
>
> Accordingly, as provided by Section 9.04(a) of the [Stock Purchase Agreement], Borg-Warner will indemnify the Buyer, BWIP and each of their subsidiaries against all Losses *to the extent such Losses are covered by such insurance*.

D.I. 56, Exh. B (emphasis added).

**2.    Flowserve has been tendering its defense in the Underlying Asbestos Cases to Burns, which in turn has been tendering Flowserve's defense to BWC's insurers. Those insurers have been defending and indemnifying Flowserve in the Underlying Cases.**

3.    The instant Motion for injunctive relief arises from a February 17, 2006 letter from Flowserve to Burns in which Flowserve indicates that it intends to (1) terminate the counsel that has been approved by Burns to defend the asbestos cases and appoint its own counsel, Segal McCambridge Singer & Mahoney, Ltd. ("Segal McCambridge"); (2) direct Segal McCambridge to file third-party complaints for indemnity against Burns in pending cases; and (3) negotiate global settlements of the pending asbestos cases. Burns requests the court to issue injunctive relief preventing Flowserve from taking theses actions.

4.    Burns will suffer irreparable harm if the motion is not granted. In the Court's view Flowserve's threat of filing third-party actions against Burns in the more than 3500 pending Underlying Asbestos Cases seeking indemnification from Burns on the same basis being asserted in this Court will not only result in duplicative litigation and the squandering of judicial resources, but will also compromise the integrity of this Court's jurisdiction to render a full, complete and final adjudication of the issues pending here. See 28 U.S.C. § 1651; see also In re School Asbestos Litigation, 1991 WL 61156, *1 (E.D. Pa. April 16, 1991); Bruce v. Martin, 680 F. Supp. 616, 621-22 (S.D.N.Y. 1988). In addition, the Court is persuaded that Burns will suffer irreparable

130390                                          3

harm if Flowserve is permitted to pursue the type of global settlement strategy it referred to both at the hearing and in its February 17 letter to Burns. **T**he very fact that the insurance proceeds **to be used or assigned for those settlements** are subject, at least in part, to the outcome of this litigation leads the Court to conclude that irreparable harm will result to Burns if Flowserve is not enjoined from pursuing such settlements. Burns and other BWC related entities have been exposed to thousands of asbestos claims, and all of these entities are accessing the same insurance proceeds. The depletion of these assets by Flowserve prior to an adjudication by the Court of the parties' rights and obligations vis-à-vis these proceeds would, in the Court's view, be manifestly unfair and result in irreparable harm not only to Burns but to the other entities accessing these proceeds, including the ultimate recipients of the proceeds, the asbestos plaintiffs.

      5.      To the extent that the Court is required to make specific findings as to the likelihood of success on the merits of the overall contract dispute, the Court finds that Burns has demonstrated a reasonable likelihood of success on the merits at this juncture. **The Court finds that serious and substantial questions exist as to the underlying merits of this litigation such that injunctive relief is appropriate. See Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 120 (4th Cir. 1993); Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1199 (10th Cir. 1992).** Burns maintains that the asbestos cases fall within the contract language pertaining to product liability claims, because the asbestos claims have arisen after the Effective Date of the Stock Purchase Agreement as a result of the sale of certain products, namely the Byron Jackson pumps. Without commenting on the merits of any ambiguity arguments that Flowserve intends to raise and without expressing any definitive views as to who will prevail, the Court concludes at this juncture, that Burns has established a prima facie case that its contract construction is correct based on the plain language of the Stock Purchase Agreement and the

subsequent Letter Agreement.  See Highmark Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 173 (3d Cir. 2001).  Moreover, as to the specific contractual issue underlying the request for injunctive relief, the Court concludes that Burns has established a reasonable likelihood of success on the merits.  In the Court's view, the language contained in Section 9.04(d) of the Stock Purchase Agreement clearly and unambiguously states that if Flowserve seeks to participate in the defense of the claims to be indemnified by Burns, it must do so at its own expense, and Burns has the right, as the Indemnifying Party to select counsel and control the defense of the claims.

6. Granting preliminary injunctive relief will result in no real detriment to Flowserve.  The Court finds that Flowserve will suffer no harm if an injunction issues.  Burns does not deny that Flowserve has the right to retain its own counsel and settle pending lawsuits, it merely expects Flowserve to pay the bills associated with that right.  If it turns out that Burn is wrong, and Flowserve is entitled to costs, expenses or funding from Burns, then Burns can simply remit payment to Flowserve for its expenditures.

7. Granting preliminary injunctive relief will be in the public interest.  The Court further concludes that the decision to issue a preliminary injunction in this case weighs in favor of the public interest.  **The injunctive relief** will prevent duplicative litigation against Burns thereby conserving judicial resources and protecting the integrity of the Court's jurisdiction over this action.  In addition, **the injunctive relief** will prevent confusion and disruption in the administration and resolution of the underlying asbestos cases.  Indeed, Flowserve has been operating, and in some instances continues to operate, through the network of defense counsel supervised by Burns for the handling of these cases.  In light of the harm to Burns if injunctive relief is not granted, the public interest, and the lack of any real detriment to Flowserve, makes the injunctive relief sought appropriate under the facts of this case.

For the foregoing reasons, it is hereby ordered that Flowserve and its subsidiaries and affiliates are enjoined and restrained from:

(a) terminating and replacing national and local defense counsel who have been selected **by the insurers with Burns' approval** to defend the Underlying Asbestos Cases unless Flowserve undertakes to pay such replacement counsel with its own funds**, or those funds which the insurers have agreed to pay;**

(b) filing third-party actions against Burns in the Underlying Asbestos Cases seeking indemnification from Burns for asbestos liabilities on the same basis as asserted in this proceeding; and

(c) negotiating a "global" **settlements** of the Underlying Asbestos Cases **for any amount unreasonably exceeding historical case valuation used by the insurers** and using or attempting to use or assign the insurance coverage to fund such settlements unless Flowserve has obtained **the approval of the** insurers to settle such claims, and Flowserve agrees to fund such settlements with its own funds to the extent the settlements are not completely funded by the BWC insurers.

Nothing contained in this Order shall preclude Flowserve from seeking recovery from Burns in this proceeding under the terms of the Stock Purchase and/or Letter Agreement for the amounts Flowserve pays to defend or settle the Underlying Asbestos Claims.

This Order is effective *nunc pro tunc* on March 22, 2006.

**In accordance with Fed. R. Civ. P. 65(c), Burns shall provide security in the amount of $_____.**

_____
UNITED STATES DISTRICT JUDGE

March ___, 2006

130390                                7