UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FLOWSERVE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 04-1294-JJF |
| | ) | |
| BURNS INTERNATIONAL SERVICES CORPORATION and BORG-WARNER CORPORATION, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF/COUNTER-DEFENDANT FLOWSERVE CORPORATION'S MOTION FOR THE ADOPTION OF FLOWSERVE'S PROPOSED TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, AN ADDITIONAL EVIDENTIARY HEARING**

**Background And Request For Relief**

On March 22, 2006, this Court issued a Memorandum Opinion stating that it will grant Burns' Motion for Temporary Restraining Order and Preliminary Injunction. The Court also issued an Order (the "Order" at ¶4) directing the Parties to submit an agreed upon Injunction Order that should include the provisions for the following:

a.   terminating and replacing Burns' choice of defense counsel for the underlying asbestos claims, unless Flowserve undertakes to pay such replacement counsel with its own funds;

b.   filing third-party actions against Burns in the underlying asbestos lawsuits seeking indemnification from Burns for asbestos liabilities on the same basis as asserted in this proceeding; and,

c.   negotiating a "global" or other settlement of its asbestos liability using, attempting to use or assigning the BWC insurance coverage to fund such settlements.

The parties have conferred pursuant to the Order but have been unable to agree upon language for the Injunction Order. Flowserve submits herewith its proposed Order. Flowserve's Proposed Injunction Order, attached hereto as Exh. 1. Should the Court

reject Flowserve's proposed language, Flowserve respectfully requests leave to present evidence in a hearing before the Court on the *sole issue* of whether Flowserve has a right to directly access the insurance policies without Burns' consent with respect to reasonable, carrier-approved settlements.

In addition, to the extent the Court's opinion purports to provide both a Temporary Restraining Order as well as a Preliminary Injunction, Flowserve requests that the Court reconsider this determination for the reasons identified below.

### Evidentiary Hearing Required For Issuance Of Preliminary Injunction

As stated by the Third Circuit Court of Appeals in *Anderson v. Davila*, 125 F.3d 148 ( 3d Cir. 1997): "The Supreme Court has observed that [Rule 65] requires, at the very least, 'a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Id.* at 156 *citing Granny Goose Foods v. Brotherhood of Teamsters*, 415 U.S. 423, 433 (1974); *see also Ortho Pharmaceutical Corporation v. Amgen, Inc.*, 882 F.2d 806, 814 (3rd Cir. 1989)("[C]ourt granting an injunction has the power—and indeed is required—to make all factual findings necessary to set forth the reason . . . for issuance of [injunctive relief]"). Further, "a district court cannot issue a preliminary injunction that depends upon the resolution of disputed issues of fact unless the court first holds an **evidentiary hearing**." *Elliott v. Kiesewetter*, 98 F.3d 47, 53 (3d Cir. 1996) (emphasis added) *citing Professional Plan Examiners of New Jersey, Inc. v. Lefante*, 750 F.2d 282, 288 (3d Cir. 1984). As also noted by the Third Circuit Court of Appeals in *Kos Pharmaceuticals, Inc. v. Andrx Corporation*, 369 F. 3d

700 (3d Cir. 2004), where a preliminary injunction turns on a disputed factual issue, an evidentiary hearing is required. *Citing Sims v. Greene*, 161 F.2d 87, 88 (3d Cir. 1947).

Wright & Miller confirms that an evidentiary hearing to vet factual disputes is standard practice, and notes that "[s]upport for this practice may be derived from the fact that without oral evidence on disputed points the trial court would be unable to make findings of fact as required by Rule 52(a)." 11A Fed. Prac. & Proc. Civ.2d § 2949. It is well-settled that when parties contest issues of fact – as in the instant case – "the drastic remedy of preliminary injunction should not be granted until the facts have been tested out in the crucible of oral examination and cross-examination." *Cement Enamel Development v. Cement Enamel of New York*, 186 F.Supp.803 at 804 (S.D.N.Y. 1960).

