# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

—————————————————————

| | |
|---|---|
| FLOWSERVE CORPORATION | ) |
| | ) |
| | )  C.A. No.:  04-1294 JJF |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BURNS INTERNATIONAL SERVICES | ) |
| CORPORATION and BORG-WARNER | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| ————————————————————— | ) |

### BURNS INTERNATIONAL SERVICES CORPORATION'S
### RESPONSE TO FLOWSERVE CORPORATION'S MOTION FOR
### THE ADOPTION OF PROPOSED TEMPORARY RESTRAINING ORDER
### OR, IN THE ALTERNATIVE AN ADDITIONAL EVIDENTIARY HEARING

Date: April 18, 2006

MURPHY SPADARO & LANDON
Francis J. Murphy, I.D. No. 223
1011 Centre Road, Suite 210
Wilmington, DE  19805
Tel:  (302) 472-8100
Fax:  (302) 472-8135

***Attorneys for Defendant Burns International Services Corporation***

# TABLE OF CONTENTS

Introduction ................................................................................................................ 1

Statement of Facts ....................................................................................................... 2

Statement of the Nature and Stage of the Proceeding .................................................. 7

Summary of Argument ................................................................................................. 7

Argument ..................................................................................................................... 8

I.     Flowserve Was Given Ample Notice And Opportunity To Be Heard
       On All Relevant Issues Including Its Rights To The BWC
       Insurance Coverage ............................................................................................ 8

       A      Burns Made It Absolutely Clear Prior To Filing Its Motion For Injunctive Relief
              And In The Motion Itself That It Was Seeking To Bar Flowserve From Accessing
              The BWC Insurance Coverage .............................................................. 9

       B      Flowserve Raised And Addressed The Issue Regarding Its Alleged Right To
              "Directly" Access The BWC Insurance At The Hearing .................................. 11

II.    The Hearing Conducted By The Court Afforded Flowserve The Opportunity To
       Present Its Opposition to Burns' Motion And Was More Than Adequate Under The
       Circumstances ................................................................................................... 13

       A.     A Full Evidentiary Hearing Is Not A Prerequisite To The Issuance Of A
              Preliminary Injunction ......................................................................... 15

       B.     Flowserve Was Afforded Ample Opportunity To Present Evidence In Opposition
              To Burns' Request For Injunctive Relief ............................................... 18

       C.     Burns Presented Evidence Demonstrating Its Right To The Injunctive Relief
              Requested ............................................................................................. 20

       D.     Flowserve Does Not Explain How Its Alleged Right To "Directly" Access The
              BWC Insurance Coverage Trumps The Express Requirements Of The 1987 Stock
              Purchase Agreement ............................................................................. 22

Conclusion ................................................................................................................. 24

i

# TABLE OF CITATIONS

*Bradley v. Pittsburgh Bd. of Ed.*, 910 F.2d 1172 (3d Cir. 1990) .................................................. 16

*Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2nd Cir. 1989) ......................... 18

*E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.,* 498 A.2d 1108 (Del. 1985) ................... 23

*Elliott v. Kiesewetter*, 98 F.3d 47 (3d Cir. 1996) ........................................................................ 16

*Elliott Associates, L.P. v. Avatex Corp*. 715 A.2d 843 (Del. 1998) ............................................. 23

*International Electronics Corp. v. Cline*, 330 F.2d 480 (3d Cir. 1964) ....................................... 16

*Hudson v. D & V Mason Contractors, Inc.,* 252 A.2d 166 (Del. Super. Ct. 1969) ..................... 24

*Kos Pharmaceuticals, Inc. v. Andrx Corp.* 369 F.3d 700 (3d Cir. 2004) .................................... 16

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir.1996) ........................................................... 17

*McKnight v. USAA Cas. Ins.*, Co. 871 A.2d 446 (Del. 2005) ...................................................... 24

*O'Brien v. Progressive Northern Ins. Co.,* 785 A.2d 281 (Del. 2001) ........................................ 24

*Schisler v. Heckler*, 574 F. Supp. 1538 (W.D.N.Y. 1983) ........................................................... 18

*Schulz v. Williams*, 38 F.3d 657 (2nd Cir.1994) ......................................................................... 18

*Seabreak Homeowners Ass'n, Inc. v. Gresser* 517 A.2d 263 (Del.Ch.1986) .............................. 24

*S. E. C. v. G. Weeks Securities, Inc.* 678 F.2d 649 (6th Cir.1982) .............................................. 16

*Semmes Motors, Inc. v. Ford Motor Company*, 429 F.2d 1197 (2d Cir. 1970) ........................... 20

*Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177 (Del.1992) .......................... 23

*Stanley v. University of Southern California* 13 F.3d 1313 (9th Cir.1994) .................................. 19

*State v. Dabson* 59 Del. 240, 245, 217 A.2d 497 (Del.1966) ...................................................... 23

*Sugarhill Records Ltd. v. Motown Record Corp*. 570 F.Supp. 1217 (S.D.N.Y.1983) ...........16, 20

*Williams v. Curtiss-Wright Corp.*, 681 F.2d 161 (3d Cir. 1982) ................................................. 16

*Zenith Laboratories, Inc. v. Eli Lilly & Co*, 460 F.Supp. 812 (D.N.J. 1978) .............................. 18

ii

**Introduction**

Plaintiff Flowserve Corporation, in typical brinkmanship fashion, purports to provide the Court with a Hobson's choice: either adopt its proposed form of injunction order, which would permit it to choose its own counsel and use the Borg-Warner insurance coverage to defend and settle the underlying asbestos cases in direct contradiction of this Court's decision, or schedule a further hearing so it may present unspecified evidence it neglected to present at the prior hearing held three weeks ago. The basis for Flowserve's demand: Flowserve did not understand until the hearing that Burns was seeking an injunction that would require Flowserve to use its own funds to defend and settle the underlying asbestos cases if it elected to change the *status quo* by replacing the network of national and local defense counsel Burns had approved to handle the cases.

