## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FLOWSERVE CORPORATION ) | |
| ) | |
| ) | C.A. No.: 04-1294 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BURNS INTERNATIONAL SERVICES ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### AFFIDAVIT OF MICHAEL H. MOIRANO

Michael H. Moirano, on oath deposes and states:

1. I am an attorney and member of the law firm Nisen & Elliott, LLC and represent Burns International Services Corporation ("Burns") in this matter. I am licensed to practice law in the State of Illinois. I have personal knowledge of the facts stated in this affidavit and, if called as a witness, could testify competently thereto.

2. This affidavit is submitted on behalf of Burns in opposition to Flowserve Corporation's "Motion for Adoption of Flowserve's Proposed Temporary Restraining Order Or, in the Alternative, An Additional Hearing."

3. On March 24, 2006, following the receipt of the Court's March 22, 2006 Order which directed the parties to prepare and submit an agreed Injunction Order setting forth the relief described in the Order, I spoke by telephone with Gregory Rogus, counsel for Flowserve, to discuss the contents and the preparation of the agreed Injunction Order. During that conversation, Mr. Rogus and I discussed the terms of the proposed Injunction Order and Mr. Rogus specifically asked about the inclusion of a provision in the proposed Injunction Order,

which, consistent with the comments I made to the Court during the March 16, 2006 hearing, would permit Flowserve to negotiate and utilize the Borg-Warner insurance coverage to pay reasonable settlements of Byron Jackson asbestos claims approved by Burns and the insurers.

4.  At no time during my conversation with Mr. Rogus on March 24, 2006, or thereafter did he say or suggest that Burns had no right to approve any proposed settlements and that Flowserve should be permitted to "directly access" the Borg-Warner insurance to pay its defense costs and fund its settlements.

5.  On Tuesday March 28, 2006, I sent Mr. Rogus a draft of the proposed Injunction Order. The draft was based almost entirely on the findings of fact and conclusions of law set forth in the Court's March 22, 2006 Memorandum Opinion, and incorporated the exact relief provided for in the Court's March 22, 2006 Order. In addition, consistent with my prior conversation with Mr. Rogus, I included a provision in the proposed Injunction Order that would preclude Flowserve from negotiating "global" or other settlements and utilizing the BWC insurance coverage to fund such settlements "unless Flowserve has obtained the consent of Burns and the BWC insurers to settle such claims, and Flowserve agrees to fund such settlements with its own funds to the extent the settlements are not completely funded by the BWC insurers."

6.  I did not hear back from Mr. Rogus or Flowserve regarding the proposed Injunction Order until 5:28 p.m. on March 30, 2006, the day before the Injunction Order was to be filed with the Court. Mr. Rogus sent me an e-mail together with a substantially revised draft of the proposed Injunction Order and suggested I call him the following morning "if necessary."

7.  On March 31, 2006, after I had an opportunity to fully consider the proposed draft submitted by Flowserve and compare it to the draft I had prepared and to the Court's March 22,

2006 Memorandum Opinion and Order, I sent to Mr. Rogus via e-mail the letter attached hereto as Exhibit A.  As noted in the letter, Flowserve's proposed draft of the Injunction Order was materially different from and completely inconsistent with the Court's March 22, 2006 Memorandum Opinion.  It also directly contradicted the relief which the Court directed the parties to include in the Injunction Order.  Specifically, Flowserve modified the relief to be granted such that Flowserve would be authorized to utilize the Borg-Warner insurance to pay its defense costs and settle claims subject only to the insurers' approval.

        8.     At approximately 11:30 a.m. CDT on March 31,or 2006, I received a call from Mr. Rogus regarding my earlier letter and Flowserve's proposed draft of the Injunction Order.  Mr. Rogus advised me that the reason Flowserve decided to modify the proposed Injunction Order was because Flowserve had the right to "directly access" the Borg-Warner insurance and that Burns had no right to consent to or approve any settlements Flowserve might negotiate.  Mr. Rogus further advised me that Flowserve intended to negotiate "inventory settlements" with plaintiffs counsel for amounts that would be comparable to or exceed the historical settlements values that had been paid by Borg-Warner's insurers in settlement of individual claims.  In response, I advised Mr. Rogus that Flowserve's proposed Injunction Order was unacceptable and completely inconsistent with the relief Burns had sought and which the Court had granted.  I also advised Mr. Rogus that Burns would never agree to permit "inventory settlements" because: (a) these settlements almost always assign an unrealistic value to all of the claims a plaintiffs' attorney has in his or her "inventory" without appropriate consideration of the specific facts and circumstances of each case; (2) inventory settlements only encourage the filing of additional claims by other plaintiffs and plaintiffs' counsel who also then demand "inventory settlements;" and (3) there had been no "inventory settlements" negotiated by Burns' counsel or approved by

