# EXHIBIT E

LAW OFFICES

# NISEN & ELLIOTT, LLC

SUITE 2500

200 WEST ADAMS STREET

CHICAGO, ILLINOIS 60606

(312) 346-7800

FAX (312) 346-9316

WWW.NISEN.COM

PAUL F. GERBOSI.
EDWARD B. MUELLER
ANTHONY PACKARD
MARK F. ZAENGER
MICHAEL J. DALEY
JOHN FOSTER LESCH
JOHN K. KNEAFSEY
MICHAEL H. MOIRANO
ROBERT O. MIDDLETON
WILLIAM G. DALUGA, JR.*
KENNETH J. ROJC
THOMAS V. McCAULEY
HELEN M. JENSEN
WILLIAM A. WALKER
DANIEL P. DAWSON
WILLIAM J. RALEIGH
MARY ROSE C. MANCZAK
BRADLEY S. McCANN

DONALD F. FROEHLKE
ELENA GALLO
DAVID E. GEMPERLE
CLAIRE E. GORMAN
D. ERIC MARTIN
ALEXIS M. REED
SARA B. ROBERTSON
MATTHEW S. SOLLITTO
PATRICK VINING

*ALSO LICENSED TO PRACTICE IN FLORIDA

OF COUNSEL
DONALD C. SHINE

February 22, 2006

**VIA FACSIMLE**

Gregory E. Rogus, Esq.
Segal, McCambridge, Singer & Mahoney
330 North Wabash Street
Suite 200
Chicago, Illinois 60611

Re:     *Flowserve Corporation v. Burns International Services Corporation*

Dear Mr. Rogus:

This letter is to acknowledge receipt of and respond to your letter dated Friday, February 17, 2006.

For many years, BW/IP International, Inc., formerly known as Borg-Warner Industrial Products, Inc., has enjoyed the benefit of access to Borg-Warner's insurance coverage, and the benefit of experienced defense counsel who have defended these cases for the various former Borg-Warner companies. Only now that the primary coverage is allegedly exhausted and the umbrella carriers are demanding participation in cost sharing from the putative insureds is Flowserve (defined herein to include Flowserve Corporation and its subsidiaries and affiliates) threatening to take the drastic actions outlined in your letter. Moreover, by its threatened actions, Flowserve appears  to be abrogating the very Stock Purchase Agreement and related Letter Agreement which it is seeking to enforce in the pending Delaware litigation and pursuant to which has enjoyed the benefit of access to millions of dollars of Borg-Warner's insurance.

NISEN & ELLIOTT, LLC
Gregory E. Rogus, Esq.
February 22, 2006
Page 2

Specifically, the recent threat by Flowserve to discharge the entire network of defense counsel and to undertake the defense of the claims with counsel of its own choosing, without Burn's express consent, as well as its threat – often and publicly repeated – to make mass settlements with plaintiffs' attorneys of the underlying asbestos claims and to assign Flowserve's rights (if any) to the BWC insurance coverage in satisfaction of those settlements is in direct conflict with section 9.04(d) of the Stock Purchase Agreement and if carried out would constitute a breach of the Stock Purchase and Letter Agreements. Similarly, Flowserve's often repeated threat, as part of its so called "Armageddon" strategy, to file thousands of third-party indemnity actions in the underlying asbestos claims seeking the same relief being sought in the pending Delaware litigation is unreasonable and in our view would constitute a breach of Flowserve's obligation under the Stock Purchase and Letter Agreement to cooperate in defense of the claims and of the duty of good faith.

Burns' recognizes that under section 9.04(d) of the Stock Purchase Agreement  Flowserve has the right to participate in the defense of all the underlying asbestos claims but, as section 9.04(d) specifically provides, if it chooses to do so it must do so at its own expense. Thus, if Flowserve intends to follow through with its threats in your February 17, 2006 letter, please be advised that Burn's will consider Flowserve to be in breach of the Stock Purchase and Letter Agreements and will no longer accept cases from Flowserve for defense or indemnity under Borg-Warner's insurance coverage or provide Flowserve with access to or the benefits of Borg-Warner's coverage unless Flowserve acknowledges in writing that will be taking  these actions at its own cost and expense and will not seek reimbursement of either its defense or settlement costs in whole or in part from the available Borg-Warner insurance coverage or from Burns.

