*Letter Agreement, Flowserve has demanded that Burns indemnify Flowserve for all defense costs, settlements and judgments arising out of the Underlying Asbestos Claims. However, Burns has breached the Letter Agreement by refusing to indemnify Flowserve to the extent of, rather than the collectibility of, insurance assets. Further, Burns has breached the 1987 Agreement's indemnity obligations that provide protection to Flowserve.*

34.     *As a result of the failure of Burns to indemnify Flowserve, Flowserve has been and will be required in the future to expend its own monies in the defense and settlement of the Underlying Asbestos Claims.*]

49.     <u>Based on the language of §9.04(a)(ii)(E) of the SPA, FLOWSERVE contends that it is BURNS, by virtue of its successorship to the SPA indemnification liabilities of BWC, that must indemnify FLOWSERVE.</u>

50.     The asbestos-related personal injury and wrongful death claims based on exposure to [*Burns'*] pre-1987 products are obligations for which [*Burns*] <u>BWC</u> agreed to [*assume liability and to*] indemnify the [*Flowserve*] <u>Buyer</u> pursuant to §9.04(a)(ii)(E). The allegations set forth in <u>the various causes of action in</u> [*the asbestos-related personal injury*] <u>those</u> lawsuits closely resembles, and in some cases precisely tracks, the <u>long-tail liability protection the Buyer negotiated, and the Seller agreed to,</u> in the indemnity language contained in §9.04(a)(ii)(E). [*See Chart of relationship between asbestos-related causes of action and the §9.04(a)(ii)(E) indemnities, Ex. C. Upon information and belief, the complaint language tracked in Exhibit C is drawn from plaintiffs' firms in jurisdictions where they are asserting causes of action against Flowserve, Burns, and BW/IP for the Byron Jackson pump line.*]

51.  Furthermore, the course of conduct of the parties who negotiated the [*1987 Agreement*] SPA demonstrates a clear intent that [*Burns*] BWC would retain [*full responsibility*] the obligation to indemnify the Buyer for environmental or disease-related liabilities in connection with pre-1987 manufacturing activity or exposure[*s to BWIC and Borg-Warner Corporation products*] claims.  Nothing in the SPA or parole evidence indicates that the Buyer intended to or was willing to accept any unknown or non-disclosed long-tail liability. [*Flowserve*] ACQUISITION communicated to [*Burns*] BWC, prior to the execution of the SPA, that [*Burns'*] BWC's indemnification for unknown and/or undisclosed environmental or disease-related liabilities was a crucial pre-condition [*for Flowserve's agreement to acquire the conveyed assets.*] before the transaction could close.  Because these specific indemnification provisions were vital to [*Flowserve*] ACQUISITION, they were moved into a separate section of the SPA and exempted from the five-year sunset provision.

52.  BURNS has taken a contrary position, contending that it has no obligation to defend and indemnify FLOWSERVE.  In addition, since the carriers began notifying FLOWSERVE and BURNS regarding the exhaustion of certain coverage, BURNS began tendering to FLOWSERVE for defense and indemnification those underlying asbestos cases in which BURNS had been named a defendant, claiming entitlement to indemnification pursuant to §9.04(b) of the SPA.

53.  In light of the parties' disparate positions regarding their respective rights to and/or duties to provide reimbursement and/or indemnity under the SPA, a justiciable controversy exists, and this Court should issue a declaration of the rights and duties of the parties with respect to FLOWSERVE's claims for indemnification from BURNS for

all defense costs, settlements, and judgments, arising out of the underlying asbestos cases.

## COUNT II - DECLARATORY RELIEF
## WITH REGARD TO THE LETTER AGREEMENT

54.     FLOWSERVE hereby incorporates the allegations contained in paragraphs 1 through 48, as though fully set forth herein.

