UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____
FLOWSERVE CORPORATION            )
                                 )
      Plaintiff,                )
                                 )    C.A. NO.: 04-1294 JJF
      v.                        )
                                 )
BURNS INTERNATIONAL SERVICES     )
CORPORATION and BORG-WARNER      )
CORPORATION,                     )
                                 )
      Defendants.               )
_____)

### DEFENDANT BURN'S INTERNATIONAL SERVICES CORPORATION'S PROPOSED PRETRIAL ORDER

Defendant Burns International Services Corporation ("Burns") submits the following proposed pretrial order in accordance with D. De. LR 16.4(d).[1]

(1) **Nature of Action**

Flowserve filed this action for breach of contract, declaratory judgment and indemnity on September 24, 2004. The claims alleged arise out of the indemnity provisions of a 1987 Stock Purchase Agreement and related Letter Agreement entered into between Borg-Warner Corporation ("Borg-Warner") and BWIP Acquisition Corporation ("BWIP-AC") and concern the parties' respective indemnity obligations for thousands of pending asbestos product liability claims arising out of asbestos containing products manufactured by Borg-Warner and Borg-Warner Industrial Products, Inc. ("BWIP") the entity acquired by BWIP-AC pursuant to the Stock

---

[1] Defendant Burns is submitting this pretrial order rather than the plaintiff because, despite repeated requests, plaintiff had not provided a draft of the pretrial order as September 8, 2006, the Friday prior to the Monday the Pretrial Order was required to be filed. Burn's had previously advised plaintiff's counsel that, due to prior commitments, its counsel would not be available on the date the proposed order was to be filed. Moreover, Burns did not want to wait until the last second to determine if the plaintiff intended to submit a proposed order, or try and reach agreement with plaintiff on acceptable terms of a proposed order.

Purchase Agreement. Plaintiff Flowserve Corporation ("Flowserve") has alleged that it is the "corporate successor" to BWIP-AC and entitled to indemnity from defendant Burns International for the asbestos liabilities under the terms of the Stock Purchase Agreement and Letter Agreement. Flowserve seeks a declaratory judgment affirming Burns' alleged indemnity obligations to it and seeks damages for Burns' alleged breach of its indemnity obligations.[2]

Burns served its answer and counterclaim on January 10, 2005. Burns denied that it has an indemnity obligation to Flowserve for the asbestos claims except to the extent such claims are covered by insurance carried by Borg-Warner. In the counterclaim, Burns seeks a declaration of its right to indemnity under the Stock Purchase Agreement for any asbestos or other products liability claims alleged against it or Borg-Warner to the extent such claims are not covered by Borg-Warner's insurance. Burns also seeks damages resulting from Flowserve's unjust receipt of benefits under the Borg-Warner insurance coverage to which it was not entitled and for breach of the indemnity provisions of the Stock Purchase Agreement.

(2) **Basis for Federal Jurisdiction**

Jurisdiction is based upon 28 USC 1332(a)(1) in that the controversy is between citizens of different states and the amount in controversy, excluding interest, exceeds $75,000.00. Jurisdiction is not contested.

(3) **Statement of Undisputed Facts**

In 1987, Borg-Warner and BWIP-AC entered into the Stock Purchase and

---

[2] Burns recently filed a motion for leave to file an amended complaint which includes two additional claims concerning its alleged right to "directly access" Borg-Warner's insurance coverage for product liability claims and for Burn's alleged interference with its right to "directly access" such insurance. The motion for leave to file an amended complaint remains pending.

134949                                    2

Letter Agreements attached to the Complaint as Exhibits A and B. The transaction contemplated by those agreements closed in May, 1987, effective December 31, 1986. At some point subsequent to the closing of the transaction, BWIP and/or related entities began to be sued in asbestos product liability actions. In accordance with the terms of the Letter Agreement, the claims were tendered to Borg-Warner's insurance carriers who provided a complete defense and indemnity for the claims. However, in 2004 certain of Borg-Warner's insurance carriers notified the parties that they would no longer pay 100% of the defense and indemnity costs for the asbestos claims. Such notification prompted Flowserve to file this action.

In addition to the foregoing undisputed facts, the parties are presently attempting to enter into two stipulations, one concerning the facts surrounding the corporate succession issues raised by the pleadings, and the other addressing the nature and scope of the Borg-Warner insurance coverage. The parties anticipate these stipulations will be completed and filed well in advance of the trial.

