**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

FLOWSERVE CORPORATION

Plaintiff,

v.

BURNS INTERNATIONAL SERVICES CORPORATION,

Defendant.

C.A. No.: 04-1294 JJF

**BURNS INTERNATIONAL SERVICES CORPORATION'S**
**ANSWER TO FLOWSERVE'S AMENDED COMPLAINT**

Defendant Burns International Services Corporation ("Burns") states as its answer to the Amended Complaint filed by plaintiff Flowserve Corporation ("Flowserve") as follows:

**FIRST DEFENSE**

**Response to Preliminary Statement**

Burns submits the following response to the "Preliminary Statement" alleged by Flowserve. Burns denies that it has any obligation to defend or indemnify Flowserve for asbestos-related product liability lawsuits now pending or hereafter filed arising out of the manufacture and sale of Byron Jackson industrial pumps. Burns admits that Borg-Warner Corporation ("BWC") manufactured and sold Byron Jackson industrial pumps through one or more of its divisions or subsidiaries from approximately 1955 until 1984. Burns further admits that, effective January 1, 1984, all of the businesses and most of the liabilities, including any product related liabilities, of BWC's Byron Jackson Division were transferred to BWC's wholly owned subsidiary, Borg-Warner Industrial Products, Inc. ("BWIP"), or to wholly owned

subsidiaries of BWIP, and that BWIP continued to manufacture and sell Byron Jackson pumps between 1984 and 1987.

Burns further admits that all of the stock of BWIP was sold to BWIP Acquisition Corporation ("BWIP-AC") pursuant to a Stock Purchase Agreement (the "SPA"). Burns denies that, pursuant to the terms of the SPA, BWC agreed to defend indemnify BWIP-AC for asbestos related products liability claims. Rather, Burns affirmatively states that under the terms of the SPA as amended, BWIP-AC and BWIP expressly agreed to indemnify BWC for, among other things, all products liability claims arising out of its manufacture and sale of Byron Jackson industrial pumps. Burns also denies that the Letter Agreement required BWC to indemnify BWIP-AC in the asbestos related products liability claims, except to the extent such claims are covered by the available insurance carried by the former BWC. Burns also denies that Flowserve has any right to BWC's historic insurance coverage separate and apart from the indemnification rights and obligations set forth in the SPA and the Letter Agreement, and/or that Flowserve has any right to "directly access" this insurance, whatever the term "directly access" may mean.

Burns admits that, as the result of transactions undertaken in connection with the liquidation of BWC, Burns is entitled to the benefits of the indemnity provisions of the SPA and the Letter Agreement. However, Burns denies that the plaintiff in this action - Flowserve Corporation - is the "successor" of BWIP-AC, and that Flowserve has any legal or contractual right to indemnification under the terms of the SPA or Letter Agreement. Rather, according to the express allegations of the Amended Complaint, Flowserve Corporation is the successor by merger of the entity identified as "BWIP Holdings, Inc.," the parent corporation of BWIP-AC. As such, Flowserve Corporation is not the "successor" to the indemnification rights of BWIP-AC under the terms of the SPA or the Letter Agreements.

Any allegations made in Flowserve's "Preliminary Statement" not specifically admitted or denied herein are denied.

**Response to Numbered Paragraphs of the Complaint**

1. Admitted.

2. Admitted, except deny that Burns' principal office is located in Chicago, Illinois.

3. Admitted.

4. Admitted that jurisdiction is proper under 28 USC §1332. Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 4 concerning Flowserve Corporation's motivations for filing this lawsuit.

5. Admitted that venue is proper in Delaware. Denied that any choice of law provision establishes venue in Delaware.

**Events Preceding the 1987 Stock Purchase Agreement**

6. Admitted based upon information and belief.

7 Admitted that, on information and belief, in or around December 1983, BWC incorporated BWIP and that BWIP was wholly owned and operated by BWC until 1987. Admitted that, on information and belief, in or around 1984, BWC assigned, transferred and/or conveyed its Byron Jackson pump division including liabilities associated with that division to its wholly owned subsidiary, BWIP. Admitted that all assets and liabilities related to the asbestos products at issue in the underlying asbestos cases were transferred to BWIP and BWIP assumed full responsibility for those assets and liabilities at that time. All other allegations made in paragraph 7 not expressly admitted herein are denied.

8. Admitted that, on information and belief, on or about February 27, 1987, BWIP-AC was incorporated as a Delaware corporation. Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 8 and therefore denies the same and demands strict proof thereof.

