# EXHIBIT

# A

Case 1:04-cv-01294-JJF    Document 113-2    Filed 10/24/2006    Page 1 of 4

00071306



Chris.bechhold@thompsonhine.com
(513) 352-6790

May 23, 2006

Via E-Mail and Regular Mail

Irving C. Faber, Esq.
Grippo & Elden LLC
111 South Wacker Drive
Chicago, Illinois 60606

    Re:    Flowserve Corporation/Asbestos Litigation Settlements

Dear Irv:

    I am in receipt of your letter dated May 18, 2006, wherein on behalf of your client, CNA, you request certain information concerning Flowserve's request for settlement reimbursement. Although I believe that CNA has access to all the information requested, in the spirit of cooperation, I will "rise to the bait" and respond to your inquiries. The paragraphs below correspond to the like-numbered paragraphs in your letter:

    1.    As CNA is aware, all of the lawsuits set forth on Exhibit A are ones which prior to March 15, 2006 were being handled by BorgWarner's insurers. This is evidenced in part by the fact that (i) each of these claims was assigned a CNA claim number and (ii) defense counsel retained by CNA to defend, inter alia, Flowserve/BWIP provided CNA with product identification, dates of exposure, defense reports, etc. Consequently, a review of CNA's own claim files for these plaintiffs should contain all the available information concerning each of these claimants. If it is CNA's position that it does not have claim files for any of these plaintiffs, please promptly advise me.

    2.    CNA, along with the other BorgWarner insurers did participate in the investigation and defense of the lawsuits identified on Exhibit A. Once again, this clearly should be evidenced by CNA's own claim files for these plaintiffs. With respect to settlement, for the reasons detailed in my prior correspondence to you, it remains Flowserve's position that under the present circumstances, Flowserve is not required to have CNA's participation in the settlement of these lawsuits. This is particularly true in the light of the fact that the settlements were all for amounts equal to or less than amounts which CNA had previously approved in hundreds of other lawsuits with substantially the same facts. In other words, CNA's prior course of conduct in approving Flowserve/BWIP asbestos settlements, as a matter of law, makes these settlements proper, appropriate and reasonable.

    3.    See response to Inquiry No. 2 above.

---

THOMPSON HINE LLP    312 Walnut Street    www.ThompsonHine.com
ATTORNEYS AT LAW    14th Floor    Phone 513.352.6700
    Cincinnati, Ohio 45202-4089    Fax 513.241.4771



THOMPSON
HINE

Irving C. Faber, Esq.
May 23, 2006
Page 2

4. Flowserve has not been provided with any documentation in order to substantiate CNA's contention that it has properly exhausted its umbrella policies and that there are limits of liability remaining on only two of CNA's umbrella policies.

5. In accordance with the caselaw set forth in my May 4, 2006 correspondence to, inter alia, CNA, it is Flowserve's position that each insurance carrier is jointly and severally liable to indemnify Flowserve for the settlement amounts set forth on Exhibit A. As a result, to the extent that CNA and the other first layer excess/umbrella insurance carriers can agree among themselves as to their respective percentage contributions, so long as said percentages total one hundred percent, Flowserve has no objection to such allocation. To the extent that the first layer excess/umbrella insurance carriers are unable to reach an allocation agreement, then, in accordance with *Zurich Insurance*, Flowserve designates Columbia Casualty Policy No. UMB6891300 as the policy that should pay these settlement amounts.

With respect to your comments concerning Judge Flynn's pro-rata allocation decision, as you are fully aware, said decision is a non-final, interlocutory one. Consequently, at the present time it is a decision which is subject to change by the Trial Court or reversal by the appellate courts. For the reasons set forth in the insureds' briefs previously filed with the Trial Court, it is our firm believe that *Zurich Insurance* correctly sets forth, inter alia, CNA's and Flowserve's rights and duties under CNA's umbrella policies. As a result, Flowserve has requested reimbursement in accordance with this caselaw.

6. With respect to the Delaware Declaratory Judgment Action, as you are aware from your various and continued communications with Burns International Services' counsel, no temporary restraining order has been entered by the Trial Court with respect to CNA's umbrella policies (or any other BorgWarner Corporation insurance policy). Thus, while I fully appreciate why CNA would like to use such an order as a means to avoid its contractual obligations to Flowserve, the fact remains that Flowserve as successor interest to BW/IP Acquisition Corporation is an insured under, inter alia, the insurance policies issued by CNA to the BorgWarner Corporation. As a result, Flowserve, as an insured, has the legal right to directly access these policies, and CNA has the contractual obligation to indemnify Flowserve for these settlements. In addition, in light of the fact that the lawsuits identified on Exhibit A are ones which CNA had previously agreed to provide a defense to Flowserve, and likewise are substantially the same as hundreds of other lawsuits which CNA has defended and indemnified Flowserve for in the past, there is no legal or factual basis for CNA (or any other BorgWarner insurer) not to indemnify Flowserve for these settlements.

Finally, please be advised that it is Flowserve's position that to the extent that CNA (or any other insurer) wrongfully fails to indemnify Flowserve for any defense or indemnification costs incurred by Flowserve in the defense of the asbestos lawsuits, to the extent that said insurer(s) then pays the defense costs or settlements of any other insured under said insurer's



Irving C. Faber, Esq.
May 23, 2006
Page 3

applicable insurance policy(ies), such insurer(s) will be liable to Flowserve for all monies which should have been paid to it irrespective of any applicable limits of liability. In other words, to

the extent that any insurer improperly refuses to defend and indemnify Flowserve in the asbestos lawsuits, said insurer(s) will still be liable to Flowserve for all monies which should have been paid to Flowserve irrespective of any claims of policy exhaustion.

Very truly yours,

Christopher M. Bechhold

CMB/lp