UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FLOWSERVE CORPORATION, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | No. 04-1294-JJF |
| | ) | |
| BURNS INTERNATIONAL SERVICES CORPORATION | ) ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**BURNS INTERNATIONAL SERVICES CORPORATION'S
PROPOSED PRETRIAL ORDER PURSUANT TO LOCAL RULE 16.4**

**(1)** **Nature of Action**

Flowserve filed this action for breach of contract, declaratory judgment and indemnity on September 24, 2004. The claims alleged arise out of the indemnity provisions of a 1987 Stock Purchase Agreement and related Letter Agreement entered into between Borg-Warner Corporation ("Borg-Warner") and BWIP Acquisition Corporation ("BWIP-AC") and concern the parties' respective indemnity obligations for thousands of pending asbestos product liability claims related to asbestos containing products manufactured by Borg-Warner and Borg-Warner Industrial Products, Inc. ("BWIP"), the entity acquired by BWIP-AC pursuant to the Stock Purchase Agreement. Plaintiff Flowserve Corporation ("Flowserve") has alleged that it is the corporate successor to BWIP-AC and entitled to indemnity from defendant Burns International Services Corporation ("Burns") for the asbestos liabilities under the terms of the Stock Purchase Agreement and Letter Agreement. Flowserve seeks a declaratory judgment affirming Burns' alleged indemnity obligations to it and seeks damages for Burns' alleged breach of its indemnity obligations.

Burns served its answer and counterclaim on January 10, 2005. Burns denied that it has an indemnity obligation to Flowserve for the asbestos claims except to the extent such claims are covered by insurance carried by Borg-Warner. In the counterclaim, Burns seeks a declaration of its right to indemnity under the Stock Purchase Agreement for any asbestos or other products liability claims alleged against it or Borg-Warner to the extent such claims are not covered by Borg-Warner's insurance. Burns also seeks damages resulting from Flowserve's unjust receipt of benefits under the Borg-Warner insurance coverage to which it was not entitled, and for breach of the indemnity provisions of the Stock Purchase Agreement.

**(2)** **Basis for Federal Jurisdiction**

Jurisdiction is based upon 28 USC 1332(a)(1) in that the controversy is between citizens of different states and the amount in controversy, excluding interest, exceeds $75,000.00. Jurisdiction is not contested.

**(3)** **Statement of Undisputed Facts**

In 1987, Borg-Warner and BWIP-AC entered into the Stock Purchase and Letter Agreement attached to the Complaint as Exhibits A and B. The transaction contemplated by those agreements closed in May, 1987, effective December 31, 1986. At some point subsequent to the closing of the transaction, BWIP and/or related entities began to be sued in asbestos product liability actions. In accordance with the terms of the Letter Agreement, the claims were tendered to Borg-Warner's insurance carriers who provided a complete defense and indemnity for the claims. However, in 2004, certain of Borg-Warner's insurance carriers notified the parties that they would no longer pay 100% of the defense and indemnity costs for the asbestos claims. Such notification prompted Flowserve to file this action.

In addition to the foregoing undisputed facts, the parties are presently attempting to enter into two stipulations, one concerning the facts surrounding the corporate succession issues raised by the pleadings, and the other addressing the nature and scope of the Borg-Warner insurance coverage. The stipulations will be completed and filed in advance of the trial.

**(4)** **Statement of issues of fact that remain to be litigated.**

a)    Flowserve's contends in its proposed amended complaint that certain provisions of the Stock Purchase Agreement are ambiguous and believes that there is an issue of fact concerning the parties' intent with respect to those provisions.

b)    Burns does not believe there are any disputed issues of fact other than perhaps the amount and scope of the alleged damages. Burns contends that the agreements are not ambiguous and that extrinsic evidence to explain the parties' intent should not be allowed.

**(5)** **Statement of issues of law that remain to be litigated.**

**Flowserve's Statement of Issues**

a)    Whether Section 9.04(a) of the Stock Purchase Agreement controls the issue of which party must indemnify the other with regard to the underlying Byron Jackson pump asbestos litigation.

      b)      Whether Section 9.04(a) of the Stock Purchase Agreement controls the issue of which party must indemnify the other with respect to the underlying Byron Jackson pump litigation.

      c)      Whether, for purposes of defense and indemnification in connection with the underlying Byron Jackson pump asbestos litigation, BURNS must indemnify FLOWSERVE pursuant to the Stock Purchase Agreement.