The only way for the Court to test the facts in dispute is to allow the parties an ample opportunity to be heard, otherwise "the trial court will be left in the position of preferring one piece of paper to another." *Sims v. Greene*, 161 F.2d 87 (3d Cir. 1947). As the *Sims* court cogently states "Rule 65(a) provides that no preliminary injunction shall be issued without . . . an opportunity to be heard. Hearing requires trial of an issue or issues of fact. Trial of an issue of fact necessitates opportunity to present evidence and not by only one side to the controversy." *Id.* at 88. *See also Phillips Petroleum Company v. Untied States Steel Corp.*, 566 F.Supp. 1093 (D.Del. 1983) (stating that "it is axiomatic that an evidentiary hearing is required to decide credibility issues") and *AFL-CIO v. Cicci*, 261 F.2d 5 (6th Cir. 1958) (defendant is entitled to a hearing, which includes the right to offer evidence in support of his factual claims). "[A]fter evidence has been presented by both sides an opportunity must also be afforded to both sides to

argue the effect of that evidence to the court." *Sims,* 161 F.2d 87 at 88 *citing Mogan v. Untied States,* 304 U.S. 1, 58 S.Ct. 999 (1938).

### Burns Has Presented No Evidence That Flowserve Does Not Have Rights To Access The Subject Insurance Policies

Here, essential facts at the very heart of Burns' preliminary injunction motion remain in dispute and unresolved. Burns argued before this Court to prohibit Flowserve's ability to access insurance policies which provide liability coverage for the historical manufacturing of Byron Jackson pumps. Oral Arg. Tr. at 63, 69, attached hereto as Exh. 2. These policies, however, are contractual relationships between an insurer and insured, completely separate and apart from the obligations, if any, under the Stock Purchase Agreement and subsequent Letter Agreement.

Specifically, the parties dispute whether Flowserve has the right to access insurance policies providing liability coverage for the historical manufacturing of Byron Jackson pumps in order to defend and indemnify the underlying asbestos claims. Burns baldly represented during oral argument, without any underlying factual support, that it "controls" the insurance and access thereto. Oral Arg Tr. at 25, 65, 69-70. Flowserve, on the other hand, argued that it has the right under the policies to seek coverage directly from the insurance carriers for cases that claim BW/IP is liable in relation to Byron Jackson pumps. *Id.* at 68-99, 72. This Court, however, has received no evidence in any form on this discreet yet critical issue prior to issuing a preliminary injunction order.

The issue of whether Flowserve has rights to access the policies without Burns' approval and consent is both complex and fact-intensive. No evidence was proffered or received on this issue related to the contractual rights determined by the insurance

policies themselves, or whether Burns may interfere with Flowserve's rights to deal with the carriers and directly access the policies. Any determination related thereto should involve the consideration of evidence from the carriers and the controlling contracts—the insurance policies. Burns has not and cannot point to any language in the insurance contracts, nor any correspondence or testimony, that demonstrates Burns' putative exclusive right to control access to the policies or to preclude Flowserve from accessing these policies which cover Byron Jackson pump liabilities.

Indeed, Burns' counsel, Mr. Moirano, responded at oral argument when the Court inquired into these issues:

> "I don't know if CNA is in lock step with Burns. But *our position* is that [the policies are] our asset. If nobody makes a claim on CNA, they don't pay anything. So the claims *normally come through us. That's the way the process has been.*" Oral Arg. Tr. at 65. [emphasis added]

Burns, however, has proffered no evidence among the numerous exhibits filed with their motion for injunctive relief explaining why the insurance policies, as they pertain to coverage of Byron Jackson claims, are "their asset." Burns' claim is nothing more than a bald unsubstantiated "position" asserted by Burns' attorneys. Burns' representation that the claims "normally come through [Burns]" begs the question of whether the policies or carriers "require" such claims to come through Burns. Accordingly, the Court was left in the unenviable position of ruling on this critical issue by simply choosing to "prefer one piece of paper to another," *Sims v. Greene*, 161 F.2d 87, and could "not make all factual findings necessary to set forth the reason" for the particular injunctive relief ordered against Flowserve. *Ortho Pharmaceutical*, 882 F.2d at 814.

**Flowserve Is Entitled To Present Evidence Regarding Its Entitlement To Access The Subject Policies**

Flowserve did not present documentary or testimonial evidence before this Court to refute Burns' erroneous position that Burns "controls" or "owns" the insurance because such issue was never properly placed before this Court. Burns did not present argument on this point in its papers and certainly proffered no evidence that it somehow "controlled" Flowserve's access to the policies. Moreover, Flowserve did not believe that the oral argument held on the TRO would be treated as a preliminary injunction hearing, which, at a minimum, would require testimonial evidence on this issue. Burns never argued in its Motion For a TRO, accompanying Memorandum of Law, or Response to Flowserve's Motion For Leave To File Opposition that it exercised exclusive control over access to the policies, other than stating that this has been the "practice" for some time.