The Court need not make either of Flowserve's two choices. The Court already ruled on Burn's request for injunctive relief following notice, ample opportunity for Flowserve to respond, and a full and completely adequate hearing. Flowserve's claim of surprise is completely disingenuous. Flowserve knew exactly what Burns' position was regarding its threat to terminate Burns' appointed counsel before Burns' motion for injunctive relief was filed. Moreover, even if a further hearing were warranted, the purported evidence Flowserve belatedly seeks to offer has nothing whatsoever to do with the issues relevant to the request for injunctive relief, and essentially seeks a ruling on the merits of the underlying claims, which is inappropriate when ruling on a motion for preliminary injunctive relief. For these reasons, discussed more fully below, Burns respectfully requests that this Court deny Flowserve's motion

for adoption of its proposed temporary restraining order or, in the alternative an additional

evidentiary hearing, and enter the Injunction Order submitted by Burns.[1]

### STATEMENT OF FACTS

On September 24, 2004, Burns was sued in this declaratory judgment action by

Flowserve which is seeking a determination of its right to indemnification from Burns for

underlying Byron Jackson asbestos product liability claims.  Flowserve specifically alleges in its

Complaint that Burns "has succeeded to the rights and obligations of Borg-Warner Corporation"

and that Burns "is responsible for any residual rights and obligations of Borg-Warner

Corporation."  Cmplt. ¶¶ 8, 17.   Based upon these allegations, Flowserve alleged that Burns was

obligated to indemnify Flowserve under the terms of the 1987 Stock Purchase Agreement and

related Letter Agreement entered into by Borg-Warner Corporation ("BWC") and Flowserve's

alleged predecessor in interest, BWIP Acquisition Corporation ("BWIP-AC").

Until Flowserve recently took the actions described below, Burns, at Flowserve's specific

request, had been complying with the terms of the Letter Agreement and providing Flowserve

with defense and indemnity for the underlying asbestos claims.  The Letter Agreement relieves

BWIP-AC of its indemnity obligations under the 1987 Stock Purchase Agreement to indemnify

BWC for, among other things, all products liability claims "to the extent that such Losses are

covered by insurance carried by Borg-Warner" and requires BWC to indemnify BWIP-AC for

---

[1]  Flowserve supports it Motion to Adopt with the affidavit of another one of its attorneys, Christopher Bechhold, who asserts, based upon hearsay conversations he had with Lisa S. Brogan, an attorney for Royal Insurance one of the BWC insurers, that it is *his* "reasonable anticipation that an agreement can be reached with Royal" and that it is *his* "understanding [ ] that Royal considers Flowserve to be an 'insured' under the policies." Bechhold Affidavit ¶¶ 6-7.  Whatever Mr. Bechhold's understandings may be, they are not admissible evidence of anything, and also appear to be in conflict with Ms. Brogan's and Royal's understandings.  *See* Letter from Lisa S. Brogan to Christopher Bechhold dated April 10, 2006 attached as Exhibit A.

all "Losses" (defined to include the underlying asbestos claims) but only "to the extent such Losses are covered by such insurance."   For years, Flowserve forwarded asbestos cases to Burns pursuant to the terms of the Letter Agreement.  *See e.g.* Letter from Robert L. Roberts, Jr. Associate General Counsel, Flowserve Corporation, to Edward B. Mueller, counsel for Burns, dated August 18, 2003, attached hereto as Exhibit B.  As recently as January and February, 2006, Flowserve forwarded Byron Jackson asbestos product liability complaints to Burns with the instruction: "Please forward this information to Borg-Warner's carrier(s) for appointment of counsel and handling."  *See* Exhibit C hereto; *See also* Affidavit of Edward B. Mueller ("Mueller Affd.") submitted in support of Burns' motion for temporary restraining order and preliminary injunction, ¶¶ 4-6.  In accordance with Flowserve's requests, for years Burns had been tendering the asbestos cases to the appropriate insurance carriers who, until recently, had been defending the cases utilizing a nationwide network of national and local defense counsel appointed and approved by Burns and the insurers.

The *status quo* changed on February 17, 2006 when Burns received the letter attached hereto as Exhibit D from Gregory Rogus, counsel for Flowserve in this matter.  In the letter, Flowserve threatened that "if by 5:00 p.m. CST on February 22, 2006, Burns has not notified Flowserve in writing that Burns has fully accepted defense and indemnity obligations pursuant to §9.04 of the 1987 Stock Purchase Agreement, Flowserve intends to take certain actions" which included the following:

(1) terminating existing defense counsel and appointing new counsel of its own choosing;

(2) directing such counsel to file third-party complaints against Burns in all 3500 pending cases;  and

(3) negotiating a "global resolution" of the pending asbestos cases.

Flowserve threatened to implement its plan on March 1, 2006.

On February 22, 2006, counsel for Burns responded to Mr. Rogus' February 17, 2006 letter. Burns' response made absolutely clear that if Flowserve elected to implement its threat to terminate appointed counsel and undertake its own defense of the underlying asbestos cases, Flowserve would be doing so at its own cost and without further access to the BWC insurance.

Burns' response specifically states:

> Burns' recognizes that under section 9.04(d) of the Stock Purchase Agreement Flowserve has the right to participate in the defense of all the underlying asbestos claims but, as section 9.04(d) specifically provides, if it chooses to do so it must do so at its own expense. Thus, if Flowserve intends to follow through with its threats in your February 17, 2006 letter, please be advised that Burn's will consider Flowserve to be in breach of the Stock Purchase and Letter Agreements and will no longer accept cases from Flowserve for defense or indemnity under Borg-Warner's insurance coverage or provide Flowserve with access to or the benefits of Borg-Warner's coverage unless Flowserve acknowledges in writing that it will be taking these actions at its own cost and expense and will not seek reimbursement of either its defense or settlement costs in whole or in part from the available Borg-Warner insurance coverage or from Burns.

A copy of the Burns' response dated February 22, 2006 is attached as Exhibit E.

Subsequent efforts by Burns to resolve the issues raised by Flowserve were unsuccessful. On Monday, February 27, 2006, Burns filed and served its motion for temporary restraining order and preliminary injunction. Burns' motion was supported by an affidavit and other documentary evidence. In the motion, Burns reiterated its position that if Flowserve elected to implement its strategy to terminate the existing network of defense counsel, and undertake the defense and settlement of the underlying asbestos cases with counsel of its own choosing, it was free to do so at its own expense and without accessing the available insurance coverage. Burns stated in its motion:

> In seeking injunctive relief, Burn's does not intend to inhibit or impair in any respect Flowserve's ability to retain its own counsel to defend and/or settle any of the pending or future asbestos litigation at its own expense. However, to the extent Flowserve is claiming a right to indemnity from Burns under the 1987 Stock Purchase and Letter Agreements, it has no right to retain its own counsel and undertake the settlement or defense of the asbestos cases and then look to the BWC insurance coverage or Burns for reimbursement of such expenses. To be clear, Burn's remains willing to live up to the obligations under the Letter Agreement and provide a defense and indemnity to Flowserve to the extent of the insurance coverage carried by BWC. Should Flowserve elect to continue to take advantage of that indemnity obligation, it can only do so with counsel selected by Burns and without participating in the defense of the claims except at its own expense.