Burns and the insurers in the past. Mr. Rogus said he would convey my concerns to his client and call me back at 2:00 p.m. the same day.

9. At approximately 3:45 p.m. on March 31, 2006, I received a call from Mr. Rogus advising me that his client felt that its proposed Injunction Order was consistent with the Court's ruling and the comments during the March 16, 2006 hearing, and that if Burns disagreed with Flowserve's proposed changes the parties would have to submit competing Orders.

10. At no time during any of my conversations with Mr. Rogus did he say or suggest to me in any way that Flowserve had not been provided with proper notice or an adequate opportunity to respond to any issues raised by Burn's motion for injunctive relief. Mr. Rogus also never said or suggested that the Court would have to conduct a further hearing or permit Flowserve a further opportunity to introduce any additional evidence on any disputed issue of fact. Nor did Mr. Rogus state that it was his or his client's understanding that the Court did not intend the March 16, 2006 hearing to be a full hearing on the merits of Burns' request for injunctive relief or that that the draft order the parties were directed to prepare was to be only a "temporary restraining order." In fact, the proposed order which Flowserve ultimately submitted to the Court is identified as an "Injunction Order" not a "Temporary Restraining Order."

FURTHER AFFIANT SAYETH NOT.

_____
Michael H. Moirano

Subscribed and sworn to before me
this 12th day of April, 2006

_____
Notary Public

"OFFICIAL SEAL"
NANCY L. ROSS
Notary Public, State of Illinois
My Commission Expires 4/2/09

4

# EXHIBIT 1

LAW OFFICES
## NISEN & ELLIOTT
SUITE 2500
200 WEST ADAMS STREET
CHICAGO, ILLINOIS 60606
EMAIL mmoirano@nisen.com

MICHAEL H. MOIRANO

DIRECT DIAL
(312) 696-2508

TELEPHONE
(312) 346-7800

FACSIMILE
(312) 346-9316

March 31, 2006

**VIA E-MAIL AND FACSIMILE**

Gregory E. Rogus
Segal, McCambridge, Singer & Mahoney, Ltd.
330 North Wabash Avenue, Suite 200
Chicago, Illinois 60611

Re:   Flowserve Corporation v. Burns International Services Corporation, No. 04-1294

Dear Mr. Rogus:

I have your revised draft of the Injunction Order which was sent via e-mail at 5:28 p.m. CDT on March 30, 2006. As we discussed when I agreed to do the initial draft of the Order, Burns did not want Flowserve to use the drafting of the Injunction Order as an opportunity to attempt to reargue or modify the letter or intent of the March 22, 2006 Memorandum Opinion, or the relief granted as specifically set forth in ¶ 4 of the March 22, 2006 Order. Unfortunately, Flowserve is now attempting to do exactly that, by modifying or eliminating findings made in the Memorandum Opinion, and attempting to materially change the relief Judge Farnan granted.

Burns remains willing to attempt in good faith to reach an agreement on a form of an Injunction Order which conforms to Judge Farnan's March 22, 2006 Memorandum Opinion and Order, but Burns will not agree to Flowserve's attempts to materially change the findings made or the relief granted. I understand the issue of security was not addressed in Judge Farnan's prior rulings. Although Burns does not believe security is required under the facts of this case, it is willing to discuss the issue with Flowserve. Because we now have very little time to attempt to resolve the substantial issues raised by Flowserve's proposed Injunction Order, I would appreciate it if you would call to discuss the proposed Order immediately.

Very truly yours,

Michael H. Moirano

MHM:je
cc: Francis J. Murphy, Esq.