To be clear, in reply to the second paragraph of your February 17, 2006 letter, nothing Burns has done or intends to do in any way abrogates the Stock Purchase or Letter Agreements. To the contrary, Burns position is that it is entitled to indemnity from Flowserve under the provisions of section. 9.04 of the Stock Purchase Agreement, including without limitation section 9.04 (b), to the extent any pending or future asbestos claims are not covered in whole or part by insurance carried by Borg-Warner.

NISEN & ELLIOTT, LLC
Gregory E. Rogus, Esq.
February 22, 2006
Page 3

To the extent that Flowserve seeks indemnity under the provisions of the Stock Purchase and Letter Agreements, it must comply with the terms thereof. It also has a duty to mitigate its damages, and to act reasonably and in good faith.

We understand that CNA has offered to negotiate a cost sharing agreement with the other umbrella carriers and with Flowserve that would contain terms arguably more favorable to Flowserve than a strict reading of Judge Flynn's order in the Illinois declaratory judgment case. Attached is a copy of the current draft cost sharing agreement that was sent by CNA's counsel this week. Note that there is no proration to the insured; all expenses, losses and costs would be the responsibility of the insurers. The putative insured would pay only the shares (if any) of non-participating carriers, subject to a full reservation of rights.

In contrast, CNA, per Irv Faber's email to Chris Bechhold dated February 8, 2006, would reimburse only 8.82% of expenses in the absence of a cost-sharing agreement versus approximately 29% of expenses under its proposed cost sharing agreement. Other carriers might well follow suit – so that participating carriers would pay only one-third the amounts proposed under the cost sharing agreement.

Under these circumstances, it appears to be manifestly unreasonable for Flowserve to refuse even to discuss a cost-sharing agreement that would result in its paying far lower costs to defend cases against it, than it otherwise would have to pay. To the extent that Flowserve claims indemnity under the Stock Purchase and Letter Agreements, Burns demands that Flowserve enter into an appropriate and reasonable cost sharing agreement so as to minimize any costs, losses and expenses for which it might seek indemnity (without prejudice to Burns positions regarding its alleged indemnity obligations as set forth more fully in the Delaware case).

As to the first full paragraph of your letter on page 2, it seems particularly disruptive to the joint efforts of counsel that make up the defense network in the underlying asbestos cases to accuse them of violations of the Code of Professional Responsibility. These counsel have represented BWIP and Flowserve, and the other former Borg-Warner companies, for many years, and done so with Flowserve's full knowledge and consent and without any claims of conflict before the carriers sought cost-sharing from Flowserve. It is equally disconcerting to make unfounded threats against the Borg-Warner insurers and Burn's counsel now that Borg-Warner's insurers have declined to pay 100% of Flowserve's defense and indemnity costs. As you are well aware, neither has engaged in false,

NISEN & ELLIOTT, LLC
Gregory E. Rogus, Esq.
February 22, 2006
Page 4

misleading or unethical conduct and your suggestions that they have are unprofessional and unappreciated.

Please be advised that unless we can reach an immediate and reasonable resolution of the threats made in your February 17, 2006 letter, we intend to seek relief from Judge Farnan in the Delaware litigation. Please let us know if you would like to meet to discuss a possible resolution of the issues. Due to the impending March 1, 2006 deadline imposed by Flowserve, we would suggest a meeting at your earliest convenience. If we do not hear from you by the close of business on Monday, February 27, 2006, we will assume Flowserve has no interest in trying to resolve the issues raised by your February 17, 2006 letter and that Burns should proceed accordingly.

Very truly yours,

Edward B. Mueller

EBM:jm
Enclosure