[47.    *As evidenced by the Letter Agreement, Flowserve submits that Defendants are required to defend and indemnify it for all losses arising out of the Underlying Asbestos Claims because said claims were covered by valid and collectible insurance at the time that the Letter Agreement was entered into by the parties.*]

55.     Based on the language contained in the Letter Agreement, FLOWSERVE contends that it is BURNS, by virtue of its successorship to the indemnification liabilities of BWC, that must indemnify FLOWSERVE against "all Losses to the extent such Losses are covered by [insurance carried by Borg-Warner.]"

56.     The third paragraph of the Letter Agreement contains an explicit statement that "Borg-Warner will indemnify the Buyer ... against all Losses to the extent such Losses are covered by such insurance."

57.     By including this sentence in the Letter Agreement, BWC agreed to do more than simply submit any claimed Losses to its carriers for coverage. It agreed to be the indemnitor, regardless of what any of its carriers might later do in addressing any claims.

[48.    *In contrast, Burns contends that it has no obligation to defend and indemnify Flowserve with respect to the Underlying Asbestos Claims. Specifically, it is Burns' contention that under the Letter Agreement, Flowserve is only entitled to*

*indemnification to the extent that Burns' insurers agree to provide such coverage, and Burns has no independent obligation to indemnify Flowserve for the Underlying Asbestos Claims. Burns speciously maintains this position without even considering whether Burns has taken all necessary and prudent steps to manage its coverage in order to, <u>inter alia</u>, prevent premature exhaustion, bring excess and other primary coverage into position, and, in the alternative, to limit overpayment of claims or to timely assume any and all gaps due to carrier insolvency or any other lapse in coverage.*

49.     *Contrary to Burns' assertions, the 1987 coverage does not substitute for Burns' indemnity obligations. The coverage limits as of May 1, 1987 merely defined the scope of Burns' indemnity obligation and were not meant to be the sole remedy. Flowserve did not contract for Burns' carriers' future performance – it contracted for Burns' performance. The Letter Agreement was with Burns – with the coverage limits serving only to define the parameters of the obligation. Burns has breached the Letter Agreement and has additionally failed to exercise its duty of good faith and fair dealing under the Letter Agreement.*]

58.     <u>Furthermore, the phrase "to the extent such Losses are covered by insurance carried by Borg-Warner" defined the scope of BWC's indemnity obligation and provided a quantification of the value of the consideration that ACQUISITION bargained for, which was the value of BWC's insurance tower at the time. It did not create a limitation on BWC's liability; i.e. it was not intended to limit the Buyer to some lesser amount based upon remaining availability of solvent coverage or some other diluted consideration later in time.</u>

59.     <u>In entering into the Letter Agreement, ACQUISITION was not</u>

contracting for BWC's carriers' future performance. It contracted for BWC's performance. The Letter Agreement was with BWC, with the coverage limits serving only to define the parameters of the obligation.

60. BURNS has taken a contrary position, contending that its only duty under the Letter Agreement is to turn over to BWC's carriers any claims for Losses that are tendered. BURNS denies that it has any obligation itself, pursuant to the Letter Agreement, to independently defend and indemnify FLOWSERVE.

61. In light of the parties' disparate positions regarding their respective rights and duties with respect to reimbursement and indemnity under the Letter Agreement, a justiciable controversy exists, and this Court should issue a declaration of the rights and duties of the parties with respect to FLOWSERVE's claims for indemnification from BURNS pursuant to the Letter Agreement for all defense costs, settlements, and judgments arising out of the underlying asbestos cases.

### COUNT III – ALTERNATIVE DECLARATORY RELIEF – FLOWSERVE'S UNFETTERED RIGHT TO ACCESS THE BWC INSURANCE

62. FLOWSERVE hereby incorporates the allegations contained in paragraph 1 through paragraph 48 as if fully set forth herein.

63. The Letter Agreement states that "...notwithstanding anything to the contrary contained in the Agreement, neither BWIP nor any of its Subsidiaries shall be responsible for any Losses to the extent that such Losses are covered by insurance carried by Borg-Warner."