(4)    **Disputed Issues of Fact**

Burns does not believe there are any disputed issues of fact other than perhaps the amount and scope of the alleged damages. Burns anticipates, based upon the new allegations made by Flowserve in its proposed amended complaint, that Flowserve will contend that the indemnity provisions of the Stock Purchase Agreement is ambiguous in one or more respects and that extrinsic evidence should be allowed to explain the parties' intent. Burns contends that the agreements are not ambiguous and that extrinsic evidence should not be allowed.

(5)    **Issues of Law**

Other than issues raised by the pleadings concerning the proper interpretation and application of the relevant provisions of the Stock Purchase and Letter Agreements, Burns contends that the only issues of law which the Court will be required to address are (1) whether the plaintiff Flowserve Corporation is the successor to and has the right to enforce or obtain benefits under the Stock Purchase and Letter Agreements; and (2) whether extrinsic evidence should be admitted to interpret the intent of the parties to the Agreement, or to create an ambiguity.

With respect to the issue of whether Flowserve is the successor to and entitled to the benefits of the Stock Purchase and Letter Agreements, Burns' contends that the undisputed evidence shows that Flowserve Corporation is not the successor to or subsidiary of any of the parties to the Stock Purchase or Letter Agreements and that any indemnity rights under those Agreements are expressly limited to the parties to the Agreements or their subsidiaries.

With respect to the issue of the admissibility of extrinsic evidence, it is Burns' contention that because the relevant language of the Stock Purchase Agreement is clear and unambiguous, Flowserve is precluded under Delaware law from introducing any extrinsic evidence purporting to establish the intent of the parties to the underlying agreements or to create an ambiguity. As the Third Circuit recognized in *MBIA Ins. Corp. v. Royal Indem. Co.*, "Delaware follows the objective theory of contract." 426 F.3d 204, 210 (3d Cir. 2005); citing *Haft v. Haft,* 671 A.2d 413, 417 (Del.Ch.1995) The *MBIA* court articulated Delaware law on contract interpretation as follows:

> Although the law of contract generally strives to enforce agreements in accord with their makers' intent, the objective theory considers objective acts (words, acts and context) the best evidence of that intent. Unambiguous

> written agreements should be enforced according to their terms, without using extrinsic evidence to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity. A contract is not ambiguous merely because the parties disagree about its proper interpretation. Whether a contract is ambiguous is determined according to an objective, reasonable-person standard and is a question of law. Words are to be given their ordinary meaning and should not be tortured to impart ambiguity where none exists.

*Id.* As this Court stated in *GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, "the use of extrinsic evidence to interpret 'clear and unambiguous language' in a contract is not permitted." 270 F.Supp.2d 476, 481 (D.Del. 2003)(Farnan, J.); *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.,* 711 A.2d 45, 56 (Del.Super.Ct.1995); see also *IFC Interconsult, AG v. Safeguard Intern. Partners, LLC*, 438 F.3d 298, 319 (3d Cir. 2006) (holding that under Delaware law, "if a writing is plain and clear on its face, i.e., its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent.")

Moreover, under Delaware law, extrinsic evidence may not be introduced to demonstrate the existence of ambiguity in the terms of the contract. This issue was specifically addressed by the Third Circuit, in *MBIA Ins. Corp. v. Royal Indem. Co.*, affirming this Court's conclusion that the "waiver" provisions contained within insurance policies at issue in that case were clear, unambiguous and enforceable under Delaware law. 426 F.3d at 214.[3] In *MBIA*, the Third Circuit expressly rejected the defendant insurer's argument that, pursuant to Third Circuit precedent, it should have been permitted to introduce extrinsic evidence to demonstrate that the terms of the

---

[3] In *MBIA* the Third Circuit affirmed this Court's ruling denying the defendant insurer's rescission claims, declaring the disputed policies in full force and effect, and ordering the insurer to perform its obligations thereunder, the case was remanded only as to the issues of the scope of indemnity obligation and the nature of the losses claimed remained. *Id.* at 220-221

agreement were ambiguous. *Id.*, n.4.  In doing so, the Third Circuit specifically recognized that under Delaware law, unlike federal common law of contract or that of other states, extrinsic evidence cannot be introduced to demonstrate the existence of an ambiguity in the contract language. *Id.*  As such, not only is Flowserve precluded from introducing the proposed extrinsic evidence for purposes of demonstrating the intent of the parties, Flowserve is also precluded from introducing such evidence in an effort to demonstrate any ambiguity in the contract language.[4]

(6)   **Burns' Exhibits**

A list of Burns' pre-marked trial exhibits is attached as Exhibit A.  Burns' reserves the right to identify additional trial exhibits as necessary to be used as rebuttal evidence or as additional documents are produced.