9. Admitted that, on information and belief, on or about March 12, 1987, BWIP Holding, Inc. was incorporated as a Delaware corporation and that sometime thereafter, BWIP Holding acquired all of the stock of BWIP-AC. Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 9 and therefore denies the same and demands strict proof thereof.

**1987 Stock Purchase Agreement**

10. Admitted that, on or about March 12, 1987, BWC and BWIP-AC entered into the SPA, attached to the Amended Complaint as Exhibit A, pursuant to which BWC sold all 100% of the shares of BWIP to BWIP-AC. The SPA speaks for itself.

11. Admitted that, on information and belief, on or about May 1, 1987, BWIP-AC sent to BWC the letter attached as Exhibit B to the Amended Complaint. The May 1, 1987 letter speaks for itself. Burns denies any allegations of paragraph 11 that contradict the terms and conditions expressly stated in Exhibit B or attempt to impute into Exhibit B terms and conditions not contained therein. All other allegations made in paragraph 11 not expressly admitted herein are denied.

12. Admitted on information and belief.

**The Environmental Indemnifications in the 1987 SPA**

13. Admitted that the SPA contains indemnification provisions in section 9.04. The Agreement speaks for itself. Burns denies any allegations of paragraph 13 that contradict the terms and conditions expressly stated in the SPA or attempt to impute into the SPA terms and conditions not contained therein. All other allegations made in paragraph 13 not expressly admitted herein are denied

14. Denied. The SPA speaks for itself, and specifically excludes the underlying asbestos claims from the indemnification obligations owed by the Seller.

15. Denied. The SPA speaks for itself.

16. Denied. The SPA speaks for itself.

17. Denied. The SPA speaks for itself, and specifically excludes the underlying asbestos claims from the indemnification obligations owed by the Seller.

18. Denied. The SPA speaks for itself. Additionally, Burns affirmatively states that the terms of the SPA are clear and unambiguous and, as such, parole evidence is inadmissable to either create an ambiguity or to demonstrate the intent of the parties.

**The Letter Agreement**

19. Denied. The Letter Agreement speaks for itself.

20. Admitted that, at the time the May 1, 1987 letter was sent, certain collectible primary, umbrella and excess insurance policies were in place that provided, *inter alia*, products liability coverage for the defense and indemnification of claims for personal injury arising out of products that had been manufactured and sold by BWC prior to March 12, 1987, including Byron Jackson pumps. All other allegations made in paragraph 20 not expressly admitted herein are denied.

**Post-SPA Corporate History - FLOWSERVE**

21. Admitted, on information and belief, that on or about May 20, 1987, BWIP-AC merged into BWIP with BWIP being the surviving corporation and that, following the merger, BWIP was a wholly-owned subsidiary of BWIP Holdings, Inc. All other allegations made in paragraph 21 not expressly admitted herein are denied.

22. Admitted on information and belief.

23. Admitted on information and belief.

24. Admitted, on information and belief, that on or about April 13, 1987, BW/IP, Inc. (formerly known as BWIP Holdings, Inc.) merged into Flowserve Corporation with Flowserve Corporation being the surviving corporation. All other allegations made in paragraph 24 not expressly admitted herein are denied.

25. Admitted, on information and belief, that on or about August 18, 1998, Flowserve RED Corporation was incorporated as a Delaware corporation. Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 25 and therefore denies the same and demands strict proof thereof.

26. Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 26 and therefore denies the same and demands strict proof thereof.

27. Admitted on information and belief.

28. Admitted on information and belief.

29.

29. Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 29 and therefore denies the same and demands strict proof thereof.

30. Admitted on information and belief.

31. Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations made in paragraph 9 and therefore denies the same and demands strict proof thereof.

**<u>Post-SPA Corporate History - BURNS</u>**

32. Admitted on information and belief.

33. Denied.

34. Admitted on information and belief.

35. Admitted on information and belief that among the assets and liabilities transferred to Borg-Warner Holdings Corporation were the rights and obligations under the 1987 Stock Purchase and Letter Agreements. All other allegations made in paragraph 35 not expressly admitted herein are denied.

36. Denied except admitted that, on information and belief, BWC was merged into BW - Transmissions & Engine Components Corporation (now known as Borgwarner Morse Tec, Inc.).

37. Admitted on information and belief.

38. Admitted on information and belief.

39. Admitted on information and belief.

40. Denied except as admitted in paragraph 35 and that, on information and belief, Borg-Warner Holdings Corporation is now known as Burns International Services Corporation.