      d)      Whether, for purposes of defense and indemnification in connection with the underlying Byron Jackson pump asbestos litigation, FLOWSERVE must indemnify BURNS pursuant to the Stock Purchase Agreement.

      e)      Whether the language contained in the indemnifications section of the Stock Purchase Agreement is ambiguous.

      f)      Whether parole evidence is admissible on the issue of the parties' intent with regard to the indemnification section of the Stock Purchase Agreement.

      g)      Whether the Letter Agreement imposes an obligation upon BURNS to indemnify FLOWSERVE that is in addition to or broader in scope than any such obligation contained in the Stock Purchase Agreement.

      h)      Whether BURNS fully discharges its indemnification obligations under the Letter Agreement by tendering to the Borg-Warner insurers for defense and indemnification those underlying Byron Jackson pump asbestos cases that FLOWSERVE has tendered to BURNS for defense and indemnification.

      i)      The meaning and effect of the phrase "to the extent that such losses are covered by insurance carried by Borg-Warner" contained in the Letter agreement.

      j)      Whether the language contained in the Letter Agreement is ambiguous.

      k)      Whether parole evidence is admissible on the issue of the parties' intent with regard to the Letter Agreement.

      l)      Whether, for purposes of defense and indemnification in connection with the underlying Byron Jackson pump asbestos litigation, BURNS possesses the exclusive right to control FLOWSERVE's access to coverage under the Borg-Warner insurance policies.

m)   Whether, for purposes of defense and indemnification in connection with the underlying Byron Jackson pump asbestos litigation, FLOWSERVE has the right to directly access coverage under the Borg-Warner insurance policies without first obtaining BURNS' consent, authorization or approval.

n)   Whether BURNS has tortiously interfered with FLOWSERVE's right to access coverage under the Borg-Warner insurance policies.

o)   Whether the "contract rights" referenced in Borg-Warner Corporation's January 1, 1984 Assignment, Transfer and Conveyance to Borg-Warner Industrial Products, Inc., or in its January 1, 1987 Amended Assignment, Transfer and Conveyance to Borg-Warner Industrial Products, Inc., included the right to seek and obtain insurance coverage for Borg-Warner Industrial Products, Inc., under Borg-Warner Corporation's liability insurance policies for the liabilities assumed by Borg-Warner Industrial Products, Inc., under the Assignment or Amended Assignment.

p)   Whether the "other things of value" referenced in Borg-Warner Corporation's January 1, 1984 Assignment, Transfer and Conveyance to Borg-Warner Industrial Products, Inc., or in its January 1, 1987 Amended Assignment, Transfer and Conveyance to Borg-Warner Industrial Products, Inc., included the right to seek and obtain insurance coverage for Borg-Warner Industrial Products, Inc., under Borg-Warner Corporation's liability insurance policies for the liabilities assumed by Borg-Warner Industrial Products, Inc., under the Assignment or Amended Assignment.

q)   Whether the "intangible assets . . . owned by Borg-Warner Corporation and used . . . in connection with the activities and business of the Divisions," which were referenced in the Amended Assignment, Transfer and Conveyance, included the right to seek and obtain insurance coverage for Borg-Warner Industrial Products, Inc., under Borg-Warner Corporation's liability insurance policies for the liabilities assumed by Borg-Warner Industrial Products, Inc., under the Assignment or Amended Assignment.

**Burns Statement of Issues**

Other than issues raised by the pleadings concerning the proper interpretation and application of the relevant provisions of the Stock Purchase and Letter Agreements, Burns contends that the only issues of law which the Court will require to address are (1) whether the plaintiff Flowserve Corporation is the successor to and has the right to enforce or obtain benefits under the Stock Purchase and Letter Agreements; and (2) whether

4

extrinsic evidence should be admitted to interpret the intent of the parties to the Agreement, or to create an ambiguity.

With respect to the issue of whether Flowserve is the successor to and entitled to the benefits of the Stock Purchase and Letter Agreements, Burns contends that the undisputed evidence shows that Flowserve Corporation is not the successor to or subsidiary of any of the parties to the Stock Purchase or Letter Agreement and that any indemnity rights under those Agreements are expressly limited to the parties to the Agreements or their subsidiaries.