Since Burns never raised the issue of Burns' supposed exclusive access to the insurance until the oral argument, Flowserve had no notice to respond with evidence, including oral testimony and direct correspondence between Flowserve and the insurers, to demonstrate that Flowserve indeed has the right to directly access the policies without a requirement to go through or obtain approval from Burns. Burns raised this issue for the first time at oral argument. If Flowserve was provided with notice to which it is entitled, Flowserve would have been able to provide documentary and testimonial evidence of the insurance carriers' willingness to deal directly with Flowserve in connection with the defense and settlement of the underlying asbestos cases. Affidavit of Christopher M. Bechhold. ("Bechhold Aff."), attached hereto as Exh 3; *see also* Letter from Irving C. Faber to Segal, McCambridge, Singer & Mahoney, attached hereto as Exh. 4.

### The Court Would Not Protect the "Status Quo" By Enjoining Flowserve From Accessing Insurance Policies

A court issuing a preliminary injunction should primarily seek to maintain the *status quo*. *Ortho Pharmaceutical Corporation*, 882 F.2d 806, at 813 ("preservation of the status quo represents the goal of preliminary injunctive relief in any litigation"). The status quo in the present case – which until recently consisted of the insurance carriers paying 100% of costs and indemnity related to the Byron Jackson cases – has now been altered by the purported exhaustion of certain insurance policies. Before attempting to protect the new *status quo*, therefore, the Court should make a factual determination of precisely what the new *status quo* is. If Flowserve may in fact directly access policies under the *status quo*, and factual evidence supports that, a preliminary injunction would have the unintended effect of actually altering the *status quo* by taking away Flowserve's legal right to directly access the policies prior to this Court's ultimate ruling on the contract dispute.

The Court's ultimate decision on this key issue is critical to a determination of Flowserve's rights. During oral argument, the Court itself focused on the respective rights Flowserve and Burns may have to directly access the insurance policies as well as those policies' limits. Oral Arg. at 64-68. Since, as mentioned *supra*, no evidentiary hearing on these issues was conducted; however, the Court was persuaded without factual support to accept Burns' in-court representations that it "controls the insurance" and that Flowserve, therefore, would not be harmed if the Court were to enjoin Flowserve from accessing the insurance directly.

If, however, Flowserve does have a right to directly access the policies (as Flowserve has argued), an injunction precluding Flowserve from accessing the insurance

for defense costs and any reasonable settlement will produce the exact same harm to Flowserve that Burns has argued it will suffer. To wit, as Burns and others deplete the insurance proceeds, Flowserve must pay its own settlements – even if such settlements are reasonable, approved by the insurance carriers and part and parcel of Flowserve's rights to directly access the policies – and face the potential future exhaustion of the policies. Simply stated, factual proof that Burns' alleged exclusive access to the insurance policies, to Flowserve's exclusion, is a sine-qua-non for a preliminary injunction against Flowserve from directly accessing the policies. Moreover, any analysis of the potential risk of policy exhaustion would require evidence, including testimonial evidence, demonstrating the policy limits. Such evidence is properly presented and evaluated at an evidentiary hearing.

### Flowserve Requests That Burns Provide Security

Flowserve respectfully requests that pursuant to Fed.R.Civ.P 65(c), the Court Order Burns to post security in the amount of Ten Million Dollars ($10,000,000.00). Based on the historical settlement values and defense costs for the underlying Byron Jackson asbestos cases, and the current number of 3500 pending claims, a reasonable estimate of the cost for Flowserve to defend and settle the underlying cases for a period of two years is Ten Million Dollars ($10,000,000.00).

### Conclusion

Based on the foregoing, Flowserve respectfully requests that the Court:

(1) adopt Flowserve's proposed Order; or, in the alternative,

(2) order a full evidentiary hearing prior to the issuance of a preliminary injunction with respect to Flowserve's right to access the insurance policies without Burns' consent.

**Segal McCambridge Singer & Mahoney, Ltd.**

/s/ Greg Rogus

Gregory E. Rogus, Esq.
Erich Gleber, Esq.
330 N. Wabash Drive, Suite 200
Chicago, IL 60611
312-645-7800
Attorneys for Flowserve

**TYBOUT, REDFEARN & PELL**

/s/ Danielle K. Yearick

Danielle K. Yearick, I.D. No. 3668
750 South Madison Street, Suite 400
P.O. Box 2092
Wilmington, DE 19899-2092
(302) 658-6901
Local counsel for Plaintiff Flowserve

Dated: March 31, 2006