Burns' Motion for Temporary Restraining Order and Preliminary Injunction at ¶ 8. A similar statement was made in Burns' Memorandum in Support of its Motion for Temporary Restraining Order and Preliminary Injunction at p. 8, n.3.

On March 2, 2006, Flowserve filed and served a "Motion for Leave to File Its Motion In Opposition to Burns International Services Corporation's Motion for Temporary Restraining Order and Preliminary Injunction." In its "Motion for Leave to File Motion," Flowserve asked the Court to "refrain from any unwarranted 'rush to judgment' and instead allow Flowserve leave to file its motion in opposition, together with supporting memorandum, on or before March 13, so that the Court may be more fully informed regarding the issues precipitating the present activity." Motion for Leave to File Motion ¶ 5.

Burns opposed Flowserve's request to delay the ruling on its motion for temporary restraining order and asked the Court "to deny Flowserve's motion and enter a temporary restraining order in order to maintain the *status quo*, and set an expedited schedule on Burns' application for preliminary injunction." *See* Burns' Response in Opposition to Flowserve's Motion for Leave to File Its Motion in Opposition to Burns' Motion for Temporary Restraining

Order and Preliminary Injunction, filed March 3, 2006 at p. 1.[2]   The Court did not enter a temporary restraining order as requested by Burns and instead allowed Flowserve until March 13, 2006 to file its opposition papers and set the matter for hearing on March 16, 2006 - more than two weeks after Burns' motion for injunctive relief was filed.

On March 13, 2006, Flowserve filed a "Motion to Dismiss Burns International Service Corporation's Motion for Temporary Restraining Order and Preliminary Injunction," a supporting memorandum, an Affidavit of Lawrence Henke, and various documentary evidence. Significantly, Flowserve did not contend in any of the papers it filed that there were disputed issues of fact pertaining to Burns' request for injunctive relief which required a further evidentiary hearing.  Nor did Flowserve contend that it had been denied adequate notice or a fair opportunity to oppose Burns' motion.[3]

On March 16, 2006 the Court conducted a two hour hearing on Burns' request for injunctive relief.  Flowserve was represented at the hearing by four attorneys, including Mr. Henke whose affidavit was submitted in opposition to Burns' motion.  Two days prior to the March 16 hearing, Christopher Bechhold, whose affidavit is submitted in support of Flowserve's most recent motion, also sought leave to appear on behalf of Flowserve *pro hac vice*.  At no time during the March 16 hearing did Flowserve contend that there were disputed issues of fact

---

[2]  On March 3, 2006, Burns also filed its Motion to Amend Rule 16 Scheduling Order and to Advance Case for Trial.  Flowserve opposed the motion during the March 16, 2006 hearing and the motion was denied although the Court indicated it would schedule a trial in November, 2006.

[3]  Rather than raising issues of fact regarding the substance of Burn's motion for injunctive relief, Flowserve sought to justify its decision to replace the defense counsel handling the asbestos claims with Segal McCambridge by arguing that there were irreconcilable "conflicts of interest" which made the change in counsel essential.  As Burns pointed out, Flowserve never raised this "conflict" issue with Burns in the many years Burns had been involved in handling the asbestos claims, and Flowserve did not even mention the issue of alleged "conflicts" in its February 16, 2006 letter to Burns in which it threatened to terminate Burns' defense counsel.

pertaining to Burns' request for injunctive relief which required a full evidentiary hearing, nor did Flowserve contend that it had been denied adequate notice or a fair opportunity to oppose Burns' motion.

### Statement of the Nature and Stage of the Proceeding

On March 22, 2006, this Court granted Burns' motion for preliminary injunctive relief. This Court subsequently instructed that the parties submit a proposed Injunction Order based on this Court's findings as set forth in the March 22, 2006 Order.  On March 31, 2006, Flowserve filed its Motion for the Adoption of Flowserve's Proposed Temporary Restraining Order Or, In the Alternative, an Additional Evidentiary Hearing.

### Summary of Argument

In the instant motion, filed under the ruse of a "dispute" regarding the terms of the proposed Injunction Order the Court required the parties to submit, Flowserve asserts that:

(1) there was a disputed issue of material fact relevant to Burns' motion for injunctive relief;

(2) Burns did not raise the factual issue until the March 16 hearing and Flowserve was unaware of the issue prior to the hearing;

(3) as a result, Flowserve was denied adequate notice and a fair opportunity to present evidence relevant to the disputed issue; and

(4) the Court is required to conduct a further evidentiary hearing to resolve the issue of fact.[4]

---

[4]  Flowserve also contends that the granting of Burns' motion for injunctive relief changed the *status quo*; however, prior to the filing of Burns' motion for injunctive relief the *status quo* was that Burns, at the specific request of Flowserve, was providing for the defense and indemnity of all the asbestos claims to the extent of the available BWC insurance with counsel approved by Burns and the insurers.  The *status quo* changed when

The alleged disputed issue of fact which Flowserve contends Burns did not raise until the hearing warranting a further hearing was Burns' contention that if Flowserve elected to terminate the appointed defense counsel and undertake the defense and settlement of the underlying asbestos cases itself, Flowserve would have to do so at its own cost and without accessing the available BWC insurance coverage. Flowserve contends that "the Court was persuaded without factual support to accept Burns' in-court representation that it 'controls the insurance' and that Flowserve, therefore would not be harmed if the Court were to enjoin Flowserve from accessing the insurance directly." As set forth below, Flowserve's contentions are without merit and should be rejected on the following basis:

(1)    the Court did not and was not required to make any "factual" finding as to who "controls" the BWC insurance in order to grant the injunctive relief Burns requested;

(2)    Flowserve had ample notice of and opportunity to respond to Burns' contention that if it decided to implement its plan to terminate counsel and undertake the defense of the asbestos claims it would have to do so without access to the BWC insurance; and

(3)    the hearing the Court conducted was completely adequate and afforded Flowserve all due process.