64. Under the Agreement, "Losses" include "any and all claims, actions, causes of action, liabilities, losses, damages and reasonable out-of-pocket expenses and

costs."

65.  As of the date the Letter Agreement was executed, and for many years prior thereto, BWC had in force and effect insurance policies providing coverage for the "Losses" referenced in both the SPA and the Letter Agreement.

66.  As of the date the Letter Agreement was executed, INDUSTRIAL PRODUCTS had both the legal and contractual right and authority to seek and obtain directly from BWC's liability insurance carriers coverage for any Losses covered by those carriers' policies. That right and authority derived from, *inter alia*, the following:

(a)  The insurance policies themselves included BWC's divisions and subsidiaries as either Insureds, Named Insureds, Assureds, or Named Assureds. The Byron Jackson pump division had operated as a division of BWC from approximately the mid-1950's until 1984, when BWC transferred and assigned the pump division business to its wholly-owned subsidiary, INDUSTRIAL PRODUCTS. Between 1984 and 1987, INDUSTRIAL PRODUCTS continued to operate as BWC's wholly-owned subsidiary.

(b)  On or about January 1, 1984, BWC assigned, transferred and conveyed to INDUSTRIAL PRODUCTS all of its right, title and interest in and to the business and assets of the Byron Jackson pump division. This assignment included "contract rights" and "other things of value." By virtue of this assignment, BWC transferred, conveyed and assigned to INDUSTRIAL PRODUCTS the right and authority to seek and obtain coverage for Losses directly from BWC's carriers.

67.  The January 1, 1984 assignment described in paragraph 66(b) above was never rescinded prior to the sale of INDUSTRIAL PRODUCTS to ACQUISITION. Therefore, in purchasing INDUSTRIAL PRODUCTS, ACQUISITION purchased INDUSTRIAL PRODUCTS' right and authority to seek and obtain coverage for Losses directly from the BWC carriers.

68.  By virtue of the post-SPA corporate history outlined in paragraphs 21-31 above, FLOWSERVE has succeeded to ACQUISITION'S rights regarding insurance access.

69.  BURNS has taken the contrary position that FLOWSERVE cannot directly access the BWC insurance coverage, either for purposes of funding judgments or settlements or funding defense costs, unless FLOWSERVE first obtains BURNS' approval, authorization or consent.  BURNS also contends that unless FLOWSERVE agrees to use defense counsel chosen by BURNS, FLOWSERVE cannot look to any of the BWC carriers for defense funding.

70.  Contrary to BURNS' position, there is nothing contained in the Letter Agreement or the SPA that controls the relationship between the carriers and their insured or that negates FLOWSERVE'S right and authority to directly access the BWC insurance without first obtaining BURNS' approval, authorization or consent.  Nor does the Letter Agreement or the SPA compel FLOWSERVE to use counsel of BURNS' choosing in order to access insurance carrier funding for defense costs.

71.  In light of the parties' disparate positions regarding FLOWSERVE'S right and authority to directly access the coverage provided for Losses by the BWC insurance carriers, a justiciable controversy exists, and this Court should issue a declaration of the rights and duties of the parties with respect to FLOWSERVE's claim that it can directly access the BWC insurance coverage to obtain funding for settlements, judgments, and defense costs arising out of the underlying asbestos cases without first having to obtain BURNS' consent, approval or authorization.

**COUNT IV – BREACH AND ANTICIPATORY BREACH OF CONTRACT – THE SPA**

[*All of counts I, III and IV from original Complaint*]

72. FLOWSERVE hereby incorporates the allegations contained in paragraphs 1 through 52 as though fully set forth herein.

73. To the extent that BURNS has failed to fully indemnify FLOWSERVE for any payments made to claimants in settlement of any of the underlying asbestos litigation, or for any of the reasonable expenses and costs associated with said litigation, including defense costs, it has breached the terms of the SPA, and in particular §9.04(a)(ii)(E) thereof.