(7)   **Burns' Trial Witnesses**

Lawrence Henke, Flowserve Corporation,

Robert Roberts, Flowserve Corporation

Robert Zieg, 13310 Lost Key Plantation, Bradenton, Florida

Edward Mueller, Nisen & Elliott, LLC, 200 West Adams Street, Chicago, Illinois

Burns' reserves the right to identify additional witnesses to the extent the identity of the new witnesses are disclosed.

---

[4] The *MBIA* court recognized that "the Delaware Supreme Court has held that in determining whether an ambiguity exists a court may consider only 'undisputed background facts to place the contractual provision in its historical setting.'" *Id. eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A2d 1228, 1232 n.7 (Del.1997).  The *MBIA* court additionally recognized that "undisputed background facts" did not include "the self-serving parol evidence submitted by the parties, whose recollections as to the intended meaning of the agreements predictably differ." *Id.*  The apparent exception to the rule under Delaware law precluding the introduction of extrinsic evidence to demonstrate the existence of an ambiguity for "undisputed background facts" is inapplicable under the present case.  Flowserve's proposed extrinsic evidence to does not contain undisputed historical facts intended to place the contract in its historical setting.  Rather, the proposed extrinsic evidence in this case, like that offered in *MBIA*, would constitute nothing more than self-serving parol evidence regarding Flowserve's predecessor's understanding of the intended meaning of the agreements.

(8)     **Support for Plaintiff's Claims**

(9)     **Support for Burns' Defenses**

  Burns intends to rely upon the corporate succession stipulation being prepared by the parties to establish that the plaintiff, Flowserve Corporation, is not the successor to any party to nor has any rights under the Stock Purchase or Letter Agreement, including the right to obtain benefits under the Borg-Warner insurance. Burns intends to rely on the unambiguous language of the Stock Purchase and Letter Agreements and the conduct of the parties to support its defense that it owes no indemnity obligation to Flowserve Corporation or any other entity having rights under the Stock Purchase or Letter Agreement for the underlying asbestos product liability claims except to the extent such claims are covered by insurance carried by Borg-Warner.

(10)    **Support for Burn's Counterclaim**

  Burns intends to rely upon the unambiguous language of the Stock Purchase Agreement and Letter Agreement and the conduct of the parties to support its claim that it is entitled to indemnity for all asbestos products liability claims. Burns intends to rely upon the same Agreements and the parties' stipulation concerning the corporate succession issue to support its claim that Flowserve has been unjustly enriched by the receipt of benefits under the Borg-Warner insurance coverage. Burns will further support its counterclaims with evidence that Flowserve agreed, in connection with a related action pending in Cook County, Illinois, that any judgment entered in this litigation would be binding on all of its subsidiaries, including the subsidiaries that may have rights and obligations under the Stock Purchase and Letter Agreements and that because Burns has not been provided the indemnity to which it is entitled under the Stock Purchase Agreement, it is entitled to be reimbursed by such subsidiaries for the

costs its has incurred in defending the underlying asbestos product liability claims.

The amount of Flowserve's unjust enrichment has not been determined at this time because the information needed to calculate the amount is in the exclusive possession of third-parties. The precise amount of Burns' damages arising out of the breach of the indemnity obligations also cannot readily be calculated at this time because Burns continues to incur costs defending claims. Documentary evidence of such amounts will be introduced at trial.

(11) **Amendments to Pleadings**

Flowserve has filed a motion for leave to file an amended complaint which is pending. To the extent Flowserve is permitted to file an amended complaint, Burns may seek leave to file an amended counterclaim.

(12) **Other Matters**

Burns previously filed a motion for temporary restraining order and preliminary injunction. The Court granted the motion and asked the parties to submit an agreed order consistent with the Court's ruling. The parties could not agree on a form of injunction order and each filed a proposed order. Flowserve also requested that the hearing on the motion for injunctive relief be reopened to allow it to present additional evidence on its claimed right to "direct access" the Borg-Warner insurance coverage. Burns requests that the injunctive relief which the Court granted when it granted Burns' motion for temporary restraining order and preliminary injunction be made permanent in any final order entered by the Court.

This order shall control the subsequent course of the action unless modified by the Court to prevent manifest injustice.

_____         _____
Date                                         **United Sates District Judge**