**COUNT I - DECLARATORY RELIEF**

**WITH REGARD TO §9.04 OF THE 1987 SPA**

41. Admitted that Flowserve has tendered underlying asbestos claims to Burns for defense and indemnity under BWC's insurance coverage under the terms and conditions of the 1987 SPA and Letter Agreement. All other allegations made in paragraph 41 not expressly admitted herein are denied.

42. Admitted that Burns accepted the underlying asbestos claims tendered to it by Flowserve in accordance with the terms of the SPA and Letter Agreement with the express understanding that Flowserve was the successor to BWIP as repeatedly represented by Flowserve. Admitted that Burns submitted claims to the BWC primary and/or excess insurance carriers for defense and indemnification. All other allegations made in paragraph 42 not expressly admitted herein are denied.

43. Admitted that the BWC primary insurance carriers have, in the past, provided defense and indemnification for all underlying asbestos claims tendered to them by Burns. All other allegations made in paragraph 43 not expressly admitted herein are denied.

44. Admitted that in or about 2004, BWC's primary insurance carriers notified Burns and other parties claiming coverage under the Borg-Warner primary coverage that their limits of liability under such primary policies had been or were about to be exhausted. All other allegations made in paragraph 44 not expressly admitted herein are denied.

45. Admitted that recently a lawsuit captioned Continental Casualty Company. et al. v. Borg-Warner. Inc.. et al., Case No. 04CH01708, was filed in the Circuit Court of Cook County, Illinois, Chancery Division (hereinafter referred to as the "Coverage Lawsuit") by certain primary and excess general insurance carriers against Burns and others seeking, among other things, a

declaratory judgment as to the scope of coverage under certain insurance policies issued to BWC with respect to claims for bodily injury arising out of the manufacture and sale of asbestos-containing products. All other allegations made in paragraph 45 not expressly admitted herein are denied.

46. Admitted that certain insurers involved in the Coverage Lawsuit contend that the limits of the primary insurance have been exhausted. Admitted that various umbrella/excess insurers also dispute the scope of coverage for asbestos product liability claims and have indicated they would not provide 100% coverage for asbestos product liability claims. All other allegations made in paragraph 46 not expressly admitted herein are denied.

47. Denied.

48. Admitted that a dispute has arisen regarding the indemnification rights and obligations under the SPA and Letter Agreement. Denied that Flowserve has any rights under such Agreements. All other allegations made in paragraph 48 not expressly admitted herein are denied..

49. Admitted that Flowserve has recently contended that Burns is required to indemnify Flowserve for the underlying asbestos claims pursuant to the environmental indemnity provisions found in §9.04(a)(ii)(E)of the SPA. Denied that §9.04(a)(ii)(E) imposes any indemnity obligation on Burns for such claims. The SPA speaks for itself, and specifically excludes the underlying asbestos claims from the indemnification obligations owed by the Seller. All other allegations made in paragraph 49 not expressly admitted herein are denied.

50. Denied. The SPA speaks for itself, and specifically excludes the underlying asbestos claims from the indemnification obligations owed by the Seller.

51. Denied. Moreover, the language of the SPA and the Letter Agreement is clear and unambiguous and speaks for itself. Parole evidence is inadmissible either to create an ambiguity or to demonstrate the intent of the parties.

52. Admitted that Burns owes no duty to defend and indemnify Flowserve in the underlying asbestos cases and that Burns has tendered and will continue to tender any underlying asbestos claims which erroneously name Burns, BWC, or any party related to them, to Flowserve for defense and indemnity. All other allegations made in paragraph 52 not expressly admitted herein are denied.

53. Admitted that a justiciable controversy exists. Deny that Flowserve has any rights under either the SPA or Letter Agreement. All other allegations made in paragraph 53 not expressly admitted herein are denied.

**COUNT II - DECLARATORY RELIEF**
**WITH REGARD TO THE LETTER AGREEMENT**

54. Burns repeats its responses to paragraphs 1 through 48 above as its response to this paragraph 54.

55. Admitted that Flowserve contends that Burns must indemnify Flowserve under the terms of the Letter Agreement. Denied that Flowserve has any rights under the Letter Agreement or that Flowserve's recent claims for indemnification are based on the terms of the Letter Agreement which speaks for itself.

56. Denied. The Letter Agreement speaks for itself.

57. Denied. The Letter Agreement speaks for itself.

58. Denied. Moreover, the language of the Letter Agreement is clear and unambiguous and speaks for itself. Parole evidence is inadmissible either to create an ambiguity or to demonstrate the intent of the parties.

59. Denied. Moreover, the language of the 1987 SPA and the Letter Agreement is clear and unambiguous and speaks for itself. Parole evidence is inadmissible either to create an ambiguity or to demonstrate the intent of the parties.