With respect to the issue of the admissibility of extrinsic evidence, it is Burns' contention that because the relevant language of the Stock Purchase Agreement is clear and unambiguous, Flowserve is precluded under Delaware law from introducing any extrinsic evidence purporting to establish the intent of the parties to the underlying agreements or to create an ambiguity.  As the Third Circuit recognized in *MBIA Ins. Corp. v. Royal Indem. Co.,* "Delaware follows the objective theory of contract."  426 F.3d 204, 210, (3d Cir. 2005); citing *Haft v. Haft*, 671 A.2d 413, 417 (Del.Ch.1995) The *MBIA* court articulated Delaware law on contract interpretation as follows:

> Although the law of the contract generally strives to enforce agreements in accord with their makers' intent, the objective theory considers objective acts (words, acts and context) the best evidence of that intent.  Unambiguous written agreement should be enforced according to their terms, without using extrinsic evidence to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity.  A contract is not ambiguous merely because the parties disagree about its proper interpretation.  Whether a contract is ambiguous is determined according to an objective, reasonable person standard and is a question of law.  Words are to be given their ordinary meaning and should not be tortured to impart ambiguity where none exists.

*Id.*  As this Court stated in *GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, "the use of extrinsic evidence to interpret 'clear and unambiguous language' in a contract is not permitted."  270 F.Supp.2d 476, 481 (D.Del. 2003)(Farnan, J.); *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 56 (DelSuper.Ct. 1995); see also *IFC Interconsult,, AG v. Safeguard Intern. Partners, LLC*, 438 F.3d 298, 319 (3d Cir. 2006) (holding that under Delaware law, "if a writing is plain and clear on its face, i.e., its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent.")

Moreover, under Delaware law, extrinsic evidence may not be introduced to demonstrate the existence of ambiguity in the terms of the contract. This issue was specifically addressed by the Third Circuit in *MBIA Ins. Corp. v. Royal Indem. Co.,* affirming this Court's conclusion that the "Waiver" provision contained within the insurance policies at issue in that case were clear, unambiguous and enforceable under Delaware law. 426 F.2d at 214.[1] In *MBIA*, the Third Circuit expressly rejected the defendant insurer's argument that, pursuant to Third Circuit precedent, it should have been permitted to introduce extrinsic evidence to demonstrate that the terms of the agreement were ambiguous. *Id*. n.4. In doing so, the Third Circuit specifically recognized that under Delaware law, unlike federal common law of contract or that of other states, extrinsic evidence cannot be introduced to demonstrate the existence of an ambiguity in the contract language. *Id.* As such, not only is Flowserve precluded from introducing the proposed extrinsic evidence for purposes of demonstrating the intent of the parties, Flowserve is also precluded from introducing such evidence in an effort to demonstrate any ambiguity in the contract language.[2]

**(6)   Proposed Trial Exhibits**

**<u>Flowserve's Exhibits</u>**

a) The 1987 Stock Purchase Agreement.

b) The May 1, 1987 Letter Agreement.

c) February 27, 1987 fax transmittal from F. Blassberg to R. Zieg (FLS 4412-4417).

d) February 28, 1987 fax transmittal from R. Zieg to F. Blassberg (FLS Rule 26).

e) March 2, 1987 fax transmittal from D. Brittenham to R. Zieg (FLS Rule 26).

f) March 4, 1987 fax transmittal from J. Ayers to F. Blassberg (FLS 4369-4382).

---

[1] In *MBIA* the Third Circuit affirmed this Court's ruling denying the defendant insurer's rescission claims, declaring the disputed policies in full force and effect, and ordering the insurer to perform its obligations thereunder, the case was remanded only as to the issues of the scope of indemnity obligation and the nature of the losses claims remained. *Id.* at 220-221.

[2] The MBIA court recognized that "the Delaware Supreme Court has held that in determining whether an ambiguity exists a court may consider only 'undisputed background facts to place the contractual provision in its historical setting.'" *D Eagle Indus. Inc. v. DeVilbill Health Care, Inc.,* 702 A.2d 1228, 1232 n.7 (Del. 1977) The *MBIA* court additionally recognized that "undisputed background facts" did not include "the self-serving parol evidence submitted by the parties, whose recollections as to the intended meaning of the agreements predictably differ." *Id.* The apparent exception to the rule under Delaware law precluding the introduction of extrinsic evidence to demonstrate the existence of am ambiguity for "undisputed background facts" is inapplicable under the present case. Flowserve's proposed extrinsic evidence does not contain undisputed historical facts intended to place the contract in its historical setting. Rather, the proposed extrinsic evidence in this case, like that

    g)    March 5, 1987 correspondence from R. Zieg to F. Blassberg (FLS 4436).

    h)    Stock Purchase Agreement (with markings) (FLS 4614-4729).