## ARGUMENT

**I.    Flowserve Was Given Ample Notice And Opportunity To Be Heard On All Relevant Issues Including Its Rights To The BWC Insurance Coverage**

---

Flowserve threatened and then implemented its plan to replace all appointed defense counsel and undertake the defense of the asbestos claims. This triggered the obligation under Section 9.04(d) of the Stock Purchase Agreement which the Court found to be applicable in this case. The injunctive relief Burns sought did not change the *status quo*, it sought to maintain it in accordance with the agreement between the parties.

Flowserve asks the Court to either enter the injunction order it proposes - which would effectively negate the injunctive relief granted to Burns - or delay the entry of an injunction order and to schedule another hearing so that Flowserve may present additional evidence. The sole justification for re-opening these proceedings is Flowserve's claim that "the *sole issue* of whether Flowserve has the right to directly access the insurance policies without Burns' consent with respect to reasonable, carrier approved settlements" was "never properly placed before this Court." Flowserve Motion to Adopt, pp. 2, 6. As discussed below, the issues Flowserve now claims were "never properly before this Court" were in fact raised by Burns both before it filed its motion for temporary restraining order and preliminary injunction and in the motion and supporting memorandum themselves, and were raised by Flowserve at the hearing and adequately addressed during these proceedings. Further, the hearing this Court conducted was not only proper and adequate under the circumstances, but Flowserve has waived any right to a further hearing as set forth below.

**A.    Burns Made It Absolutely Clear Prior To Filing Its Motion For Injunctive Relief And In The Motion Itself That It Was Seeking To Bar Flowserve From Accessing The BWC Insurance Coverage**

Flowserve's claim that the alleged issue of its "right" to access the BWC insurance was "never properly placed before this Court" and that it had "no notice" that Burns was claiming that Flowserve should be precluded from accessing the BWC insurance if it elected to defend the asbestos claims with its own counsel is completely specious. Burns made clear to Flowserve before its motion for injunctive relief was filed that, under the express terms of the Stock Purchase Agreement, if Flowserve elected to undertake the defense of the asbestos claims it had to do so at its own expense and without accessing the BWC insurance. Burns' letter sent to Mr.

Rogus on February 22, 2006 expressly states "if Flowserve intends to follow through with its threats in your February 17, 2006 letter, please be advised that Burn's will consider Flowserve to be in breach of the Stock Purchase and Letter Agreements and will no longer accept cases from Flowserve for defense or indemnity under Borg-Warner's insurance coverage or *provide Flowserve with access to or the benefits of Borg-Warner's coverage* unless Flowserve acknowledges in writing that will be taking these actions at its own cost and expense and *will not seek reimbursement* of either its defense or settlement costs in whole or in part *from the available Borg-Warner insurance coverage* or from Burns." Exhibit D (emphasis added).

When Burns filed its motion for injunctive relief, it again stated that "to the extent Flowserve is claiming a right to indemnity from Burns under the 1987 Stock Purchase and Letter Agreements, it has *no right to* retain its own counsel and undertake the settlement or defense of the asbestos cases and then look *to the BWC insurance coverage* or Burns for reimbursement of such expenses."   Burns' Motion for Injunctive Relief ¶ 8.  Burns' motion also specifically requests the Court to enjoin Flowserve from replacing the existing network of defense counsel "unless Flowserve undertakes to pay such replacement counsel exclusively with its own funds *and not seek reimbursement from BWC insurers* or Burns" and to enjoin Flowserve from "negotiating a 'global' or other settlements of its asbestos liability and using or *attempting to use the BWC insurance coverage to fund such settlements*."  *Id.* at p. 9-10 (emphasis added).

As demonstrated by the foregoing, the fact that Burns' motion sought, in part, to prevent Flowserve from accessing the BWC insurance coverage, was made known to Flowserve both prior to the filing of the motion and in the motion itself, and Flowserve's claim that this issue

was raised for the first time at the March 16 hearing is flatly contradicted by the facts of this case.

    **B.    Flowserve Raised And Addressed The Issue Regarding Its Alleged Right To "Directly" Access The BWC Insurance At The Hearing**

Flowserve further contends "Burns raised this issue [of Flowserve's right to "directly" access the BWC insurance] for the first time at oral argument." Flowserve Motion to Adopt at p.6. However, as the transcript of proceedings show, it was Flowserve, not Burns, who raised the issue of Flowserve's alleged "right to access the insurance directly" following extensive argument by both parties and *after* the Court indicated its tentative decision and suggested that the parties meet and confer in order to reach an agreement on the request for injunctive relief. *See* Transcript of Proceedings, March 16, 2006 at p. 43-44. When the hearing resumed following the parties' unsuccessful attempt to amicably resolve the matter, Flowserve's counsel advised the Court that Flowserve would not agree to any order which would fail to acknowledge Flowserve's right to assign to the BWC insurance in order to fund settlements Flowserve independently negotiated. Counsel then stated:

> But it is our position that we have a direct pipeline to the insurance. Its part of what we purchased when we purchased the stock of BWIP back in 1987 is the right to access that insurance directly. We do not have to go through Burns to get to the insurance directly.

Transcript of Proceedings, March 16, 2006 ("Tr.") at p. 46. This was the first discussion at the hearing of any right to "direct access" to the insurance and it was raised by Flowserve.

The parties also discussed Flowserve's ability to use the BWC insurance to pay for reasonable settlements approved by Burns and the BWC insurers. This issue, also raised by Flowserve, was directly addressed by counsel for Burns:

00130965                                 11

> If they [Flowserve] reach a settlement on their own and independently and say we [want] to fund this settlement using the insurance proceeds, funding not assign[ing] the insurance proceeds, and we [Burns] look at it and say that is a reasonable settlement in light of [past] settlements and more importantly our carriers [agree], we have no problem with that and the TRO can say that.

Tr. at 72.

Consistent with the representations made to the Court during the hearing, the initial draft of the proposed Injunction Order prepared by Burns provided that Flowserve could utilize the BWC insurance to pay reasonable settlements approved by Burns and the insurers. Flowserve, however, objected to this provision because it did not want Burns to have any involvement in any settlement decisions, and Flowserve wanted to be able to use the BWC insurance to negotiate "inventory settlements" of the underlying asbestos cases without Burns' approval, oversight or consent.[6] *See* Flowserve's Proposed Injunction Order, p.6 ¶ (c); *See also* Affidavit of Michael H. Moirano submitted herewith.