74. FLOWSERVE has thereby been damaged in that it has been caused to pay, and continue to pay, certain amounts both to fund settlements with claimants in the underlying asbestos litigation, and the reasonable expenses and costs related to said litigation, including defense costs.

75. To the extent that BURNS persists in its failure to fully indemnify FLOWSERVE for any of the payouts, expenses and costs incurred by FLOWSERVE in connection with the pending and future underlying asbestos litigation, FLOWSERVE will continue to be damaged as a direct result of BURNS' ongoing and future breach.

76. FLOWSERVE is therefore entitled to an award of damages that will fully and fairly compensate it for any and all amounts that it would not have had to pay out in connection with the underlying asbestos litigation but for BURNS' breach of the terms of the SPA.

## COUNT V – BREACH AND ANTICIPATORY BREACH OF CONTRACT – THE LETTER AGREEMENT

77. FLOWSERVE hereby incorporates the allegations contained in

paragraphs 1 through 48, and 55 through 59, as though fully set forth herein.

78.    To the extent that BURNS has failed to fully indemnify FLOWSERVE for any payments made to claimants in settlement of any of the underlying asbestos litigation, or for any of the reasonable expenses and costs associated with said litigation, including defense costs, it has breached the terms of the Letter Agreement.

79.    FLOWSERVE has thereby been damaged in that it has been caused to pay, and continue to pay, certain amounts both to fund settlements with claimants in the underlying asbestos litigation, and the reasonable expenses and costs related to said litigation, including defense costs.

80.    To the extent that BURNS persists in its failure to fully indemnify FLOWSERVE for any of the payouts, expenses and costs incurred by FLOWSERVE in connection with the pending and future underlying asbestos litigation, FLOWSERVE will continue to be damaged as a direct result of BURNS' ongoing and future breach.

81.    FLOWSERVE is therefore entitled to an award of damages that will fully and fairly compensate it for any and all amounts that it would not have had to pay out in connection with the underlying asbestos litigation but for BURNS' breach of the terms of the Letter Agreement.

## COUNT VI – TORTIOUS INTERFERENCE WITH FLOWSERVE'S RIGHT TO ACCESS THE BWC INSURANCE

82.    FLOWSERVE hereby incorporates the allegations contained in paragraghs 1 through 47, and 63 through 70 as though fully set forth herein.

83.    If, as FLOWSERVE contends in Count III, and as it has argued previously before this Court, it has an unfettered right to access the BWC insurance to fund reasonable settlements of any of the underlying asbestos cases, as well as defense costs

relating to those cases, then BURNS is without the lawful right or authorization to interfere with FLOWSERVE's exercise of that right.

84. Notwithstanding the foregoing, BURNS has tortiously interfered with FLOWSERVE's contractual right to directly access the BWC insurance in an effort to coerce the carriers to restrict or prevent FLOWSERVE from accessing BWC'S insurance policies.

85. On or about June 28, 2006, counsel for BURNS directed a letter to counsel representing several of the insurance carriers. (See letter attached hereto as Ex. C.)

86. In the June 28th letter, BURNS' counsel misstates the contents of Judge Farnan's March 22, 2006 order (copy of which is attached hereto as Ex. D). That order had directed the parties to submit an agreed upon Injunction Order *"which shall include provisions for"* terminating and replacing BURNS' choice of defense counsel unless FLOWSERVE paid replacement counsel with its own funds, and negotiating global or other settlements attempting to use or assigning BWC insurance coverage to fund such settlements. The order did not direct the parties to submit an agreed Injunction Order *prohibiting* FLOWSERVE from doing either of those things.

87. The June 28th letter also mischaracterizes the Court's March 22nd order as "binding" and "law of the case" despite the fact that the order on its face demonstrates that it is not intended to constitute a final Injunction Order.

88. Even though the carriers are not parties to the present action, BURNS' June 28th letter nonetheless states BURNS' "belief" that the order is "binding on the carriers," and that any payment would be "at the carriers' and FLOWSERVE'S sole risk."