60. Admitted that it is Burns' position that any indemnification obligation it owes for the underlying asbestos claims is pursuant to the Letter Agreement, which expressly limits its indemnity to the extent these claims are covered under the available BWC insurance. Further the Letter Agreement is expressly limited to "the Buyer, BWIP and each of their respective subsidiaries." Flowserve is neither the Buyer, nor BWIP, nor a successor to the Buyer or BWIP and is not a subsidiary of either entity. All other allegations made in paragraph 60 not expressly admitted herein are denied.

61. Admitted that a justiciable controversy exists. All other allegations made in paragraph 61 not expressly admitted herein are denied.

**COUNT III - ALTERNATIVE DECLARATORY RELIEF - FLOWSERVE'S UNFETTERED RIGHT TO ACCESS THE BWC INSURANCE**

62. Burns repeats its responses to paragraphs 1 through 48 above as its response to this paragraph 62.

63. Denied. The Letter Agreement speaks for itself.

64. Denied. The SPA speaks for itself.

65. Admitted that, at the time the May 1, 1987 letter was sent, certain collectible primary, umbrella and excess insurance policies were in place that provided, *inter alia*, products liability coverage for products that had been manufactured and sold by BWC prior to March 12, 1987. All other allegations made in paragraph 65 not expressly admitted herein are denied.

66. Denied.

67 Denied.

68. Denied.

69. Denied. Flowserve has no rights under the SPA or Letter Agreement. Any right to coverage under the Borg-Warner insurance is as provided under the Letter Agreement.

70. Denied. The terms of the SPA and the Letter Agreement speak for themselves.

71. Admitted that a justiciable controversy exists. All other allegations made in paragraph 71 not expressly admitted herein are denied.

**COUNT IV - BEACH AND ANTICIPATORY**
**BREACH OF CONTRACT - THE SPA**

72. Burns repeats its responses to paragraphs 1 through 52 above as its response to this paragraph 72.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

**COUNT V - BEACH AND ANTICIPATORY**
**BREACH OF CONTRACT - THE LETTER AGREEMENT**

77. Burns repeats its responses to paragraphs 1 through 48 and 55 through 59 as its response to this paragraph 77.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

**COUNT V - TORTIOUS INTERFERENCE WITH**
**FLOWSERVE'S RIGHT TO ACCESS THE BWC INSURANCE**

82. Burns repeats its responses to paragraphs 1 through 47,and 63 through 70 as its response to this paragraph 82.

83. Denied.

84. Denied.

85. Admitted that counsel for Burns sent the June 28, 2006 letter attached to Flowserve's Amended Complaint as Exhibit C. The letter speaks for itself. All other allegations made in paragraph 85 not expressly admitted herein are denied.

86. Denied. Both the June 28, 2006 letter and Judge Farnan's March 22, 2006 Order speak for themselves.

87. Denied. Both the June 28, 2006 letter and Judge Farnan's March 22, 2006 Order speak for themselves.

88. Denied. The June 28, 2006 letter speaks for itself.

89. Denied.

90. Denied

**SECOND DEFENSE**

1. Plaintiff Flowserve Corporation lacks standing to seek or assert any right to indemnification under the terms of the SPA because its is not the "Buyer" (defined in the SPA as BWIP Acquisition Corporation), nor "BWIP" (defined in the SPA as Borg-Warner Industrial Products, Inc.), nor is plaintiff a successor to or subsidiary of either of those entities. Any indemnification obligation owed under the SPA is owed only to the "Buyer," "BWIP" and "each of their respective subsidiaries."

**THIRD DEFENSE**

2. Plaintiff Flowserve Corporation lacks standing to seek or assert any right to indemnification under the terms of the Letter Agreement because its is not the "Buyer" (defined in the SPA as BWIP Acquisition Corporation), nor "BWIP" (defined in the SPA as Borg-Warner Industrial Products, Inc.), nor is plaintiff a successor to or subsidiary of either of those entities. Any indemnification obligation owed under the Letter Agreement is owed only to the "Buyer," "BWIP" and "each of their respective subsidiaries."

**FOURTH DEFENSE**

3. To the extent plaintiff has any right to seek indemnification under the SPA, plaintiff forfeited such right by breaching the terms and conditions the SPA.

**FIFTH DEFENSE**

4. To the extent plaintiff has any right to seek indemnification under the Letter Agreement, plaintiff forfeited such right by breaching the terms and conditions the Letter Agreement.