    i)    March 9, 1987 correspondence from Don Trauscht to Alberto Cribiore (FLS Rule 26).

    j)    March 9, 1987 correspondence from Alberto Cribiore to Don Trauscht (FLS Rule 26).

    k)    March 9, 1987 fax transmittal from R. Zieg to F. Blassberg at 7:15 p.m. (FLS Rule 26).

    l)    March 9, 1987 fax transmittal from Borg-Warner Law Department to F. Blassberg at 7:22 p.m. (FLS Rule 26).

    m)    March 11, 1987 version Stock Purchase Agreement (FLS 4483-4613).

    n)    BWIP Acquisition Corporation closing documents Vol. I (FLS 1-1408).

    o)    BWIP Acquisition Corporation closing documents Vol. II (FLS 1409-2746).

    p)    BWIP Acquisition Corporation closing documents Vol. III (FLS 2747-3935).

    q)    Assignment, Transfer and Conveyance from Borg-Warner Corporation to Borg-Warner Industrial Products, Inc., dated January 1, 1984.

    r)    Amended Assignment, Transfer and Conveyance from Borg-Warner Corporation to Borg-Warner Industrial Products, Inc., dated as of January 1, 1987.

    s)    March 31, 1987 correspondence from F. Blassberg to R. Zieg (FLS DPP 2614-2618),

    t)    April 4, 1987 correspondence from R. Zieg to F. Blassberg (FLS DPP 2634-2637).

    u)    April 29, 1987 correspondence from R. Zieg to Anne McBride (FLS DPP 2567-2572).

    v)    May 15, 1987 correspondence from R. Zieg to Anne McBride (FLS DPP 2416-2421).

    w)    April 24, 1987 fax transmittal from Anne McBride to Zohar Ziv (FLS DPP 2253-2297).

    x)    June 28, 2006 correspondence from E. Mueller to Irving Faber.

    y)    Asbestos complaints filed against Flowserve, BW/IP and/or Burns.

    z)    Burns' Answers to Plaintiff's First Set of Request for Admission.

    aa)    December 19, 2005 correspondence from A. Packard to S. Mitchell, Barlow Complaint Caption, Barlow Answer.

Burns' objections to Flowserve's proposed Exhibits are set forth in Exhibit A hereto.

---

offered in *MBIA*, would constitute nothing more than self-serving parol evidence regarding Flowserve's predecessor's

Flowserve reserves the right to identify additional trial exhibits as necessary to be used as rebuttal evidence or as additional documents are produced.

**Burns' Exhibits**

A list of Burns' pre-marked trial exhibits is attached as Exhibit B.  Burns' reserves the right to identify additional trial exhibits as necessary to be used as rebuttal evidence or as additional documents are produced.

**(7)  Anticipated Trial Witnesses**

**Flowserve's Trial Witnesses**

- a) Franci Blassberg
  c/o Debevoise and Plimpton LLP
  919 Third Ave.
  New York, New York 10022

- b) David Brittenham
  c/o Debevoise and Plimpton LLP
  919 Third Ave.
  New York, New York 10022

- c) Donald Trauscht
  4 Arden Court
  Oak Brook, Illinois

- d) Robert Zieg

- e) Alberto Cribiore
  c/o Clayton, Dubilier and Rice
  New York, New York

- g) Edward Mueller
  c/o Nisen & Elliott LLC
  200 West Adams Street, #2500
  Chicago, IL  60606

Flowserve reserves the right to identify additional witnesses to rebut to the extent the identity of new witnesses are disclosed.

**Burns' Trial Witnesses**

Robert Roberts, Flowserve Corporation

Robert Zieg, 13310 Lost Key Plantation, Bradenton, Florida

Edward Mueller, Nisel & Elliott, LLC., 300 W. Adams Steet, Chicago, IL

---

understanding of the intended meaning of the agreements.

Burns will offer deposition testimony of the following individuals if the Court determines the Stock Purchase Agreement and/or Letter Agreement are ambiguous and permits extrinsic evidence:

Franci Blassberg, Debevoise and Plimpton LLP

David Brittenham, Debevoise and Plimpton LLP

Alberto Cribiore

Burns reserves the right to identify additional witnesses to rebut to the extent the identity of the new witnesses are disclosed.

**(8)** **Support for Plaintiff's Claims**

Flowserve intends to rely upon the documentary evidence relating to the closing of the 1987 Stock Purchase Agreement, the testimony of witnesses involved in the formation of BWIP Acquisition Corporation and BWIP Holding, Inc.; the stipulation to be entered by the parties regarding corporate succession, and testimony regarding the current relationship between Flowserve Corporation and its subsidiaries to support is position that it is the proper plaintiff for purpose of bringing this action to obtain declaratory and other relief based on the terms of the Stock Purchase and Letter Agreements.