As expressed at the hearing, Burns vehemently objects to inventory or other "global" type settlements because of the potential effect of encouraging more litigation and greater demands for settlement. Burns also objects to the payment of any settlements that would either exceed "historic case valuations" or provide a premium for mass settlements. In addition, Burns remains extremely concerned that Flowserve intends to use the law firm Segal McCambridge, who represent Flowserve in thousands of asbestos cases unrelated to the Byron Jackson pump line acquired from Borg-Warner, to negotiate settlements of the Byron Jackson claims utilizing the BWC insurance and, as part of the consideration for those settlements, obtain the dismissal or

---

[6] "Inventory settlements" are settlements negotiated with a plaintiffs' attorney who has a number of pending claims against the same defendant and all claims are settled by the payment of a single amount, usually calculated by assigning a fixed value to each claim.

discounted settlements of Flowserve's other asbestos liabilities. In short, as a concession to Flowserve, Burns expressed a willingness to include in the proposed Injunction Order a provision which would allow Flowserve to pay for reasonable settlements of individual cases utilizing the BWC insurance. Burns included such a provision in its draft of the Injunction Order. Flowserve rejected the provision and it is now attempting to manipulate Burns' concession to allow Flowserve and its counsel to negotiate "inventory settlements", without Burn's knowledge or consent. Flowserve's actions should not be countenanced. The proposed Injunction Order submitted by Flowserve should be rejected and the proposed Order submitted by Burns should be entered.

> II.    **The Hearing Conducted By The Court Afforded Flowserve The Opportunity To Present Its Opposition to Burns' Motion And Was More Than Adequate Under The Circumstances**

A District Court's authority to grant preliminary injunctive relief is governed by the procedures set forth in Federal Rule of Civil Procedure 65. Burns filed a motion for both the entry of a temporary restraining order and for preliminary injunctive relief, and immediately served the motion upon Flowserve. Given that neither notice nor opportunity to be heard is required on a motion for temporary restraining order under Rule 65(b), this Court could have immediately ruled on the motion to the extent that it sought the entry of a temporary restraining order. In fact, Burns specifically requested the Court to grant a temporary restraining order in response to Flowserve's Motion to File a Motion in which Flowserve asked the Court "to refrain from any unwarranted 'rush to judgment'" and instead allow Flowserve almost two weeks to respond to Burns' motion. *See* Motion for Leave to File Motion ¶ 5 and Burns' Response in Opposition to Flowserve's Motion for Leave to File Its Motion, p. 1.

The Court elected not to enter a temporary restraining order and instead allowed Flowserve all the time it requested to prepare its response to Burns' motion, including time to rebut all factual assertions made in the motion and supporting affidavit. The Court thereafter scheduled a hearing on Burns' motion which was held on March 16, 2006, more than two weeks after Burns filed and served the motion. Flowserve never requested additional time to collect or present further evidence and instead both parties elected to rely exclusively on the memoranda, affidavits and other documentary evidence they submitted in support of their respective positions. The hearing itself was attended by counsel for both parties, including the Flowserve attorney whose affidavit was submitted in opposition to Burns' motion. At the conclusion of the hearing, the Court indicated it would issue its ruling some time the following week. At no time during or after the hearing did Flowserve object to the proceedings, or request that an additional or further hearing be held on any alleged "new" issues which were raised during the hearing. On March 22, 2006, the Court issued its Memorandum Opinion and Order granting Burns' motion for injunctive relief. Following the issuance of the Court's decision, Flowserve did not advise the Court for over a week that a further hearing was required on any "new" issues not addressed during the March 16, 2006 hearing. In fact, it was not until March 31, 2006, which was more than one month after Burns filed and served its motion for injunctive relief, more than two weeks after the hearing on the motion for injunctive relief, and a full nine days after the Court granted Burns' motion, that Flowserve for the first time claimed that it did not receive "proper notice" or an "adequate opportunity to be heard" on any issue.

Flowserve now contends that an additional hearing is required on the issues raised by Burns' motion for injunctive relief and on additional "new" issues raised for the first time during

00130965                                    14

oral arguments.[7]  Flowserve's arguments in support of this position fail for several reasons.  As an initial matter, no hearing is required on a preliminary injunction motion where, as in the present case, there was no disputed issue of fact relevant to the entry of the injunction.  For this reason alone, any alleged deficiency or inadequacy in the hearing before this court is irrelevant to the propriety of the injunctive relief granted as no such hearing was required.  Second, Flowserve has not demonstrated, and cannot demonstrate, how or why the hearing before this Court was insufficient or otherwise failed to provide Flowserve with a meaningful opportunity to present its opposition to the motion for injunctive relief.  Lastly, Flowserve's new assertion that oral testimony was or is necessary to resolve the alleged disputed issues of fact pertinent to the issuance of the injunction is unsupported for at least two additional reasons: (1) Flowserve could have requested, at any time before or during the two hour hearing, an opportunity to present oral testimony and elected not to do so, and cannot now assert, after the entry of injunctive relief, that it was denied the right to present any such testimony; and (2) the oral testimony Flowserve seeks to offer is not relevant to the issues raised in the motion for injunctive relief and would otherwise fail to establish that the injunctive relief granted was unwarranted.  For these reasons, Flowserve's argument that an additional hearing on the issues pertaining to Burns' motion for preliminary injunction is necessary is entirely without merit.

### A.    A Full Evidentiary Hearing Is Not A Prerequisite To The Issuance Of A Preliminary Injunction

As an initial matter, Flowserve's assertion that a hearing must necessarily be held prior to the issuance of any preliminary injunction is erroneous and is flatly controverted by Third

---

[7]    As discussed above, no "new" issue was raised during the proceedings before this Court as the issue of Flowserve's right to access the underlying insurance was the focus of Burns' motion to enjoin Flowserve from attempting utilize the BWC insurance coverage to pay for its own defense counsel and defense costs.