<u>89.</u>     <u>The communications embodied in BURNS' June 28th letter constitute an intentional and tortious interference with FLOWSERVE'S right to directly access the BWC coverage to fund reasonable settlement and defense costs in connection with the underlying asbestos cases.</u>

<u>90.</u>     <u>As a direct and proximate result of BURNS' tortious interference, FLOWSERVE has been damaged in that it has been caused to pay, and continue to pay, certain amounts both to fund settlements with claimants in the underlying asbestos litigation, and the reasonable expenses and costs related to said litigation, including defense costs.</u>

**PRAYER FOR RELIEF**

[*WHEREFORE, Flowserve prays for judgment as follows:*

*declaring that Defendants accept tender from Flowserve of the underlying asbestos actions and directing that Defendants' tenders to Flowserve of the underlying asbestos cases are improper;*

*declaring that pursuant to the Letter Agreement, Flowserve is entitled to indemnification for the underlying asbestos cases from Defendants to the extent of the existence of insurance assets represented at the time of the execution of the Letter Agreement, and that Defendants have breached the Letter Agreement.*

*declaring that pursuant to §9.04(a)(ii)(E) of the 1987 Agreement, Defendants must indemnify and hold Flowserve harmless for any future asbestos-related claims based on pre-1987 exposure to products manufactured by Borg-Warner Corporation or Borg Warner Industrial Products, Inc. and that Defendants have breached the 1987 Agreement;*

*in the alternative, declaring that Flowserve is entitled to common law indemnification from Defendants for any settlements paid or costs incurred in the defense of underlying asbestos actions based on products manufactured by Borg-*

> *Warner Corporation before 1983 and Borg-Warner Industrial Products, Inc. between 1983 and 1987;*
>
> *for all costs and expenses (including attorneys' fees) incurred by Flowserve in this litigation and in the defense of the underlying asbestos cases, and all other and further relief the Court deems just and equitable.*]

WHEREFORE, FLOWSERVE prays for judgment as follows:

A)      Declaring that pursuant to §9.04(a)(ii)(E) of the Stock Purchase Agreement, BURNS must indemnify and hold FLOWSERVE harmless for any and all Losses, including defense costs, arising out of the underlying asbestos litigation to the extent the claimants in that litigation allege exposure to pre-1987 products manufactured by Borg-Warner Corporation or Borg Warner Industrial Products, Inc;

B)      Declaring that pursuant to the Letter Agreement, BURNS must indemnify and hold FLOWSERVE harmless for any and all losses, including defense costs, arising out of the underlying asbestos litigation to the extent that such Losses were covered by the insurance carried by Borg-Warner Corporation as of the date of the Letter Agreement was executed;

C)      Declaring that FLOWSERVE is entitled to directly access Borg-Warner Corporation's insurance coverage to fund Losses incurred in connection with the underlying asbestos litigation, including judgments, reasonable settlements and defense costs, without having to first obtain BURNS' approval, authorization or consent;

D)      Awarding FLOWSERVE damages based upon BURNS' breach, and anticipatory breach, of the SPA and/or the Letter Agreement;

E)      Awarding FLOWSERVE damages based upon BURNS's tortious interference with FLOWSERVE's right to access the Borg-Warner Corporation historical

insurance;

F) Awarding FLOWSERVE its costs, including reasonable attorneys' fees, incurred in this litigation; and

G) Awarding FLOWSERVE such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Segal McCambridge Singer
& Mahoney, Ltd.

By: _____
Attorneys for Flowserve
Gregory E. Rogus, Esq.
Segal McCambridge Singer & Mahoney, Ltd.
330 N. Wabash Drive, Suite 200
Chicago, IL 60611
312-645-7800

Local Counsel:
Danielle Yearick, Esq.
Tybout, Redfearn & Pell
300 Delaware Avenue  11th Floor
Wilmington, DE 19899
302-658-6901