**SIXTH DEFENSE**

5. To the extent plaintiff has any right to seek indemnification under the SPA, such right is limited by the provisions of §9.04(c)(I) and (ii) of the SPA.

**SEVENTH DEFENSE**

6. Plaintiff cannot seek a determination from this Court that it has the right to "directly access" the BWC insurance coverage without joining as parties to this action the various insurance carriers who underwrote such coverage and who are indispensable parties to any such action.

**EIGHTH DEFENSE**

7. Borg-Warner has ceased to exist as an entity and is not a necessary or proper party defendant in this action.

**NINTH DEFENSE**

8. Flowserve has breached its indemnity obligations under the 1987 Stock Purchase Agreement and thereby lost any benefit or any rights it may otherwise have had under such Agreement.

**TENTH DEFENSE**

9. Flowserve should be estopped from denying that it is responsible for Losses arising out of the Underlying Asbestos Claims after having sought and obtained to the detriment of Burns the continuing benefit of the insurance carried by Borg-Warner.

**ELEVENTH DEFENSE**

10. Flowserve has waived any alleged right or claim to indemnity under any other provisions of the 1987 Stock Purchase Agreement with respect to the Underlying Insurance

Claims after having sought and obtained the continuing benefit of the insurance carried by Borg-Warner with respect to such Claims.

**TWELFTH DEFENSE**

11. The Amended Complaint fails to state a claim upon which relief can be granted.

Wherefore, Defendant/Counter-plaintiff Burns International Services Corporation prays that a judgment be entered in its favor and against Plaintiff/Counter-defendant Flowserve Corporation and that the Court:

(a) Order Flowserve to indemnify and reimburse Burns for all costs and expenses, including reasonable attorneys' fees, it has incurred and will incur in the defense of the Underlying Asbestos Claims;

(b) Award Burns its costs of suit, including reasonable attorneys' fees; and

(c) Grant such other or further relief as the Court deems just.

MURPHY SPADARO & LANDON

/s/ Francis J. Murphy
Francis J. Murphy, I.D. No. 223
1011 Centre Road, Suite 210
Wilmington, DE 19805
Tel: (302) 472-8100
Fax: (302) 472-8135
E-Mail: Fmurphy@msllaw.com

Michael H. Moirano
NISEN & ELLIOTT, LLC
200 West Adams Street, Suite 2500
Chicago, Illinois 60606
Tel: (312) 346-7800
Fax: (312) 346-9316
E-mail: mmoirano@nisen.com

Attorneys for Defendant Burns International Services Corporation

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

FLOWSERVE CORPORATION,

Plaintiff,

v.

BURNS INTERNATIONAL SERVICES CORPORATION and BORG-WARNER CORPORATION,

Defendants.

C.A. No.: 04-1294 JJF

**CERTIFICATE OF SERVICE**

I, Francis J. Murphy, Esquire, do hereby certify that on this 4th day of October, 2006, I have caused the following documents to be served in the manner indicated on the parties listed below: BURNS INTERNATIONAL SERVICES CORPORATION'S ANSWER TO FLOWSERVE'S AMENDED COMPLAINT

**By Electronic Filing& E-Mail**
Danielle K. Yearick, Esquire
Tybout, Redfearn & Pell
300 Delaware Avenue, 11th Floor
P.O. Box 2092
Wilmington, DE 19899-2092

**By E-Mail**
Christopher M. Bechhold, Esquire
Thompson Hine, LLP
312 Walnut Street, 14th Floor
Cincinnati, OH 45209

**By E-Mail**
William Mahoney, Esquire
Ted McCullough, Esquire
Erich Gleber, Esquire
Segal McCambridge Singer & Mahoney, Ltd.
805 Third Avenue, 19th Floor
New York, NY 10022

**By E-Mail**
Gregory E. Rogus, Esquire
Segal McCambridge Singer
& Mahoney, Ltd.
One IBM Plaza
330 N. Wabash
Chicago, IL 60611

**MURPHY SPADARO & LANDON**

/s/ Francis J. Murphy
Francis J. Murphy, I.D. No. 223
1011 Centre Road, Suite 210
Wilmington, DE 19805
Office (302)472-8100
Fax (302)472-8135
Email fmurphy@msllaw.com
Attorneys for Defendant Burns
International Services Corporation

Of Counsel:
Michael H. Moirano
NISEN & ELLIOTT, LLC
200 West Adams Street, Suite 2500
Chicago, Illinois 60606
Tel: (312) 346-7800
Fax: (312) 346-9316
E-mail: mmoirano@nisen.com
Attorneys for Defendant Burns
International Services Corporation