Flowserve will rely upon the language contained in the Stock Purchase Agreement and Letter Agreement, together with the allegations contained in complaints filed and testimony by plaintiffs with respect to Byron Jackson pumps in the underlying asbestos litigation, and the admissions contained in Burns' pleading and its Answers to Flowserve's Requests to Admit, to support its claim that it is entitled to indemnification from Burns.

Flowserve will rely upon the language contained in the Stock Purchase Agreement and Letter Agreement to support its claim that the agreements are ambiguous, thereby necessitating parole evidence to establish the parties' intent. Flowserve will further rely upon the testimony of witnesses involved in the formation, negotiation and closing of the Stock Purchase Agreement to demonstrate that intent, which was to maximize the extent of protection for the buyer with regard to long-tail environmental and/or toxic-substance related liabilities.

Flowserve intends to reply upon the language contained in certain Borg-Warner Corporation insurance policies, together with the parties' stipulation regarding same, as well as certain assignments executed by

Borg-Warner, to support its claim that it is entitled to directly access the coverage under these policies. Flowserve further intends to reply upon communications from Burns' counsel to the attorney representing several of the Borg-Warner carriers to support its claim for tortious interference.

**(9)     Support for Burns' Defenses**

Burns intends to rely upon the corporate succession stipulation being prepared by the parties to establish that the plaintiff, Flowserve Corporation, is not the successor to any party to nor has any rights under the Stock Purchase or Letter Agreements including the right to obtain benefits under the Borg-Warner insurance. Burns intends to reply on the umambiguous language of the Stock Purchase and Letter Agreements and the conduct of the parties to support its defense that it owes no indemnity obligation to Flowserve Corporations or any other entity having rights under the Stock Purchase or Letter Agreements for the underlying asbestos product liability claims except to the extent such claims are covered by insurance carried by Borg-Warner.

**(10)     Support for Burns' Counterclaim**

Burns intends to reply upon the unambiguous language of the Stock Purchase Agreement and Letter Agreement and the conduct of the parties to support its claim that it is entitled to indemnity for all asbestos products liability claims. Burns intends to reply upon the same Agreements and the parties' stipulation concerning the corporate succession issue to support its claim that Flowserve has been unjustly enriched by the receipt of benefits under the Borg-Warner insurance coverage. Burns will further support its counterclaims with evidence that Flowserve agreed, in connection with a related action pending in Cook County, Illinois, that any judgment entered in this litigation would be binding on all of its subsidiaries, including the subsidiaries that may have rights and obligations under he Stock Purchase and Letter Agreements and that because Burns has not been provided the indemnity to which it is entitled under the Stock Purchase Agreement, it is entitled to be reimbursed by such subsidiaries for the costs it has incurred in defending the underlying asbestos product liability claims.

The amount of Flowserve's unjust enrichment has not been determined at this time because the information needed to calculate the amount is in the exclusive possession of third parties. The precise amount of Burns' damages arising out of the breach of the indemnity obligations also cannot readily be calculated at this time because Burns continues to incur costs defending claims. Documentary evidence of such amounts will be introduced at trial.

**(11)   Amendments to Pleadings**

Flowserve recently filed an amended complaint. Burns has answered all Counts in the amended complaint.

**(12)   Certification Re: Two-way Conversation to Explore Resolution of Controversy by Settlement.**

The attorneys for the parties met in December, 2004, to explore settlement. A mediation before Magistrate Judge Thynge was conducted on October 6, 2006. The parties again met privately on October 23, 2006, to further explore the possibility of settlement. No settlement was reached.

**(13)   Other Matters**

Burns previously filed a motion for temporary restraining order and preliminary induction. The Court granted the motion and asked the parties to submit an agreed order consistent with the court's ruling. The parties could not agree on a form of injunction order and each filed a proposed order. Flowserve also requested that the hearing on the motion for injunctive relief be reopened to allow it to present additional evidence on its claimed right to direct access the Borg-Warner insurance coverage. Burns requests that the injunctive relief which the Court granted when it granted Burns' motion for temporary restraining order and preliminary injunction be made permanent in any final order entered by the Court.

This order shall control the subsequent course of the action unless modified by the Court to prevent manifest injustice.

_____   _____
Date                             United States District Judge