Circuit jurisprudence.   The determination as to whether a hearing on a motion for preliminary injunction is required rests within the sound discretion of the District Court.  *Elliott v. Kiesewetter*, 98 F.3d 47, 53 (3d Cir. 1996).  As the Third Circuit has recognized, Rule 65 "does not make a hearing a prerequisite for ruling on a preliminary injunction." *Bradley v. Pittsburgh Bd. of Ed.*, 910 F.2d 1172, 1175 (3d Cir. 1990); see also *Elliott,* 98 F.3d at 53.  Rather, it is well recognized that a preliminary injunction may issue on the basis of affidavits and other written evidence, without further hearing, "if the evidence submitted by both sides does not leave unresolved any *relevant* factual issue." *Williams v. Curtiss-Wright Corp*., 681 F.2d 161, 163 (3d Cir. 1982); citing *International Electronics Corp. v. Cline*, 330 F.2d 480 (3d Cir. 1964); *S. E. C. v. G. Weeks Securities, Inc*. 678 F.2d 649, 651 (6th Cir.1982)(holding that where "the resolution of the questions to be considered in issuing a preliminary injunction turns on legal rather than factual conclusions, the taking of oral testimony by both sides is not a prerequisite to a fair hearing.")

Indeed, an evidentiary hearing is not required unless disputed factual issues exist which pertain specifically to the issues raised on the motion for injunctive relief. *Elliott*, 98 F.3d at 54; see also *Sugarhill Records Ltd. v. Motown Record Corp*., 570 F.Supp. 1217, 1222 (S.D.N.Y. 1983) (holding that "although there are issues of fact in this case, those issues are not relevant to the determination of the within motion . . .therefore, there are no factual disputes.")  In other words, the existence of disputed issues of fact relating to the ultimate merits of the case does not require an evidentiary hearing on a preliminary injunction.  Rather, it is only where the motion for preliminary injunction itself "turns on a disputed factual issue" that an evidentiary hearing is required. *Kos Pharmaceuticals, Inc. v. Andrx Corp.* 369 F.3d 700, 719 (3d Cir. 2004)      In the

present case, Burns' motion for injunctive relief did not "turn on" any disputed issues of fact contained in the motion or competing affidavits filed by the parties. Burns' motion was predicated on the clear and unambiguous language in Section 9.04(d) of the Stock Purchase Agreement and Flowserve's threatened actions which directly contravened that language. Flowserve did not dispute the meaning or intent of Section 9.04(d), or argue that this provision was ambiguous or was contradicted by any other provision in the Agreement or any other agreement. In fact, the affidavit Flowserve submitted did not raise any disputed issue of fact but merely sought to justify Flowserve's threatened actions. The parties were also given ample opportunity to present their positions in the briefs filed before this Court and the Court did not make any findings regarding any disputed issue of fact in granting the motion. Flowserve contends that "the Court was persuaded without factual support to accept Burns' in-court representations that it 'controls the insurance'." The Court made no factual determinations regarding this issue and was not required to in order to grant the request for injunctive relief. Where the court issuing an injunction "did not rely on any disputed facts in determining whether it could properly" grant an injunction and "both parties presented comprehensive memoranda in support of their positions on the issue," no oral hearing is required. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir.1996). Because the Court did not rely upon any disputed issue of fact relating to Burns' right to control the BWC insurance, and merely interpreted the unambiguous language of the Stock Purchase Agreement, no hearing was necessary under the facts of this case. For this reason, any purported deficiency or inadequacy of the hearing before

this Court on Burns' motion for injunctive relief is irrelevant as no such hearing was required and the injunction could have issued absent any hearing whatsoever.[8]

   B.    **Flowserve Was Afforded Ample Opportunity To Present Evidence In Opposition To Burns' Request For Injunctive Relief**

   Even assuming *arguendo* that Burns' motion had centered upon the Court's resolution of a material disputed issues of fact (which the evidence does not support), the proceedings before this Court allowed Flowserve sufficient opportunity to present its opposition to the injunctive relief requested, and therefore, any such requirement was fully satisfied.    Flowserve not only filed its written opposition to the motion for injunctive relief, and submitted its own evidence in support thereof, it also participated in oral arguments upon these issues before this Court – conducted by four attorneys including the same attorney who submitted the only factual affidavit that Flowserve submitted before the hearing.  There is no basis upon which Flowserve can maintain that it was not provided with a sufficient opportunity to present its opposition to the motion for injunctive relief.

   Nevertheless, Flowserve now argues that it was entitled to a full "evidentiary" hearing on the issues raised in Burns' motion and because the hearing before this Court did not constitute a

---

   [8]   In fact, some courts have recognized that even where the presence of disputed issues of fact pertinent to the preliminary injunction motion would normally require a hearing on these issues, where "the parties do not demand an evidentiary hearing," the motion may be determined solely on the basis of affidavit evidence submitted. *Schisler v. Heckler*, 574 F. Supp. 1538, 1550 (W.D.N.Y. 1983); citing *Zenith Laboratories, Inc. v. Eli Lilly & Co*, 460 F.Supp. 812, 814 (D.N.J. 1978); see also *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2nd Cir. 1989)(holding that where the non-moving party has "been content to rest on affidavits submitted" the party has effectively "waived its right to an evidentiary hearing.") Burns maintains that the hearing conducted before this Court provided Flowserve with a complete and fair opportunity to present its opposition to the motion, and any material which supported its position.  However, to the extent that the hearing did not constitute a full "evidentiary" hearing, Burns submits that no such hearing was expressly requested by Flowserve and as such, the right to any such hearing was effectively waived.

"full evidentiary hearing," an additional hearing is now warranted.  This argument fails for several reasons.  As an initial matter, the court held in *Shultz v. Williams*, 38 F.3d 657 (2nd Cir 1994), as in this case, that if the non-moving party is provided a reasonable opportunity to challenge the contested evidence, the hearing "need not be a full evidentiary hearing conducted in open court, but it must offer the parties a reasonable opportunity to put forth, and to oppose, the disputed evidence."  This is exactly what occurred here – both parties filed motions, affidavits and other supporting evidence, and this Court allowed two full hours for the hearing. Indeed, Flowserve never attempted to present the oral testimony it now claims it was entitled to present, nor did Flowserve ever request that it be permitted an extension of time to prepare oral testimony in support of its position.  Rather, Flowserve elected to rest upon its legal memoranda, and the documents and affidavit submitted in support thereof, and the oral arguments of its counsel before this Court.  For these reasons, Flowserve's argument that it is entitled to an additional hearing, and to present additional evidence to this Court, is entirely without merit.

Courts have recognized that "refusal to hear oral testimony at a preliminary injunction hearing is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter." *Stanley v. University of Southern California* 13 F.3d 1313, 1326 (9th Cir.1994).  In the present case, not only was the opportunity to present oral testimony never requested at all, much less "refused", the parties were permitted the opportunity to present written testimony and oral argument, and therefore oral testimony was unnecessary under the facts of this case.   Still, assuming that Flowserve was entitled to introduce oral evidence, Flowserve did not seek to introduce oral testimony during the course of the hearing, nor did it

request an opportunity to present oral testimony until long after the hearing concluded and more than a week after injunctive relief had been granted. Courts have specifically recognized that even where a party is entitled to introduce oral testimony, if the party "chooses to gamble" on outcome of a preliminary injunction hearing by offering affidavits and not oral testimony, the party "cannot be heard to complain of it when the decision is adverse." *Semmes Motors, Inc. v. Ford Motor Company*, 429 F.2d 1197, 1205 (2d Cir. 1970); see also *Sugarhill Records Ltd.,* 570 F.Supp. at 1222. Because Flowserve elected to rely on its legal memoranda, supporting affidavit, documents, and representations of its counsel and affiant at the hearing held on Burns' motion, it cannot now assert, after this Court's decision, that it was entitled to present oral testimony on these issues and that it's own failure to present this testimony or to file additional affidavits or make additional representations or arguments at the hearing entitles it to an additional hearing before this Court.

C.    **Burns Presented Evidence Demonstrating Its Right To The Injunctive Relief Requested**

Flowserve next contends that a hearing is required because Burns failed to present, and "[t]his Court has received no evidence in any form on [the] discreet yet critical issue [of Flowserve's right to seek coverage directly under the policies] prior to issuing a preliminary injunction." Flowserve Motion to Adopt, p. 4. Contrary to these assertions, Burns presented unchallenged evidence that, under the terms of the Stock Purchase and Letter Agreements Flowserve had the benefit of the BWC insurance policies and would continue to have the benefit of that coverage unless Flowserve failed to comply with the requirements of Section 9.04(d) of the Stock Purchase Agreement in which case Flowserve would forfeit the right to have the asbestos claims defended using the BWC insurance and would be required to use its own funds

to defend and settle the claims.  Burns attached a copy of the relevant portions of the Stock

Purchase Agreement and a copy of the Letter Agreement to its motion for injunctive relief, and

submitted the Affidavits of Edward Mueller who explained how for years Flowserve had been

accessing the BWC insurance coverage by submitting claims to Burns for defense and indemnity

under the BWC policies.

Flowserve did not dispute this factual record.  Flowserve did not cite to other provisions

in the Stock Purchase Agreement or any other relevant agreement that contradicted the meaning

or intent of Section 9.04(d) or the Letter Agreement.  Nor did Flowserve submit an affidavit

contesting any facts raised by Burns.  All Flowserve elected to do was attempt to justify its

decision to terminate the appointed defense counsel and argue that the injunctive relief was

inappropriate under the circumstances.  Moreover, when Flowserve sued Burns in this action, it

attached the Stock Purchase and Letter Agreements to its Complaint and alleged that its right to

obtain defense and indemnity for the Byron Jackson asbestos claims arose under those

Agreements.  Flowserve never alleged some "direct right" to access the BWC insurance to obtain

a defense and indemnity for the asbestos claims.  And although Flowserve now contends that it

has a "direct right" to the BWC insurance coverage, and that Burns "has offered no evidence"

that the BWC insurance is Burns' asset, and that such claim is "nothing more than a bald

unsubstantiated 'position' asserted by Burns' attorneys," Flowserve  specifically alleged in its

Complaint:

   •     "Burns had valid and collectible primary, umbrella and excess insurance

         policies that provide, inter alia, defense and indemnification coverage for all

products that had been manufactured by Burns (f/k/a Borg-Warner) prior to March

12, 1987" (Cmplt. ¶ 27);

•       "Burns agreed that they were contractually obligated to provide Flowserve with

indemnity protection to the limits of that coverage as it existed at the time of the

Letter Agreement" (Cmplt. ¶ 27);

•       There is an issue "whether Burns has taken all necessary and prudent steps to

manage its coverage ...." (Cmplt. ¶ 48); and

•       "Flowserve did not contract for Burns' carriers' future performance."

(Cmplt. ¶ 49)

In other words, not only has Burns presented uncontested evidence supporting its right to the

injunctive relief it requested, but Flowserve previously admitted in its pleadings filed with this

Court that the BWC insurance is Burns' asset and that Flowserve did not contract for the

insurance coverage.  These are the same alleged "facts" which Flowserve claims are disputed

and are "critical" to the resolution of the request for injunctive relief.  In light Flowserve's

allegations in its complaint, it is hard to believe it has the temerity to contend that Burns' counsel

made a "bald unsubstantiated" claim that the BWC insurance was Burns' asset, and that this

Court erred when it "was persuaded without factual support to accept Burns' in-court

representation that it 'controls the insurance.'"

> **D.**     **Flowserve Does Not Explain How Its Alleged Right To "Directly"**
> **Access The BWC Insurance Coverage Trumps The Express**
> **Requirements Of The 1987 Stock Purchase Agreement**

Even assuming there were some disputed factual basis for contending that Burns does not

"control" the BWC insurance and that Flowserve has "direct access" to the insurance, Flowserve

provides no explanation why resolution of these alleged disputed facts would permit Flowserve

to circumvent the express terms of 1987 Stock Purchase Agreement and Letter Agreement or

alter the outcome of the Court's decision to grant injunctive relief.  As Burns argued, and this

Court expressly found "the language contained in Section 9.04(d) of the Stock Purchase

Agreement is clear and unambiguous that if Flowserve seeks to participate in the defense of the

claims to be indemnified by Burns, it must do so at its own expense, and Burns has the right, as

the Indemnifying Party to select counsel and control the defense of the claims." Memorandum

Opinion, March 22, 2006 at p. 13.  Re-opening the hearing on Burns' request for injunctive

relief, or even making the factual determination that Burns does not control the BWC insurance

and Flowserve has "direct access," will not dispense with the need to consider and apply, nor

permit Flowserve to ignore, the express terms of the Stock Purchase Agreement.[9]

This is a contract action in which both parties are asserting rights under the Stock

Purchase Agreement and Letter Agreement.  As stated by the Delaware Supreme Court, "the

cardinal rule of contract construction" is that "a court should give effect to *all* contract

provisions." *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1184

(Del.1992)(emphasis included); citing *E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.,* 498

A.2d 1108, 1114 ( Del.1985); see also *Elliott Associates, L.P. v. Avatex Corp.* 715 A.2d 843, 854

(Del. 1998); see also *State v. Dabson* 59 Del. 240, 245, 217 A.2d 497, 500 (Del.1966) (holding

---

[9]  In a complete change of direction from its Complaint in this action, Flowserve apparently now contends that "the controlling contracts" which govern this dispute are not the Stock Purchase and Letter Agreements but the "insurance policies"  Motion to Adopt, p. 5.    Even assuming Flowserve were able to claim that it was a party to the relevant BWC insurance contracts (all of which predate March, 1987 when the Stock Purchase Agreement was signed), or had some derivative rights under the insurance contracts, the fact of the matter is that Flowserve's predecessor entered into an agreement which clearly and unequivocally states that if Flowserve wishes to undertake the defense of otherwise covered claims with its own counsel of its own choosing it must do so at its own cost - not with the insurance which would be otherwise available.

that a court must "give effect to all the provisions of an agreement which are not contrary to law.")  A contract must be construed as a whole, "giving effect to all of its provisions and avoiding a construction which would render any of those provisions illusory or meaningless." *Seabreak Homeowners Ass'n, Inc. v. Gresser* 517 A.2d 263, 269 (Del.Ch.1986); citing *Hudson v. D & V Mason Contractors, Inc.,* 252 A.2d 166 (Del. Super. Ct. 1969); see also *McKnight v. USAA Cas. Ins.*, Co. 871 A.2d 446, 448 (Del. 2005); see also *O'Brien v. Progressive Northern Ins. Co.,* 785 A.2d 281, 287 (Del. 2001).  Even if Flowserve could claim some "direct rights" under the BWC insurance coverage - rights which could only have arisen out of the 1987 Stock Purchase Agreement - Flowserve cannot assert those rights without taking into account the provisions of the Agreement itself.

In short, Flowserve may not have it both ways.  Flowserve may not claim that as a consequence of the rights it obtained pursuant to the 1987 Stock Purchase Agreement it has a direct right to use the BWC insurance to defend and settle Byron Jackson asbestos claims, and at the same time ignore the clear and unambiguous provisions of the Agreement which require Flowserve to pay for the costs of defending the claims if Flowserve is seeking indemnity under the Agreement and elects to appoint its own counsel or participate in the defense of the claims. The issue of Flowserve's alleged right to "directly access" the BWC insurance is thus a red herring which does not warrant the reopening of the hearing on Burns' motion for injunctive relief, or support the entry of the Injunction Order which Flowserve has proposed.

## Conclusion

For the above reasons, Burns respectfully requests the Court to deny Flowserve's Motion for Adoption of Flowserve's Proposed Temporary Restraining Order Or, In the Alternative, An

00130965                                24

Additional Hearing, and enter the proposed Injunction Order submitted by Burns with security of

$50,000 as per Burns' counsel's letter to the Court dated March 31, 2006.  Should this Court

decide to grant Flowserve's request for a further hearing, Burns respectfully requests this Court

to enter its proposed Injunction Order as a temporary restraining order in order to maintain the

*status quo* and, prior to setting a further hearing date, require Flowserve to disclose the identity

of the witnesses it intends to call at such hearing and produce copies of any additional documents

it intends to offer in evidence and allow Burns a reasonable period of time to depose the

proposed witnesses and review the additional documentary evidence.


                    MURPHY SPADARO & LANDON

                    /s/ Francis J. Murphy
                    Francis J. Murphy, I.D. No. 223
                    1011 Centre Road, Suite 210
                    Wilmington, DE  19805
                    Tel:  (302) 472-8100
                    Fax:  (302) 472-8135
                    E-Mail:  Fmurphy@msllaw.com

                    Michael H. Moirano
                    NISEN & ELLIOTT, LLC
                    200 West Adams Street, Suite 2500
                    Chicago, Illinois 60606
                    Tel: (312) 696-2508
                    Fax: (312) 346-9316
                    E-mail: mmoirano@nisen.com

                    Attorneys for Defendant Burns
                    International Services Corporation

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

_____
                                        )
FLOWSERVE CORPORATION,                  )
                                        )        C.A. No.:  04-1294 JJF
        Plaintiff,                      )
                                        )
        v.                              )
                                        )
BURNS INTERNATIONAL SERVICES            )
CORPORATION and BORG-WARNER             )
CORPORATION,                            )
                                        )
        Defendants.                     )
_____)

**CERTIFICATE OF SERVICE**

        I, Francis J. Murphy, Esquire, do hereby certify that on this 18th day of April, 2006, I have caused the following documents to be served in the manner indicated on the parties listed below:  BURNS INTERNATIONAL SERVICES CORPORATION'S RESPONSE TO FLOWSERVE CORPORATION'S MOTION FOR THE ADOPTION OF PROPOSED TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE AN ADDITIONAL EVIDENTIARY HEARING .

**By Electronic Filing**
Danielle K. Yearick, Esquire
Tybout, Redfearn & Pell
300 Delaware Avenue, 11th Floor
P.O. Box 2092
Wilmington, DE 19899-2092

**By E-Mail**
Christopher M. Bechhold, Esquire
Thompson Hine, LLP
312 Walnut Street, 14th Floor
Cincinnati, OH  45209

**By E-Mail**
William Mahoney, Esquire
Ted McCullough, Esquire
Erich Gleber, Esquire
Segal McCambridge Singer & Mahoney, Ltd.
805 Third Avenue, 19th Floor
New York, NY 10022

**By E-Mail**
Gregory E. Rogus, Esquire
Segal McCambridge Singer
& Mahoney, Ltd.
One IBM Plaza
330 N. Wabash
Chicago, IL  60611

MURPHY SPADARO & LANDON


/s/ Francis J. Murphy _____
Francis J. Murphy, I.D. # 223
1011 Centre Road, Suite 210
Wilmington, DE  19805
Office (302)472-8100
Fax     (302)472-8135
Email  fmurphy@msllaw.com